## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DAVID WILLIAMS and CAROLL ANGLADE, *individually, and on behalf of other similarly situated individuals*, | |
| Plaintiffs, | CASE NO. 1:20-cv-23564-MGC |
| v. | |
| RECKITT BENCKISER LLC and RB HEALTH (US) LLC, | |
| Defendants. | |

## DEFENDANTS RECKITT BENCKISER LLC AND RB HEALTH (US) LLC'S <u>MOTION TO DISMISS THE COMPLAINT</u>

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ..................................................................................................... 2

    A.     Neuriva Brain Health Products ................................................................... 2

    B.     Plaintiffs' Complaint ................................................................................... 4

III.   STANDARD OF REVIEW ..................................................................................... 6

IV.    ARGUMENT ........................................................................................................... 6

    A.     Because Plaintiffs Do Not Allege Actual Falsity, Their Lack of
         Substantiation Contention Fails .................................................................. 7

    B.     Plaintiffs' Challenges to Structure/Function Claims Are Preempted .......... 11

         1.     Regulatory Regime .......................................................................... 11

         2.     The Brain Health Claims Are Structure/Function Claims ............... 12

         3.     Plaintiffs State Law Claims Demand More Than Federal Law
             Requires ........................................................................................... 13

    C.     Plaintiffs Fail to Plausibly Allege that the "Clinically Proven" Claims
         Are Misleading to a Reasonable Consumer ................................................ 15

    D.     Plaintiffs' Unjust Enrichment Claim Is Duplicative of their FDUTPA
         Claim ........................................................................................................... 17

    E.     Plaintiffs Lack Standing as to Neuriva Plus ............................................... 18

    F.     Plaintiffs Lacks Standing to Seek Injunctive Relief .................................... 18

# TABLE OF AUTHORITIES

**Page**

CASES

*Aloudi v. Intramedic Research Grp., LLC*,
729 F. App'x 514 (9th Cir. 2017) ...................................................................8, 10

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
390 F.Supp.2d 1170 (M.D.Fla.2005)..........................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................... 6

*Barron v. Snyder's-Lance, Inc.*,
No. 13-62496-CIV, 2015 WL 11182066 (S.D. Fla. Mar. 20, 2015) ..............................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................... 6

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ....................................................................... 7

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
116 F.3d 1364 (11th Cir. 1997) ................................................................. 6

*Casey v. Florida Coastal Sch. of Law, Inc.*,
No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084 (M.D. Fla. Aug. 11,
2015) ..............................................................................................................15

*Chinn v. PNC Bank, N.A.*,
451 F.App'x. 859 (11th Cir. 2012) ............................................................. 4

*Dachauer v. NBTY, Inc.*,
913 F.3d 844 (9th Cir. 2019)................................................................passim

*Dapeer v. Neutrogena Corp.*,
95 F. Supp. 3d 1366 (S.D. Fla. 2015) ......................................................18

*Eckler v. Wal-Mart Stores, Inc.*,
No. 12-CV-727-LAB-MDD, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ....................... 9

*Fraker v. Bayer Corp.*,
No. CVF08-1564 AWI GSA, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009)...................... 8

*Franulovic v. Coca Cola Co.*,
390 F. App'x 125 (3d Cir. 2010) ............................................................... 7

**TABLE OF AUTHORITIES**

Page

*Gallagher v. Bayer AG*,
  No. 14-CV-04601-WHO, 2015 WL 1056480 (N.D. Cal. Mar. 10, 2015) ....................13

*Greifenstein v. The Estee Lauder Corp., Inc.*,
  No. 12-09235, 2013 WL 3874073 (N.D. Ill. July 26, 2014) ..........................................10

*Guerrero v. Target Corp.*,
  889 F. Supp. 2d 1348 (S.D.Fla. 2012) ................................................................... 17, 18

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*,
  910 F.3d 1186 (11th Cir. 2018) ............................................................................. 11, 13

*Hughes v. Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) ......................................................................... 7

*In re General Mills Glyphosate Litig.*,
  No. CV 16-2869 (MJD/BRT), 2017 WL 2983877 (D. Minn. July 12,
  2017) ...............................................................................................................................16

*In re GNC Corp.*,
  789 F.3d 505 (4th Cir. 2015) ......................................................................................10

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
  955 F. Supp. 2d 1311 (S.D. Fla. 2013) ........................................................................ 8

*Jonathan Chuang v. Dr. Pepper Snapple Grp.*,
  CV1701875MWFMRWX, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ...................17

*Kanfer v. Pharmacare US, Inc.*,
  142 F. Supp. 3d 1091 (S.D. Cal. 2015) ....................................................................... 7

*Kroessler v. CVS Health Corp.*,
  No. 19-55671, 2020 WL 5987498 (9th Cir. Oct. 9, 2020) ...................................... 14, 15

*Kuenzig v. Hormel Foods Corp.*,
  505 F. App'x 937 (11th Cir. 2013).......................................................................... 15, 16

*Kwan v. SanMedical Int'l*,
  854 F.3d 1088 (9th Cir. 2017) ................................................................................... 7

*Licul v. Volkswagen Grp. of Am., Inc.*,
  No. 13-61686-CIV, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ..................................17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).......................................................................................................18

## TABLE OF AUTHORITIES

**Page**

*Mazzeo v. Nature's Bounty*,
    2014 WL 5846735 (S.D. Fla. Nov. 12, 2014)................................................16

*Merl v. Warner Bros. Entm't Inc.*,
    No. 1:12-CV-20870-PsAS, 2013 WL 266049 (S.D. Fla. Jan. 23, 2013) .......................... 6

*Pelkey v. McNeil Consumer Healthcare*,
    No. 10-61853-CIV, 2011 WL 677424 (S.D. Fla. Feb. 16, 2011) ................................... 7

*Procter & Gamble Co. v. Chesebrough-Pond's Inc.*,
    747 F.2d 114 (2d Cir. 1984) ........................................................................ 7

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D.Fla. 2007) ..........................................................17

*Quiller v. Barclays Am./Credit, Inc.*,
    727 F.2d 1067 (11th Cir. 1984) ...................................................................11

*Route v. Mead Johnson Nutrition Co.*,
    2013 WL 658251 (C.D. Cal. Feb. 21, 2013) ................................................... 9

*Salters v. Beam Suntory, Inc.*,
    No. 4:14CV659-RH/CAS, 2015 WL 2124939 (N.D. Fla. May 1, 2015)........... 15, 16, 17

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990) ........................................................................ 7

*Scheuerman v. Nestle Healthcare Nutrition, Inc.*,
    No. CIV. 10-3684 FSH PS, 2012 WL 2916827 (D.N.J. July 17, 2012) ......................... 7

