UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-23564-MGC-JG

DAVID WILLIAMS, CAROLL ANGLADE,
THOMAS MATTHEWS, MARTIZA
ANGELES, and HOWARD CLARK,
*individually and on behalf of all others
similarly situated*,

                            Plaintiffs,

vs.

RECKITT BENCKISER LLC and
RB HEALTH (US) LLC,

                            Defendants.

_____/

**PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>CERTIFICATION OF THE SETTLEMENT CLASS</u>**

Plaintiffs David Williams, Caroll Anglade, Thomas Matthews, Maritza Angeles, and Howard Clark ("Plaintiffs"), on behalf of themselves and on behalf of all those similarly situated, hereby move unopposed for entry of an order granting preliminary approval of the nationwide class action settlement as set forth in the parties' Settlement Agreement and Release, certifying a nationwide class for settlement purposes, and providing for issuance of notice to Class Members.

## INTRODUCTION

Plaintiffs and Defendants Reckitt Benckiser LLC and RB Health (US) LLC ("Defendants") (collectively the "Parties") have negotiated a global nationwide settlement that provides significant and substantial monetary and injunctive relief to purchasers of Neuriva.[1] Plaintiffs allege that Defendants have falsely advertised and marketed Neuriva throughout the United States as clinically and scientifically proven to improve brain performance. Defendants deny all such allegations, but have agreed to globally resolve this matter, instead of continuing to litigate all pending and future putative class action matters across the country. Over a period of months and under the careful supervision of the respected mediator Jill Sperber, the Parties conducted extensive, arm's length negotiations, including two mediation sessions, which resulted in the executed Settlement Agreement and Release (attached as **Exhibit 1**) ("Settlement Agreement") and agreed upon the form of proposed Notice to Class Members.[2] In support of this Motion, Plaintiffs also attach as **Exhibit 2** the Declaration of Daniel K. Bryson, which details the undersigned counsel's experience in complex class action litigation, the history of this case, and the settlement process.

Under the Settlement Agreement, Defendants have agreed to offer substantial monetary benefits to Settlement Class Members, as well as to important, stipulated injunctive relief (as set forth below). Notice of this Settlement Agreement will be disseminated to Class Members via, among other methods, (i) sophisticated internet notice, and (ii) establishment of a settlement website.

---

[1] "Neuriva" means Neuriva Original (all sizes), Neuriva Plus (all sizes), and Neuriva De-Stress (all sizes) sold in the United States.
[2] Unless otherwise noted, all capitalized terms used herein have the same definition as that provided in the Settlement Agreement.

Undersigned counsel were well positioned to evaluate and negotiate this settlement, as they have years of experience litigating complex class action cases, including against supplement manufacturers. Plaintiffs' counsel investigated their claims and allegations through an extensive pre-suit investigation, including through research into Defendants' corporations, the development of Neuriva and its ingredients, and third party corporations who created and sold Neuriva's key ingredients to Defendants. The undersigned counsel also undertook an extensive review and analysis of scientific and clinical studies relating to Neuriva's ingredients and its marketing claims, which was assisted by several eminently qualified experts. Despite that work, Plaintiffs and the Class faced significant hurdles in litigating their claims to a successful adversarial resolution. Given the immediate and substantial benefits the Settlement Agreement will provide to the Class, there can be little question that the terms of the proposed Settlement Agreement are at least "fair, reasonable, and adequate" and should receive the Court's preliminary approval, so that the Class can be informed and be heard as to their opinions of the Settlement Agreement at the Final Fairness Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Litigation and Mediation

Plaintiffs Williams and Anglade initiated this Action by filing a Class Action Complaint on August 26, 2020. Plaintiffs Williams and Anglade's action was preceded by Plaintiff Matthews' Class Action Complaint filed in the United States District Court for the Eastern District of California on June 19, 2020. Plaintiff Angeles' filed her Class Action Complaint on September 2, 2020, in the Southern District of New York. Plaintiff Howard sent a pre-suit demand letter challenging Neuriva's marketing representations to Defendants in May 2020, but had not filed an action at that time.

