# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:20-cv-23564-COOKE-GOODMAN

DAVID WILLIAMS and CAROLL
ANGLADE, THOMAS MATTHEWS,
MARTIZA ANGELES, and HOWARD
CLARK, *individually and on behalf of all
others similarly situated*,

      Plaintiffs,

v.

RECKITT BENCKISER LLC and
RB HEALTH (US) LLC,

      Defendants.

---

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND CLASS COUNSEL'S MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 1

I.     BACKGROUND OF THE LITIGATION AND MEDIATION.............................. 1

    A.   Relevant Procedural Background ......................................................................... 1

    B.   Class Counsel's Investigation ............................................................................. 3

    C.   Multiple Mediations and Subsequent Settlement Discussions ............................. 4

II.    MATERIAL TERMS OF THE SETTLEMENT AGREEMENT AND
    NOTICE PLAN ...................................................................................................... 4

    A.   The Proposed Class ............................................................................................. 4

    B.   Settlement Relief................................................................................................. 5

        1.   Monetary Relief ...................................................................................... 5

        2.   Injunctive Relief...................................................................................... 5

    C.   Release of Claims Against Defendants................................................................. 6

    D.   Class Representative Service Awards ................................................................... 6

    E.   Attorneys' Fees and Expenses ............................................................................. 6

    F.   Notice and Settlement Administration ................................................................. 7

ARGUMENT  .................................................................................................................... 8

I.     THE STANDARD OF RULE 23(A) and RULE 23(b)(3) HAVE
    BEEN MET............................................................................................................. 8

II.    THIS COURT SHOULD GRANT FINAL APPROVAL OF THE
    SETTLEMENT ....................................................................................................... 8

    A.   The Legal Standard for Final Approval ............................................................... 8

    B.   The Settlement Should be Approved as Fair, Adequate,
        and Reasonable ................................................................................................... 8

i

Absence of Fraud or Collusion .............................................................................. 9

Complexity, Expense, and Duration..................................................................... 9

Stage of Proceedings ...........................................................................................10

Probability of Success on the Merits ...................................................................11

Range of Possible Recovery ................................................................................12

The Opinions of Class Counsel, the Class Representatives, and
Absent Class........................................................................................................14

III.  THE COURT SHOULD AWARD REASONABLE FEES AND
     COSTS AND RESERVE JURISDICTION ON THE REQUESTED
     SERVICE AWARDS ........................................................................................14

     A.   The court Should Award the Requested Attorneys' Fees
          and Expenses..............................................................................................16

          The Contingent Nature of the Fee, the Financial Burden Carried
          by Counsel, the Economics of Prosecuting a Class Action...................................16

          The Market Rate in Complex, Contingent Litigation ...........................................17

          The Novelty and Difficulty of the Questions at Issue ...........................................17

          The Skill, Experience, and Reputation of Class Counsel ......................................17

          The Result Achieved for the Class ......................................................................18

          The Time and Labor of Class Counsel.................................................................18

          The Reaction of the Class to the Settlement .........................................................19

          Class Representative Service Awards...................................................................19

CONCLUSION ...................................................................................................20

## <u>TABLE OF CASES AND AUTHORITIES</u>

**Cases**

*Arnold v. Fitflop USA LLP,*
    2014 WL 1670133 (S.D. Cal. Apr. 28, 2014) .........................................................13

*Atkinson v. Wal-Mart Stores, Inc.,*
    2011 WL 6846747 (M.D. Fla. Dec. 29, 2011) .......................................................13

*Beber et al. v. Branch Banking & Trust Co. et al.,*
    No. 15-cv- 23294 (S.D. Fla. ) .................................................................................10

*Behrens v. Wometco Enter. Inc.,*
    No. 1: 12-CV-22800, 118 F.R.D. 534 (S.D. Fla. 1988). ...................................11, 12

*Bennett v. Behring Corp.,*
    737 F.2d 982 (11th Cir. 1984)..........................................................................8, 12

*Bezdek v. Vibram USA Inc.,*
    809 F.3d 78 (1st Cir. 2015) ....................................................................................13

*Burrows v. Purchasing Power, LLC,*
    2013 WL 10167232 (S.D. Fla. Oct. 7, 2013 .........................................................11

*Camden I Condominium Ass'n, Inc. v. Dunkle,*
    946 F.2d 768 (11th Cir.1991)..........................................................................15, 16

*Casey v. Citibank,*
    No. 12-cv-820 (N.D.N.Y.) .....................................................................................13

*Churchill Village LLC v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .................................................................................14

*Collins v. Quincy Bioscience, LLC,*
    Case No. 1:19-cv-22864, ECF No. 200 (S.D. Fla. Nov. 18, 2020)..........................12

*Dorado v. Bank of Am., N.A.,*
    2017 WL 5241042 (S.D. Fla. Mar. 24, 2017) .......................................................20

*Feller v. Transamerica Life Ins. Co.,*
    2019 WL 6605886 (C.D. Cal. Feb. 6, 2019 .........................................................20

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
    2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ...................................................15, 17

*Gevaerts v. TD Bank,*
    No. 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) ....................................................20

*Hazlin v. Botanical,*
    2015 WL 11237634 (S.D. Cal. May 20, 2015) .....................................................13

*Hensley v. Eckerhart,*
    461 U.S. 424, 436, (1983) ....................................................................18

*Harvey v. Hammel Kaplan Co., LLC,*
    2020 U.S. Dist. LEXIS (M.D. Fla. Dec. 7, 2020) ..................................................19

*Hemphill v. San Diego Ass'n of Realtors, Inc.,*
    225 F.R.D. 616 (S.D. Cal. 2004 ............................................................... 9

*In re Checking Account Overdraft Litig.,*
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................... 10, 12, 18

*In re Domestic Air Transp. Antitrust Litig.,*
    148 F.R.D. 297 (N.D. Ga. 1993) ...........................................................11

*In re Gen. Motors Pick-up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ............................................................... 10, 11

