UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| DAVID WILLIAMS, CAROLL ANGLADE, THOMAS MATTHEWS, MARITZA ANGELES, and HOWARD CLARK, *individually, and on behalf of other similarly situated individuals*, <br><br> Plaintiffs, <br><br> v. <br><br> RECKITT BENCKISER LLC and RB HEALTH (US) LLC, <br><br> Defendants. | CASE NO. 1:20-cv-23564-MGC |

## DECLARATION OF DANIEL K. BRYSON IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

I, DANIEL K. BRYSON, hereby declare as follows:

1. I am Co-Lead Settlement Class Counsel for Plaintiffs in this action. I make this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Class Counsel's Motion for Attorneys' Fees and Expenses and Service Awards. I have actively participated in the conduct of this litigation, have personal knowledge of the matters set forth herein, and if called to testify, could and would testify competently thereto.

2. My firm, Milberg Coleman Bryson Phillips Grossman, PLLC,[1] along with Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., Barbat Mansour Suciu & Tomina PLLC, Shub Law Firm LLC, and Bursor & Fisher, P.A. (collectively "Class Counsel") have principally litigated this case and have extensive experience in prosecuting

---

[1] The firms Whitfield Bryson LLP, along with Greg Coleman Law, PC, recently merged.

complex class actions across the country, including substantial experience in litigating consumer fraud and defective product cases. (ECF No. 52-2, Exs. A-F) (resumés of Class Counsel).

3. Class Counsel's years of experience representing consumers in complex class action cases contributed to an awareness of Counsel's settlement leverage, as well as the needs of the Plaintiffs and the Settlement Class. Settlement Class Counsel believed, and continue to believe, that our clients have claims that would ultimately prevail in the litigation on a class-wide basis. However, Settlement Class Counsel are aware that a successful outcome is uncertain and would be achieved, if at all, only after several years of prolonged, contentious litigation with the attendant risk of drawn-out interlocutory and final appeals, during which time, Defendants would continue their false advertising campaign. In my opinion, as well as the opinion of other Settlement Class Counsel, based on our substantial experience, the Class Settlement warrants the Court's final approval.

4. The sections that follow explain the course of the litigation and the hard-fought negotiations that resulted in the Settlement Agreement now before the Court for final approval. As described below, the Settlement provides significant monetary relief to consumers throughout the country and requires significant substantive changes to Defendants' marketing and labeling. The Class Settlement is, in the opinion of the undersigned and the other Class Counsel, fair, reasonable, and adequate, and worthy of final approval.

## BACKGROUND AND RELEVANT LITIGATION HISTORY

5. Defendants Reckitt Benckiser LLC and RB Health (US) LLC ("Defendants") have marketed and sold a line of brain supplement products called "Neuriva" since April 2019. Plaintiffs' class actions initially addressed Defendants' marketing claims regarding Neuriva Original and Neuriva Plus, but later added a third product, Neuriva De-Stress (collectively "Neuriva" or "Neuriva Products"). The central theme in all of Defendants' marketing and product labelling of the Neuriva Products is that they contain ingredients that have been clinically and scientifically proven to improve brain performance.

6. Prior to initiating this litigation, Settlement Class Counsel spent substantial time in pre-suit investigation. Settlement Class Counsel performed extensive research into the two active ingredients of Neuriva Original and Neuriva Plus: coffee cherry extract

2

(branded "Neurofactor") and soy-based phosphatidylserine (branded "Sharp PS"). Counsel investigated the third-party suppliers of the ingredients, their relationship to Defendants, and the claims made by the suppliers. In addition, because the marketing claims would be central to any case against Defendants, Settlement Class Counsel did a comprehensive investigation into Defendants' marketing and advertising campaigns, including television commercials, in print, on their website, and on social media. Settlement Class Counsel also collected and reviewed not only the scientific and clinical studies cited in Defendants' marketing, but scores of other clinical and scientific studies relating to Neuriva's ingredients and relevant to the falsity of Defendants' marketing claims that the ingredients were "clinically proven" to enhance brain performance.

7. In addition, Class Counsel retained and consulted a highly respected expert in neuroscience, pharmacology, and physiology regarding the state of the relevant scientific literature and biochemistry mechanisms relevant to the Neuriva active ingredients. Class Counsel also retained a second equally well-regarded biostatistician to advise them on scientific test design and statistical analysis, especially with regard to studies performed on coffee cherry extract.

