**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No. 20-cv-23564-MGC

|  |  |
|---|---|
| | : |
| DAVID WILLIAMS, et al., | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : |
| RECKITT BENCKISER LLC, et al., | : |
| | : |
| | : |
| Defendants. | : |
| | : |

**BRIEF OF AMICUS CURIAE BY**
**<u>TRUTH IN ADVERTISING, INC.</u>**

Truth in Advertising, Inc. ("TINA.org") submits this amicus curiae brief per its motion.

TINA.org therefore states the following as its amicus curiae brief:

**<u>INTRODUCTION</u>**

The parties to this litigation have struck a deal in which plaintiffs' counsel will pocket

nearly $3 million in exchange for allowing Reckitt Benckiser LLC and RB Health (US) LLC

(collectively, "RB") to continue their deceptive advertising, pay a nominal sum to a small

percentage of class members, and bind the hands of a nationwide class from ever holding RB

accountable for the kind of deception that led to this lawsuit. For these reasons, TINA.org, a

national consumer advocacy organization dedicated to protecting consumers from false and

deceptive advertising, opposes the proposed settlement, and respectfully urges the Court to deny

final approval.

## INTEREST OF AMICUS CURIAE

TINA.org is a 501(c)(3) nonpartisan, nonprofit consumer advocacy organization whose mission is to combat systemic and individual harms caused by deceptive marketing. To further its mission, TINA.org performs in-depth investigations and files complaints with federal and state government agencies, among others, urging them to take action to put an end to various companies' deceptive marketing practices.[1] As explained in detail in the attached Motion for Leave to File Brief as Amicus Curiae in Opposition to Proposed Settlement, TINA.org has an important interest and a valuable perspective on the issues presented in this case.[2]

## ARGUMENT

The essence of plaintiffs' complaint is that RB deceives consumers by marketing its Neuriva supplements as clinically and scientifically proven to enhance brain performance in the areas of focus, memory, learning, accuracy, concentration, and reasoning when competent scientific evidence does not support, and even contradicts, these marketing claims. Am. Consolidated Compl. at ¶¶ 7, 9, 12. Such deceptive marketing will remain unchanged if the proposed settlement agreement is granted final approval, and class members, most of whom will receive nothing from the resolution of the case, will never be able to do anything about it. Meanwhile, plaintiffs' counsel will receive nearly $3 million, and RB will continue making deceptive claims to millions of Americans concerned about cognitive decline.[3]

---

[1] Since 2015, state and federal agencies have obtained more than $250 million from companies engaged in false and deceptive marketing based on TINA.org legal actions and evidence, and returned millions in ill-gotten gains to consumers.

[2] Neither party nor their counsel played any part in the drafting of this brief or contributed in any other way.

[3] While there may be other terms of the proposed settlement agreement that are unfair to consumers, this brief focuses exclusively on the injunctive relief, monetary relief, attorneys' fees, and release provisions.

2

I.     **The Injunctive Relief is Valueless and Serves Only to Protect RB.**

The substance, scope, and duration of the injunctive relief in the proposed agreement is

grossly inadequate and, as such, the settlement should not be approved.

### A.  The Prohibited Language in The Settlement Does Not Require RB to Make Any Material Changes and Only Serves to Protect the Company.

The proposed settlement agreement gives the mistaken impression that RB is making

material changes to its marketing of Neuriva when, in reality, the injunctive relief is illusory and

only benefits the company. Specifically, the settlement agreement only prohibits RB from using

a single word in its marketing – "proven" – but permits RB to use the phrase "clinically tested"

or any other synonym for "proven" that it cares to use. Settlement Agreement and Release, at ¶

IV.A. The elimination of a single word has absolutely no impact on the deceptive message

communicated to consumers as RB has already found a phrase that conveys the exact same

message as its previous marketing message – that there is scientific evidence establishing the

truth of its deceptive claims. *See Removatron Int'l Corp. v. Federal Trade Comm.,* 884 F. 2d

1489, 1497 (1st Cir. 1989) ("The common-sense net impression of petitioners' advertising claims

is that their machine can remove hair permanently and that this claim is supported by scientific

evidence. … [P]etitioners argue that the words 'clinically tested' do not mean, and would not be

taken by a reasonable person as meaning, 'supported by rigorous scientific tests.' … Regardless

of any actual differences, … petitioners have offered no basis for us to find that lay people would

make such a fine distinction."); *Rexall Sundown, Inc. v. Perrigo Co.,* 651 F. Supp. 2d 9, 35

(E.D.N.Y. Sept. 10, 2009) ("The Court concludes that the claim 'clinically tested' is susceptible

to more than one reasonable interpretation…"). *See also e.g.,* HFL Solutions, Inc., Blood Sugar

Optimizer Dietary Supplements, Nat'l Adver. Div. of the Better Bus. Bureau, Case No. 6000

(Sept. 9, 2016) (Exhibit A) ("the claim 'clinically researched,' while literally true, is misleading.

