UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-23564-MGC

DAVID WILLIAMS, CAROLL
ANGLADE, THOMAS MATTHEWS,
MARTIZA ANGELES, and HOWARD
CLARK, *individually and on behalf of all
others similarly situated*,

    Plaintiffs,

v.

RECKITT BENCKISER LLC and
RB HEALTH (US) LLC,

    Defendants.

**RESPONSE TO OBJECTOR TED FRANK AND AMICUS TRUTH IN ADVERTISING**

After a robust notice program, only one professional objector (who purchased a Neuriva product specifically in order to object) and one amicus filed in opposition to the Settlement. No other class member filed an objection, and no federal or state regulator has opposed the Settlement.

**I.     BACKGROUND OF TED FRANK AND TINA**

Especially given the lack of any objections from any other source, it is important to understand who Ted Frank ("Frank") and amicus Truth in Advertising, Inc. ("TINA") are and the genesis of their perspectives on class action settlements.

    A.  **Ted Frank is a Professional, Serial Class Action Objector But Not A Class Member Here.**

Frank and the Center for Class Action Fairness ("CCAF") that he founded have made an indelible impression on class action practitioners. As the Declaration of Ted Frank [DE 75-1] illustrates, Frank is sensitive (overly or not) to discussions on the merits of his objections

based on what he perceives as *ad hominem* attacks on him and the CCAF. For better or worse, Frank has an admittedly long track record of inserting himself and the CCAF in class action settlements through lodging objections, and it is through objecting to class action settlements that Frank has made a career. Indeed, Frank highlights dozens and dozens of class action settlements that he and CCAF have objected to. [DE 75-1, ¶ 15] Frank appears to object to the monikers "serial" and "professional," not because such terms inaccurately describe him, but rather because such descriptions highlight his pecuniary motivations.[1] While derogatory name-calling is unhelpful, Frank's career as a professional, serial class action objector is relevant in understanding the legitimacy of his objection and his status as a class member in this case.

Frank is not a legitimate member of the Settlement Class and his objection was made in bad faith because he purchased Neuriva with the sole purpose of lodging an objection. On January 7, 2021, Plaintiffs filed a Notice of Settlement, which announced that the parties had resolved the dispute on a class-wide basis and explained they were in the process of drafting a written settlement agreement and other related documents. [DE 47] Shortly thereafter, on January 27, Plaintiffs filed a Consolidated Amended Class Action Complaint that joined plaintiffs from previously filed actions as well as an unfiled action. [DE 51] Less than a month after Plaintiffs announced their class action settlement, on February 2, 2021, Frank purchased a 30-count bottle of Neuriva Original from Amazon, purportedly for "personal consumption." [DE 75-1, ¶ 4]

---

[1] Frank admits that his employer, CCAF, is partially funded by attorneys' fees awarded from his work in objecting to class settlements, [DE 75-1, ¶¶ 15, 30], but avers that neither he nor the CCAF should be awarded any fees in the present case. [DE 75-1, ¶ 9].

2

It is not mere happenstance that a professional and serial class action objector, who founded and is employed by an organization dedicated to objecting to class action settlements, bought a product that was part of an announced class action settlement and then appeared as a "class member" objecting to the settlement. Of course, this is not to say that anyone who purchased Neuriva after Plaintiffs announced the settlement are not class members. It is, however, telling that no one who has recently purchased Neuriva has objected to the settlement.

Simply put, Frank's status as a professional objector who lodges serial objections to class action settlements, which he voluntarily chooses to do, carries a set of unique considerations that do not attach to other individuals who purchased Neuriva during the relevant time period. While attorneys who litigate class actions may have private opinions as to the merits of Frank's and CCAF's body of work, it cannot be denied that Frank is an intelligent and capable attorney who has carved out a niche where his livelihood centers on objecting to class settlements. It strains credulity to believe that Frank purchased a bottle of Neuriva Original after Plaintiffs disclosed a class settlement for his own personal use, only to later discover Plaintiffs' settlement and then object to it. As such, Frank's objection should be dismissed as made in bad faith.

