**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:20-cv-23564-MGC**

DAVID WILLIAMS and CAROLL
ANGLADE, THOMAS MATTHEWS,
MARTIZA ANGELES, and HOWARD
CLARK, *individually and on behalf of all
others similarly situated*,

    Plaintiffs,

v.

RECKITT BENCKISER LLC and
RB HEALTH (US) LLC,

    Defendants.

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO THIS COURT'S
AUGUST 5, 2021, ORDER**

**I.       INTRODUCTION**

On August 5, 2021, this Court requested Plaintiffs, Defendants, objector Ted Frank, and amicus Truth in Advertising, Inc., to provide supplemental briefing regarding the proposed Settlement's injunctive relief (the "August 5 Order"). In particular, the Court requested authority on whether consumers "appreciate any substantive difference between a health-related product which is said to be clinically or scientifically 'proven' and a health-related product which is represented to be clinically or scientifically 'tested.'" August 5 Order. Below is Plaintiffs' submission.

**II.      ARGUMENT**

A natural starting point for understanding how consumers appreciate marketing language within the present context is to understand what the law sets out for an actionable false advertising claim. A false advertising claim is analyzed under the "reasonable consumer" standard. *See Davis v. Fresh Market*, 2020 WL 3489369, at *4 (S.D. Fla. Jun. 26, 2020). What a "reasonable consumer" understands is subject to common sense. *See, e.g.*, *McKinnis v. Kellogg USA*, No. CV07-2611ABC(RCX), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("A reasonable consumer, even on the most cursory review of the Froot Loops box, could not, as a matter of law, be misled into believing that the cereal contains actual fruit."). When viewing

1

a label in particular, "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020). Here, the relevant context is not just a health supplement, but instead a brain supplement that purports to improve brain performance by actually carrying active ingredients across the blood brain barrier. As such, it is fair and in keeping with common sense to recognize that consumers give greater attention to brain supplements' labeling. False and deceptive advertising claims cannot be based on "unreasonable or fanciful interpretations of labels or some other advertising…" *Id*. at 477. Instead, reasonable consumers are charged with understanding words on labels to give their reasonable, ordinary meaning. *See Nowrouzi v. Maker's Mark Distillery, Inc.*, No. 14CV2885 JAH NHS, 2015 WL 4523551, at *7 (S.D. Cal. July 27, 2015) ("This Court finds that 'handmade' cannot reasonably be interpreted as meaning literally by hand nor that a reasonable consumer would understand the term to mean no equipment or automated process was used to manufacture the whisky.").

      As set out by Defendants in their submission, there is a significant difference between a "proven" claim and a "tested" claim. [DE 98, p. 3-5]. A claim is "proven" when its "existence, truth, or validity" has been established. Merriam-Webster.com ("prove", "to establish the existence, truth, or validity of (as by evidence or logic)", "to demonstrate as having a particular quality or worth"). In contrast, a claim that something has been "tested" does not connote certainty as much as describe the process that a product has been through. Merriam-Webster.com ("tested", "subjected to or qualified through testing"); Dictionary.com ("test" "the means by which the presence, quality, or genuineness of anything is determined; a means of trial").

      Significantly, the phrases "clinically proven" and "clinically tested" have been researched by Defendants prior to the initiation of this case. As Defendants' recent submission makes clear, "clinically proven" and "clinically tested" were one of nearly 40 claims that were the subject of consumer market research testing. [DE 98-3] As the marketing research revealed, 91% of respondents found efficacy of the product to be either extremely important or very important. Such a finding has wider support. A recent article summarized research in which 500 United States supplement customers answered questions concerning supplements. *See* Exhibit A. Of those surveyed, 84% "agreed that efficacy is very important…" Based on

2

this research, the article confirmed: "[e]fficacy drives purchase decisions and informs which brands consumers put their trust in." *Id*. Despite being a top concern and evidence that "consumers are doing their own research, carefully investigating claims of the supplements they take", the author emphasized that efficacy claims must be made in language that consumers readily understand. *Id.* And with "clinically proven", Defendants found an efficacy claim that consumers readily understood in a statistically more significant manner than "clinically tested." Furthermore, Defendants provided an expert opinion that supports consumer market research testing that efficacy claims are valued by consumers, and that consumers appreciate the difference between "proven" and "tested" claims. [DE 98-4].

