UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:20-cv-23564-MGC

DAVID WILLIAMS and CAROLL ANGLADE, THOMAS MATTHEWS, MARTIZA ANGELES, and HOWARD CLARK, *on behalf of himself and all others similarly situated*,

Plaintiffs,

v.

RECKITT BENCKISER LLC and RB HEALTH (US) LLC,

Defendants.

Theodore H. Frank,

Objector.

# SUPPLEMENTAL OBJECTION OF THEODORE H. FRANK
## RE: LODESTAR SUBMISSION

At the fairness hearing, Objector Theodore H. Frank reserved his right to respond to the new filings made in the days leading up to the hearing. Frank files this supplemental objection in response to the Supplemental Declaration of Daniel K. Bryson in Support of Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Expenses, and Service Awards. Dkt. 94-1. Mr. Bryson's declaration proclaims combined expenditures of class counsel of 1893.75 hours at a blended hourly rate of $634.96/hr for a total lodestar of $1.2 million. *Id.* at ¶¶ 8, 11. To reach class counsel's requested $2.9 million attorneys' fee, the Court would then have to apply a significantly above-average 2.4 multiplier.

As Mr. Bryson appears to recognize (*Id.* at ¶13), the lodestar is not the appropriate baseline methodology to apply to class counsel's fee request in this instance. This is so for the following reasons: First, the class did not receive the notice of class counsel's lodestar submission that is required by Rule 23(h) and *Johnson v. NPAS Solutions*, 975 F.3d 1244, 1252 (11th Cir. 2020). Second, the Eleventh Circuit mandates the percentage-of-recovery methodology when awarding fees from a common fund context, which this settlement is—albeit a "constructive common fund" rather than a pure common fund. *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1080-82 (11th Cir. 2019). Third, the submission in its own right lacks the necessary specificity (i.e. the who, what, and when) to award fees on a lodestar basis. Fourth, the blended rate exceeds what is reasonable in the forum. Fifth, the putative multiplier is excessive and unreasonable.

Nevertheless, it is still "sensible for a court" to use the lodestar calculation "to cross check its conclusion under the [percentage] method." *Id.* at 1091 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)). Doing that here confirms what we know from applying the percentage method itself: class counsel has requisitioned as attorneys' fees for itself too large a share of the total settlement value.

To be clear: Frank does not seek a "back-door lodestar" fee award as plaintiffs claimed at the fairness hearing. He maintains the proposed settlement is structurally unfair because it prioritizes attorneys' fees over class recovery, so must be denied final approval altogether. That said, if the settlement could be approved—perhaps due to a voluntary amendment by the parties—the Bryson declaration would be inadequate to support any lodestar-based fee award.

## ARGUMENT

I.  **Class counsel's fee submission does not comport with Rule 23(h).**

Rule 23(h) requires that the "*full fee motion*" precede the objection deadline. *Johnson*, 975 F.3d at 1252 (quoting Advisory Committee Note to 2003 Amendment to Rule 23(h)(2) and adding emphasis). This "ensures that class members have full information when considering—and, should they choose to do so, objecting to—a fee request." *Id.* For otherwise, they would be "handicapped in objecting" without "the details of class counsel's hours and expenses." *Id.* (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014)). "Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members." *Id.* (quoting *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010)).

The objection schedule in this case unlawfully deprived absent class members of any opportunity to review class counsel's last-minute submission. Equally problematic, Mr. Bryson's supplemental declaration after the objection deadline did not even fully cure the prejudice to participating class member Frank because the lack of detail forecloses any possibility of Frank "inquir[ing] into the bases for various charges and ensur[ing] that they are adequately documented and supported." *See* Section III, *infra*. No fee award should be granted until class counsel fully remedies the Rule 23(h) notice defects.

II. **The Eleventh Circuit does not permit base lodestar awards in common fund cases.**

Contrary to plaintiffs' assertion, Frank *agrees* that lodestar awards are inappropriate in common fund cases other than for cross-checks and that a percentage of the fund should be used. Frank disagrees with plaintiffs that the hypothetical maximum of funds "made available" should be credited. Instead, if the settlement could be approved, the fee award should be based on actual class compensation.

In common-fund settlements, the Eleventh Circuit "direct[s] court to use the percentage method." *Home Depot*, 931 F.3d at 1081 (citing *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)). *Camden I*'s directive "remains good law." *Johnson*, 975 F.3d at 1262 n.14. As Frank has explained (Obj. 25), although the fee fund is formally segregated from the class's recovery, the

structure in this case is still a "constructive common fund" or, in other words, a "package deal." *Home Depot*, 931 F.3d at 1080, 1092. "Where a class action has been brought under a statute containing a fee-shifting provision, … a proposed settlement transforms the action, so far as fees are concerned, from a 'fee-shifting case' to what is called a 'common-fund case.' The fee award is no longer statutory, because statutory fee-shifting provisions impose a liability only upon judgment." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 29 cmt c (2011). Nor is it contractual fee-shifting as the parties have not agreed merely to litigate the question of an appropriate fee but have agreed to establish the sum of $2.9 million as an unopposed fee fund. *Home Depot*, 931 F.3d at 1080-81. As such, a lodestar-based award is not permissible.