*Segovia v. Vitamin Shoppe, Inc.*,
    No. 14-CV-7061 (NSR), 2016 WL 8650462 (S.D.N.Y. Feb. 5, 2016) ..........................10

*Spector v. Mondelez Int'l, Inc.*,
    No. 15 C 4298, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017) ....................................... 8

*Stephens v. Gen. Nutrition Co.*,
    No. 08 C 6296, 2009 WL 1437843 (N.D.Ill. May 21, 2009).......................................... 7

*Teggerdine v. Speedway LLC*,
    No. 8:16-CV-3280-T-27TGW, 2018 WL 583114 (M.D. Fla. Jan. 26, 2018)............ 18, 19

*Toback v. GNC Holdings, Inc.*,
    No. 13-80526 CIV, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013)......................... 7, 8, 18

# TABLE OF AUTHORITIES

**Page**

*Tubbs v. AdvoCare Int'l, LP,*
   No. CV174454PSGAJWX, 2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) .................8, 9

*Weaver v. Mateer & Harbert, P.A.*,
   No. 5:09–cv–514–Oc–34TBS, 2012 WL 3065362 (M.D. Fla. July 27,
   2012) .........................................................................................................................17

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ................................................................................15

**STATUTES**

21 U.S.C. § 343-1(a) ...........................................................................................................11

21 U.S.C. § 343-1(a)(5) ............................................................................................ 11, 12, 14

21 U.S.C. § 343(r)(3)(B)(i) ....................................................................................... 5, 14, 16

21 U.S.C. § 343(r)(6) ................................................................................................ 11, 12, 13

Federal Food, Drug, and Cosmetics Act (FDCA) ................................................4, 7, 11, 15

Florida Deceptive and Unfair Trade Practices Act (FDUTPA) ..................................passim

Nutrition Labeling and Education Act (NLEA) ..........................................................passim

**OTHER AUTHORITIES**

21 C.F.R. § 101.93(f) ..........................................................................................................13

21 C.F.R. § 101.93(g)................................................................................................... 11, 13

65 Fed. Reg. 1000-01 (Jan. 6, 2000)............................................................................ 12, 13

75 Fed. Reg. 42,752 (July 22, 2010).................................................................................16

Akito Kato-Kataoka, *Soybean-Derived Phosphatidylserine Improves Memory
   Function of the Elderly Japanese Subjects with Memory Complaints*, 47 J. Clin.
   Biochem. Nutr. 246-55 (Nov. 2010). ......................................................................3, 10

Dietary Supplements: An Advertising Guide for Industry, Fed. Trade
   Comm'n, https://www.ftc.gov/tips-advice/business-
   center/guidance/dietary-supplements-advertising-guide-industry#b (last
   visited Oct. 27, 2020).................................................................................................16

# TABLE OF AUTHORITIES

**Page**

Food & Drug Admin., *Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act* Part I.A-B. (Dec. 2008), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-substantiation-dietary-supplement-claims-made-under-section-403r-6-federal-food (last accessed Oct. 27, 2020). ...................................................13

Food & Drug Admin., *Development & Approval Process/Drugs* (content current as of Oct. 28, 2019), https://www.fda.gov/drugs/development-approval-process-drugs ........................................................................................14

Jennifer L. Robinson et al., *Cognitive short- and long-term effects of coffee cherry extract in older adults with mild cognitive decline*, Aging, Neuropsych., & Cognition (Dec. 12, 2019), ....................................................................3, 10

Federal Rule of Civil Procedure 12(b)(6) ......................................................6, 11

# I.    INTRODUCTION

This is a case about advertising claims on Defendant RB Health (US) LLC's ("RB Health") Neuriva Brain Health Supplement, which RB Health launched in April 2019.[1] Neuriva is a dietary supplement that supports brain health with a combination of two plant-based ingredients, NeuroFactor (whole fruit coffee cherry extract, or "WCFC") and Sharp-PS (a branded version of soy-based Phosphatidylserine, or "PS"). After scientific study and testing, RB Health concluded that these ingredients support key indicators of brain health, such as focus, memory and accuracy. So, RB Health advertises Neuriva as containing "Clinically Proven" ingredients and points out that Neuriva can "fuel five indicators of brain performance." These claims are true and well supported.

Plaintiffs David Williams and Caroll Anglade nevertheless sued RB Health in the United States District Court for the Southern District of Florida. They allege that Neuriva's labeling and advertising is false or misleading because no scientific studies show that either WCFC or soy-PS promote brain health. Plaintiffs bring two causes of action, one under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and one for unjust enrichment, but both fail for several reasons.

*First*, courts nationwide hold that private plaintiffs cannot premise consumer protection claims on a demand that advertisers provide substantiation for their claims. To avoid this bar, plaintiffs must offer plausible allegations—backed up by scientific studies or other comparable evidence—showing that the challenged claims are false or misleading, *i.e.*, the supplement or its ingredients do not function as promised. Florida courts likewise require that plaintiffs must plausibly allege that a challenged claim is false, not just that the defendant lacks support for it.

Plaintiffs' claims fail under these standards because they do not plausibly allege actual falsity. Plaintiffs repeatedly allege that Neuriva's claims are false solely because they are unsubstantiated, the precise type of claim that courts have held not actionable, and Plaintiffs fail to cite to a single study or other piece of credible evidence that Neuriva does not work as

---

[1] Plaintiffs also sued a related company, Reckitt Benckiser LLC. Compl. ¶ 1. Reckitt Benckiser LLC's business is unrelated to the vitamin and supplement business. Reckitt Benckiser LLC is a Reckitt Benckiser subsidiary that houses the hygiene brands such as Lysol and AirWick. This motion to dismiss is filed on behalf of both Defendants.

promised. Plaintiffs also ignore the fact that there are multiple studies establishing the brain health benefits of each ingredient. Given these failures, Plaintiffs' case should not proceed past the pleading stage.

*Second*, federal law expressly permits supplement manufacturers like RB Health to make structure/function claims on their products. These claims state how the product impacts the structure or function of the human body, but do not assert that the product cures or treats any disease. The U.S. Food and Drug Administration ("FDA") guidance explains that general terms such as "support," "enhance," and "aid," indicate permissible structure/function claims.[2] RB Health uses such terms. The FDA also requires supplement manufacturers to substantiate such structure/function claims with competent and reliable scientific evidence—RB Health has this substantiation for its Neuriva products. There need not be a "scientific consensus" before making a structure/function claim, as Plaintiffs assert; that standard applies only to FDA-approved health claims. Because Plaintiffs seek to impose a substantiation standard on RB Health that is more stringent than that imposed by federal law, their private challenge to permitted structure/function claims is expressly preempted under the Nutrition Labeling and Education Act ("NLEA").