Defendants moved to dismiss the *Matthews* and *Williams* actions, and Defendants moved to transfer the *Williams* action to the Eastern District of California, where *Matthews* was pending, under the so-called "first-filed" rule. The *Williams* plaintiffs opposed Defendants' transfer motion, and both the *Matthews* and *Williams* plaintiffs amended their complaints. Defendants subsequently moved to dismiss the *Matthews* and *Williams* amended

complaints. Defendants' deadline to respond to the *Angeles* case had not run by the time the parties pursued mediation.

Through the fall and winter of 2020, counsel for the Parties, including counsel on behalf of Plaintiffs from all Neuriva Actions, participated in multiple all-day mediation sessions with Jill Sperber, Esq. from Judicate West. These mediations took place on October 2 and November 30, 2020. Before, during, and after the mediation the Parties engaged in a series of discussions, with and without Ms. Sperber, regarding a settlement of the Neuriva Actions, which were at all times arm's-length negotiations. The result was the Settlement before this Court for preliminary approval. Ms. Sperber has reviewed the material terms of this Settlement and agrees that it is a fair, reasonable, and adequate solution for the Settlement Class.

### 2. The Settlement Agreement and its Terms

#### A. The Proposed Class

The Settlement Agreement provides primarily two kinds of relief to all individuals who purchased one or more Neuriva Products for personal consumption and not resale, within the United States, from January 1, 2019 through the date of Preliminary Approval. First, the Settlement Agreement provides Monetary Relief of $8,000,000.00. Second, the Settlement Agreement provides Injunctive Relief in the form of substantial changes to Neuriva's label and marketing. It is estimated that there are approximately thousands of potential class members.

#### B. Monetary and Injunctive Relief

The Defendants shall offer up to $8,000,000 in monetary relief to Settlement Class Members, exclusive of administrative costs, attorneys' fees and expenses, and awarded service awards, for purchases of Neuriva Products to be distributed depending on whether a Settlement Class Member has proof of purchase. The Defendants agree to pay to all Settlement Class Members with Proof of Purchase up to thirty-two dollars and fifty cents ($32.50) per Valid Claim, and Settlement Class Members may make up to two (2) Claims for a maximum of sixty-five dollars ($65.00). Settlement Class Member's may not receive more than the amount reflected on their Proof of Purchase.

For those without proof of purchase, the Defendants agree to pay Settlement Class Members five dollars ($5.00) per Claim, and Settlement Class Members may make up to four (4) Claims for a maximum of twenty dollars ($20.00). Every Settlement Class Member (or Household with a Settlement Class Member) has the right to submit a claim for monetary relief. Defendants agreed to pay up to $8,000,000 for Claims, and should the amount in Valid Claims exceed $8,000,000, the monetary benefit will be reduced on a pro rata basis.

In addition to monetary relief, the Parties also agreed to substantial injunctive relief. Defendants agreed to change all references from "Clinically Proven" and "Science Proved" on a Neuriva Product label and ancillary marketing to "Clinically Tested" and "Science Tested" or other similar language, such as referencing what clinical or scientific studies have "shown". Changes to the label shall be substantially similar to those depicted in Exhibit E to the Settlement Agreement. The labeling and marketing changes will take place six months after a Final Approval Order and Judgment is entered and remain in effect for two years. Defendants may present competent and reliable scientific evidence to Plaintiffs' Counsel substantiating a representation Defendants desire to add to the Neuriva Products' labeling or marketing, and Plaintiffs' Counsel will either accept or challenge such proposed representation within 180 days. The Parties agree that the Court shall retain jurisdiction to enforce such injunctive relief, if necessary.

### C. Release of Claims against Defendants

In exchange for the settlement relief, members of the Settlement Class will release the Settling Defendants from all claims as outlined in the Settlement Agreement.