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.,*
    910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd,*
    2014 WL 103836 (5th Cir. Jan. 10, 2014) ...................................................10

*In re Smith,*
    926 F.2d 1027 (11th Cir. 1991) ............................................................ 9

*In re Sunbeam Sec. Litig.,*
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) ....................................................8, 15

*In re U.S. Oil & Gas Litig.,*
    967 F.2d. 489 (11th Cir. 1992) ............................................................ 8

*Johnson v. NPAS Sols., LLC,*
    No. 18-12344, 945 F.ed.1244 (11th Cir. Sept. 17, 2020) ......................................... 6

*Lemus v. H & R Block Enters. LLC,*
    2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) ................................................13

*Leverso v. SouthTrust Bank of Ala., N.A.,*
    18 F.3d 1527 (11th Cir. 1994).............................................................. 9

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005)  ....................................................8, 11, 12, 18

*Marty v. Anheuser-Busch Companies, LLC*,
    2015 WL 6391185 (S.D. Fla. Oct. 22, 2015)  ........................................................13

*Metzler et al. v. Med. Mgmt. Int'l, Inc.*,
    2020 U.S. Dist. LEXIS 187478 (M.D. Fla. Oct. 9, 2020) ......................................19

*Morgan v. Pub. Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016)  .................................................................. 9

*Nigh v. Humphreys Pharmacal, Inc.*,
    No. 2013 WL 5995382 (S.D. Cal. Oct. 23, 2013)  ..................................................13

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007)  .................................................................18

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007)  .................................................16, 18, 19, 20

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015) ....................................................... 15, 18

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) .......................................................................10

*Turner v. Gen. Elec. Co.*,
    No. 2:05-cv-186,2006 WL 2620275
    (M.D. Fla. Sept. 13, 2006) ..................................................................................... 8

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 6834 (S.D. Fla. 2014) ......................................................... 9, 10, 14

*Shames v. Hertz Corp.*,
    WL 5392159 (S.D. Cal. Nov. 5, 2012).....................................................................

*United States v. Washington Mint*,
    115 F. Supp. 2d 1089 (D. Minn. 2000)...................................................................13

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) .............................................................................15

*Warren v. Tampa*,
    693 F. Supp. 1051, 1060 (M.D. Fla. 1988) ............................................................14

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................. 8

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 8

Fed. R. Civ. P. 23(e)................................................................................................. 8

**INTRODUCTION**

Reckitt Benckiser LLC and RB Health (US) LLC ("Defendants") marketed and sold the brain supplements Neuriva Original, Neuriva Plus, and Neuriva De-Stress (collectively, "Neuriva" or "Neuriva Products") as containing ingredients clinically and scientifically proven to improve brain performance. Plaintiffs David Williams, Caroll Anglade, Thomas Matthews, Martiza Angeles, and Howard Clark ("Plaintiffs") have alleged, based on substantial investigation and work with consulting experts, that those ingredients in fact have not in fact been "proven" to have an impact on brain performance and that the claims constitute false advertising.  Plaintiffs and Defendants ("the Parties"), while continuing to litigate the claims, simultaneously engaged in contentious arm's-length negotiations with the assistance of a respected and experienced mediator that resulted in the Settlement Agreement this Court preliminarily approved on April 23, 2021.  (ECF No. 57).

Plaintiffs now move for final approval of the Settlement and approval of their motion for attorneys' fees and expenses.[1] This Settlement, if finally approved, will primarily accomplish two objectives. The Settlement will provide Class Members with $8 million in monetary benefits with only minimal claim requirements and will grant nationwide injunctive relief that will require Defendants to cease marketing their Neuriva Products as containing ingredients clinically and scientifically proven – relief that was not assured if Plaintiffs had continued to litigate and, even if successful, would not likely have been obtained for years.

**FACTUAL BACKGROUND**

I.    **BACKGROUND OF THE LITIGATION AND MEDIATION**

**A.  Relevant Procedural Background**

Defendants began selling Neuriva Original in April 2019 and subsequently added Neuriva Plus and Neuriva De-Stress to their product line.  The central theme of Defendants' packaging and marketing is that the Neuriva ingredients have been clinically and scientifically proven to improve brain performance.  Prior to filing suit, Class Counsel exhaustively researched Defendants' marketing across different platforms; investigated the extent of

---

[1] Plaintiffs have filed a combined Motion for Attorneys' Fees and Expenses (originally due on July 16, 2021, and extended to July 19, 2021) and Motion for Final Approval of the Settlement for the convenience of the Court.

scientific research relevant to Neuriva's active ingredients; consulted with two experts regarding the relevant studies and the validity of Defendants' scientific claims, including a pharmacologist/neuroscientist and a biostatistician; and extensively researched the applicable law.

On June 19, 2020, Plaintiff Matthews filed a class action in the Eastern District of California alleging claims on behalf of a California class under the California consumer protection statutes, on behalf of a multi-state class under multiple state consumer protection statutes, and on behalf of a nationwide class for unjust enrichment.  Plaintiffs Williams and Anglade filed their class action complaint on August 26, 2020, alleging claims under Fla. Stat. § 501.201 *et seq.* on behalf of a Florida class and for unjust enrichment on behalf of a nationwide class. Plaintiff Angeles filed a class action complaint on September 2, 2020, in the Southern District of New York asserting claims on behalf of a New York class for violations of N.Y. General Business Law § 349 and for unjust enrichment. Plaintiff Howard did not initially file suit but sent Defendants a pre-suit demand letter challenging Neuriva's marketing representations in May 2020.

Defendants first moved to dismiss the *Matthews* action, and, after counsel fully researched and investigated Defendants' motion to dismiss arguments, Plaintiff Matthews filed an Amended Complaint.  In the *Williams* action, Defendants moved to transfer the case to the Eastern District of California under the "first-filed" rule and additionally moved to dismiss the complaint. The *Williams* Plaintiffs opposed Defendants' transfer motion and, after again fully researching and investigating Defendants' arguments, filed an Amended Complaint in response to the motion to dismiss. Defendants then moved to dismiss the Amended Complaint. Defendants' deadline to respond to the *Angeles* case had not run by the time the Parties settled the case.