8. Once Settlement Class Counsel had sufficiently proceeded with the pre-suit investigation, we spent many hours interviewing consumers who had purchased Neuriva Products in order to identify strong candidates who would properly discharge their fiduciary duties as class representatives. Interviews with other consumers gave us information regarding consumers' reactions to and reliance on the claims Defendants were making.

9. Settlement Class Counsel also carefully reviewed relevant state and federal law, including federal regulations and relevant FDA and FTC guidance regarding dietary supplements. Class Counsel further reviewed the filings and court decisions in similar litigation addressing comparable supplements in order to identify legal and factual issues we needed to be prepared to address. Once we had class representatives, we fully researched the law in California, Florida, and New York.

10. After completion of Settlement Class Counsel's pre-suit investigation, this litigation first began June 19, 2020, when Plaintiff Thomas Matthews filed a class action lawsuit against the Defendants in the United States District Court for the Eastern District of California. Following the filing of the *Matthews* action, David Williams and Caroll Anglade

3

filed a class action lawsuit in the United States District Court for the Southern District of Florida on August 26, 2020, and Maritza Angeles filed a class action complaint in the United States District Court for the Southern District of New York on September 2, 2020. Separately, Howard Clark sent a pre-suit demand letter to Defendants in May 2020 but did not file a complaint.

11. Each of the lawsuits alleged that Defendants deceptively marketed and sold the brain supplement Neuriva as "clinically proven" and proven by science to improve brain performance in defined areas (for example, focus, memory, learning, accuracy, concentration, or reasoning). Plaintiffs alleged, among other things, that Neuriva's ingredients were not clinically or scientifically proven to improve brain performance, and that such claims were false or misleading.

12. The *Matthews*, *Williams*, and *Angeles* actions originally made allegations concerning only Neuriva Original and Neuriva Plus, but were subsequently amended to include Neuriva De-Stress, which had identical labelling and marketing. In addition to coffee cherry extract, Neuriva De-Stress included a second active ingredient "French Melon Concentrate." Before adding Neuriva De-Stress to the lawsuits, Settlement Class Counsel consulted with our pharmacology/neuroscience expert regarding whether "clinical proof," as claimed by Defendants, existed that the new ingredient would in fact have the asserted effect on the brain.

13. To defend these cases, Defendants hired Perkins Coie LLP, well-qualified and experienced class action attorneys with particular experience in cases involving nutritional and health claims – attorneys guaranteed to provide Defendants with a vigorous and comprehensive defense. Defendants denied, and continue to deny, that Neuriva's labels or marketing were false or misleading. In the *Matthews* and *Williams* cases, Defendants filed motions to dismiss the initial complaint and, in *Williams*, a motion to dismiss the Amended Complaint. Class Counsel expect that Defendants would likewise have moved to dismiss the *Angeles* action and the Clark action that would have been filed.

14. In addition, although this Court had scheduled *Williams* for trial on March 14, 2022, Defendants filed a motion based on the "first-filed" rule to transfer the *Williams* case to the Eastern District of California where *Matthews* is pending or to stay the *Williams* case pending a decision in the *Matthews* case. Settlement Class Counsel believe that Defendants

4

would have filed an identical motion in the *Angeles* case pending in the Southern District of New York. Counsel believe that those motions, if allowed, would have very substantially delayed the cases from proceeding. Significantly, even though the *Matthews* case was filed in June 2020, no judge had been assigned to the case by the time the Parties notified the Court in January 2021 that the case had been settled.

15. In response to Defendants' motions to dismiss, Counsel for the *Matthews* and *Williams* plaintiffs assessed their complaints and fully researched Defendants' arguments. While believing the complaints could withstand the motions, Counsel opted to strengthen their allegations by filing amended complaints. Separately, the *Williams* plaintiffs vigorously opposed Defendants' motion to stay or to transfer the action to the Eastern District of California, a matter that the Parties fully briefed. The time for Defendants to respond to the *Angeles* complaint had not expired by the time the parties successfully engaged in mediation.