3

A consumer could reasonably believe that because a supplement was the subject of small human clinical trials that it is effective, a message that is not supported by the evidence in the record. Consequently, NAD recommended that the advertiser discontinue this claim."); Fiore RX, LLC, Antifungal Nail Lacquer, Nat'l Adver. Div. of the Better Bus. Bureau, Case No. 5600 (June 24, 2014) (Exhibit B) ("The establishment claim, that Propolis is 'proven effective against bacteria, viruses, and fungi,' is held to a higher standard of proof, as 'clinically proven' or 'clinically tested' claims are, in essence, a promise that there is scientific evidence that proves or establishes the truth of an advertiser's claims."); Interceuticals, Inc., BetterWOMAN, Nat'l Adver. Div. of the Better Bus. Bureau, Case No. 5485 (July 10, 2012) (Exhibit C) ("Clinically tested claims require stronger substantiation because 'they are, in essence, a promise that there is scientific evidence that proves or 'establishes' the truth of the statement.'"); NutriSystem,Inc., Nutrisystem D Program, Nat'l Adver. Div. of the Better Bus. Bureau, Case No. 5275 (Jan. 10, 2011) (Exhibit D) ("A 'clinically tested' claim is an establishment claim. These types of claims are held to a very high standard of proof because they are, in essence, a promise that there is scientific evidence that proves or 'establishes' the truth of the statement."); Ganeden Biotech, Inc., Digestive Advantage LI, Nat'l Adver. Div. of the Better Bus. Bureau, Case No. 4352 (June 29, 2005) (Exhibit E) ("While it may be argued that the claim 'clinically tested' is literally truthful since the product is currently undergoing testing, the statement 'clinically tested' appears in the context of a specific performance claim thereby giving rise to the implication that the product has been *clinically proven* to provide 24 hour relief.");[4] Hi Smile Pty Ltd, Adver. Standards

---

[4] The National Advertising Division opened up an investigation into Neuriva regarding its brain health and "clinically proven" claims but closed it due to the pending litigation. RB Health, Neuriva Dietary Supplement, Nat'l Adver. Div. of the Better Bus. Bureau, Case No. 6383 (June 25, 2020) (Exhibit F).

Auth. (Jan. 17, 2021), https://www.asa.org.uk/rulings/hismile-pty-ltd-g20-1086513-hismile-pty-ltd.html ("We therefore considered that the methodology was not robust enough to prove the claims in the ads. We believed therefore that it would not meet what consumers would understand by the claims "clinically proven" or "tested.""").

And even if the removal of the single word "tested" were sufficient to remedy the deceptive marketing at issue, which it is not, RB glosses over the minor word change in such a way that consumers are not likely to notice it, as the following screen shots illustrate.

 

*Old Neuriva packaging*          *New Neuriva packaging[5]*

In addition, there is nothing in the proposed settlement agreement that prohibits RB from using countless other synonymous terms to achieve the same misleading marketing message that its Neuriva supplements are properly substantiated by scientific evidence to improve cognitive

---

[5] Neuriva Brain + Eye is not one of the products listed in the proposed settlement agreement, which only lists Neuriva Original, Neuriva Plus, and Neuriva De-Stress as the "Neuriva Products." Settlement Agreement and Release ¶ I.U.

15485005v.1

functioning – the very claims at issue in plaintiffs' complaint. For example, pursuant to the proposed settlement terms, RB may continue claiming Neuriva is "backed by real science" – a deceptive claim specifically identified in plaintiffs' complaint. Am. Consolidated Compl. ¶ 6 ("Defendants have engaged in a uniformly deceptive advertising and marketing campaign … According to Defendants' repeated statements in their advertising, marketing, and labeling, Neuriva's ingredients are 'backed by science' and 'clinically proven' to improve consumers' focus, accuracy, memory, learning, and concentration." ). And there is nothing that prohibits RB from claiming that there is "science behind Neuriva," "real science that's neuroscientist approved," or that its ingredients are "clinically tested…[and] shown" as it currently does. The following screen shots show some examples of current RB marketing materials, all of which are permissible pursuant to the proposed settlement agreement:

**Schiff Vitamins website as of July 14, 2021[6]**



---

[6] Schiff Neuriva Webpage, https://www.schiffvitamins.com/pages/neuriva-brain-health-supplement-research?gclsrc=aw.ds&ds_rl=1279704?cb (last visited July 23, 2021); Neuriva Think Bigger Offer, https://www.schiffvitamins.com/pages/neuriva-think-bigger-offer (last visited July 23, 2021).