B. TINA's Aim is Admirable, But Unrealistic.

TINA is an advocacy organization with a mission to educate consumers about false advertising. Class Counsel applauds TINA for its work and believes it serves an important role in educating consumers. In particular, Class Counsel is largely in agreement with TINA's criticisms of Neuriva. *See* https://www.truthinadvertising.org/neurivas-clinically-proven-ingredients-claims/. However, TINA's proposed solution, to reject the settlement entirely,

does not provide a desirable solution because it would lead to years of additional litigation during which consumers will continue to be pummeled with false claims that Neuriva products have "proven" ingredients – and the ultimate outcome of that litigation is far from certain. Notably, in another case where TINA requested that this Court deny a class settlement regarding another brain supplement, Prevagen, *see Collins v. Quincy Bioscience, LLC*, Case No. 19-22864 (S.D. Fla. DE 168), class litigation surrounding the supplement first began in 2015 and did not resolve until this Court granted final approval in November 2020.

As Class Counsel, it is imperative to seek out the best resolution for the class members in light of the realities and limitations imposed by litigation, and to obtain this resolution in an efficient manner. To the extent that TINA believes that this case should have been dragged out longer, such a sentiment is not shared by Class Counsel. *See Fruitstone v. Spartan Race, Inc.*, No. 20-CV-20836, 2021 WL 2012362, at *9 (S.D. Fla. May 20, 2021) (quoting *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992)) ("[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.").

TINA's legal efforts – consisting of sending letters to companies, governmental and private entities, and filing amicus briefs[2] -- are undoubtedly important in holding companies to account. However, TINA's efforts to prolong litigation and stop a reasonable compromise that provides cash to Settlement Class members and requires corrected marketing should not be endorsed.

---

[2] *See* https://www.truthinadvertising.org/legal-action/legal-efforts/

## II. THE PROPOSED INJUNCTIVE RELIEF IS BOTH MEANINGFUL AND VALUABLE.

Although Frank and TINA dispute that the value of the injunctive relief provided under the settlement is meaningful, their criticism is wrong and misplaced. Class Counsel will address these arguments more specifically in the filing mandated by the Court's August 5, 2021 Text Order. However, both Frank's and TINA's arguments demonstrate a misunderstanding about the risks in litigating a false advertising case involving a supplement.

### A. Frank and TINA's Substantiation Arguments Are Routinely Dismissed.

Frank and TINA both argue that Defendants' studies fail to substantiate the efficacy of the Neuriva products, and that the settlement should be rejected because it does not impose a substantiation requirement. [DE 75-1, p. 9-10; DE 75, p. 5-8, 10-17] Class Counsel is sympathetic to Frank's and TINA's arguments and likewise wish that the state of the law would permit individuals to require businesses to substantiate their marketing claims.[3] However, Frank's and TINA's arguments highlight not only the types of litigation risks facing Plaintiffs but also the limitations on the potential scope of injunctive relief that could occur within a settlement.

Numerous courts have barred private litigants from bringing the exact types of substantiation claims in false advertising cases that Frank and TINA seek to press. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095 (9th Cir. 2017) ("These courts have precluded private

---

[3] Indeed, the FTC or FDA could bring an enforcement action to require a supplement seller to have substantiation of marketing claims, but such avenues are not available for private litigants. *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *3 (N.D. Cal. Apr. 16, 2013) ("There is no private right of action under the FDCA; instead, the FDA enforces the FDCA and its regulations."); *Hughes v. Ester C Co.,* 930 F. Supp. 2d 439, 456 (E.D.N.Y. 2013) (quoting *Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F.Supp.2d 432, 437 (S.D.N.Y.2001)) ("Case law is clear that 'private parties do not have standing to sue under the FTCA.'").