Plaintiffs negotiated for injunctive relief that dramatically alters the central claim made about Neuriva: that it was a "proven" brain supplement. Knowing that brain supplement purchasers value higher levels of efficacy, Plaintiffs understood that the "proven" language presented a serious issue because the claim far (and falsely) out-paced the actual testing for Neuriva. However, Plaintiffs could not overlook the fact that Defendants possessed some clinical and scientific support for their claims. And as discussed in Plaintiffs' Response to Objector Ted Frank and Amicus Truth in Advertising, courts routinely dismiss lawsuits that require businesses to substantiate their marketing claims. [DE 85, p. 5-6 (citing cases)], which significantly restricts the types of injunctive relief that can be achieved through litigation. Just recently, a court dismissed claims in a lawsuit challenging that a supplement was "scientifically tested." *See Corbett v. Pharmacare U.S., Inc.*, No. 21CV137-GPC(AGS), 2021 WL 2473950, at *7 (S.D. Cal. June 17, 2021) ("A claim that the product has not been scientifically tested or clinical studies have not conclusively established that Defendant's Products are effective must be dismissed for lack of substantiation."). Plaintiffs negotiated injunctive relief that provides a meaningful decrease in the level of efficacy being communicated to consumers in a way that consumers themselves understand. If there was no meaningful difference between objective claims that a product has been "proven" versus merely "tested", then courts would allow "tested" claims to survive a substantiation analysis and proceed to the merits. As it stands, however, courts do recognize that disagreements over the level of testing and what such testing shows is different in kind than claims over a specific level of proof made about a product. *See Lytle v. Nutramax Lab'ys, Inc.*, No. EDCV19835JGBSPX, 2019 WL 8060070, at *4 (C.D. Cal. Sept. 26, 2019). Accordingly, the

injunctive relief provided under the proposed Settlement reflects both what courts have permitted and allowed.

### III. CONCLUSION

For the reason stated herein, in Plaintiffs' Response to Objector Ted Frank and Amicus Truth in Advertising [DE 85], and in Plaintiffs' Motion for Final Approval of Class Settlement and Class Counsel's Application for Attorneys' Fees, Expense, and Service Awards [DE 69], Plaintiffs respectfully request the Court grant final approval of the settlement as well as the application for attorneys' fees and expenses, and retain jurisdiction with respect to the class representative service awards.

Dated: August 16, 2021

Respectfully submitted,
/s/ *Jonathan B. Cohen*
Jonathan B. Cohen (Fla. Bar No. 27620)
Rachel Soffin (Fla. Bar No. 18054)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
jcohen@milberg.com
rsoffin@milberg.com

Daniel K. Bryson*
Martha A. Geer*
Patrick M. Wallace*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 West Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: 919-600-5035
dbryson@milberg.com
mgeer@milberg.com
pwallace@milberg.com

Matthew D. Schultz (Fla. Bar No. 640326)
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA**
316 S. Baylen St., Suite 600
Pensacola, FL 32502

Telephone: (850) 435-7140
Facsimile: (850) 436-6140
mschultz@levinlaw.com

Jonathan Shub*
**SHUB LAW FIRM LLC**
134 Kings Highway East, Second Floor
Haddonfield, NJ 08033
Telephone: 856-772-7200
jshub@shublawyers.com

Nick Suciu*
**BARBAT, MANSOUR, & SUCIU PLLC**
1644 Bracken Rd.
Bloomfield Hills, MI 48302
Telephone:(313) 303-3472
nicksuciu@bmslawyers.com

*Admitted *pro hac vice*

***Attorneys for Plaintiffs and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2021, I caused the foregoing to be filed via the Court's electronic filing system which will notify all counsel of record of the same.

                                        */s/ Jonathan B. Cohen*
                                        Jonathan B. Cohen