### III. Even if this were not viewed as a common fund case, class counsel's supplemental documentation is insufficient to justify a lodestar fee.

As Frank discussed in his objection, at the time of settlement class counsel had failed to provide any lodestar information. Obj. 28. Now, they provide the barest of bones: not the billers, not their rates, not the tasks undertaken, nor the dates of the billing. They provide only each firm, a breakdown of hours by biller tenure, and a Laffey Matrix rate for those hours. That still fails to meet the bare minimum of "identify[ing] the general subject matter of [their] time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). It also fails to meet the Court's instruction to submit "billing and cost records." Dkt. 81. Especially where multiple attorneys and multiple firms are involved, applicants bear the burden of documenting their hourly expenditures. *ACLU v. Barnes*, 168 F.3d 423, 432-33 (11th Cir. 1999). "[T]he general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* at 427 (internal quotation omitted). Would class counsel have submitted such deficient records had the defendants had the opportunity to challenge the fees? Doubtful. Where there is clear-sailing however, plaintiffs have a tendency to "handicap[]" objectors by not submitting "the details of class counsel's hours and expenses." *Redman*, 768 F.3d at 638; *Johnson*, 975 F.3d at 1252. Class counsel has not satisfactorily substantiated its work on this litigation that settled in half a year.

### IV. Class counsel fails to establish reasonable rates.

Fee applicants also bear the burden of establishing appropriate hourly rates, including "supplying the court with specific and detailed evidence from which the court can determine the

reasonable hourly rate." *ACLU*, 168 F.3d at 427 (internal quotation omitted). But class counsel fails to even inform the court who did the billing, let alone establish their market hourly rate.

Instead, they ask this Court to resort to a generalized nationwide class action market. Bryson Decl. ¶9. But the Eleventh Circuit follows the forum rate rule: "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed." *ACLU*, 168 F.3d at 437. "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* There has been no attempt to show such a lack here, and in any event, there is no such lack of consumer class action attorneys in the Southern District of Florida. And there's no class action exception. *See Home Depot*, 931 F.3d at 1091 (referring to "the prevailing market rate in the community")

Class counsel's proffered blended rate of $635/hr is excessive for this forum. *See* Ronald L. Burdge, UNITED STATES CONSUMER LAW ATTORNEY FEE SURVEY REPORT, 2017-2018 ("Survey Report"), at 258, *available at* https://burdgelaw.com/wp-content/uploads/2019/10/US-Consumer-Law-Attorney-Fee-Survey-Report-2017-2018.pdf (declaring median rate of $350/hr for class action practitioners in Miami); *H.C. v. Bradshaw*, 426 F. Supp. 3d 1266, 1277 (S.D. Fla. 2019) (awarding $500/hr for a highly decorated class action practitioner of over 30 years); *Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, 2017 U.S. Dist. LEXIS 217470, *39 (finding excessive rates of $625/hr for a 35 year practitioner, $450/hr for an 18 year practitioner, and $350/hr for a 10.5 year practitioner). A *blended rate* of nearly $635/hr would be pricey even for the most expensive venues in the country. *See* Survey Report at 236 ($600/hr median for San Francisco class action practice), at 384 ($388/hr median for New York City class action practice), at 228 ($562/hr median for Los Angeles area class action practice), at 71 ($625/hr median for Washington D.C. class action practice). The adjusted Laffey Matrix ties its rates to the far more expensive Washington D.C. legal community, explaining class counsel's attempt to latch on to it here. *See Rumreich v. Good Shepherd Day Sch. of Charlotte, Inc.*, 2019 WL 2078730, 2019 U.S Dist. LEXIS 80165, at *5-*6 (M.D. Fla. Apr. 23, 2019) (citing several Middle District cases declining to consider Laffey Matrix rates as competent evidence of local rates).

When reduced to a still-generous $400/hr rate, class counsel's lodestar drops to $757,500, and their effective multiplier increases to 3.83. Class counsel has not established reliable rates for use in a lodestar calculation.

V.   **The proposed multiplier confirms the unreasonableness of the fee request.**

There are two possibilities: either the award class counsel seek is a constructive common fund award or it's a contractual fee-shifting award. *Home Depot*, 931 F.3d at 1079-81. If it is the latter, then there is a "strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Id.* at 1082 (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)). A lodestar enhancement is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Perdue*, 559 U.S. at 552. Most potential reasons for enhancement (*e.g.* quality of representation, risk, complexity, novelty) are subsumed in the lodestar, and thus not reasons for awarding a multiplier. *Home Depot*, 931 F.3d at 1083. By this standard, class counsel have not borne their "burden of proving that an enhancement [—any enhancement—] is necessary." *Perdue*, 559 U.S. at 553.