*Third*, although there are ample grounds to dismiss the Complaint in full, Plaintiffs' individual claims and requests for relief fail as a matter of law: Plaintiffs fail to plausibly allege that a reasonable consumer would interpret the phrase "clinically proven" on Neuriva's labels to mean there is "scientific consensus" that the product works as promised.

*Fourth*, Plaintiffs' unjust enrichment claim, specifically, fails because it is duplicative.

And *finally*, Plaintiffs fail to plead that either one of them purchased Neuriva Plus (as opposed to Neuriva Original) and fail to plead that they intend to purchase any Neuriva product (Original or Plus) in the future; thus, they lack standing to challenge Neuriva Plus products specifically and to seek injunctive relief generally.

## II.      BACKGROUND

### A.    Neuriva Brain Health Products

RB Health owns Schiff Vitamins, which produces and sells Neuriva brain health

---

[2]  "Fuels" is a synonym for "supports." *See* Fuel, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/fuel#synonyms (last visited October 27, 2020).

products. Schiff is a trusted name in the vitamin and supplement industry, with household brands such as MegaRed, Digestive Advantage, and now Neuriva.

RB Health is a science-based company. So, it extensively studied Neuriva's two active ingredients—NeuroFactor and soy-PS—before releasing Neuriva. Several well-designed scientific studies show that Neuriva's two active ingredients are effective at supporting key indicators of brain health, such as focus, accuracy, memory, learning, and concentration. *See* Compl. ¶ 95 n.22 (citing https://www.nutraingredientsusa.com/Article/2019/05/06/ Reckitt-Benckiser-throws-hat-in-nootropic-ring-with-Neuriva-launch#, which describes scientific support for Neuriva). This includes a 2013 placebo-controlled clinical study finding that healthy adults who supplemented with WCFC experienced statistically significant increase in plasma BDNF, which is known to strengthen connections among neurons. *See* Declaration of Lori Lustrin in Support of Request for Judicial Notice ("Lustrin Decl."), Ex. A, at 1. It also includes a 2012 study finding that treatment with WCFC powder increased BDNF by 137% over baseline, substantially more than any other substance tested. This led the authors to conclude that WCFC "could be used for modulation of BDNF-dependent health conditions." *Id.* Ex. B; *see also* Compl. ¶¶ 84 (incorporating articles by reference). Both studies explained that BDNF can cross the blood-brain barrier, meaning that oral supplementation with WCFC could prove effective supporting brain health. *See* Lustrin Decl. Exs. A, at 4 & B, at 1. Clinical studies likewise show that PS supplementation can improve memory and other brain functions. Lustrin Decl. Ex. C. In fact, a long body of research supports the conclusion that supplementation with PS (including soy-PS) supports brain health, and PS has been sold as part of brain health supplements for many years. *Id.* RB Health's substantiation is not limited to these studies. It also includes more recent, peer-reviewed studies analyzing the effects coffee cherry extract supplementation on individuals with mild cognitive decline, *see* Jennifer L. Robinson et al., *Cognitive short- and long-term effects of coffee cherry extract in older adults with mild cognitive decline*, Aging, Neuropsych., & Cognition (Dec. 12, 2019), and soy-PS supplementation on subjects with memory complaints. *See* Akito Kato-Kataoka, *Soybean-Derived Phosphatidylserine Improves Memory Function of the Elderly Japanese Subjects with Memory Complaints*, 47 J. Clin. Biochem. Nutr. 246-55 (Nov. 2010).[3]

---

[3] The Court may take judicial notice of the existence of these studies, which is a matter of public record as they were published in publicly available medical journals. *See Chinn v. PNC*

Based on this scientific support, RB Health markets Neuriva as a supplement that will help consumers support their brain health. RB Health explains, truthfully, that Neuriva "Fuels 5 indicators of brain performance," including focus, memory, learning, accuracy and concentration. Compl. ¶ 41. It accurately describes Neuriva's ingredients and the effect they have on key indicators of brain health. Compl. ¶ 42. It also tells its customers that Neuriva's ingredients are "Clinically proven," meaning clinical studies show that the ingredients work to fuel brain health. Compl. ¶¶ 42, 95 n.22. These claims are based on the totality of the evidence regarding NeuroFactor and soy-PS; they are true and well-supported.

**B.     Plaintiffs' Complaint**

Plaintiffs David Williams and Caroll Anglade nevertheless sued RB Health and an affiliated company, Reckitt Benckiser LLC, for false and misleading advertising in the Southern District of Florida.

Plaintiffs allege that certain claims on Neuriva's packaging and website and in its advertising are false or misleading because RB Health lacks substantiation for them. The challenged statements include claims that are properly classified as structure/function claims under the federal Food, Drug, and Cosmetics Act ("FDCA"), as amended by the NLEA, such as:

- "Fuels 5 indicators of brain performance" Compl. ¶¶ 41, 43 (Neuriva Plus "Fuels 6").
- "Our natural ingredients are GMO-free and clinically proven to enhance brain performance." Compl. ¶¶ 7, 42, 44.
- "These plant-sourced phospholipids make up the structure of neurons within the brain. Clinically proven to aid neuron health and fuel memory and learning ability." Compl. ¶¶ 42, 44.
- "Key nutrients to support brain health & cognitive function." Compl. ¶ 44.
- "It's time to brain better," in conjunction with foregoing claims. Compl. ¶¶ 7, 46.

(hereinafter, "Brain Health Claims"). They also include claims to help consumers understand that Neuriva is backed by science, such as:

- "Clinically Proven Naturally Sourced Ingredients." Lustrin Decl. Ex. D.

_____

*Bank, N.A.*, 451 F. App'x. 859, 860 n. 1 (11th Cir. 2012); RB Health RJN, filed concurrently, at 1.

4

- "Nature made it. Science proved it. Brains love it." Compl. ¶ 42, 44.

(hereinafter, "Clinically Proven Claims") (collectively, "Challenged Claims").[4]

Plaintiffs' core allegation is that "Defendants have no scientific or clinical proof that Neuriva provides any benefit to the brain or that its key advertised ingredients can actually access the brain in sufficient amounts—or in *any* amount—to provide meaningful brain performance benefit." Compl. ¶ 11 (emphasis in original). This allegation, that RB Health lacks substantiation for the Challenged Claims, pervades Plaintiffs' Complaint. *See* Compl. ¶ 60 ("There is no scientific consensus or scientific or clinical evidence that Neuriva will result in enhanced or increased brain performance or will otherwise support brain performance in any way."); Compl. ¶ 65 (alleging, without citation, that "[n]o valid scientific or clinical evidence exists regarding how much, if any, of Neuriva's key ingredients reaches the brain"). So, Plaintiffs allege that the Challenged Claims are false or misleading solely because RB Health allegedly lacks substantiation for them.