### D. Class Notice

The Notice Plan provides Settlement Class Members the best notice that is practicable under the circumstances, satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(b), and due process. Class Members will receive notice of the Settlement Agreement in the manner recommended by the proposed Settlement Administrator, attached as **Exhibit 3**, assuming the form is approved by the Court. The manner of notice will include, but not be limited to, (i) internet notice, and (ii) establishment of a settlement website (the "Settlement Website"). The internet notice will include direct links to the Settlement Website[3] to encourage an easy-to-

---

[3] The Settlement Website shall be www.RBsettlement.com.

follow claims process. The Settlement Website will inform the Class Members of the Settlement Agreement and allow them to file a claim electronically. Moreover, a long form notice, in substantially the same form attached to the Settlement Agreement as Exhibit B, shall be published on the Settlement Website.

Among other things, the Class Notice provides a description of the nature of the Action and the proposed Settlement, including information on the definition of the Settlement Class, how the proposed Settlement would provide relief to Settlement Class Members, what claims are released under the proposed Settlement, and other relevant information. The Class Notice informs Settlement Class Members of the time, date, and place set by the Court for the Fairness hearing where the Court will determine whether the Settlement Agreement should receive final approval as fair and adequate, whether the certification of the Settlement Class should be re-affirmed, whether incentive awards should be issued and in what amount, whether the attorneys' fees and expenses should be awarded to Class Counsel and in what amounts, and whether the Final Order and Judgment should be entered.

Class Members may opt out of the Settlement Agreement by sending a request for exclusion to the Claims Administrator, who will communicate requests for exclusion to Class Counsel, who will in turn report to the Court. Defendants shall bear all of the costs and expenses in administrating the Settlement Agreement, including the hiring of a Claims Administrator, providing class notice, publishing the notice, and providing the claim forms.

The Parties have designated Angeion Group to serve as the Settlement Administrator, subject to Court approval. The Settlement Administrator will be responsible for, among other things, (a) initiating and monitoring the Notice Plan; (b) establishing a post office box and a dedicated email address for receiving claims, requests for exclusions, objections, and other correspondence; (c) establishing a Settlement Website that will not only contain important documents and information on how to file a claim, but also the means by which Settlement Class Members can electronically file claims; (d) forwarding inquiries to Class Counsel for a response, if warranted; (e) reviewing Claims in accordance with the Settlement Agreement; (f) otherwise implementing and/or assisting with the Claims review protocols agreed to by the Parties and set forth in the Settlement Agreement; and (g) processing payments on timely Valid Claims in accordance with the Settlement Agreement. If approved, the Settlement

Administrator will commence the Notice Plan within twenty-one (21) days after entry of an order preliminarily approving the settlement.

### E. Claims Process

To obtain relief from Defendant, Class Members will be required to submit a simple claim form (in the form, if approved, attached to the Settlement Agreement as Exhibit A) electronically via the Settlement Website or by mail. The claims will be reviewed by the Claims Administrator, who will confirm whether those who timely file a claim are members of the Class, submitted valid claim forms, and, if applicable, presented Proof of Purchase. Defendants shall fund the total amount to be paid to eligible Settlement Class Members within thirty (30) days after the Class Action Settlement Administrator determines the total amount to be paid to eligible claimants. The Class Action Settlement Administrator shall then pay all eligible claimants within thirty (30) days after Defendants deposits the funds to be paid.