If the Parties had not negotiated the Settlement currently before the Court, the *Williams* case may well have been transferred to the Eastern District of California where no judge has ever been assigned to the first-filed *Matthews* case.  Defendants would have undoubtedly fully litigated motions to dismiss in the *Matthews*, *Williams*, and *Angeles* cases, opposed class certification, and moved for summary judgment on any remaining claims in all three cases.

On January 20, 2021, for purposes of settlement, Plaintiffs joined in filing a Consolidated Amended Complaint in this Court (the "Action"). (ECF No. 51).  The Action

involves the same factual claims regarding Defendants' false advertising of the three *Neuriva* Products as set out in *Matthews*, *Williams*, and *Angeles* and includes multiple claims made on behalf of consumers in California, Florida, and New York and an unjust enrichment claim on behalf of a nationwide class.

On February 8, 2021, Plaintiffs filed their Motion for Preliminary Approval of the Proposed Settlement (ECF No. 52), which this Court granted on April 23, 2021. (ECF No. 57). On April 26, 2021, the Court directed the Parties to provide further information regarding the proposed injunctive relief set out in the Settlement Agreement. (ECF No. 58). Plaintiffs and Defendants filed separate briefs responding to the Court's order on May 24, 2021. (ECF Nos. 61, 62).

### B. Class Counsel's Investigation

Prior to negotiating the Settlement, Class Counsel spent significant time communicating with Plaintiffs; investigating Defendants' marketing and advertising of the *Neuriva* Products on television, in print, on their website, and on social media; gathering and reviewing studies related to the active ingredients of *Neuriva*; and gathering and reviewing other materials related to brain supplements. Class Counsel also interviewed numerous other consumers apart from Plaintiffs about their purchases of *Neuriva* Products.

In addition, Class Counsel worked with a biostatistics expert consultant who reviewed and analyzed studies of one of the *Neuriva* Products' key ingredients and assessed the study design and the statistical validity of the study's conclusions. Class Counsel also worked extensively with a pharmacology/neuroscience expert consultant regarding relevant biochemistry principles, the state of the research regarding the *Neuriva* Products' active ingredients, and an analysis of studies cited by Defendants. During the settlement negotiations, Class Counsel continued to consult with the pharmacology/neuroscience expert regarding studies relied on by Defendants for purposes of the mediation.

Additionally, Class Counsel researched the law in California, Florida, and New York and related federal law, including related federal regulations and relevant FDA and FTC guidance regarding dietary supplements. Class Counsel also reviewed the filings and court decisions in similar litigation addressing comparable supplements.

As a result of this work, Class Counsel entered the mediation amply informed about the merits of the Settlement Class members' claims and were well positioned to vigorously

advance the position of Plaintiffs and the Settlement Class members while also being fully prepared to continue to litigate the cases rather than accept a settlement that was not in the best interests of Plaintiffs and the Settlement Class.

### C. Multiple Mediations and Subsequent Settlement Discussions

While the *Matthews* and *Williams* cases were proceeding, the Parties agreed to mediate all the cases and, after engaging in informal discovery regarding Defendants' purported scientific basis for their claims and data regarding the Neuriva Products' sales, participated in a one-day mediation session on October 2, 2020, with mediator Jill Sperber, Esq. from Judicate West. Ms. Sperber is a respected mediator with significant complex litigation experience, both as a litigator and as a mediator. *See* https://www.judicatewest.com/adr/jill-sperber.

When the Parties failed to reach a settlement at that mediation, Ms. Sperber continued to engage in discussions with the Parties, and ultimately the Parties agreed to participate in a second mediation session on November 30, 2020.  The Parties were able at the second day of mediation to reach substantial agreement on the monetary amount of the settlement fund for the Class.  Subsequently, with Ms. Sperber's assistance, the Parties continued to negotiate telephonically and ultimately agreed to injunctive relief terms.  The Parties agreed to the final material terms of the Settlement, although they continued their discussions of the finer details of the Settlement Agreement through January 2021.  At all times, the negotiations were at arm's-length, and Ms. Sperber agrees that the resulting settlement is a fair, reasonable, and adequate resolution for the Settlement Class.

## II.   MATERIAL TERMS OF THE SETTLEMENT AGREEMENT AND NOTICE PLAN

### A. The Proposed Class

The Settlement provides relief to a Settlement Class defined as "[a]ll persons who purchased for personal consumption and not for resale, one or more of the Neuriva Products, from Reckitt or an authorized reseller, in the United States, between the dates of January 1, 2019, and the date of Preliminary Approval of the Settlement by the Court." (ECF No. 52-1, Ex. 1 ¶ I.Z). This Settlement Class was preliminarily certified, pending final approval. (ECF No. 52). The time frame of the Class period begins in January 2019 to capture when Defendants first began selling Neuriva Products.

**B. Settlement Relief**

The Settlement Agreement provides both monetary and injunctive relief to the Settlement Class. The Parties estimate that there are thousands of potential Settlement Class members.

1. <u>Monetary Relief</u>

The Defendants have agreed to pay up to $8,000,000 in monetary relief to Settlement Class Members, *exclusive of* administrative costs, attorneys' fees and expenses, and court-ordered service awards, for purchases of Neuriva Products.  Settlement Class Members with Proof of Purchase will receive up to $32.50 per valid claim, and Settlement Class Members may make up to two claims for a maximum of $65.00. Settlement Class Members may not receive more than the amount reflected on their Proof of Purchase.  For those without Proof of Purchase, Settlement Class Members will receive $5.00 per valid claim, and Settlement Class Members may make up to four claims for a maximum of $20.00.

Every Settlement Class Member (or Household with a Settlement Class Member) has the right to submit a claim for monetary relief. In the event that the amount of valid claims exceeds $8,000,000, the monetary benefit will be reduced on a pro rata basis.