16. Although Plaintiffs felt confident in the merits of their claims, they also knew of the significant hurdles in litigating their claims to a successful adversarial resolution. In the event litigation had continued, or were to continue, Defendants have maintained they would continue to seek a Rule 12(b) dismissal of Plaintiffs' claims and would aggressively oppose class certification, including arguing that no common deception or reliance existed and opposing the ability of Plaintiffs to represent purchasers of Neuriva Products that Plaintiffs had not purchased. Settlement Class Counsel anticipate that if their motions for class certification were granted, Defendants would undoubtedly seek an interlocutory appeal under Rule 23(f). The scope of discovery would likely be hotly contested, and the case could become a costly and time-consuming battle of experts. Motion practice would include not only motions for summary judgment but also *Daubert* motions by both Plaintiffs and Defendants. In all likelihood, any favorable result at trial would lead to lengthy appeals.

17. Regardless of the risks, Settlement Class Counsel understood that, no matter how confident we were in ultimately reaching a successful resolution, the false and misleading marketing campaign that prompted the litigation in the first place would continue unabated for years upon years absent a settlement.

## The Settlement Achieves an Excellent Result for the Settlement Class and is the Result of <u>Extensive Investigation, Hard-Fought Litigation and Arm's-Length Negotiations</u>

### A.   <u>History of Negotiations</u>

18.   The Parties decided to explore the possibility of a mediated settlement while Neuriva was a relatively new product and before the potential for harm and damages, the existence of which Defendants disputed, would drastically increase.

19.   The parties agreed to mediate the case on October 2, 2020, with Jill Sperber of Judicate West. Ms. Sperber is a well-respected mediator whose prior legal practice included litigating complex cases. Consequently, she is frequently asked to help resolve complex civil cases like this one.

20.   Prior to the October 2 mediation, Plaintiffs obtained, under Rule 408, informal discovery from Defendants regarding the claimed clinical and scientific basis for Defendants' labelling and marketing claims and regarding Neuriva's historical sales data. In preparation for the mediation, Settlement Class Counsel consulted with Plaintiffs' pharmacology/neuroscience expert regarding the studies Defendants provided as part of the informal discovery. Given Settlement Class Counsel's pre-suit and continuing factual and legal investigation together with the informal discovery, Class Counsel was well-informed and prepared to formulate an appropriate demand and aggressively negotiate a reasonable resolution of the Class' claims.

21.   The October 2 mediation lasted into the evening, with both parties hotly contesting: (a) the merits of each other's litigation positions; (b) what settlement structure to adopt; and (c) the scope of monetary relief. The October 2 mediation ended without a settlement and without an agreement to engage in any future mediation or negotiations.

22.   After the October 2 mediation, Ms. Sperber took the initiative to attempt to re-engage the Parties in discussions about a potential resolution. With Ms. Sperber acting as an intermediary, the Parties agreed to conduct a second mediation on November 30, 2020. The November 30 mediation was, similar to the previous session, hotly contested and again lasted into the evening, but the parties made significant progress towards a resolution regarding both monetary and injunctive relief. The Parties finalized a term sheet incorporating the material terms agreed-upon with the assistance of Ms. Sperber at the November 30 mediation. After

6

the November 30 mediation, the Parties continued negotiations telephonically and were able to reach a final agreement regarding the remaining details related to the injunctive relief. In order to prevent Settlement Class Members and future purchasers of Neuriva Products from continuing to be exposed to claims that Neuriva ingredients are clinically or scientifically proven to improve brain performance, Settlement Class Counsel had refused to settle this case without a change in Neuriva's labelling and marketing.

23. Thereafter, the parties engaged in discussion related to the finer details needed for a formal settlement agreement and in January 2021 finalized the Settlement Agreement that is now before the Court for final approval.

24. The settlement was, at all times, negotiated at arm's length by experienced counsel on both sides, who are well versed in complex class action litigation, particularly with respect to consumer fraud and product defect litigation.

25. In the course of reaching the Settlement, the Parties concluded that a nationwide settlement, encompassing claims of similarly situated purchasers of Neuriva from across the country was an appropriate resolution.

26. The Settlement Class is believed to comprise thousands of Class Members and is defined as follows:

> All persons who purchased for personal consumption and not for resale, one or more of the Neuriva Products, from Reckitt or an authorized reseller, in the United States, between the dates of January 1, 2019 and the date of Preliminary Approval of the Settlement by the Court. Excluded from the Settlement Class shall be the Honorable Erica P. Grosjean, the Honorable Marcia G. Cooke, the Honorable Jonathan Goodman, the Honorable Ronnie Abrams, counsel to the Parties, Jill Sperber, and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; Reckitt, any entity in which Reckitt has a controlling interest, any of Reckitt's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and any persons who timely opt-out of the Settlement Class.