15485005v.1





**YouTube Video as of July 14, 2021[7]**



[Narrative by Mayim Bialik]:*"Newsflash! Not all brain supplements are created equal. But Neuriva is backed by real science and vetted by a real neuroscientist, me. ... Here's why I love the science behind Neuriva. It starts with two clinically tested ingredients. ... Neuriva Plus fuels six key indicators of brain performance to give you all sorts of big brain energy like this: memory, focus, concentration, learning, accuracy, reasoning…"*

---

[7] Neuriva ThinkBigger – Science Explained by Mayim YouTube Video, https://www.youtube.com/watch?v=Ck7NZlwrCek&t=89s.

**July 5, 2021 Instagram post[8]**



**May 17, 2021 Facebook post[9]**



---

[8] Neuriva July 5, 2021 Instagram post, https://www.instagram.com/p/CQ85BgAN4DZ/.
[9] The Science Behind Neuriva, https://fb.watch/v/3hKR6YMoj/.

Put simply, RB's agreement to stop using one word in its marketing confers no benefit to the class, and will only benefit RB by providing it with a court-sanctioned settlement approving its continued use of deceptive marketing claims.

Similar injunctive relief was flatly rejected by the Seventh Circuit in *Pearson v. NBTY, Inc.,* 772 F.3d 778 (7th Cir. 2014). In *Pearson*, Judge Posner explained that because the injunctive relief only required cosmetic word edits to the labels of the glucosamine bottles, the benefits inured solely to defendants, not consumers:

> A larger objection to the injunction is that it's superfluous—or even adverse to consumers. Given the emphasis that class counsel place on the fraudulent character of [defendant]'s claims, [defendant] might have an incentive even without an injunction to change them. The injunction actually gives it protection by allowing it, with a judicial imprimatur (because it's part of a settlement approved by the district court), to preserve the substance of the claims by making—as we're about to see— purely cosmetic changes in wording, which [defendant] in effect is seeking judicial approval of. For the injunction seems substantively empty. In place of "support[s] renewal of cartilage" [defendant] is to substitute "contains a key building block of cartilage." We see no substantive change.

*Id.* at 785. The same criticism is appropriately levied at the proposed settlement in this case; the injunctive relief is substantively empty. Specifically, the failure to include catch-all language in the agreement that would prohibit RB from suggesting or implying in any manner that its supplements are properly substantiated by competent and reliable scientific evidence to improve various measures of cognitive functioning means that changes to its marketing as a result of this settlement agreement will not affect its ability to continue with its deceptive marketing

9

message.[10] For this reason, the agreement is unfair to class members and should be rejected.[11]

*See Koby v. ARS Nat'l Servs., Inc.,* 846 F.3d 1071, 1080 (9th Cir. 2017) (reversing a lower

court's approval of a class-action settlement agreement and determining that injunctive relief that

---

[10] There are two flaws in RB's May 24, 2021 argument that the proposed injunction is meaningful because significant research establishes that the ingredients in Neuriva have a positive, demonstrated impact on brain health. Defendants' Supplemental Brief Regarding Injunctive Relief, May 24, 2021, Docket No. 62. First, despite the language RB cherry picks from certain studies cited in its May 24, 2021 supplemental brief, none of the clinical studies to which RB cites reached statistically significant, conclusive results about Neuriva's ingredients' impact on memory, focus, concentration, learning, accuracy, or reasoning, the six "key indicators of brain performance" that RB claims Neuriva improves. *See* Neuriva ThinkBigger – Science Explained by Mayim, Neuriva Brain Performance YouTube video, available https://www.youtube.com/watch?v=Ck7 NZlwrCek. Either they called for further studies, reached results that are not generalizable as they were based on a limited population, and/or did not study one of the cognitive functioning measurements advertised by RB.

Second, even if RB had more robust scientific studies to substantiate its cognitive improvement claims, studies examining individual ingredients may not constitute adequate substantiation for marketing claims about the specific product. *See* Federal Trade Commission, Dietary Supplements: An Advertising Guide for Industry, https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry. This is because certain ingredients may not be as effective when mixed with other ingredients than they are on their own. And the dosage and/or delivery method of an ingredient tested in an ingredient study may not be the same as the dosage and/or delivery method of the ingredient in the advertised product.