citizens from bringing actions that allege that the challenged advertising language lacked proper scientific substantiation."); *Franulovic v. Coca Cola Co.*, 390 F. App'x 125, 127-8 (3d Cir. 2010) (Plaintiff "claimed that Coca Cola was required to adequately substantiate its advertising claims prior to marketing…No New Jersey or Third Circuit decision has applied the prior substantiation theory to the New Jersey Consumer Fraud Act, and we, therefore, decline to do so here."); *Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 114, 119 (2d Cir. 1984) ("each plaintiff bears the burden of showing that the challenged advertisement is false and misleading, … not merely that it is unsubstantiated by acceptable tests or other proof … The mere fact that one party's evidence in support of the truth of its advertisements was unpersuasive would not ipso facto entitle the other party to relief."). Florida law is admittedly less developed on whether lack of substantiation claims can proceed. *See Garcia v. Clarins USA, Inc.*, No. 14CV21249HUCK/OTAZO-REYES, 2014 WL 11997812, at *8 (S.D. Fla. Sept. 5, 2014) ("Under Florida law, it is not clear whether a lack of substantiation claim is available under FDUTPA."); *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *3 (S.D. Fla. Sept. 13, 2013) (same).

Frank goes to some length to dispute the studies Defendants submitted concerning Neuriva's ingredients [DE 75, p. 10-17], but Frank's analysis only underscores the uncertainty present in this case: alleging that Defendants fail to substantiate their marketing claims risks dismissal in false advertising class actions. Furthermore, Defendants' substantiation argument, if successful, risks triggering dismissal on preemption grounds. *See, e.g.*, *Dachauer v. NBTY, Inc.*, 913 F.3d 844 (9th Cir. 2019). Given that substantiation claims are resoundingly rejected or deemed preempted, it simply is not a realistic to expect a settlement to provide injunctive relief that courts are routinely unwilling to order.

> B. Frank and TINA's Arguments Fail to Appreciate the Battle of Experts and Other Litigation Risks.

Absent "substantiation" claims, Plaintiffs have two other potential routes for their false advertising claims. One possibility is to prove that Neuriva's marketing subscribes to a level proof that is not supported. *See, e.g.*, *Lytle v. Nutramax Lab'ys, Inc.*, No. EDCV19835JGBSPX, 2019 WL 8060070, at *4 (C.D. Cal. Sept. 26, 2019) (finding express marketing statements claiming proof are actionable if the proof does not in fact exist). The other alternative is to prove the marketing claims are actually false. *See Toback,* 2013 WL 5206103.

While Frank and TINA press the "actual falsity" route, neither acknowledges what such a strategy entails. This latter option carries not only a higher burden, it also exposes a case to heightened risk of dismissal as a result of a "battle of the experts." There is simply no certainty that Plaintiffs will be victorious in overcoming any Daubert motions in their entirety. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Prod. Litig.*, 509 F. Supp. 3d 116 (D.N.J. 2020) (weighing competing experts and excluding opinions). Frank attacks Dr. Small's report [DE 75, p. 16-19], and even if we disregard the limited value of criticism from an attorney without any pharmacological or medical background presenting pure criticism, Frank fails to grasp that Plaintiffs would need to make an affirmative showing of actual falsity. Frank does not promise that Plaintiffs have a 100% chance or even a probability of affirmatively establishing actual falsity. Nor does Frank's attack on Dr. Small provide insight into how Plaintiffs would establish actual falsity.

In addition to the risks posed by the "battle of the experts," there are substantial risks to Plaintiffs in certifying a class. In a similar case, a court granted class certification in a brain supplement case only to later de-certify the class following trial testimony from the plaintiff that casted doubt on the identical representations by the defendant. *Racies v. Quincy Bioscience,*

7

*LLC*, No. 15-CV-00292-HSG, 2020 WL 2113852 (N.D. Cal. May 4, 2020). TINA never acknowledges this case, despite having opposed the settlement over the same product in *Collins v. Quincy Bioscience, LLC*, Case No. 19-22964 (S.D. Fla.), and Frank never acknowledges the decertification result.

Furthermore, neither Frank nor TINA appreciate that Plaintiffs could survive dispositive and Daubert motions, get a class certified, and still lose at trial. This is precisely what occurred in *Racies v. Quincy Bioscience, LLC*, 15-cv-292-HSG (N.D. Cal.), where the jury deadlocked and the judge declared a mistrial.