Again, however, Frank submits that the fee sought here is a constructive common fund fee. In this situation, the Eleventh Circuit does not regulate multipliers as strictly as in fee-shifting cases. *Id.* at 1085. However, conducting a lodestar crosscheck remains "sensible." *Home Depot*, 931 F.3d at 1091. Indeed, because of its ability to discourage hasty, undervalued settlements with generous attorney payments, legal scholars, practitioners, and judges have even gone so far as to call the lodestar cross-check "essential." Brian Wolfman & Alan B. Morrison, *Representing the Unrepresented in Class Actions Seeking Monetary Relief*, 71 N.Y.U. L. REV. 439, 503 (1996); *see also* Brian Wolfman, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. MICH. J. LEGAL REFORM 80, 84-85 (2013) (describing risk of cheap, quick, and undervalued settlement); Neil M. Gorsuch & Paul B. Matey, *Settlements in Securities Fraud Class Actions: Improving Investor Protection*, WASH. L. FOUND., 23 (2005), *available at* http://www.wlf.org/upload/0405WPGorsuch.pdf (lodestar cross-check is an "important safeguard"); Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 GEO. J. LEGAL ETHICS 1453, 1454

(2005) ("[W]e argue that courts making common fund fee awards are ethically bound to perform a lodestar cross-check."). Frank acknowledges that the lodestar crosscheck is not mandatory in this Circuit. However, this is an issue that divides the circuits and is presented by CCAF's pending certiorari petition in *Threatt v. Farrell*, No. 20-1349. Frank thus preserves the question here for further review if necessary.

When using the lodestar as a crosscheck of a base percentage award, several courts of appeals have suggested that a 3.83 crosscheck multiplier, like that here, would exceed the bounds of reasonableness. *In re Cendant Corp PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) ("strongly suggest[ing]" that a multiplier of three is an "appropriate ceiling for a fee award"); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (suggesting that a multiplier of two might be a "sensible ceiling" to avoid unwarranted attorney windfalls); *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1447-48 (10th Cir. 1995) ("our conscience is shocked by an award of a 3.16 multiplier"); *In re Tremont Secs. Litig.*, 699 Fed. App'x 8, 18 (2d Cir. 2017) ("A lodestar multiplier of 2.5 would be considered high for a standard common fund case in this Circuit.").

Conducting a broad survey, Newberg that found "most multipliers are in the relatively modest 1-2 range." 5 William B. Rubenstein, *et al.*, NEWBERG ON CLASS ACTIONS § 15:87 (5th ed. 2020). Delving further into Newberg's data highlights how a 3.83 multiplier (or even the proclaimed 2.4 multiplier) would be out of step with typical awards. Reviewing two studies, Newberg reports mean multipliers in settlements with funds of this size of 1.44 and 1.07. NEWBERG § 15:89, tbl. 2. In this Circuit, those same two studies reported mean multipliers of 1.19 and 1.11. *Id.*, tbl 3. In consumer cases nationwide, those same two studies reported mean multipliers of 1.82 and 1.24. *Id.*, tbl. 4. Across all common fund settlements of all types in all circuits, the two studies reveal mean crosscheck multipliers of 1.81 and 1.42. *Id.* A third study reports a mean multiplier of 1.65 and a median multiplier of 1.34 across all cases. Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 833–34 (2010). The retainer of the Shub Law Firm in this very case recognizes the reality, observing that while "multipliers can range from less than one to four, or even higher," multipliers of between "one and a half to two [are] far more common" Dkt. 94-1 at 27.

In sum, the proposed multiplier's deviation from the norm confirms that class counsel seeks an excessive share of the constructive common fund.[1]

## CONCLUSION

Frank maintains his objection to final approval, but to the extent that changed circumstances might warrant approval, plaintiffs' filings are woefully inadequate to support an attorneys' fee award on a lodestar basis. Objector Frank reserves his right to object to further object to a lodestar-based award should such an award become appropriate.

Date: August 23, 2021

Respectfully submitted,

/s/ *Matthew Seth Sarelson*
Matthew Seth Sarelson
DHILLON LAW GROUP, INC.
2100 Ponce De Leon Blvd. Ste 1290
Coral Gables, FL 33134
Phone: 305-773-1952
Email: Msarelson@dhillonlaw.com

M. Frank Bednarz (*pro hac vice*)
IL ARDC No. 6299073
HAMILTON LINCOLN LAW INSTITUTE
CENTER OF CLASS ACTION FAIRNESS
1145 E. Hyde Park Blvd. Unit 3A
Chicago, IL 60615
Phone: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Objector Theodore H. Frank*

---

[1] Mr. Bryson's lodestar declaration confirms Frank's expectation that the $2.9 million clear sailing fee would far outstrip the class's recovery, as does his subsequent declaration projecting potential claims. *Compare* Obj. 25 and 1 n.1, *with* Bryson Decl. ¶18 (attested to 22,706 claims submitted, but presumably unverified, to date) *and* Dkt. 102-1 ¶18 (estimating $1,108,685 worth of claims through December even if a hypothesized "uptick" occurs). Even on Mr. Bryson's optimistic and lengthy assumption, claims might barely top $1 million, while class counsel has negotiated nearly $3 million for themselves. That arrangement is untenable under Rule 23. Obj. 26-27 (citing, *inter alia*, *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021)).

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing was filed with the Court via the CM/ECF system, which will send notification of such filing to all attorneys of record.

                                      */s/ Matthew Seth Sarelson*
                                      Matthew Seth Sarelson