To the extent Plaintiffs allege that any of the Challenged Claims are affirmatively false, they do so without citing any scientific studies or other evidence that contradict the Challenged Claims. For example, they allege, without citation, that BDNF—a key protein that supports brain health and which NeuroFactor positively impacts—is unable to cross the blood-brain barrier and therefore has no effect on brain function. Compl. ¶¶ 69–71. But that allegation is contradicted by judicially noticeable materials, which conclude "[i]ntact BDNF readily crosses the blood-brain barrier." Lustrin Decl. Ex. B, at 1. And Plaintiffs provide no evidence or explanation as to why an ingredient would have to cross the blood brain barrier to benefit brain health. Plaintiffs also assert that the Clinically Proven claims are false or misleading because there is no "scientific consensus" that Neuriva works as promised. *See* Compl. ¶¶ 59, 80. But this standard of proof, scientific consensus, does not apply to structure/function claims of the kind featured on Neuriva, 21 U.S.C. § 343(r)(3)(B)(i) (standard applies to health claims on foods and beverages), and Plaintiffs do not explain why a reasonable consumer would equate "Clinically Proven" with "scientific consensus." Finally, Plaintiffs allege that several articles on RB Health's website do not provide the

---

[4] Plaintiffs allege that similar claims appear in RB Health's advertising and marketing for Neuriva. *See* Compl. ¶¶ 46–58. For purposes of this motion, these advertising and marketing statements are incorporated into the definition of "Challenged Claims."

required "scientific consensus" to support the Challenged Claims. Compl. ¶¶ 84–99. But again, Plaintiffs fail to point to any scientific studies or other evidence that shows the Neuriva or its key ingredients are ineffective or harmful.

Based on these flawed allegations, Plaintiffs assert two causes of action against RB Health: (1) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq., and (2) unjust enrichment. Plaintiffs seek to represent a Florida-only class. Compl. ¶ 125. They demand restitution and disgorgement, injunctive relief, compensatory damages, and attorneys' fees and costs. Compl. at 45–46 (Request for Relief).

### III.   STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quotations and citations omitted). In other words, a complaint's "actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The process for evaluating the sufficiency of a complaint has two steps. The court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Next, the court "assume[s] [the] veracity" of "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.*

"[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). When the contents of such documents contradict the allegations contained in the complaint, "the document governs" and the complaint should be dismissed. *Merl v. Warner Bros. Entm't Inc.*, No. 1:12-CV-20870-PsAS, 2013 WL 266049, at *3 (S.D. Fla. Jan. 23, 2013).

### IV.   ARGUMENT

Plaintiffs' Complaint should be dismissed for several reasons. *First*, Plaintiffs have not alleged actual falsity sufficient to overcome the substantiation bar. *Second*, Plaintiffs' challenge to structure/function claims is preempted under the NLEA because Plaintiffs seek to impose on RB Health a standard that is inconsistent with federal law. *Third*, no reasonable consumer

6

believes that "Clinically Proven" means "scientific consensus," as Plaintiffs assert. *Fourth*, Plaintiffs' unjust enrichment claim falls with their statutory claim and should be dismissed as duplicative. *Finally*, Plaintiffs failed to make allegations as to whether they purchased Neuriva Plus and whether they plan to purchase any Neuriva products in the future, so they lack standing to pursue claims as to Neuriva Plus specifically and injunctive relief generally.

## A. Because Plaintiffs Do Not Allege Actual Falsity, Their Lack of Substantiation Contention Fails.

Plaintiffs allege that RB Health does not have substantiation for its advertising claims, but it is well-established that in order to plead a false advertising claim, the plaintiff bears the burden of demonstrating that the challenged advertisement is *actually false*, not merely that it is unsubstantiated by scientific studies. *See Kwan v. SanMedical Int'l*, 854 F.3d 1088, 1091 (9th Cir. 2017); *Franulovic v. Coca Cola Co.*, 390 F. App'x 125, 127-28 (3d Cir. 2010); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n.2 (7th Cir. 2001); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228 (3d Cir. 1990); *Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 114, 119 (2d Cir. 1984); *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1103 (S.D. Cal. 2015) (California law); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013) (New York and Missouri law); *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, No. CIV. 10-3684 FSH PS, 2012 WL 2916827, at *6 (D.N.J. July 17, 2012) (New Jersey law); *Stephens v. Gen. Nutrition Co.*, No. 08 C 6296, 2009 WL 1437843, at *4 (N.D.Ill. May 21, 2009) (Illinois law).[5]

To survive dismissal, a plaintiff must allege actual falsity by citing to studies that directly contradict the defendant's advertising claims. *See Toback v. GNC Holdings, Inc.*, No. 13-80526 CIV, 2013 WL 5206103, *3 (S.D. Fla. Sept. 13, 2013) (holding that the plaintiff had

---

[5] Florida courts have yet to adopt a bright-line rule barring claims based on lack of substantiation—with one Florida court noting the rule is "unclear"—but there is no reason to believe they will disagree with the law of California, New York, and other states, as well as the decisions of every circuit court to have addressed the issue. *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *3. Lack of substantiation claims are reserved for government enforcement agencies such as the Federal Trade Commission and state attorneys general and cannot be brought by private plaintiffs. Indeed, one court in this district has already applied this logic to a FDUTPA claim. *Pelkey v. McNeil Consumer Healthcare*, No. 10-61853-CIV, 2011 WL 677424, at * 4 (S.D. Fla. Feb. 16, 2011) (stating that a plaintiff "cannot base her [FDUTPA] claims on an allegation that Total Care is misbranded under the FDCA as this is a federal statute for which no private right of action exists").

alleged more than a lack of substantiation claim because she "affirmatively alleged" details of two studies that showed glucosamine and chondroitin, two active ingredients in defendant's products, to be ineffective in promoting joint health); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1344 (S.D. Fla. 2013) (holding plaintiffs had alleged actual falsity by citing to "competent scientific evidence," specifically "clinical cause-and-effect studies [which] have found no causative link between DHA algal oil supplementation and brain health," which contradicted defendant's advertising claim); *see also Spector v. Mondelez Int'l, Inc.*, No. 15 C 4298, 2017 WL 4283711, at *4 (N.D. Ill. Sept. 27, 2017) ("In virtually all of the cases in which courts have held that the plaintiff adequately pled actual falsity in a false advertising case, the complaints in question cited to testing or studies that directly contradicted the advertising claim at issue.") (collecting cases in Florida, New York, California, and New Jersey). Merely alleging a defendant's claims are false or misleading is insufficient. *Tubbs v. AdvoCare Int'l, LP*, No. CV174454PSGAJWX, 2017 WL 4022397, at *6 (C.D. Cal. Sept. 12, 2017) (vague and conclusory allegations of falsity insufficient); *Fraker v. Bayer Corp.*, No. CVF08-1564 AWI GSA, 2009 WL 5865687, at *9 (E.D. Cal. Oct. 6, 2009) (dismissing plaintiff's false advertising claim alleging only that defendant had "no reasonable basis, consisting of competent and reliable scientific evidence to substantiate" its health-benefit claim concerning a multivitamin).