### F. Class Counsel Fees and Expenses and Incentive Awards

At the time of final approval, Class Counsel will make an application for an award of attorneys' fees and expenses in the amount not to exceed two million nine hundred thousand dollars ($2,900,000.00). Additionally, Plaintiffs will make an application at that time for an incentive award not to exceed $2,000 each to Class Representatives David Williams, Caroll Anglade, Thomas Matthews, Maritza Angeles, and Howard Clark for taking on the risks of litigation, and for Settlement of their individual claims as a Settlement Class Member in this Action.[4]

### LEGAL ARGUMENT

### 1. PRELIMINARY APPROVAL IS WARRANTED

To implement a Settlement Agreement in a class action, the Federal Rules of Civil Procedure require that there first be notice to the Settlement Class, a fairness hearing, and this Court's final approval. Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of

---

[4] Plaintiffs are aware of the Eleventh Circuit's decision in *Johnson v. NPAS Sols.*, LLC, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), and will be prepared to address the decision in their application for incentive awards.

justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992).

"Approval of a class-action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citation omitted). In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable. *See id.*

The standard for preliminary approval of a class action settlement is not high — a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting Manual for Complex Litigation ("MCL") § 1.46 at 62, 64–65 (5th ed. 1982)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).

Here, the proposed Settlement Agreement is the product of arm's-length negotiations before an experienced and respected mediator, and by counsel with significant experience in complex class action litigation. Further, the proposed Settlement Agreement carries no "obvious deficiencies," and falls well within the range of reason. The Court should therefore grant preliminary approval.

### A. The Settlement Agreement is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, courts consider whether the proposed settlement appears to be "the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011). Courts presume good

8

faith in the negotiating process. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with."); MCL (Third) § 30.42 ("a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel").

Plaintiffs were well-informed prior to agreeing to settle their cases. Plaintiffs engaged in an extensive pre-suit investigation. Plaintiffs' counsel performed extensive research into Defendant corporations, the development of Neuriva and its ingredients, and third party corporations who created and sold Neuriva's key ingredients to Defendants. In addition, Plaintiffs' counsel did a comprehensive investigation of all of Defendants' very substantial marketing campaigns, which spanned numerous digital and social media platforms, print media, and television commercials. Plaintiffs' counsel also collected, reviewed, and analyzed not only the scientific and clinical studies cited in Defendants' marketing, but scores of other clinical and scientific studies relating to Neuriva's ingredients and the falsity of its marketing claims. Before filing their complaints and during the litigation, Plaintiffs retained and regularly consulted with eminently qualified experts well-versed in neuroscience, pharmacology, physiology, and scientific test design to assist in Plaintiffs' counsel's investigation and prosecution of claims. Armed with the above investigative research and leaning on the considerable experience of Plaintiffs' counsel in class litigation, Plaintiffs were well informed prior to entering into the Settlement Agreement.

The Settlement Agreement is the product of significant give and take by the settling Parties and was negotiated at arm's length. The parties engaged in substantial settlement negotiations for months, including both formal mediation sessions before mediator Jill Sperber and regular communications amongst counsel and Ms. Sperber. After negotiating the terms of an initial term sheet, the Parties then negotiated and executed the Settlement Agreement reflecting the final terms. Ms. Sperber has significant experience mediating complex commercial suits to resolution and her involvement weighs in favor of preliminary approval. *See, e.g.*, *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. 2004) (presence of "respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged[]" belied suggestion of collusion in negotiating process).

### B. The Settlement Agreement Provides Considerable Benefits to the Class and Falls Squarely within the Range of Reasonableness.

The terms negotiated by the Parties provide considerable monetary benefits and injunctive relief to the class and fall well within the range of possible approval.

Courts routinely hold that settlements providing the class with a portion of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (approving recovery of $.20 per share where desired recovery was $3.50 a share and stating "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is unfair or inadequate"). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable [when weighing the benefits of the settlement against the risks associated with proceeding in the litigation]." *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) (internal quotation marks omitted).

Plaintiffs and the proposed class faced significant hurdles in litigating their claims to trial and ultimate resolution, and the possible appeals of any of the Court rulings. Each Class Member now, however, stands to recover direct monetary and injunctive relief as a result of the Settlement Agreement. For Settlement Class Members who have Proof of Purchase, the monetary benefits can claim up to $32.50 per purchase up to $65, while those without Proof of Purchase can claim up to $20. Further, Plaintiffs secured significant changes in Defendants' labeling and marketing that go to the heart of Plaintiffs' case: that Neuriva is not clinically or scientifically *proven* to improve brain performance. Accordingly, the negotiated monetary recovery and injunctive relief falls well within the range of reasonableness.