2. <u>Injunctive Relief</u>

In addition to monetary relief, the Parties also agreed to significant injunctive relief. The Settlement Agreement's proposed injunctive relief, as clarified by the Amended Settlement Agreement (ECF No. 62), addresses the main allegations of deceptive advertising raised in Plaintiffs' complaint by (1) barring Defendants from stating that the Neuriva Products or their ingredients are clinically or scientifically proven to improve brain performance, and (2) limiting Defendants to stating with respect to the Neuriva Products' ingredients that they have been "Clinically Tested," "Science Tested," or similar language such as scientific studies have "shown" certain results.  (ECF 52-1, Ex. 1 ¶¶ IV.A.1-3).

The injunctive relief provision also allows both Plaintiffs and Defendants to seek relief from the Court should the state of the science change.  Under the terms of the agreement, in the event that "new research, information, or regulatory or legal developments" arise that would warrant expanding the injunction to further restrict Defendants' marketing statements, Plaintiffs may seek modification of the injunction from this Court.  (ECF 52-1, Ex. 1 ¶ IV.A.4).

Defendants will have six months after entry of the Final Approval Order and Judgment to correct all of their marketing (including label changes and internet and media advertising), and the agreed-upon changes will remain in effect for at least two years.  (ECF 52-1, Ex. 1 ¶ IV.A.3).  At that point, if Defendants attempt to return to their current "Clinically Proven" and "Scientifically Proven" marketing campaign without additional scientific or clinical studies supporting their claims, they would again be subject to suit.

C.     **Release of Claims against Defendants**

In exchange for the monetary and injunctive relief provided in the Settlement Agreement, members of the Settlement Class who did not timely and validly opt out of the Settlement Class will release and discharge the Settling Defendants from all claims as outlined in the Settlement Agreement.

D.     **Class Representative Service Awards**

As part of the Settlement, Defendants agreed, subject to Court approval,  to pay service awards not to exceed $2,000 each to Class Representatives David Williams, Caroll Anglade, Thomas Matthews, Maritza Angeles, and Howard Clark in recognition of the time and effort they personally invested in this litigation and in exchange for the claims of Class Representatives in this Action being released. Plaintiffs are aware that the Eleventh Circuit held in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1255-62 (11th Cir. 2020), that, based upon Supreme Court cases from the 1800s, service awards to class representatives are prohibited. On October 22, 2020, the *Johnson* plaintiff/appellee filed a Petition for Panel Rehearing or Rehearing En Banc. Following that request, on November 5, 2020, the Eleventh Circuit granted multiple parties' petitions to file amicus briefs in support of rehearing en banc and, on November 9, 2020, the Eleventh Circuit withheld issuance of the mandate in that case.

E.  **Attorneys' Fees and Expenses**

The Settlement Agreement provides that Class Counsel may make an application to this Court for an award of attorneys' fees and expenses in the amount not to exceed $2,900,000.00.  Defendants' payment of fees and costs to Class Counsel is entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members. The Parties negotiated and agreed upon attorneys' fees and costs only after agreeing on all other material terms of the Settlement.

And the effectiveness of the Settlement and the releases is not contingent on the Court's approval of the Fee and Expense Award or affected by the amount of the Fee and Expense Award approved by the Court.

### F.  Notice and Settlement Administration

The Court appointed the Angeion Group to act as the Settlement Administrator. The Settlement Administrator was responsible for, among other things: (a) initiating and monitoring the Notice Plan; (b) establishing a Post Office box and a dedicated email address for receiving claims, requests for exclusions, objections, and other correspondence; (c) establishing a Settlement Website that will not only contain important documents and information on how to file a claim, but also the means by which Settlement Class Members can electronically file claims; (d) forwarding inquiries to Class Counsel for a response, if warranted; (e) reviewing Claims in accordance with the Settlement Agreement; (f) otherwise implementing and/or assisting with the Claims review protocols agreed to by the Parties and set forth in the Settlement Agreement; and (g) processing payments on timely Valid Claims in accordance with the Settlement Agreement.

As detailed in the Declaration of Steven Weisbrot, a partner at Angeion, filed in support of the Motion for Preliminary Approval of the Settlement (ECF No. 52-3), the Notice plan, which was approved by the Court, provided for notice through internet advertising (*id.* ¶¶ 16-27), a social media campaign using Facebook and Instagram (*id.* ¶¶ 28-30), a dedicated settlement website (*id.* ¶¶ 31-32), a paid search strategy designed to drive Class Members to the dedicated settlement website (*id.* ¶¶ 31-32), and a toll-free hotline (*id.* ¶ 34).  The notice plan was designed to reach 80.14% of the target audience with each person viewing the digital advertising an average of 3.99 times.  (*Id.* ¶ 13).  *See* Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide for Judges," at 27 (3d Ed. 2010) (explaining that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm").  This Notice Plan has been and is continuing to be executed with additional notice still scheduled to be provided to the Class.  Plaintiffs will file a Declaration from Angeion detailing completion of the Notice Plan once the deadline for Class Members to object (July 27, 2021) has passed.

As will be set forth in the Angeion declaration, Class Members may submit a claim online through the dedicated Settlement website or may obtain a paper claim form by calling

a tollfree number or by requesting the form by mail from the Settlement Administrator.  As of July 15, 2021, Angeion reported that no Class Members have requested to opt out or have submitted objections.  A complete report will be included in the Angeion Declaration.

## ARGUMENT

### I.   THE STANDARDS OF RULE 23(A) AND RULE 23(B)(3) HAVE BEEN MET.

In the Court's Order preliminarily approving the settlement, the Court found that the requirements of Rule 23(a) and 23(b)(3) have been satisfied in this Action and conditionally certified the Settlement Class. (ECF. No. 50 at 3). Plaintiffs respectfully submit that the Court should make the same determinations in granting Final Approval and certifying the Settlement Class.