27. Class Counsel negotiated the Settlement vigorously and at arm's-length. Plaintiffs were represented by experienced counsel at these negotiations, which were informed by the experiences of counsel for both sides in the litigation. Class Counsel was well-positioned to evaluate and negotiate this settlement not only based on their years of experience litigating similar cases, but also due to their extensive pre- and post-suit

investigatory work that involved an analysis of the Defendants' marketing efforts, the consultation of eminently qualified experts, extensive review of scientific literature, thorough legal research, and informal discovery.

      **B.**      **Settlement Benefits**

      28.      The settlement benefits are consistent with the goals of the Class based on their claims in this action, namely, to have the opportunity for monetary compensation and injunctive relief that would prevent Defendants from continuing to mislead consumers that the ingredients in their products are "proven" to improve brain performance.

      29.      Defendants agreed to pay up to $8,000,000 in monetary relief for Settlement Class Members. While Class Members without Proof of Purchase may still receive compensation, a Class Member's compensation amount will be dependent on whether they have Proof of Purchase. Settlement Class Members who have Proof of Purchase may file a claim for up to $32.50 per claim, for a total of $65.00. No Settlement Class Member may receive more than the actual purchase amount reflected in their Proof of Purchase. Settlement Class Members who do not provide Proof of Purchase may make up to four claims of $5.00 each for a total not to exceed $20.00. Should the Settlement Class Members file claims exceeding $8,000,000, each claim will be reduced pro rata.

      30.      While Settlement Class Members may not recover all their actual damages, Class Counsel believes the Settlement Agreement provides Class Members with a significant percentage of their damages. Currently, Defendants on their Amazon store page are offering Neuriva Original for sale for $21.99 (for 30 capsules) and Neuriva Plus for $32.47 (for 30 capsules).

      31.      In addition to monetary relief, Defendants agreed to change all references on labels or in ancillary marketing from Neuriva's ingredients being "Clinically Proven" and "Science Proved" to being "Clinically Tested" and "Science Tested" or other similar language such as stating what clinical or scientific studies have "shown." Exhibit E to the Settlement Agreement portrays how the changes to the labeling will look. (ECF No. 52-1 Ex. E). The labeling and marketing changes will take place six months after a Final Approval Order and Judgment is entered and remain in effect for two years. The injunctive relief provision allows both Plaintiffs and Defendants to seek relief from the Court should the state of the science change. Under the terms of the agreement, in the event that "new research, information, or

regulatory or legal developments" arise that would warrant expanding the injunction to further restrict Defendants' marketing statements, Plaintiffs may seek modification of the injunction from this Court. The Parties agree that the Court shall retain jurisdiction to enforce such injunctive relief, if necessary.

32. Even though the injunctive relief provision has not yet gone into effect, it has already had an impact. Defendants have introduced another supplement called Neuriva Brain + Eye. Even though that product is not covered by this Settlement, the labeling for this product uses the language set forth in the Agreement:



C. **Preliminary Approval**

33. On April 23, 2021, this Court granted preliminary approval to the Settlement, finding that the Settlement falls "within the range of reasonableness" and appointing me and my co-counsel as Settlement Class Counsel pending final approval.( ECF No. 57, ¶ 1).

34. On April 26, 2021, the Court requested supplemental briefing concerning the injunctive relief made available in the Settlement. (ECF No. 56). Settlement Class Counsel, as well as Defendants, submitted supplemental briefing on May 24, 2021. (ECF Nos. 61 and 62). In addition, as indicated in Defendants' supplemental briefing (ECF No. 62), the parties have agreed to an Amended Settlement Agreement clarifying the wording of the injunctive relief to explain that Neuriva's ingredients have been clinically tested and not the finished

9

product itself.

## RISKS OF CONTINUED LITIGATION

35. Plaintiffs and Settlement Class Counsel remain confident in the strength of their case, but they are also pragmatic and aware of the various defenses available to Defendants, which are complex. There is no doubt that continued litigation here would be difficult, expensive, and time consuming. The risks and obstacles in this case are as great if not greater than those in other supplement false advertising class actions, and this case would likely have taken years to successfully prosecute, with the risk that ultimately there would be no recovery at all. Recovery, if any, by any means other than settlement would require additional years of litigation in the district courts and on appeal.