And while the injunctive relief outlined in the proposed settlement agreement pertains only to claims made about the individual ingredients, as discussed above, nothing in the proposed settlement agreement prohibits RB from making deceptive substantiation claims about the overall product, as it currently does.

[11] In November 2014, TINA.org opposed the terms of a similar proposed settlement agreement regarding the alleged false advertising of glucosamine supplements. *Quinn, et al. v. Walgreen, Co., et al.,* Case No. 12-cv-8187, S.D.N.Y. Subsequently, the parties revised the injunctive relief (which previously banned only six words from the product labels for a two-year period) to include broader catch-all language and the duration of the injunctive relief was also amended to continue in perpetuity (until and unless the marketers become aware of scientific evidence to substantiate the preexisting cartilage claims and the Court allows them to reinstate the banned language). *See Quinn, et al. v. Walgreen, Co. et al.,* Case No. 12-cv-8187, S.D.N.Y., Amendment to Settlement Agreement and General Release, dated Jan. 30, 2015 (Dkt. 141-1).

"does not obligate [the defendant] to do anything it was not already doing" does not provide value to the class).

### B. The Injunctive Relief Is Temporary While Class Members Are Forever Banned from Suing RB.

To make matters worse, RB's meaningless labeling restrictions are binding for, at most, two years, while class members are required to give up their litigation rights forever. *See* Settlement Agreement and Release, at ¶ IV.A.3 ("The [injunctive relief] shall initiate on the date exactly six (6) months after the Final Approval Order and Judgement … and shall remain in effect for two (2) years thereafter.."); ¶ VI ("Upon the Effective Date, … the Settlement Class fully release and discharge the Settling Defendants…from all claims…Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Discharged Parties…").[12]

Allowing RB to continue with the same deceptive marketing messages that are at issue in this litigation, and banning a single word for two years, while class members are permanently prohibited from suing the company over its false marketing of the products at issue is patently unfair and reversible error. *See Pearson,* 772 F.3d at 787 ("for a limited period the labels will be changed, in trivial respects unlikely to influence or inform consumers.").[13] *See also Vassalle v.*

---

[12] In addition to giving up their right to sue RB for false marketing of the supplements at issue, class members are also waiving clear statutory rights they have under state laws, such as Section 1542 of the Civil Code of the State of California, which prohibits general releases such as this one from being extended to claims unknown at the time of executing the release, even if they would have materially affected the settlement. *See* Settlement Agreement and Release, at ¶ VI.B.

[13] After this Seventh Circuit decision, the parties in the *Pearson* case negotiated a revised settlement agreement that, among other things, included permanent injunctive relief.  *Pearson v. Rexall Sundown, Inc. and NBTY, Inc.,* 11-cv-07972, N.D. Ill., Settlement Agreement and General Release, dated April 10, 2015; Final Judgment and Order, Aug. 25, 2016, available at https://www.truthinadvertising.org/wp-content/uploads/2016/01/Pearson-v-Rexall-Sundown-final-approval-order.pdf.

15485005v.1

*Midland Funding LLC,* 708 F.3d 747, 756 (6th Cir. 2013) ("the injunction only lasts one year, after which [the defendant] is free to resume its predatory practices should it choose to do so.").

In short, it is clear that the temporary injunctive relief proposed in this settlement functions merely as window dressing attempting to cover up the litigation restrictions being placed on the nationwide class and as justification for the nearly $3 million attorney-fee award. Accordingly, the proposed agreement is unfair to class members and, as such, this Court should not grant approval.

**II.** **The Proposed Monetary Relief is Inadequate and Unacceptably Disproportionate to the Proposed Attorneys' Fees.**

While the agreement proposes to bind all U.S. residents who purchased RB's Neuriva products for a two-year period (between January 1, 2019 and April 23, 2021), the class may only seek damages for up to four bottles of the supplements (which cost between $29.99 and $44.99 per bottle[14]), and the *most* cash any class member can obtain from this settlement is $65.[15] *See* Settlement Agreement and Release, at ¶ IV. B. And that amount assumes the class member has (1) received notice of and understands the settlement terms, (2) has filed a valid claim, and (3) has retained proof of the purchases, the combination of which is unlikely to happen.[16] For the

---

[14] Schiff Vitamins, Shop Neuriva, https://www.schiffvitamins.com/pages/where-to-buy-neuriva (last visited July 23, 2021).