The risks of losing at trial are not limited to a single case. In *Allen v. Hyland's*, No. 2:12-cv-01150 (C.D. Cal.), the plaintiff lost a 13-day class action trial involving homeopathic products where the defendant advertised the products as providing specific benefits that no homeopathic product could provide. *Allen* was a nationwide class with damages for refunds of $255 million. The claims involved similar allegations as here—that the products were false and misleading because they are incapable of providing the advertised health benefits. *See* 2021 U.S. Dist. LEXIS 34695, at *3 (C.D. Cal. Feb. 23, 2021). The trial court also followed the jury's finding in ruling against plaintiff on the equitable claims for restitution and injunctive relief. *See Allen*, 2021 U.S. Dist. LEXIS 34695, at *3.

In *Farar v. Bayer AG*, plaintiffs alleged Bayer's One-A-Day products contained false and misleading heart health, immunity, and energy claims in violation of consumer protection statutes from California, Florida, and New York. *See* No. 3:14-cv-04601, 2017 U.S. Dist. LEXIS 193729, at *3 (N.D. Cal. Nov. 15, 2017). Plaintiffs survived a motion to dismiss and motion for summary judgement. However, the four-year litigation ended in a jury verdict for Bayer. *Farar*, ECF No. 327 (Judgment). Preceding the loss at trial, the plaintiffs had

8

successfully argued a full refund damages model, which exposed Bayer to a $4 billion verdict.

Rather than face the substantial risks of continued litigation on a demanding and difficult-to-prove "actual falsity" theory, Plaintiffs entered into a settlement agreement that would address the disparity between Defendants' marketing claims (that Neuriva was "proven") and what the body of research actually supported (that its ingredients have been "tested"). The Settlement addresses this theory of liability by aligning Defendants' marketing claims with its level of proof and by providing monetary relief for Settlement Class members who file a claim. Even more, the proposed Settlement delivers certainty on both monetary relief and corrected marketing. It is telling that no actual Settlement Class member has objected to either relief.

C. Frank and TINA Criticize the Injunctive Relief Without Understanding How "Clinically Tested" Claims are Resolved by Courts.

Frank and TINA minimize the injunctive relief without understanding how courts interpret and rule on such language. *See Engel v. Novex Biotech LLC*, No. 14-CV-03457-MEJ, 2015 WL 846777, at *5 (N.D. Cal. Feb. 25, 2015), aff'd, 689 F. App'x 510 (9th Cir. 2017) (granting defendant's motion to dismiss: "Plaintiff has also added allegations that '[a] reasonable consumer reading Defendants' Growth Factor–9 label as a whole would rightfully interpret 'clinically tested' to mean 'clinically proven,'…. "The Court disagrees."); *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 35 (E.D.N.Y. 2009) (granting summary judgment on actual falsity: "The Court concludes that the claim 'clinically tested' is susceptible to more than one reasonable interpretation….").

TINA, for its part, cites to a number of matters presented to the National Advertising Division of the Better Business Bureau ("NAD"). [DE 74-1, Exhibit A-F] NAD is a self-

9

regulating and voluntary body that does not determine whether laws have been violated, and is therefore not precedent to be relied upon. Whether one business would prevail in its assertions against a competitor before this industry trade group is simply inapposite to the considerations here.

### III.     TINA'S OTHER ARGUMENTS LACK MERIT.

TINA argues that there is an imbalance between the injunctive relief provided and the release [DE 74-1, p. 11], but this interpretation rests on a misunderstanding. The release is between the Settlement Class, defined as those who purchased a Neuriva Product between January 1, 2019, and April 23, 2021 (the date of preliminary approval) and Defendants. [DE 52-1, §§ I.Z VI.A] Settlement Class members have the option of receiving cash, and the Settlement automatically provides injunctive relief for a two-year period. If Defendants revert back to falsely marketing Neuriva, any Settlement Class member who makes a purchase outside of the class period will not have their claims released, because the Settlement only releases purchases made during the class period. Thus, Settlement Class members are not "forever" banned from suing Defendants.

TINA disagrees with the time period of the injunctive relief [DE 74-1, p. 11-12], but its requested denial of final approval will simply allow Defendants to continue their false advertising. The only alternative to the Settlement is continued litigation that can last for years. While Class Counsel would prefer a longer time period, the Settlement represents a compromise that accomplishes a marketing change. Further, if Defendants decide to revert back to the same marketing that gave rise to the present case, Settlement Class members and future Neuriva-purchasers preserve their right to sue.