Here, Plaintiffs do not sufficiently allege that the Challenged Claims are false, as is required to avoid the substantiation bar. *Fraker*, 2009 WL 5865687, at *8 ("Plaintiff has provided no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading.") (granting motion to dismiss). Plaintiffs do not cite any scientific papers *at all* that study Neuriva, NeuroFactor, or soy-PS, save for a handful of papers on RB Health's website that support the Challenged Claims. Compl. ¶ 84; *see* Lustrin Decl. Exs. A–C. So, Plaintiffs are unable to point to a single study that disproves the Challenged Claims or shows the Neuriva or its ingredients are no more effective than a placebo. *Cf. In re Horizon*, 955 F. Supp. 2d at 1344; *Toback*, 2013 WL 5206103, at *3. Any publications Plaintiffs do cite are about brain health supplements generally; they do not purport to analyze Neuriva or undermine claims about Neuriva's key ingredients. *See* Compl. ¶ 92 & n.20 (citing Global Council on Brain Health paper). Such general papers are insufficient to allege falsity. *Aloudi*, 729 F. App'x at 516 (affirming dismissal of complaint

when none of plaintiff's "allegations involve[d] scientific testing of the actual JavaSLIM product or a product with the same active ingredients as JavaSLIM, in a dose similar to that in JavaSLIM"); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *6–7 (S.D. Cal. Nov. 1, 2012) (studies that did not involve product at issue do not lend "facial plausibility" to claims that representations are false or misleading).  Absent affirmative scientific support showing falsity, Plaintiffs' Complaint "offers no more than the sorts of vague allegations and conclusory statements that have been deemed insufficient by courts in similar cases." *Tubbs*, 2017 WL 4022397, at *6.

Utterly lacking for their own affirmative authority, Plaintiffs, instead, rely on RB Health's articles and statements, but those articles and statements do not disprove the Challenged Claims as Plaintiffs suggest. Compl. ¶¶ 84–99. For example, Plaintiffs allege that the Reyes-Izquierdo articles from 2013 and 2012 do not provide evidence that NeuroFactor increases BDNF plasma levels in the brain. Compl. ¶ 87–88. But that's not the same as *contradicting* RB Health's claim that NeuroFactor can support brain health. In any event, both studies conclude that "BDNF readily crosses the blood-brain barrier via a high-capacity transporter system," meaning the study's evidence that WCFC supplementation increased BDNF levels indicate it "could be used for modulation of BDNF-dependent health conditions." Lustrin Decl. Exs. A & B. That both articles call for additional clinical trials does not undermine their conclusions. *Route v. Mead Johnson Nutrition Co.,* 2013 WL 658251 (C.D. Cal. Feb. 21, 2013) (common for scientists and scientific papers to moderate findings by calling for more research). Plaintiffs also cite the 2014 review on PS supplementation, but that study affirmatively supports the conclusion that soy-PS fuels brain health, explaining that human subjects treated with soy-based PS "showed a more relaxed state before and after mental stress as measured by electro-encephalography." Lustrin Decl. Ex. C, at 14. It also confirms that PS has long been featured in brain health supplements, and there is a robust body of scientific work that backs PS' efficacy. *Id.* Finally, statements from RB Health's chief scientific officer calling for more research on Neuriva and its key ingredients in no way undermines claims that Neuriva supports brain health. Compl. ¶¶ 93–99; *Route*, 2013 WL 658251, at *5.

If anything, Plaintiffs allegations suggest that they "concede that some reasonable and duly qualified scientific experts agree with a scientific proposition, [thus] they cannot also

argue that the proposition is 'literally false.'" *In re GNC Corp.*, 789 F.3d 505, 515 (4th Cir. 2015); *Greifenstein v. The Estee Lauder Corp., Inc.*, No. 12-09235, 2013 WL 3874073, at *4-5 (N.D. Ill. July 26, 2014) (dismissing a false advertising claim where the Complaint acknowledged the existence of studies supporting the challenged marketing claim); *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2016 WL 8650462, at *4 (S.D.N.Y. Feb. 5, 2016) (dismissing claims under FDUTPA when a study that the plaintiffs attacked in their complaint demonstrated that the defendant's advertising representations were true).

Plaintiffs also ignore easily searchable published clinical studies that show both NeuroFactor and soy-PS support key indicators of brain health, in an apparent effort to minimize RB Health's substantiation. *See, e.g.*, Jennifer L. Robinson et al., *Cognitive short-and long-term effects of coffee cherry extract in older adults with mild cognitive decline*, Aging, Neuropsych., & Cognition (Dec. 12, 2019); Akito Kato-Kataoka, *Soybean-Derived Phosphatidylserine Improves Memory Function of the Elderly Japanese Subjects with Memory Complaints*, 47 J. Clin. Biochem. Nutr. 246-55 (Nov. 2010). Plaintiffs' apparent failure to search the public record further undermines their bare allegations that the Challenged Claims lack clinical support or are provably false. *Aloudi v. Intramedic Research Grp., LLC*, 729 F. App'x 514, 516 (9th Cir. 2017) (noting, as additional basis for dismissal, plaintiff did not "allege that he searched the available scientific literature in a comprehensive manner and found no study that could support Intramedic's claims").

Absent facts to support their cursory allegations that the Challenged Claims are demonstrably false, Plaintiffs' Complaint falls back on repeated allegations that the claims are false because they are unsubstantiated. Plaintiffs allege that "Defendants have no scientific or clinical proof that Neuriva provides any benefit to the brain or that its key advertised ingredients can actually access the brain in sufficient amounts—or in any amount—to provide meaningful brain performance benefit." Compl. ¶ 11. Plaintiffs' claim that "[n]o valid scientific or clinical evidence exists" pervades the Complaint and underpins each of the claims. *See, e.g.*, Compl. ¶ 65 ("No valid scientific or clinical evidence exists regarding how much, if any, of Neuriva's key ingredients reaches the brain."), ¶ 65 (referencing "lack of evidence"), Compl. ¶¶ 67–83 (explaining that there is "no scientific or clinical proof" for RB Health's claims). These allegations are not actionable, and the Complaint should be dismissed.