### C. The Settlement Agreement Saves the Class from Considerable Litigation Hurdles.

Any evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotation marks omitted). At bottom, had litigation continued, Plaintiffs and Class Members would have faced the risk of not prevailing on their claims.

The proposed settlement saves Plaintiffs and the proposed Class from facing these substantial obstacles and eliminates the significant risk that they would recover nothing at all after several more years of litigation.

### D. Counsel Believes the Settlement Agreement is Reasonable and in the Best Interest of the Settlement Class.

Finally, significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class. *See, e.g.*, *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (the recommendation of experienced counsel is entitled to great weight). Plaintiffs' counsel here have litigated numerous class actions in state and federal courts and fully support the Settlement Agreement. Copies of Class Counsel's Resumes are attached to the Declaration of Daniel K. Bryson (**Exhibit 2**). Based on this experience, the substantial information learned in the course of the litigation, and decades of experience litigating consumer class action lawsuits, it is Plaintiffs' counsel's informed opinion that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class.

### 2. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

The Settlement Class here meets the requirements of numerosity, commonality, typicality and adequacy of representation required by Rule 23(a) of the Federal Rules of Civil Procedure, as well as the requirements of Rule 23(b)(3) and 23(b)(2).

### A. The Settlement Class Meets the Four Requirements of Rule 23(a).

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 489 (S.D. Fla. 2003); *see also* Fed. R. Civ. P. 23(a). The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). Plaintiff satisfies all four requirements as set forth below.

"It is well established that [a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 659 (internal quotations omitted; brackets in original). "In deciding whether to provisionally certify a settlement class, a court must

11

consider the same factors that it would consider in connection with a proposed litigation class[,]" save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.* However, "[t]he standards of Rule 23 for class certification are more easily met in the context of settlement than in the context of contested litigation." *Horton v. Metro. Life Ins. Co.,* No. 93-1849-CIV-T-23A, 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

### i. The Settlement Class is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable. *See, e.g.*, *Jones v. Firestone Tire & Rubber Co., Inc.*, 977 F.2d 527, 534 (11th Cir. 1992) (citations omitted). Impracticability depends on the facts of each case. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) (The "numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). Here, the number of class members is in the thousands. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"). Accordingly, the Settlement Class is sufficiently numerous under Rule 21(a)(1).

### ii. There Are Questions of Law and Fact Common to All Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490. Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 2011 WL 3158998, at *4.

Plaintiffs' claims here depend on the common contention that Defendants deceptively labeled, packaged, and marketed Neuriva. All members of the putative class were allegedly injured in the same manner: they were deceived by Defendants' conduct, and they allegedly paid for Neuriva based on that deception.

While only one question of law *or* fact is required to establish commonality, several common questions capable of class-wide resolution—or that would "generate common answers"—arise from Plaintiffs' allegations (which Defendants deny), including:

    a. Whether Defendants' labeling, packaging, and marketing of Neuriva is deceptive;
    b. Whether Defendants engaged in unfair and deceptive trade practices when labeling, packaging, and marketing Neuriva; and
    c. Whether Defendants were unjustly enriched as a result of its deceptive conduct.

These common questions are capable of class-wide resolution. *See Williams,* 2012 WL 566067, at *5 (finding commonality where "all members of the proposed class were injured in the same manner").

### iii. Plaintiffs' Claims are Typical of Those of the Class.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class. *See* Fed. R. Civ. P. 23(a)(3). "[S]ubsection (a)(3) [of Rule 23] primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (citations omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Campos*, 188 F.R.D. at 659. The typicality requirement, like commonality, is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996). "Any atypicality or conflict between the named Plaintiff's claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney,* 213 F.R.D. at 491.