### II.   THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

#### A.  The Legal Standard for Final Approval

Fed. R. Civ. P. 23(e) requires court approval before a class action can be dismissed via a settlement. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  The Eleventh Circuit has emphasized that courts determining whether to approve a settlement be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

"Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]'" *Turner v. Gen. Elec. Co.*, No. 2:05-cv-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (noting that Courts "should always review the proposed settlement in light of the strong judicial policy that favors settlements[]").

#### B.  The Settlement Should be Approved as Fair, Adequate, and Reasonable.

Courts in this Circuit, when deciding whether to approve a class action settlement, consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) complexity, expense, and duration of litigation; (3) the stage of the proceedings at which the settlement was achieved; (4) the likelihood of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received. *See Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 691-94 (S.D. Fla. 2014). "In assessing these factors, the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'" *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith,* 926 F.2d 1027, 1028 (11th Cir. 1991)). Analysis of these factors supports approval of the Settlement.

**Absence of Fraud or Collusion:** In considering the first factor regarding fraud or collusion, courts begin with a presumption of good faith in the negotiating process. *See Saccoccio,* 297 F.R.D. at 692 ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) (observing that "the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement").

This Settlement was the product of vigorous give and take between the Parties overseen and facilitated by a respected mediator with significant experience with complex litigation who leveraged that experience in bringing the Parties back to the table after the first mediation failed and in continuing the negotiations after the second mediation. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Further, throughout the negotiation process, Plaintiffs continued to press forward with the litigation, demonstrating that Plaintiffs and the Class Counsel were committed to litigating the Class's claims in the absence of an adequate settlement.

**Complexity, Expense, and Duration:** As to the second factor -- complexity, expense, and duration of litigation – there can be little question that this case presents complex issues of fact and law that would require significant time and expense to resolve, and such resolution would ultimately be uncertain. Defendants had already filed motions to dismiss, including

preemption arguments, and a Motion to Transfer or Stay the *Williams* case, which if granted would have likely delayed the case. Even if Plaintiffs prevailed on the motions to dismiss, Defendants had already forecast that they would vigorously oppose class certification. With respect to the inevitable motions for summary judgment, Plaintiffs would have had to navigate highly complex, technical, and scientific discovery, involving numerous experts for both Parties. While Plaintiffs are well-positioned to chart a successful course through discovery and ultimately trial, a favorable resolution would require years of trial-level proceedings, interlocutory appeals, and final appeals and involve great expense for the Parties. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012), *aff'd*, 2014 WL 103836 (5th Cir. Jan. 10, 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second *Reed* factor weighs strongly in favor of granting final approval to the Settlement Agreement.").

By contrast, the Settlement provides immediate and substantial monetary relief to the Settlement Class, with payments approximating a significant percentage of Settlement Class Members' actual damages. (Bryson Decl. ¶¶ 29, 30). And Defendants will have to make significant label changes – specifically removing the language at the heart of this case – within six months after final approval as opposed to years down the road.  This monetary recovery and injunctive relief – assured without the expense, uncertainty, and delay of litigation – is a valuable and timely result for the Class. *See, e.g.*, *Beber et al. v. Branch Banking & Trust Co. et al.,* No. 15-cv-23294 (S.D. Fla. ) (ECF No. 109) (approving similar settlement with payment percentages of damages of 10%, 8%, and 5%); *Saccoccio*, 297 F.R.D. at 693 (return of 12.5% of premiums charged for FPI with prospective relief that "very likely exceeds what Plaintiffs could have won at trial"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (range of 9% to 45% of damages was an "exemplary" result). In light of the costs, uncertainties, and delays of litigating through trial—and possibly an appeal—"the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

**Stage of Proceedings:** Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Pick-up Truck Fuel*

*Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement from a well-informed position. Class Counsel performed a substantial pre-suit investigation into Neuriva's marketing (reflected in Plaintiffs' complaints), which revealed the universality of Neuriva's "proven" ingredient claims. Class Counsel also investigated the scientific and clinical support for Neuriva's active ingredients to determine the strength (or lack thereof) for Defendants' claims. This research not only included reviewing scientific and clinical literature, but Class Counsel engaged two well-respected consulting experts, including a pharmacologist/neuroscientist and a biostatistician. Class Counsel's pharmacology/neuroscience expert proved invaluable in understanding the complicated biochemistry and other scientific issues involved in Defendants' "clinically proven" and "science proved" claims and the literature upon which Defendants relied. The biostatistician highlighted the weaknesses of the study design and analysis for key studies Defendants cited. Finally, Class Counsel obtained confirmatory discovery from Defendants concerning Neuriva's sales, information key during negotiations to ensure the Settlement was fair and provided significant value to the Settlement Class. In sum, the Settlement was negotiated in good faith and at arm's-length by experienced counsel who were well-informed.

**Probability of Success on the Merits:** "[T]he likelihood and extent of any recovery from the defendants absent ... settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993). Put simply, while Class Counsel and Plaintiffs believe they have a strong and compelling case, Plaintiffs faced the risk of losing at class certification, summary judgment, at trial, or on appeal. Therefore, "because success at trial is not certain for Plaintiff[s], this factor weighs in favor of accepting the settlement." *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 U.S. Dist. LEXIS 189397, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. This Settlement provides substantial relief to Settlement Class Members without further delay. *Lipuma*, 406 F. Supp. 2d at 1322 (noting that the likelihood appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). Plaintiffs

faced the real possibility of zero recovery or a recovery and label changes only years in the future, allowing Defendants' false marketing to continue unabated during those years.

**Range of Possible Recovery:** Because "[m]onetary relief is difficult to quantify," in evaluating a class settlement, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1322 -23 (finding that settlement recovering 8.1% of possible damages was fair, adequate, and reasonable). "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair and inadequate . . . A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery[.]" *Behrens v. Wometco Enter. Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988).