36. If this Action proceeded to trial, the Parties would incur significant expenses, including the further payment of expert witnesses and consultants, along with substantial time devoted to briefing Plaintiffs' motion for class certification, *Daubert* motions, and summary judgment motions, preparing for and conducting trial, post-trial motion practice, and likely appeals (both potentially interlocutory and final). Absent a settlement, the final resolution of this litigation through the trial process may require several more months or even years of protracted, adversarial litigation and appeals, which would delay relief to Settlement Class Members.

37. Further, each of these risks of continued litigation could have impeded the successful prosecution of these claims at trial and in an eventual appeal – resulting in zero benefit to the Settlement Class. Under the circumstances, Plaintiffs and Settlement Counsel appropriately determined that the Settlement reached with Defendants outweighs the gamble of continued litigation.

38. Whether the Action would have been tried as a class action is also relevant in assessing the fairness of the Settlement. As the Court had not yet certified a class at the time the Agreement was executed, it is unclear whether certification would have been granted, given the nature of Defendants' arguments. Litigating class certification would alone have required the Parties to expend significant resources. And a denial of class certification would have left the Class Members without any compensation.

**Opinions of Class Counsel and Class Representatives Regarding the Settlement**

39. It is the opinion of Class Counsel who achieved the Settlement that, given the

numerable risks of extended litigation, this Settlement is fair, reasonable, and adequate to the members of the Settlement Class.

40. Settlement Class Counsel have significant experience in the litigation, certification, trial, and settlement of national class actions, and have recovered hundreds of millions of dollars for the classes they have represented. Settlement Class Counsel includes firms with appellate expertise, which was used to analyze the chances of success in both the Federal appellate courts and potentially the United States Supreme Court. The experience, resources, and knowledge Settlement Class Counsel bring to this Action is extensive and formidable.

41. Settlement Class Counsel have devoted substantial time and resources to this Action, are qualified to represent the Settlement Class, and have, along with the Class Representatives, vigorously protected the interests of the Settlement Class.

42. The Class Representatives assumed the risks in filing the Action and provided assistance that enabled Settlement Class Counsel to successfully prosecute the Action and reach the Settlement.

43. The Class Representatives' efforts include assisting in preparation and filing of the Complaints, providing support to Settlement Class Counsel relating to their claims and attempts to resolve those claims with Defendants, providing documents to support their claims, maintaining regular contact with Settlement Class Counsel regarding the status of their case, and otherwise working with Settlement Class Counsel to prosecute and resolve these actions favorably on behalf of all Settlement Class Members in the United States.

44. Each of the Class Representatives fully support the Settlement.

45. The Settlement provides immediate and real benefits to Defendants' customers who purchased Neuriva and provides substantial injunctive relief to protect future customers. In particular, Settlement Class Counsel strongly believe that the Settlement swiftly and precisely corrects the main basis for Plaintiffs' claims by securing changes to Defendants' marketing and by providing monetary compensation for those who already purchased Neuriva. Absent a settlement, Defendants would have no reason to change their false marketing of Neuriva; indeed, continued litigation would likely have cemented Defendants' decision to maintain their marketing strategy.

46.     The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner.

### ATTORNEYS' FEES AND EXPENSES

47.     Defendants have agreed to pay attorneys' fees and expenses not to exceed $2,900,000. The amount of attorneys' fees and costs and incentive payments that Defendants will agree to pay, if so ordered, was negotiated only after agreement was reached on relief for the Class so as to ensure that Settlement Class Members' benefits were not impacted by negotiations over attorneys' fees, costs, and incentive payments.

48.     It is important to note that the payment of attorneys' fees, costs, and class representative incentive awards will not diminish the benefits available to Settlement Class Members under the Settlement Agreement. Defendants are obligated under the Settlement Agreement to pay these amounts separate and apart from the $8,000,000 Settlement fund. Settlement Class Members will receive full benefits under the Agreement if the Court approves these awards, and any proceeding relating to the payment of these awards will not delay the provision of the benefits.

49.     Settlement Class Counsel requests a fee and expense award of $2,900,000.00, and incentive awards of $2,000.00 for each of the Class Representatives, both of which are fair and reasonable.