[15] While class members are capped at $65, the named plaintiffs will receive more than 30 times more, or $2,000.  *See* Settlement Agreement and Release, at ¶ V. C.

[16] Receipts likely to be discarded**.** *See Pearson,* 772 F.3d at 783 (indicating that receipts for supplement purchases are likely to be discarded); *In re TJX,* 584 F. Supp. 2d 395, 405, n.15 (D. Mass. 2008) (stating "[c]ommon sense indicates that, [for] a relatively small-scale purchase, an average consumer is unlikely to keep [proof of purchase] documentation for years.")

It is rare for class members to file claims. *See, e.g., Pearson* at 783 (indicating that the "very modest monetary award that the average claimant would receive," along with the notice and claim forms, "were bound to discourage filings."); *De Leon v. Bank of Am., N.A.,* Case No. 09-cv-1251, 2012 U.S. Dist. LEXIS 91124, at *44 (M.D. Fla. Apr. 20, 2012) ("The proposed settlement administrator in this case … has indicated that the claims-rate in consumer class

vast majority of consumers who do not have receipts, the most cash that can be obtained with this settlement is $20 from a $8 million cash award fund.

At the same time, the agreement provides nearly $3 million to plaintiffs' attorneys. *Id.* at ¶ V. A. Given the meaningless – and temporary – injunctive relief and the exceedingly modest amount of monetary award, such exorbitant fees are simply not justified in this case. *See e.g., Dennis v. Kellogg Co.,* 697 F.3d 858, 861 (9th Cir. 2012) (reversing district court's approval of a settlement that provided for, among other things, $2 million in attorneys' fees and a maximum of $15 to each class member, stating "[i]n a class action … any settlement must be approved by the court to ensure that class counsel and the named plaintiffs do not place their own interests above those of the absent class members."). *See also In re Dry Max Pampers Litig.,* 724 F.3d 713, 721 (6th Cir. 2013) (reversing district court's approval of a settlement that awarded $2.73 million to class counsel while unnamed class members received relief of only negligible value, determining that the agreement benefited class counsel "vastly more than it [did] the consumers who comprise the class," and therefore was unfair); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (reversing district court's approval of proposed consent decree that awarded $3.85 million to class counsel while awarding approximately $1,000 to each unnamed class member, and injunctive relief that largely incorporated already-existing company programs rather than creating new ones, stating "[p]recisely because the value of injunctive relief is difficult to

---

settlements range from 2% to 20%, depending on a variety of factors, including the amount a claimant will receive, the difficulty of obtaining information required to complete a claim form and even the requirement to submit a claim form."); *In re TJX,* 584 F. Supp. 2d 395, 404 (D. Mass. 2008) ("only a fraction of any given class is likely to claim the benefits provided for in a settlement. Indeed, '[i]t is not unusual for only 10 or 15% of the class members to bother filing claims'"); *Sylvester v. Cigna Corp.,* 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'[C]laims made' settlements regularly yield response rates of 10 percent or less").

quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund," and increase their fees).

The result – if the proposed agreement is approved – is that RB will be required to pay a nominal amount to the class, make absolutely no material changes to its marketing or labeling, and handsomely reward plaintiffs' counsel for providing it a clear path on which to continue its deceptive marketing.

## CONCLUSION

In sum, the proposed settlement should be rejected because it does not remedy the deceptive marketing alleged in the operative complaint and provides paltry monetary relief to class members, all while handsomely rewarding plaintiffs' counsel so they will go away.  For these reasons, TINA.org respectfully urges this Court to reject the proposed settlement.

Dated:  July 29, 2021                              Respectfully,


By: */s/ Jon Polenberg*
     Jon Polenberg, Esq.
     Florida Bar No.: 653306
     Becker & Poliakoff
     1 East Broward Blvd., Suite 1800
     Ft. Lauderdale, FL 33301
     Telephone: (954) 987-7550
     jpolenberg@beckerlawyers.com

     and

     Laura Smith, Legal Director
     (District of Conn. Bar No. ct28002, not admitted in Florida)
     Truth in Advertising, Inc.
     115 Samson Rock Drive, Suite 2
     Madison, CT 06443
     Telephone: (203) 421-6210
     lsmith@truthinadvertising.org
     *Attorneys for Truth in Advertising, Inc.*

14

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 29, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification to all parties registered to receive electronic notices via the Court's CM/ECF System.

*/s/ Jon Polenberg*
By:   Jon Polenberg, Esq.

15

15485005v.1