TINA generally takes issue with the monetary amount available to class members, but TINA's desire that class members should receive more is not a proper basis to deny final approval to a class settlement. Generic desires to receive "more" money or a "better" result is not a proper objection. *See Braynen v. Nationstar Mortgage, LLC*, 2015 WL 6872519, at *12 (S.D. Fla. Nov. 9, 2015) (citing *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1382 (S.D. Fla. 2007) (overruling objections of class members who "desired to 'have a better deal'")). "Such objections lack merit because the objectors could simply opt out and file their own individual lawsuits if they have concerns about releasing their claims." *Id*. (citing *Diaz v. HSBC USA, N.A.*, No. 13-21104, 2014 WL 5488161, at *3 (S.D. Fla. Oct. 29, 2014)); *see also Braynen*, 2015 WL 6872519, at *12 (quoting *Behrens*, 118 F.R.D. at 542) (noting a settlement can "be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

Even more to the point, no class members (including Frank) have objected to the monetary amount made available under the Settlement. The Settlement provides up to $20 cash to those who have no receipts to support their claim and up to $65 if they do. This means that individuals who would not ordinarily be able to assert a legal claim for want of proof of purchase can nonetheless receive a monetary benefit under the Settlement. Such a benefit is undoubtedly fair, reasonable, and adequate.

TINA is a pro-consumer advocacy group who without question takes its mission seriously. However, TINA fails to appreciate the substantial risks that continued litigation can bring, the harmful effects of continuing to allow Defendants to falsely advertise Neuriva, and that all settlements involve compromise. *See Braynen*, 2015 WL 6872519, at *12 (quoting *Cotton*, 559 F.2d at 1330) ("compromise is the essence of a settlement. The trial court should

not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.").

### III. FRANK'S AND TINA'S ARGUMENTS AGAINST CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES SHOULD BE REJECTED.

Frank disregards Eleventh Circuit precedent by claiming that the Court should view the Settlement in a negative light because attorneys' fees are paid in addition to the benefits made available to class members. [DE 75, p. 25-26] In *Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991), the Eleventh Circuit held that attorneys' fees in a class action settlement may be "based on a reasonable percentage of the fund established for the benefit of the class."

While Frank disputes that the "fund" established in this case includes both the monetary benefits made available to the Settlement Class members and attorneys' fees, such a "constructive common fund" approach has in fact been recognized by the Eleventh Circuit. *See In re Home Depot Inc.*, 931 F.3d 1065, 1080 (11th Cir. 2019) ("Where class action settlements are concerned, courts will often classify the fee arrangement as a 'constructive common fund' that is governed by common-fund principles even when the agreement states that fees will be paid separately."); *see also In re: Managed Care Litig., Class Plaintiffs v. Aetna Inc., & Aetna - US Healthcare, Inc., Defendants.*, No. MASTER00-1334-MD-MOR, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003) ("Because the fee award is being paid by Defendant AETNA, when added to the total benefits being given directly to the Class, the total settlement benefit appears to be between $400 and $450 million."); *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *8 (S.D. Fla. Apr. 15, 2010) (exercising

discretion to include amount paid separately in attorneys' fees as part of common fund). Consequently, Frank's position should be rejected.

Frank also argues against Plaintiffs' requested attorneys' fees by claiming the Court should ignore the $8 million made available for Settlement Class members' claims, [DE 75, p. 25], and asks the Court to apply the lodestar method. [DE 75, p. 28]. Relatedly, TINA argues that the requested attorneys' fees are too high. [DE 74-1, at 13]. However, in the Eleventh Circuit, reasonable attorneys' fees are determined based on a percentage of the fund. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir.1999)) ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Fruitstone v. Spartan Race, Inc.*, No. 20-CV-20836, 2021 WL 2012362, at *10 (S.D. Fla. May 20, 2021) ("The United States Supreme Court, the Court of Appeals for the Eleventh Circuit, and this Court have all expressly approved calculating fees by applying the percentage-of-recovery method to the total value of the settlement.").