10

**B.      Plaintiffs' Challenges to Structure/Function Claims Are Preempted.**

Plaintiffs' challenge to structure/function claims are preempted under the NLEA. *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd*, 764 F.2d 1400 (11th Cir. 1985) (en banc) ("[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.").

**1.      Regulatory Regime.**

In 1990, Congress enacted the NLEA to regulate the claims made on food and supplement labels. *See* 21 U.S.C. § 343-1(a). The NLEA amended the FDCA by adding a provision that expressly preempts state laws that establish "any requirement respecting *any claim of the type described in section 343(r)(1)* of this title made in the label or labeling of food that is *not identical to* the requirement of section 343(r) of this title . . . ." 21 U.S.C. § 343-1(a)(5) (emphasis added). A state-law requirement is "not identical to" federal requirements if "the State requirement directly or indirectly imposes obligations . . . that are not imposed by or contained in the applicable federal regulation or differ from those specifically imposed by or contained in the applicable federal regulation." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1195 (11th Cir. 2018) (citations omitted).

One claim "of the type described in section 343(r)(1)" and "made in the label or labeling of food" is the structure/function claim. *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847 (9th Cir. 2019). A structure/function claim "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans," or "characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function," but does not "claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." 21 U.S.C. § 343(r)(6). A disease claim, by contrast, "claims to diagnose, mitigate, treat, cure, or prevent disease." 21 C.F.R. § 101.93(g)(2)(ii). Structure/function claims are permissible on supplements if they meet three requirements: (1) the manufacturer has substantiation that the statement is truthful and not misleading; (2) the statement contains a prominent disclaimer that the Food and Drug Administration ("FDA") has not evaluated the statement and that the product "is not intended to diagnose, treat, cure, or prevent any disease"; and (3) the statement itself does not "claim to diagnose, mitigate, treat, cure, or prevent" disease. 21 U.S.C. § 343(r)(6).

11

Because structure/function claims fall under section 343(r)(1)'s umbrella, a state law requirement that imposes something different than federal law would be expressly preempted. 21 U.S.C. § 343-1(a)(5); *Dachauer*, 913 F.3d at 847 (discussing regulatory framework for structure/function claims and holding that "§ 343-1(a)(5) preempts state-law requirements for claims about dietary supplements that differ from the FDCA's requirements").

**2.     The Brain Health Claims Are Structure/Function Claims.**

The Brain Health Claims are structure/function claims, as opposed to disease claims, because they use words like "fuel," "enhance," "aid," and "support," and do not claim to diagnose, treat, cure, or prevent any disease—perfectly in line with FDA guidance on acceptable structure/function claims. *See* Compl. ¶¶ 41–44.

As FDA guidance explains, structure/function claims may use general terms like "strengthen," "improve," and protect" as long as the claims "do not suggest disease prevention or treatment." Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000-01, 1012, 1028 (Jan. 6, 2000) (noting, as an example of a permissible structure/function claim, "helps maintain cardiovascular function and a healthy circulatory system"). The distinction between structure/function claims and disease claims is often "one of specificity." 65 Fed. Reg. at 1029. For example, the claim "supports immune system" is an appropriate structure/function claim, whereas the FDA is likely to consider the claim "supports the body's antiviral capabilities" a disease claim. 65 Fed. Reg. at 1028–29 ("FDA does not agree that claims such as 'supports the immune system' are specific enough to imply prevention of disease.").

Here, Plaintiffs challenge the following claims on the Neuriva products: "Fuels 5 indicators of brain performance," "enhance brain performance," "aid neuron health and fuel memory and learning ability," and "support brain health & cognitive function." Compl. ¶¶ 41–44 (collectively, the "Brain Health Claims). Yet as Plaintiffs' acknowledge in their pleading, the Brain Health Claims use appropriate general words like "fuel," "enhance," "support," and "aid." 65 Fed. Reg. at 1029, 1030 (approving of "enhance" and "support" for structure/function claims); *see also* Fuel, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/fuel#synonyms (last visited October 26, 2020) (noting "fuel" means "to support") Aid, Merriam-Webster Dictionary,

12

https://www.merriam-webster.com/dictionary/aid#synonyms (listing "support" as synonym for "aid"). Further, none of these claims reference a specific *disease* (i.e., Alzheimer's disease) or disease vector (i.e., antiviral capabilities), nor do they claim to be a substitute or therapy for a disease. *See* 21 C.F.R. § 101.93(g) (describing markers of disease claims). And none of the challenged Neuriva marketing and advertising shows any elderly individuals or individuals struggling with memory decline or other cognitive diseases. Rather, the Brain Health Claims simply explain how Neuriva can support or maintain a typical *function* of the body: cognition. 65 Fed. Reg. at 1012, 1030 (noting "supports mood" is an appropriate structure/function claim, as are "promotes relaxation," "helps maintain intestinal flora," and "helps enhance muscle tone," whereas claims that reference a particular disease, such as "reduces pain and stiffness associated with arthritis" are not).

Thus, the Brain Health Claims are permissible structure/function claims subject to NLEA preemption. 21 U.S.C. § 343(r)(6); 21 C.F.R. § 101.93(f); *Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 1056480, at *7 (N.D. Cal. Mar. 10, 2015) (dismissing FDUTPA claim, among other state law claims, as preempted where "supports heart health" and "supports immunity" were permissible structure/function claims).

### 3.    Plaintiffs' State Law Claims Demand More Than Federal Law Requires.

Plaintiffs state law claims demand a level of substantiation for the Brain Health Claims that is "not identical to" federal requirements—so their claims are expressly preempted. *Dachauer*, 913 F.3d at 846–49 (rejecting plaintiff's state law claim that sought to "impose" a level of "proof" for structure/function claims that was "not identical to the requirement of section 343(r)"); *Hi-Tech Pharm., Inc.,* 910 F.3d at 1196 (affirming dismissal of state law claims against dietary supplement manufacturer as expressly preempted because they demanded labeling requirements "not identical" to federal requirements).

Federal law requires structure/function claims have "substantiation that the claim is truthful and not misleading." 21 U.S.C. § 343(r)(6). FDA guidance advances a common-sense interpretation of "substantiation," as meaning "competent and reliable scientific evidence." Food & Drug Admin., *Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act* Part I.A-B. (Dec. 2008), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-substantiation-dietary-supplement-claims-made-under-section-403r-6-federal-food

13

(last accessed Oct. 27, 2020). The required level of substantiation depends on the product and claim at issue. The FDA applies a higher standard to FDA-approved health claims on food or beverages, see 21 U.S.C. § 343(r)(3)(B)(i) (requiring "significant scientific agreement"), and a higher "clinical consensus"-type standard to pre-approval of new drug therapies. That "significant scientific agreement" standard does not apply to structure/function claims on supplements, however. Likewise, "manufacturers of supplements can substantiate structure/function claims with evidence of an effect on a small aspect of the related structure/function, rather than with evidence of an effect on the main disease that consumers might associate with a given bodily structure or function." *Dachauer*, 913 F.3d at 847.