Plaintiffs' claims arise from the same alleged course of conduct and are based on the same legal theories as those brought on behalf of the proposed class. For example, the alleged deception to which each of the class representatives was exposed was no different than the alleged deception to which all of the Class Members allegedly were exposed. Because Plaintiffs' claims are based on alleged injuries caused by conduct allegedly affecting the class as a whole, their claims easily satisfy the typicality requirement. *See, e.g., Williams*, 2012 WL 566067, at *6 (holding that the named plaintiffs were typical of the class where they were charged and paid an inflated price based upon the same alleged deceptive conduct).

Moreover, Plaintiffs' claims are based on the same legal theories of the violation of state consumer protection laws and unjust enrichment. This identity of claims and legal theories between Plaintiffs and the class satisfies the typicality requirement set forth in Rule 23(a)(3).

### iv. Plaintiffs will Fairly and Adequately Represent the Interests of the Class.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney,* 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 464 (S.D. Fla. 2002).

"[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." 1 Newberg on Class Actions 3d (1992) § 3.24 at 3-133 n. 353; *see also Griffin v. Carlin*, 755 F. 2d 1516, 1533 (11th Cir. 1985) (inquiry as to adequacy of plaintiffs "involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to those of the rest of the class."). Adequacy of representation is usually presumed in the absence of evidence to the contrary. *Access Now, Inc. v. AHM CGH, Inc.*, 2000 U.S. Dist. LEXIS 14788 (S.D. Fla. 2000) (citation omitted).

The attorneys who seek to represent the Class in this case are highly qualified to serve as class counsel, have served as lead and co-lead counsel in some of the largest class actions in the country, and are well respected in the communities that they serve. Copies of the firm resumes are attached to **Exhibit 2**, the Declaration of Daniel K. Bryson. The firms representing Plaintiffs have overseen the extensive pre-suit investigation and overall litigation strategy that resulted in an expeditious, class-wide resolution that is far preferable to years of uncertain litigation. Class Counsel have and will continue to vigorously represent the Plaintiffs and Settlement Class Members.

Plaintiffs in this action also do not have interests that are antagonistic to those held by the rest of the class. There has been no evidence that would in any way show that Plaintiffs

14

do not have the same interests as the other class members or are in any way antagonistic to the class. Plaintiffs sued Defendants to expose the falsity of Neuriva's brain improvement allegations not only on their behalf but for those who are a part of the now-Settlement Class. Thus, Plaintiffs have satisfied Rule 23(a)(4)'s adequacy requirement.

### 3. The Settlement Class Meets the Requirements of Rules 23(b)(3) and (b)(2)

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of the subsections of Rule 23(b). Plaintiffs here seek certification under Rules 23(b)(3) and 23(b)(2).

#### A. Rule 23(b)(3)

Certification is appropriate under Rule 23(b)(3) if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. *See* Fed. R. Civ. P. 23(b)(3). The latter question implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.,* 275 F.R.D. at 659.

For common questions of law or fact to predominate over individualized questions, "the issues in the class action that are subject to generalized proof, and [are] thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 694. "Common questions need only predominate; they need not be dispositive of the litigation." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Checking Overdraft Litig.*, 2011 WL 3158998, at *7.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" allegedly deceptively sell and market Neuriva. *Id.* Proof of Defendants' alleged scheme to deceive a reasonable consumer may be substantiated by common evidence that would remain the same regardless of class size or composition. Common issues would predominate over any individual issue that might arise.

Moreover, a comprehensive resolution of the Settlement Class members' claims in this action would be far superior to litigating each of their claims separately. "Since the damage

15

amounts allegedly owed to each individual [consumer] are relatively low— especially as compared to the costs of prosecuting [these] types of claims . . . the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams*, 280 F.R.D. at 675. Even if the class members were able individually to prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).