Here, the Settlement provides an $8 million fund out of which to pay Settlement Class members. Settlement Class Members who provide Proof of Purchase may be entitled to potentially a full refund for two purchases of Neuriva Products, up to $32.50 each or $65.00 total. (Bryson Decl. ¶ 29).  Settlement Class Members who do not have Proof of Purchase may file a claim for up to four purchases of Neuriva Products for a total of $20. (*Id.*). The ability of Class Members who do not have Proof of Purchase to receive monetary benefits is particularly noteworthy, as Defendants have no way of independently verifying who actually purchased an over-the-counter product like Neuriva. Further, the monetary settlement benefits per purchase available to those without Proof of Purchase constitute approximately 22% of the manufacturer's price for Neuriva Original or 15% for Neuriva Plus. (Bryson Decl. ¶ 30). These settlement amounts meet or exceed the standards established by this and other courts. *See also Bennett*, 737 F.2d at 986 (holding that 5.6% recovery was fair and adequate in view of risks of further litigation and litigation objectives);*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1346 ("[S]tanding alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims.").  In fact, the monetary benefits made available to Settlement Class Members compare favorably with an almost identical case. *See Collins v. Quincy Bioscience, LLC*, Case No. 1:19-cv-22864, ECF No. 200 (S.D. Fla. Nov. 18, 2020) (granting final approval to brain supplement class settlement providing up to $12 without proof of purchase and up to $70 with proof of purchase).

12

The fact that the parties agreed to a "claims-made" settlement does not render its terms unreasonable and, in some cases, is a better result. *See, e.g., Saccoccio*, 297 F.R.D. at 696 (overruling objections to claims-made process because "[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.").[2]

The Settlement will also provide valuable injunctive relief to the Settlement Class. The Settlement ensures that any references to "Clinically Proven" and "Science Proved" will be removed from the both the labeling of the Neuriva Products and all ancillary marketing – Defendants' misrepresentation regarding the existence of scientific proof was the primary focus of Plaintiffs' complaint. Because, without this injunctive relief, Settlement Class Members and future purchasers of Neuriva would continue to be exposed to the same false claims about clinical and scientific "proof," Class Counsel refused to settle this case without a change in Neuriva's marketing. (Bryson Decl. ¶ 22). Courts have found that such relief (requiring changes to marketing claims) provides significant benefits to class members. *See Marty v. Anheuser-Busch Companies, LLC*, No. 13-cv-23656-JJO, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015); *Hazlin v. Botanical*, No. 13-cv-00618-KSC, 2015 WL 11237634, at *3-4 (S.D. Cal. May 20, 2015); *Bezdek v. Vibram USA Inc.*, 809 F.3d 78, 84 (1st Cir. 2015); *Arnold v. Fitflop USA LLP*, No. 11-cv-00973W-KSC, 2014 WL 1670133, at *1, *8 (S.D. Cal. Apr. 28, 2014); *Nigh v. Humphreys Pharmacal, Inc.*, No. 12-cv-02714-MMA-DHB, 2013 WL 5995382, at *2, *8 (S.D. Cal. Oct. 23, 2013); *United States v. Washington Mint, LLC*, 115 F. Supp. 2d 1089, 1105 (D. Minn. 2000).

---

[2] *See also Casey v. Citibank*, No. 12-cv-820 (N.D.N.Y.) (ECF No. 222 at ¶ 6) (approving virtually identical claims-made settlement and finding that regardless of the take rate, "[t]he settlement confers substantial benefits upon the Settlement Class members, is in the public interest, and will provide the parties with repose from litigation."); *Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (approving claims-made settlement over objections because "there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims-made settlements") (citations omitted); *Lemus v. H & R Block Enters. LLC*, No. 09-cv-3179, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-cv-00691-T-30TBM, 2011 WL 6846747, at *5 (M.D. Fla. Dec. 29, 2011) (approving claims-made settlement with full reversion).

In addition, the Settlement's injunctive relief is already having an impact. Recently, Defendants introduced another supplement in the Neuriva line: Neuriva Brain + Eye. (Bryson Decl. ¶ 32). Although this new product is not governed by this Settlement, the labeling for Neuriva Brain + Eye still uses the language agreed to in the Settlement. (*Id.*). Absent the Settlement, there is little doubt that this new product and subsequent products would continue the false and misleading marketing claims of the other Neuriva Products. As such, the injunctive relief is already producing significant benefits now and will in the future.

**The Opinions of Class Counsel, the Class Representatives, and Absent Class Members:** A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). Class Counsel in this case have long track records of successfully litigating a wide variety of consumer class actions nationwide, including those involving supplements. (Bryson Decl. ¶ 40). Class Counsel relied on their experience and their deep familiarity with the factual and legal issues in this case, considered the risks associated with continued litigation, and determined that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members.

With respect to the view of absent class members, as of July 15, 2021, the Settlement Administrator had not received any opt out requests or objections, a fact strongly supporting the fairness and reasonableness of the Settlement.[3] *See, e.g., Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices); *Saccoccio*, 297 F.R.D. at 694 (opposition amounting to .018% of the class was termed as "low resistance to the settlement" and weighed "in favor of approving the settlement").

Viewed either independently or taken together, the above six factors confirm that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class. The Court should grant the motion for final approval of the Settlement.

## III.  THE COURT SHOULD AWARD REASONABLE FEES AND COSTS AND RESERVE JURISDICTION ON THE REQUESTED SERVICE AWARDS

---

[3] To allow the Settlement Class to have an opportunity to review this brief and supporting material, Plaintiffs proposed and this Court adopted an objection deadline of July 26, 2021. Class Counsel will supplement this Motion with an Angeion Declaration and a response to any objections on August 9, 2021 as provided in the preliminary approval Order.

For their effort in bringing about an efficient and beneficial resolution on behalf of consumers nationwide, Class Counsel seeks an award of attorneys' fees and expenses[4] of $2,900,000.00. The Settlement Agreement provides: "The amount finally approved by the Court shall be the sole responsibility of, and will solely be paid by the Settling Defendants *above and beyond any relief* provided to the Settlement Class." (ECF No. 52-1, Ex. 1 ¶ V.A). (emphasis added). Consequently, the attorneys' fee and expenses award will not impact the amount of money available to Class Members.