50.     As a summary of the work in this matter, Settlement Class Counsel spent substantial time investigating and litigating this case, including but not limited to the following:

   a.   Reviewing all labelling and marketing of the Neuriva Products, including all available public statements;
   b.   Becoming thoroughly grounded in the relevant federal regulations and FDA and FTC guidance;
   c.   Researching the studies relied upon by Defendants, including investigating potential conflicts of interest of the researchers and other credibility issues;
   d.   Retaining consulting experts;
   e.   Working with the consulting experts in reviewing the studies and scientifically evaluating Defendants' claims;

12

  f. Interviewing consumers who had purchased Neuriva Products and identifying class representatives;

  g. Researching relevant supplement case law and controlling state law;

  h. Reviewing the records in other relevant supplement cases;

  i. Carefully crafting the complaints;

  j. Reviewing and researching Defendants' motions to dismiss;

  k. Preparing Amended Complaints;

  l. Reviewing, researching, and opposing Defendants' motion to stay or transfer the *Williams* case;

  m. Preparing for and participating in two mediations and extensive negotiations outside of the mediations;

  n. Working with the settlement administrator to design an effective notice program;

  o. Overseeing the claims process; and

  p. Responding to questions from Class Representatives and Class Members regarding the Settlement and their claims.

  51. To date, Settlement Class Counsel has not received any compensation for the work performed to investigate, bring, and prosecute this Action.

  52. In addition, Settlement Class Counsel has incurred a total of $27,413.68 in advanced litigation expenses. These expenses were reasonable and necessarily incurred on behalf of the class and paid by Settlement Class Counsel, consisting of consulting expert fees, filing fees, research, mediation, and other necessary expenses. Settlement Class Counsel advanced this sum without receiving any reimbursement. These expenses are reflected in the books of Settlement Class Counsel's firms, which are accurately maintained. Settlement Class Counsel request reimbursement of their expenses as part of their attorneys' fee request and not in addition to it.

## **CONCLUSION**

  53. Settlement Class Counsel collectively have years of experience representing consumers in prosecuting complex class action cases, including those involving supplements. This experience provided, including during settlement negotiations, an awareness both of the extent of Plaintiffs' settlement leverage and the needs of our clients and the Class. Settlement

Class Counsel believed, and continue to believe, that our clients had claims that would have ultimately prevailed at the completion of the litigation and on a class-wide basis. However, Settlement Class Counsel are aware that the outcome in each of our cases was uncertain and that a favorable outcome would have been achieved, if at all, only after prolonged, arduous litigation with the attendant risk of drawn-out appeals.

54. In my opinion, as well as the opinion of the other Settlement Class Counsel, based on our substantial experience as outlined above, the Settlement warrants the Court's final approval. Its terms are not only fair, reasonable, and adequate, but also are a favorable result for the Settlement Class. The Settlement provides substantial and concrete benefits to Class Members. Based on all of the foregoing factors, we respectfully request that the Court grant final approval of the Agreement.

55. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of July, 2021.

*[Signature]*
Dan Bryson (Jul 19, 2021 17:47 EDT)

Daniel K. Bryson
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
900 West Morgan Street
Raleigh, NC 27603
(919) 600-5000
dbryson@milberg.com

# Declaration of DKB in Support of Final Approval and Attorneys' Fees Final

Final Audit Report                                                                                       2021-07-19

| | |
|---|---|
| Created: | 2021-07-19 |
| By: | Tracy Smith (tracy@whitfieldbryson.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA9UI_I9ZYTHJUGwe7l3PXNk5_gmTspJH4 |

## "Declaration of DKB in Support of Final Approval and Attorneys' Fees Final" History

- Document created by Tracy Smith (tracy@whitfieldbryson.com)
  2021-07-19 - 9:40:02 PM GMT- IP address: 24.171.171.250

- Document emailed to Dan Bryson (dbryson@milberg.com) for signature
  2021-07-19 - 9:40:40 PM GMT

- Email viewed by Dan Bryson (dbryson@milberg.com)
  2021-07-19 - 9:47:18 PM GMT- IP address: 107.12.2.183

- Document e-signed by Dan Bryson (dbryson@milberg.com)
  Signature Date: 2021-07-19 - 9:47:43 PM GMT - Time Source: server- IP address: 107.12.2.183

- Agreement completed.
  2021-07-19 - 9:47:43 PM GMT

Adobe Sign