As another court in this District recognized, "[t]here may be many reasons or no reasons why class members decide to participate in a settlement, e.g., a desire not to be involved in litigation, ideological disagreement with the justice system, their individual experiences with lender-placed insurance, or sympathy for the defendant." *Hall v. Bank of Am., N.A.*, No. 1:12-CV-22700-FAM, 2014 WL 7184039, at *8 (S.D. Fla. Dec. 17, 2014). Accordingly, "the valuation of counsel's fees should be based on this opportunity–courts should give considerable weight to counsel's efforts to afford class members the opportunity to recover meaningful relief by availing themselves of a claims process that is procedurally fair." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *19 (S.D. Fla. Feb. 3, 2016).

In addition to the monetary benefits made available, the Eleventh Circuit recognizes that other, non-monetary benefits may be used when determining attorneys' fees. *Poertner v. Gillette Co.*, 618 F. App'x 624, 629 (11th Cir. 2015); *see also Fruitstone*, 2021 WL 2012362 at *12 ("courts examine the value of both monetary and prospective relief" when analyzing attorneys' fee requests).

Frank argues against the Settlement Agreement's "clear sailing" provision whereby Defendants agreed not to oppose Plaintiff's attorneys' fee request.[4] Such agreements are reasonable because "the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 n.4 (11th Cir. 1999) (citation omitted); *see also See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 335 (3d Cir.1998) (overruling objection to clear-sailing provision since there was "no indication the parties began to negotiate attorneys' fees until after they had finished negotiating the settlement agreement"). Indeed, approving an attorneys' fee request with a clear-sailing provision is not an abuse of discretion. *Waters*, 190 F.3d at 1293. Here, Plaintiffs did not begin negotiating attorneys' fees until after all material terms of the settlement were agreed-upon, including specifically Settlement Class member benefits, [DE 69-1, ¶ 47], and Frank does not argue or show that any collusion between Class Counsel and Defendants have occurred.

---

[4] Frank also argues that the parties' agreement to pay attorneys' fees outside of the benefits available to Settlement Class members is a "kicker" clause. [DE 75, p. 27]. As discussed *supra*, in the Eleventh Circuit, it is entirely proper to agree to pay attorneys' fees outside of benefits made available to class members.

## IV.     CONCLUSION

The proposed Settlement Agreement provides substantial monetary benefits and marketing changes that correct the false advertising giving rise to Plaintiffs' case. Frank, who is not a legitimate class member but instead a professional objector, and TINA, an advocacy organization, both oppose the settlement, but their disputes should not override the benefits afforded by this Settlement. Instead, this Court should recognize that no legitimate Settlement Class member has objected to either the Settlement or Class Counsel's requested attorneys' fees and finally approve the proposed Settlement.

Dated: August 10, 2021                               Respectfully submitted,

/s/ *Jonathan B. Cohen*
Jonathan B. Cohen (Fla. Bar No. 27620)
Rachel Soffin (Fla. Bar No. 18054)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
jcohen@milberg.com
rsoffin@milberg.com

Daniel K. Bryson*
Martha A. Geer*
Patrick M. Wallace*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 West Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: 919-600-5035
dbryson@milberg.com
mgeer@milberg.com
pwallace@milberg.com

Matthew D. Schultz (Fla. Bar No. 640326)
**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR, PA**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-6140
mschultz@levinlaw.com

Jonathan Shub*
**SHUB LAW FIRM LLC**
134 Kings Highway East, Second Floor
Haddonfield, NJ 08033
Telephone: 856-772-7200
jshub@shublawyers.com

Nick Suciu*
**BARBAT, MANSOUR, & SUCIU PLLC**
1644 Bracken Rd.
Bloomfield Hills, MI 48302
Telephone:(313) 303-3472
nicksuciu@bmslawyers.com

*Admitted *pro hac vice*

***Attorneys for Plaintiffs and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2021, I caused the foregoing to be filed via the Court's electronic filing system which will notify all counsel of record of the same.

/s/ *Jonathan B. Cohen*

Jonathan B. Cohen