Here, Plaintiffs acknowledge that RB Health has substantiation for its Brain Health Claims in the form of at least four scientific studies. Compl. ¶¶ 84–99. Yet Plaintiffs demand substantiation beyond this competent and reliable scientific evidence. Plaintiffs assert throughout the Complaint that RB Health's Brain Health Claims are false unless there is "scientific consensus" that Neuriva works as advertised. *See* Compl. ¶¶ 59–83. This demand for "scientific consensus" seeks to impose on RB Health a standard that is "not identical to" the type of substantiation the FDA requires for structure/function claims. *See* 21 U.S.C. § 343-1(a)(5). This type of "scientific consensus" standard applies only to preapproved health claims on food and beverage products and is akin to the FDA's standard for approving a new drug therapy. *See* Food & Drug Admin., *Development & Approval Process/Drugs*, (content current as of Oct. 28, 2019), https://www.fda.gov/drugs/development-approval-process-drugs (requiring two clinical trials); 21 U.S.C. § 343(r)(3)(B)(i) (requiring "significant scientific agreement" before FDA will approve health claim on food and beverage labeling). RB Health does not make health claims on the Neuriva products, nor is it seeking FDA approval of a new drug therapy. Because Plaintiffs seek to impose on Neuriva's structure/function claims the standard the FDA applies only to health claims, their state law claims relating to RB Health's Brain Health Claims are preempted. *Id.*; *Kroessler v. CVS Health Corp.*, No. 19-55671, 2020 WL 5987498, at *7 (9th Cir. Oct. 9, 2020) (noting preemption applies "if the plaintiff's legal claims and factual allegations would hold a defendant to a different 'substantiation' standard than the FDCA").[6]

---

[6] Plaintiffs also do not adequately allege the Brain Health Claims are false or misleading, as is required to avoid § 343-1(a)(5)'s preemption bar. *See supra* Part IV.A; *Dachauer*, 913 F.3d at

**C.    Plaintiffs Fail to Plausibly Allege that the "Clinically Proven" Claims Are Misleading to a Reasonable Consumer.**

Independent of the lack of substantiation or preemption bars, Plaintiffs' Complaint should be dismissed under the reasonable consumer standard. Plaintiffs allege that the addition of the phrase "clinically proven" to structure/function claims about NeuroFactor and PS creates a special "scientific consensus" standard of substantiation. *See* Compl. ¶ 59 ("In order for a claim to be considered scientifically and clinically proven, as Defendants claim for Neuriva, the claim must be widely accepted in its applicable field and have overwhelming evidence supporting it."). Not so. No reasonable consumer believes that "clinically proven" means "scientific consensus," as Plaintiffs assert.

A claim under the FDUTPA "requires a showing of 'probable, not possible, deception that is likely to cause injury to a reasonable relying consumer.'" *Casey v. Florida Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11, 2015), *report and recommendation adopted*, 2015 WL 10818746 (quoting *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007)). The reasonable consumer inquiry is appropriate on a motion to dismiss, and the complaint should be dismissed "if a complaint's factual allegations do not render plaintiffs' entitlement to relief plausible." *Salters v. Beam Suntory, Inc.*, No. 4:14CV659-RH/CAS, 2015 WL 2124939, at *2 (N.D. Fla. May 1, 2015) (citing *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013).

Here, Plaintiffs have not plausibly alleged that a reasonable consumer equates "Clinically Proven" with "scientific *consensus*." This is especially so where RB Health does not claim that "Scientists Agree" Neuriva supports brain health, nor does RB Health claim that there is scientific consensus regarding the Challenged Claims. Compl. ¶ 41. Rather, RB Health only asserts with the Clinically Proven claims that high-quality scientific studies show they key ingredients in Neuriva work as promised, which is true. *See* Compl. ¶ 84; *supra* § A– B. Plaintiffs' claims are based on an unreasonable interpretation or misunderstanding of a key labeling claim, so they are not actionable under the reasonable consumer standard. *Salters*,

---

847 ("[A] private plaintiff bears the burden of producing evidence to prove that the challenged statement is false or misleading."); *Kroessler*, 2020 WL 5987498, at *7 (plaintiff "cited multiple scientific studies in his complaint" to allege that defendant's structure/function claims were false or misleading).

2015 WL 2124939, at *3 (dismissing with prejudice where "no reasonable person" would adopt plaintiff's unreasonable interpretation of defendant's labels claims).

As further evidence of how unreasonable Plaintiffs' interpretation is, even the FTC and FDA do not require scientific consensus for "clinically proven" claims. *See* Nestlé HealthCare Nutrition, Inc., Analysis of Proposed Consent Order to Aid Public Comment, 75 Fed. Reg. 42,752, 42,753 (July 22, 2010) (requiring two clinical studies to support "clinically proven" claim); Dietary Supplements: An Advertising Guide for Industry, Fed. Trade Comm'n, https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry#b (last visited Oct. 27, 2020) (explaining that "Scientists Agree" claim may require scientific consensus). Rather, scientific consensus is the standard applicable to unqualified health claims, which RB Health does not make on the Neuriva product, or new drug approval, which RB Health does not seek. *See* 21 U.S.C. § 343(r)(3)(B)(i). It is implausible, then, that a reasonable consumer would believe an equally high standard of substantiation applies to structure/function claims on supplements as applies to new drug therapies or health claims on foods and beverages. *See In re General Mills Glyphosate Litig.*, No. CV 16-2869 (MJD/BRT), 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) ("It is implausible that a reasonable consumer would believe that a product labelled as having one ingredient—oats—that is '100% Natural' could not contain a trace amount of glyphosate that is far below the amount permitted for organic products.") (granting motion to dismiss); *see also Kuenzig*, 505 F. App'x at 939 (affirming dismissal, holding "[b]ecause the both parties' labels complied with federal nutrition labeling regulations and passed the FSIS preapproval process, the labels were presumptively lawful and not false or misleading.").

Simply put, there is nothing misleading about the Clinically Proven claims: RB Health has clinical proof that NeuroFactor and soy-PS work as promised, as Plaintiffs readily admit in the Complaint. *See* Compl. ¶ 84. And Plaintiffs allegations rest on a conclusory, implausible interpretation of "clinically proven." Thus, Plaintiffs' challenge to the Clinically Proven claims fails. *Mazzeo v. Nature's Bounty*, 2014 WL 5846735, at **3–4 (S.D. Fla. Nov. 12, 2014) (dismissing under reasonable consumer standard where plaintiff "fail[ed] to allege how 'promotes heart health' is a false and misleading claim, other than the repeated conclusory assertions that it does not have any heart-related benefits.").