Here, Plaintiffs satisfy the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. The predominant issues raised by Plaintiffs and the Settlement Class are all susceptible to common proof. The common proof includes the allegedly deceptive conduct in labeling, packaging, and marketing of Neuriva. Neuriva's pervasive marketing claims persistently alleged that the supplement was "clinically proven" and proven by science to such a degree of uniformity that it predominates any individual issue. Furthermore, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Accordingly, the Court should certify the proposed class for purposes of achieving this Settlement Agreement.

### B. Rule 23(b)(2)

Rule 23(b)(2) provides for class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The term "generally applicable" has been interpreted to mean that the defendant "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity, or to establish a regulatory scheme, to all members." *Leszczynski v. Allianz Ins. Co.*, 176 F.R.D. 659, 673 (S.D. Fla. 1997) (internal citations omitted).

Here, due to its use of uniform labels and packaging and the overarching theme of its marketing message that Neuriva is proven to improve brain performance, Defendants' allegedly engaged in a standard and uniform practice directed toward the Settlement Class as a whole. Therefore, certification under Rule 23(b)(2) for settlement purposes is appropriate.

4. **THE COURT SHOULD APPOINT THE UNDERSIGNED FIRMS AS CLASS COUNSEL**

The Parties have named the undersigned firms as Class Counsel, Whitfield Bryson LLP; Greg Coleman Law, PC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, PA; Barbat, Monsour, Suciu, & Tomina PLLC, Bursor & Fisher PA, and Shub Law Firm LLC. Undersigned counsel have significant experience in litigating complex commercial litigation including class actions. *See supra.* Because undersigned counsel are highly qualified and determined to represent the best interests of the Class, the Court should appoint them Class Counsel moving forward.

## CONCLUSION

Plaintiffs respectfully request the Court enter an order certifying the proposed class for purposes of settlement, preliminarily approving the terms of the Settlement Agreement, directing that Notice be given to the Class Members in the forms submitted with the Settlement Agreement, and setting a final fairness hearing at least 100 days after entry of the order, in the form attached as **Exhibit 4**, or in such other form as the Court deems just and proper.

Dated: February 8, 2021

Respectfully submitted,

s/*Jonathan B. Cohen*
Jonathan B. Cohen (Fla. Bar No. 27620)
Rachel Soffin (Fla. Bar No. 18054)
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: (865) 247-0080/F: (865) 522-0049
jonathan@gregcolemanlaw.com
rachel@gregcolemanlaw.com

Daniel K. Bryson
(Admitted *pro hac vice*)
Martha A. Geer
(Admitted *pro hac vice*)
Patrick M. Wallace
(Admitted *pro hac vice*)
**WHITFIELD BRYSON LLP**
900 West Morgan Street
Raleigh, NC 27603
T: (919) 600-5000/F: (919) 600-5035

dan@whitfieldbryson.com
martha@whitfieldbryson.com
pat@whitfieldbryson.com

Matthew D. Schultz (Fla. Bar No. 640326)
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
T: (850) 435-7140/F: (850) 436-6140
mschultz@levinlaw.com

Nick Suciu
(Admitted *pro hac vice*)
**BARBAT MANSOUR SUCIU & TOMINA PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
T:(313) 303-3472
nicksuciu@bmslawyers.com

Jonathan Shub*
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Hwy E, 2nd Floor
Haddonfield, NJ 08033
T: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

L. Timothy Fisher*
Blair Reed*
Sarah Westcot*
**BURSOR & FISHER, P.A.**
1990 North California Blvd, Ste. 940
Walnut Creek, CA 94596
T: (925) 300-4455
ltfisher@bursor.com
breed@bursor.com
swestcot@bursor.com

*Application *pro hac vice* submitted
***Attorneys for Plaintiffs and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2021, I caused the foregoing to be filed via the Court's electronic filing system which will notify all counsel of record of the same.

                                                s/ *Jonathan B. Cohen*
                                                Jonathan B. Cohen