### A. The Court Should Award the Requested Attorney's Fees and Expenses

As courts in this District have previously recognized, *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir.1991), "is the preeminent case in this circuit dealing with the issue of attorneys' fees in common-fund class-action cases." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1333. In *Camden I*, the Eleventh Circuit held: "Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."  946 F.2d at 771. The Eleventh Circuit further held that "the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id.* at 774.

The percentage applies to the total benefits provided for in the settlement, even where the actual payments to the class following a claims process are lower, and the amount of the award should take into account non-monetary benefits as well. *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015);*see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) ("Contrary to defendants' assertion, no case has held that a district court must consider only the actual payout in determining attorneys' fees.").

As this Court has previously observed, listing cases awarding fees between 33% and 38% of the common fund, "Courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund." *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 15-22782-CIV, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017).  Indeed, as

---

[4] Settlement Class Counsel incurred $27,413.68 in expenses (Bryson Decl. ¶ 52), an amount that would be subsumed within the attorneys' fee award and not added to it.

the *Fernandez* opinion points out, *id.* at \*4, the Eleventh Circuit in *Camden I* held: "To avoid depleting the funds available for distribution to the class, an upper limit of 50% may be stated as a general rule, although even larger percentages have been awarded." 946 F.2d at 774-75. Here, Class Counsel seek $2.9 million for attorneys' fees and expenses, which equals 36% of the Class Settlement fund.  However, no concern exists regarding potential depletion of funds available to the class because Defendants will, under the Settlement Agreement, pay Class Counsel's attorneys' fees and expenses *separate and apart* from the $8 million fund established for paying Class Members' claims. ((ECF No. 52-1, Ex. 1 ¶ V.A). In contrast, while this Court in *Fernandez* approved attorneys' fees equal to 35% of the common fund, those fees and the attorneys' expenses were to be deducted from the fund, thus lessening the total amount available to the class.  In this case, Class Counsel's requested fees and expenses actually represent 27% of the total amount Defendants are obligated to pay under the Settlement Agreement ($8,000,000 + $2,900,000).

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class action counsel include, as pertinent to the case, (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I*, 946 F.2d at 772 n.3. This Court may also consider the time required to reach settlement, the existence of substantial objections and non-monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. The factors set forth in *Camden I* support the full award requested.

**The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action:** A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high – with the risk of failure the foremost factor. *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). In this case, Class Counsel received

16

no compensation during the litigation, incurred expenses with no guarantee of repayment, and faced a substantial risk that after protracted, complex, and expensive litigation, the Class and Class Counsel could end up with no recovery at all.

**The Market Rate in Complex, Contingent Litigation:** As this Court pointed out in *Fernandez*, 2017 WL 7798110, at *4, when awarding an attorneys' fee of 35%, that percentage "falls within the range of the customary fee in the private marketplace, where 40 percent fee contracts are common for complex cases such as this." As a result, Class Counsel's requested fee of 36% is within the customary range for cases of this nature especially given that Class Counsel's fees and expenses will not be deducted from the Class Settlement fund and the Settlement provides the Class with important prospective injunctive relief.

**The Novelty and Difficulty of the Questions at Issue:** The factual issues in this case were complex and numerous, including the subject matter of the case (nutraceutical advertising and labelling), scientific issues (including the pharmacological effect of the Neuriva Products' active ingredients and the ability of the various orally-consumed ingredients to enter the blood stream, travel to the brain, cross the blood-brain barrier, and impact brain performance); review of scientific literature (including analysis of studies with respect to the adequacy of their design, potential bias, legitimacy of conclusions, propriety of statistical analysis, and the validity and accuracy of the conclusions). The legal issues present in the case were also complex, involving, among others, whether Plaintiffs' claims are preempted by federal law, whether Plaintiffs' claims constitute solely a challenge to a lack of substantiation of the product, whether Defendants' claims amount to false and misleading statements under federal and state law, and whether Plaintiffs can assert claims for products they did not purchase based on universal misrepresentations. Finally, class actions are inherently complex cases, and Plaintiffs' cases would have been no different.

**The Skill, Experience, and Reputation of Class Counsel:** This litigation required a high degree of skill and experience. Class Counsel have decades of experience successfully litigating national class actions. Beyond that, Class Counsel's reputation, diligence, expertise, and skill are reflected in how they have handled this case and the results they have achieved. They resolved this dispute efficiently and effectively despite the potential hurdles presented and the arguments raised by Defendants detailed above. The quality of Class Counsel and

their achievement in this case is equally shown by the strength of their opponents, Perkins Coie LLP and Bilzin Sumberg Baena Price & Axelrod LLP who are excellent defense firms. (Bryson Decl. at ¶ 13). This factor thus also favors awarding the requested fee.

**The Result Achieved for the Class:** The result achieved is a major factor to consider in making a fee award and, here, this factor perhaps best establishes the propriety of the requested fee award. *See Hensley v. Eckerhart,* 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto,* 513 F. Supp. 2d at 1342; *Behrens,* 118 F.R.D. at 547–48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of *both* monetary and injunctive relief. *See Poertner*, 618 Fed. App'x at 629; *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *LiPuma,* 406 F. Supp. 2d at 1323. In *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391, at *13-14 (S.D. Fla. Aug. 5, 2013), the Court specifically emphasized the importance of compensating class counsel for their work in extracting non-cash relief when using the percentage-of-the-fund approach.

The results here – a settlement providing $8 million in cash and prospective injunctive relief – are excellent. Defendants are required to remove the precise statements challenged by Plaintiffs from their product labeling and ancillary marketing. These results are powerful evidence supporting the fee award. Indeed, even before final approval of the injunctive relief, Defendants have changed the labelling and marketing on a brand-new Neuriva product not covered by the Settlement.