16

**D.     Plaintiffs' Unjust Enrichment Claim Is Duplicative of their FDUTPA Claim.**

Plaintiffs' unjust enrichment claim rises and falls with their FDUTPA claim, and it should be dismissed for the same reasons as above. *See, e.g.*, *Jonathan Chuang v. Dr. Pepper Snapple Grp.*, CV1701875MWFMRWX, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017) (unjust enrichment claim dismissed on same grounds as consumer protection claims); *Salters*, 2015 WL 2124939, at *2–3 (dismissing unjust enrichment claims where a reasonable consumer would not be deceived by advertising). The unjust enrichment claim also fails for the independent reason that it is duplicative, a "vague catch-all that does no more than incorporate by reference the alleged wrongdoing already addressed by [Plaintiffs'] other legal causes of action." *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013).

Plaintiffs unjust enrichment claim seeks recovery for the exact same wrongful conduct as in their FDUTPA claim. Compl. ¶¶ 157–58 ("By their wrongful acts and omissions described within this Complaint, including the deceptive marketing, packaging, labeling, distribution, and sale of the Neuriva Products as scientifically and clinically proven to improve brain performance, Defendants were unjustly enriched at the expense of Plaintiffs and Class Members."). Indeed, just as in *Licul*, here Plaintiffs "make no effort to distinguish" between the facts specific their unjust enrichment claim and the facts specific to their FDUTPA claim; rather, Plaintiffs affirmatively allege the facts are one and the same. *Licul*, 2013 WL 6328734, at *7. Therefore, "Plaintiffs' appropriate legal remedy is under FDUTPA." *Id.*; *see also Guerrero v. Target Corp.*, 889 F.Supp.2d 1348, 1356–57 (S.D. Fla. 2012) (dismissing as duplicative unjust enrichment claim predicated on "same wrongful conduct as [plaintiff's] FDUTPA claim"); *Prohias v. Pfizer, Inc.*, 490 F.Supp.2d 1228, 1236 (S.D. Fla. 2007) (dismissing unjust enrichment claim premised upon misrepresentations about a product's qualities) (citing *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F.Supp.2d 1170, 1178 (M.D. Fla. 2005) ("It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy.")).

This is true even if Plaintiffs argue that they are merely pleading in the alternative. "[I]f [they] cannot prevail on [their] FDUTPA claim, [they] cannot prevail on [their] unjust enrichment claim," so the unjust enrichment claim must be dismissed. *See Weaver v. Mateer & Harbert*, P.A., No. 5:09–cv–514–Oc–34TBS, 2012 WL 3065362, at *11 (M.D. Fla. July 27,

2012) ("However, although Plaintiff may be entitled to plead in the alternative, that is not what Plaintiff has done in this case. Plaintiffs' unjust enrichment claim relies on the factual predicate common to all its claims.").

**E.    Plaintiffs Lack Standing as to Neuriva Plus.**

Plaintiffs lack standing to make any claims related to the Neuriva Plus product. The Article III standing analysis requires a plaintiff to demonstrate that he has suffered an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In a false advertising case, that requires a plaintiff to allege that she actually purchased the products forming the bases of her claim. *Guerrero*, 889 F.Supp.2d at 1353–54.

Here, Plaintiff David Williams alleges that he "purchased seven to eight bottles of Neuriva Original" in January 2020, and Plaintiff Caroll Anglade alleges that she "purchased Neuriva on several occasions in 2019"—neither Plaintiff alleges that he or she purchased Neuriva *Plus* specifically. Compl. ¶¶ 115, 120. Thus, neither Plaintiff has standing to bring claims as to the Neuriva Plus product. *Toback*, 2013 WL 5206103, at *5 ("Because Plaintiff alleges that he purchased the TriFlex Vitapak, but not other TriFlex products, he has failed to plead that he suffered any injury with regard to products other than the TriFlex Vitapak."); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) ("Plaintiff lacks Article III standing to bring claims on behalf of the Neutrogena products he did not purchase because he cannot conceivably allege any injuries from products that he never purchased or used. Therefore, all of Plaintiff's claims related to unpurchased products are dismissed.").

**F.    Plaintiffs Lacks Standing to Seek Injunctive Relief.**

Plaintiffs fail to plead all the requirements to allege standing for injunctive relief. "Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm." *Dapeer*, 95 F. Supp. 3d at 1373. A plaintiff satisfies this standard in a false advertising case by alleging she desires or intends to purchase the products in the future but is unable to rely on the defendant's future advertising. *Teggerdine v. Speedway LLC*, No. 8:16-CV-3280-T-27TGW, 2018 WL 583114, at *2–3 (M.D. Fla. Jan. 26, 2018).

Here, however, Plaintiffs entirely fail to allege that they intend to purchase Neuriva in the future. *See* Compl. ¶¶ 115–19. Nor do they allege that they desire to purchase Neuriva in the future but are unable to rely on RB Health's advertising absent an order from the Court. *Id.* Plaintiffs' complete silence on this topic means that they lack standing to seek injunctive

relief, and their claim for injunctive relief should be dismissed. *Teggerdine*, 2018 WL 583114, at *3 (no standing to seek injunctive relief when plaintiff failed to allege future purchase intent); *Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *10 (S.D. Fla. Mar. 20, 2015) (same).

## CONCLUSION

For the foregoing reasons, RB Health respectfully requests that the Court dismiss Plaintiff's Complaint in full.

Dated: November 2, 2020                    Respectfully Submitted,

*/s/ Lori Lustrin*
Melissa C. Pallett-Vasquez, Esq.
Florida Bar No.: 715816
Lori P. Lustrin, Esq.
Fla. Bar. No.: 59228
Ilana A. Drescher
Fla. Bar No. 1009124
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida  33131
Telephone:  (305) 374-7580
Facsimile:  (305) 351-2195
Email: mpallett@bilzin.com
Email: llustrin@bilzin.com
Email: idrescher@bilzin.com

David T. Biderman, *pro hac vice application pending*
Perkins Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310-788-9900
Facsimile: 310-788-3399
Email: DBiderman@perkinscoie.com

Charles C. Sipos, *pro hac vice application pending*
Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, Washington 98101-3099
Telephone: 206-359-3983

19

Facsimile: 206-359-4983
Email: CSipos@perkinscoie.com

*Counsel for Defendants*
*Reckitt Benckiser LLC and RB Health (US) LLC*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on November 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Lori Lustrin*
Lori Lustrin