**The Time and Labor of Class Counsel:** Prior to filing suit, Class Counsel thoroughly investigated all aspects of this case, including (a) becoming thoroughly grounded in the relevant federal regulations and FDA and FTC guidance; (b) reviewing all labelling and marketing of the Neuriva Products, including all available public statements; (c) researching the studies relied upon by Defendants, including investigating potential conflicts of interest and other credibility issues; (d) retaining and working with the consulting experts in reviewing the studies and scientifically evaluating Defendants' claims; (e) interviewing consumers who had purchased Neuriva Products and identifying class representatives; (f)  researching relevant supplement case law and controlling state law; (g) reviewing the records in other relevant supplement cases; and (h) carefully crafting the complaints.

After filing suit, Class Counsel thoroughly reviewed and researched Defendants' motions to dismiss and prepared Amended Complaints addressing those motions; researched legally and factually Defendants' motion to transfer the *Williams* case; and spent substantial time in contentious settlement negotiations, working with the settlement administrator to design an effective notice program, and overseeing the claims process. Additionally, Class Counsel have responded to and will continue to respond to questions from class members about the settlement and their claims.  All of this work was critical in view of the issues involved, the manner in which the case was defended, and the quality of Defendants' counsel.

**The Reaction of the Class to the Settlement:** To date, no class member has opted out or objected to the Settlement, which supports the fee request. *Pinto*, 513 F. Supp. 2d at 1343. The Settlement Class reaction will be further  addressed after the objection deadline on July 27, 2021.

### B.  Class Representative Service Awards

In light of the opinion in *Johnson,*, 975 F.3d at 1255-62, the Class Representatives in this case are not presently moving for Court approval of the service awards.  However, this and other courts have held open the service award issue pending a potential en banc decision in *Johnson*.  *See, e.g., Harvey v. Hammel Kaplan Co., LLC*, No. 3:19-cv-00640, 2020 U.S. Dist. LEXIS, at *9-10, 22 (M.D. Fla. Dec. 7, 2020) (directing defendant to deposit the agreed service awards of $1500.00 in the registry of the Court, to be held until the Eleventh Circuit's issuance of a mandate in *Johnson*); *Metzler et al. v. Med. Mgmt. Int'l, Inc.*, No. 8:19- CV-2289-T-33CPT, 2020 U.S. Dist. LEXIS 187478, at *7-8 (M.D. Fla. Oct. 9, 2020) (court granted final approval of class action settlement and retained jurisdiction for limited purpose of revisiting service awards if Eleventh Circuit reverses *Johnson*).

As in those cases, Plaintiffs respectfully request that this Court retain jurisdiction for the limited purpose of addressing the approval of service awards if the Eleventh Circuit holds a hearing en banc in *Johnson* and reverses the panel decision.  If the Court agrees to retain jurisdiction for this limited purpose, Plaintiffs will promptly petition the Court for an order approving payment of the Service Awards to the Class Representatives if *Johnson* is reversed.

In instituting this litigation, the Class Representatives have acted as private attorneys general seeking a remedy for what appeared to be a public wrong. *See Pinto,* 513 F. Supp. 2d at 1344. The Class Representatives aided in the investigation of these claims and settlement.

Private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public. *See Pinto,* 513 F. Supp. 2d at 1344. Approval of a service award, if allowed by the Eleventh Circuit, is warranted as a matter of policy and is appropriate under applicable precedents. *See Gevaerts v. TD Bank*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *9 (S.D. Fla. Nov. 5, 2015) (approving the requested service awards of $10,000); *Dorado v. Bank of Am., N.A.*, No. 1:16-cv-21147-UU, 2017 WL 5241042, at *7 (S.D. Fla. Mar. 24, 2017) (same); *Feller v. Transamerica Life Ins. Co.*, No. 16-cv-01378-CAS, 2019 WL 6605886, at *14 (C.D. Cal. Feb. 6, 2019) (awarding $10,000 service awards to both class representatives and named plaintiffs).

## CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the Settlement, as well as the application for Class Counsel's fees and expenses. Further, Plaintiffs and Class Counsel request that the Court retain jurisdiction with respect to the class representative service awards in the event that the *NPAS* decision is reversed, vacated, or overruled.


Dated: July 19, 2021                    Respectfully submitted,

                                        /s/ Jonathan B. Cohen
                                        Jonathan B. Cohen (Fla. Bar No. 27620)
                                        Rachel Soffin (Fla. Bar No. 18054)
                                        **MILBERG COLEMAN BRYSON**
                                        **PHILLIPS GROSSMAN, PLLC**
                                        First Tennessee Plaza
                                        800 S. Gay Street, Suite 1100
                                        Knoxville, TN 37929
                                        Telephone: (865) 247-0080
                                        Facsimile: (865) 522-0049
                                        jcohen@milberg.com
                                        rsoffin@milberg.com

                                        Daniel K. Bryson*
                                        Martha A. Geer*
                                        Patrick M. Wallace*
                                        **MILBERG COLEMAN BRYSON**
                                        **PHILLIPS GROSSMAN, PLLC**
                                        900 West Morgan Street
                                        Raleigh, NC 27603
                                        Telephone: (919) 600-5000

Facsimile: 919-600-5035
dbryson@milberg.com
mgeer@milberg.com
pwallace@milberg.com

Matthew D. Schultz (Fla. Bar No. 640326)
**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR, PA**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-6140
mschultz@levinlaw.com

Nick Suciu*
**BARBAT, MANSOUR, & SUCIU PLLC**
1644 Bracken Rd.
Bloomfield Hills, MI 48302
Telephone:(313) 303-3472
nicksuciu@bmslawyers.com

Jonathan Shub
Kevin Laukaitis
**SHUB LAW FIRM LLC**
134 Kings Hwy E, 2nd Floor
Haddonfield, NJ 08033
Telephone: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

L. Timothy Fisher*
Blair Reed*
Sarah Westcot*
**BURSOR & FISHER, P.A.**
1990 North California Blvd, Ste. 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
ltfisher@bursor.com
breed@bursor.com
swestcot@bursor.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Class*

21

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2021, I caused the foregoing to be filed via the Court's electronic filing system which will notify all counsel of record of the same.

/s/ *Jonathan B. Cohen*
Jonathan B. Cohen