# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### Case No.: 1:20-cv-23564-MGC

DAVID WILLIAMS and CAROLL ANGLADE, THOMAS MATTHEWS, MARTIZA ANGELES, and HOWARD CLARK, *on behalf of himself and all others similarly situated*,

Plaintiffs,

v.

RECKITT BENCKISER LLC and RB HEALTH (US) LLC,

Defendants.

Theodore H. Frank,

Objector.

---

## OBJECTOR THEODORE H. FRANK'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S ORDER REGARDING LABELING CHANGES (Dkt. 105)

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................................i
INTRODUCTION ................................................................................................................................1
ARGUMENT........................................................................................................................................2
I.      The injunction provides no value to class members. ..................................................................2
          A.      Consumers would not appreciate any distinction between the packaging and advertising in their complete, misleading context. ...........................................................2
          B.      Expert publications uniformly show "clinically tested" to be equivalent to "clinically proven" in advertising. .......................................................................................4
          C.      Defendants' own conduct shows they do not regard the term "Clinically Proven" as uniquely valuable. .......................................................................................................6
          D.      Even if there were a perceptible difference in Neuriva marketing, the injunction provides no value to class members. ....................................................................................9
II.     Because the injunction provides no recovery, the Settlement must be rejected for unfairly, unreasonably, and inadequately prioritizing attorneys' interests. ................................10
CONCLUSION ..................................................................................................................................11

# INTRODUCTION

As the Court appreciates in its Minute Order (Dkt. 105), the injunction does very little. Defendants remain free to use all of the misleading statements identified in plaintiffs' complaints except for two idioms: "clinically proven" and "science proved." As the original Settlement was written, defendants intend to use both "clinically tested" and "clinically shown" instead, and the Settlement does not even prohibit use of words like "proven" outside of the two restricted idioms.[1]

In the context of Neuriva's advertising and packaging—which contains myriad questionable statements—the substitution of "proven" for "tested" provides no value whatsoever. The change is "superfluous—or even adverse to consumers." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 785 (7th Cir. 2014) (reversing approval of settlement, while affirming finding of no substantive difference in change from "support[s] renewal of cartilage" to "contains a key building block of cartilage"). Defendants may still advertise that Neuriva "fuels" several "indicators of brain performance," that it's "backed by science," and "clinically shown to help brain performance." The overall message remains unchanged: Neuriva, a product that has never been clinically tested at all—is "clinically tested" to help consumers, for example, "stay on task longer" and "filter out distractions." Dkt. 52-1 ("Settlement"), Ex. E.

The changes make no material difference, as defendants' conduct shows. In March, the defendants launched a celebrity endorsement ad campaign using actress Mayim Bialik as their "science ambassador" who boasts about her credential as an "actual neuroscientist." iSpot.tv, *Neuriva TV Commercial, "Actual Neuroscientist" Featuring Mayim Bialik* (2021) (available at https://www.ispot.tv/ad/O6KI/neuriva-actual-neuroscientist-featuring-mayim-bialik (last accessed Sep. 13, 2021)) ("Bialik TV ad"). The campaign uses the term "clinically tested" in the place of "clinically proven," *id.*, even though the Settlement permits the defendants to manufacture and sell Neuriva as "clinically proven" until six months after final approval. If the tag "clinically proven" were as uniquely valuable as defendants self-servingly argue, surely it would have been worth producing a second version of their new advertising so that they could continue to capitalize on the term. The

---

[1] At 8:15 PM, defendants filed their Notice Regarding First Amended Settlement Agreement (Dkt. 116), which they claim resolves some of Frank's objections. The parties provided Frank no notice they were working on such an amendment. Frank reserves his right to supplement his objection in view of the changes.

preemptive revisions show that the changes are as immaterial to the defendants as they are worthless to the class.

Without the hypothetical value of the injunction, the Settlement earmarks more money for attorneys than their clients, and cannot stand as fair, reasonable, or adequate. *See, e.g., Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021).

## ARGUMENT

### I.   The injunction provides no value to class members.

The Court correctly asks whether consumers would even comprehend the difference between one idiom ("clinically proven") and phrases conveying an identical meaning ("clinically tested" *and* "shown"). But this is merely a prerequisite to showing that the injunction provides *any* benefit to the class at all. Even if a grammarian could parse a different connotation between "proven" and "shown," this doesn't show a difference in understanding Neuriva's marketing overall, which remains heavily laden with claims plaintiffs pleaded to be false and deceptive. In the context of Neuriva marketing, the substitution of a couple of words does not convey a different meaning to consumers.

Objector Frank incorporates previous filings by him and TINA, many of which address the injunction. *See* Dkts. 75, 83, 92, 100, 106, 108, 109, 111, 112, and 114.

### A.   Consumers would not appreciate any distinction between the packaging and advertising in their complete, misleading context.

The court asks whether "the distinctions, if any, between how a reasonable consumer (or potential consumer) would understand a label or marketing reference for a Neuriva product described as 'clinically proven' and how she would understand a label or marketing reference for the same Neuriva product described as 'clinical studies have shown [some benefit to brain performance and/or brain health, including learning, memory, focus, reasoning, accuracy or concentration].'"

In the first place, the injunction does not necessarily do even this much—it does not clearly prohibit use of the word "proven" and similar words. While it expressly allows defendant to say that clinical testing has "*shown*," it conspicuously does not outright ban use of the term "proven" and its analogs. Dkt. 52-1 ("Settlement") at 8. This ambiguity is heightened because the Settlement says: "Labeling in a form substantially similar to that depicted in Exhibit E shall be considered compliant with the injunctive relief agreed herein" (*id.*), and one of the packages attached continues to use

Neuriva's slogan "Nature made it. **Science proved it.** Brains love it." Dkt. 52-1, at E-3.[2] Obviously, if the Settlement allows defendants to write that its ingredients are "clinically tested" and further that this testing "proved" Neuriva was "clinically shown" to "fuel" brain health indicators, the Settlement literally requires no difference in Neuriva's messaging to consumers.

Even if the settling parties amend their agreement to clearly curtail the word "proven," nearly all of defendants' "uniformly deceptive advertising and marketing" remains. Dkt. 36 ("Amended Complaint"), ¶ 6. Defendants may still falsely claim Neuriva is "backed by science." *Id.* Defendants will continue to tout "improved brain performance … in the areas of Focus, Memory, Learning, Accuracy, Concentration, and Reasoning." *Compare id.* ¶ 7 *with* Settlement, Ex. E. Neuriva packaging still says it's "time to brain better." *Id.* ¶ 8. It still says the ingredients are "clinically shown to enhance brain performance," only substituting the word "proven." *Id.* The Bialik TV ad calls the ingredients "neuroscientist-approved." "Proven" and "shown" are simply synonyms, as several thesauruses show (and prove!).[3] Cambridge Dictionary even defines "proven" as "shown to be true."[4]  If the Settlement is approved, defendants will still advertise with a picture of a brain and design to "induce consumers to believe that Neuriva has been proven as a matter of fact to provide meaningful brain performance benefits." Dkt. 36 ¶ 9-10. Defendants will still trumpet ingredients that have never been tested together at all, citing "disturbingly misleading" studies as if they "show" otherwise. *Id.* ¶ 9-12. The label change may substitute two or three words, but this makes little difference to consumers and potential consumers—the entire context of Neuriva marketing remains misleading just as the plaintiffs pleaded.

---

[2] "Science proved" seems to be one of the idioms that should be precluded by the Settlement (Dkt. 52-1, at 8), so perhaps this is a drafting error. If so, it highlights how careless the settling parties were with injunction terms they now pretend to be of paramount importance.

[3] *Proven*, POWER THESAURUS, https://www.powerthesaurus.org/proven/synonyms; *Proven*, Thesaurus.com, https://www.thesaurus.com/browse/proven; *Shown*, Merriam Webster Thesaurus, https://www.merriam-webster.com/thesaurus/shown; *Shown*, POWER THESAURUS, https://www.powerthesaurus.org/shown/synonyms (all last visited Sep. 13, 2021).

[4]     *Proven*, CAMBRIDGE DICTIONARY ONLINE, *available online at:* https://dictionary.cambridge.org/dictionary/english/proven (last visited Sep. 13, 2021).

### B. Expert publications uniformly show "clinically tested" to be equivalent to "clinically proven" in advertising.

Objector Frank does not have the budget to hire multiple purported experts to opine on peripheral issues as defendants have. He certainly cannot afford to pay them extravagant and undisclosed compensation.[5] That said, expert authorities and publications in the record support his objection. Knowledgeable commentators observe that the claim "clinically tested" can create a false impression just as well as "clinically proven" does (even without adding the word "shown"). TINA has introduced most of these authorities to the record, and Objector Frank summarizes them here for the Court's convenience.

- **Federal Trade Commission.** In *Dietary Supplements: An Advertising Guide for Industry*, the FTC advises that an advertiser who claims a product has been "studied" should also be able to substantiate its efficacy due to the implied claim of success. Other FTC publications and decisions reach similar conclusions. Dkt. 92 at 2-3. Here, defendants need not merely *imply* efficacy, but claim it directly though use of the word "shown."

- **National Advertising Division of the Better Business Bureau.** Several NAD recommendations have rejected the argument that "clinically tested" claims require substantiation because such claims would only have meaning if the advertiser intended to convey that proof existed. Dkt. 83 at 4-5. Here, the implication is explicit because defendants will say "clinically tested" *and* that the testing has "shown" various propositions.[6] While NAD recommendations come at the conclusion of a voluntary process, most advertisers participate in the process because failure to do so results in referral to the FTC. Because NAD continually evaluates claims like "clinically tested," their recommendations should be taken as knowledgeable expert opinion.

- **Department of Health and Human Services, Office of Inspector General.** The HHS OIG observed that "clinically tested" and "scientifically proven" may be similarly misleading because they could confuse consumers into thinking supplements undergo premarket validation or approval similar to FDA review. Dkt. 114 at 2-3; https://oig.hhs.gov/oei/reports/oei-01-01-00121.pdf.

---

[5] Punam Keller was compensated at a rate of $1000/hour. Dkt. 98-4. Neither of the Gary Small declarations appear to disclose his compensation at all. Dkts. 62-1 & 86-1. The omission is a required disclosure under Fed. R. Civ. Proc. 26(a)(2)(A) & (B)(vi), creating consequences for the admissibility of the expert under Fed. R. Civ. Proc. 37(c)(1).

[6] Frank previously addressed defendant's argument that a much older, multi-faceted NAD settlement stood for the opposite proposition. Dkt. 100 at 6.

- **The Global Council on Brain Health.** Reported that nearly half of seniors mistakenly believed such FDA premarket review does in fact occur. *Id.* at 4; https://www.aarp.org/content/dam/aarp/health/brain_health/2019/06/gcbh-supplements-report-english.doi.10.26419-2Fpia.00094.001.pdf.

- **Health Canada.** Imposes the same requirements for the labelling of drugs whether they are said to be "clinically tested" or "clinically proven," suggesting no meaningful difference in how consumers could perceive the terms. *Id.* at 5; https://www.canada.ca/content/dam/hc-sc/migration/hc-sc/dhpmps/alt_formats/pdf/prodpharma/applic-demande/guide-ld/label_guide_ld-eng.pdf.

- **Rich Cleland, FTC Assistant Director.** Mr. Cleland wrote in response to the Court's earlier minute order (Dkt. 84) that "significant number of consumers would not see any difference" because any "clinically tested" claim includes an implicit finding of validity. Dkt. 92-1. Again, this logic is even more convincing when defendants add a "shown" claim which makes the implicit claim explicit.

- **Food and Drug Administration.** FDA's 2009 *Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403 (r) (6) of the Federal Food, Drug, and Cosmetic Act* says that the *overall message* of advertising should be considered together as well as than individual claims. Dkt. 75 at 5-6. Here, Neuriva will not be marketed as "clinically tested" in a vacuum, but in conjunction with myriad other claims, include the direct statement that testing has "shown" clinical benefit from the ingredients, which created the same impression as Neuriva's old marketing.

Defendants have denigrated the FDA guidance as non-binding recommendations that do not create enforceable obligations (Dkt. 86 at 14-15), but this does not diminish the expert nature of the publication. In executing the Settlement, defendants themselves acknowledged the persuasive authority of the FDA guidance. The Settlement provides that should defendants add additional marketing claims, these may be allowed "without limitation, upon the criteria in the [FDA] Guidance Document … or such alternate approach as interpreted by state or federal law and the Court to otherwise satisfy state or federal laws and regulations." Settlement at 9.

Defendants have also argued that their revised claims are not misleading and contrary to FDA guidance because their packaging supposedly does "not refer to the products themselves, but instead to the products' ingredients." Dkt. 86 at 16. The banners used on the three model packages attached as Exhibit E to the Settlement show otherwise:

At the top of each box, a banner displays the words "Clinically Tested" in large type, with the remaining words below in smaller type. This design is ambiguous: a reasonable consumer might get the impression that the lines of text are independent clauses—for example, that Neuriva is *both* "clinically tested" *and also* that it has "naturally sourced ingredients." This impression is particularly emphatic in the model packaging for Neuriva De-Stress (the third banner shown above). A reasonable consumer would simply *not* interpret the banner as a single phrase "clinically tested naturally sourced ingredients decaffeinated coffee cherry & melon concentrate" because the phrase doesn't even make sense without punctuation. Instead, a reasonable consumer would conclude that the whole product is (1) "clinically tested," (2) has "naturally sourced ingredients," and (3) those ingredients include "decaffeinated coffee cherry & melon concentrate." The first proposition is simply false. Defendants cannot deny Neuriva has never been clinically tested.

In short, the term "clinically tested," combined with claims about how Neuriva "fuels" brain performance and has ingredients "shown" to "help support brain performance" conveys exactly the same false message as before: that Neuriva itself has been tested *and* proven to do the things the packaging implies that it does.

### C. Defendants' own conduct shows they do not regard the term "Clinically Proven" as uniquely valuable.

Defendants have voluntarily limited their use of "clinically proven" well before the settlement requires because they know the term itself has negligeable effect on their marketing and sales.

Shortly after execution of the proposed Settlement—and over a month before preliminary approval—defendants announced that actress Mayim Bialik would be their "science ambassador."[7] Bialik has a Ph.D in neuroscience, but no scientific journal publications. Since completing her dissertation in 2007 ("Hypothalamic Regulation in Relation to Maladaptive, Obsessive-compulsive, Affiliative, and Satiety Behaviors in Prader-Willi Syndrome"), Bialik worked as an actress—not as a

---

[7] *Neuriva® Partners with Mayim Bialik to Educate and Empower Consumers on Brain Health*, PR NEWSWIRE (Mar. 16, 2021), *available online at*: https://www.prnewswire.com/news-releases/neuriva-partners-with-mayim-bialik-to-educate-and-empower-consumers-on-brain-health-301247710.html (accessed Sep. 13, 2021).

scientist. Defendants produced a series of slick commercials with Bialik, and not one features the term "clinically proven." For example, the 30-second commercial "I Love Brains," Bialik says "unlike ordinary memory supplements, Neuriva fuels six key indicators of brain performance to keep your brain on its toes, metaphorically speaking."[8] This statement itself creates the false impression that Neuriva has been tested—how else would Neuriva be "unlike ordinary memory supplements"? The false impression is not corrected when Bialik speaks of "clinically tested ingredients that are neuroscientist approved" pointing to herself, presumably because she is the "neuroscientist" who approves. The commercial concludes with the slogan "think bigger" and a view of packaging for Neuriva Plus that says "Clinically Tested" at the top of the box. *See further* Dkt. 83 (TINA *amicus*) at 6-9 (explaining how the Bialik advertising is misleading but entirely permitted under the Settlement).

 

Neuriva Plus boxes like the one featured in this ad do not appear to currently exist in the market. Defendants went out of their way to mock-up nonexistent packaging in order to excise "clinically proven" language entirely from their commercials. While defendants presumably did not want to need to re-cut their commercials after final approval of the Settlement, if these label claims were really especially valuable to the defendants, surely they would be used during Neuriva's splashy new campaign while they were still permitted.

The defendants' brand manager averred that "RB would not willingly or voluntarily remove the claim 'Clinically Proven' and replace it with 'Clinically Tested,' absent the settlement requiring us

---

[8] *Neuriva Plus - I Love Brains*, Neuriva Brain Performance (May 13, 2021), *available online at*: https://www.youtube.com/watch?v=MjPLuM8f62E (accessed Sep. 13, 2021).

to do so." Dkt. 98-2, ¶ 30. But they *are* substituting the term, even though the Settlement does not require it. Under the Settlement, defendants need not have altered their marketing and packaging until the Initiation Date, which is six months *after final approval and judgment*—and at least ten months after the beginning of the Bialik ad campaign Settlement at 8-9; *id.* at 3 (defining "Initiation Date"). Even then, the Settlement does not prohibit defendants selling products manufactured prior to the Initiation Date. If the "Clinically Proven" label were as valuable as defendants suggest, surely it would have been worthwhile to make a second cut of the commercial to be used for the ten-plus months prior to the Initiation Date.

Defendant has further voluntarily adjusted their packaging for new products. Defendants apparently launched a new product called Neuriva "Brain + Eye" or "Brain and Vision." This product does not yet appear on Neuriva's website, but it has been sold on Ebay at least since June, with packaging that uniformly says "clinically tested."[9] It is also available on Amazon, which includes photographs and ancillary marketing material that uniformly reads "clinically tested" rather than "clinically proven."[10] TINA previously flagged the "Brain + Eye" product as being anomalously omitted from the Settlement (Dkt. 83 at 5 n.5), but it appears to be a new product line launched this year. Some of the boxes sold on Ebay include markings that suggest they were packaged on February 19, 2021—weeks prior to preliminary approval and just fifteen days after parties executed the Settlement Agreement.[11]

---

[9] Ebay results for "neuriva brain vision," filtered for sold items only, *available online at*: https://www.ebay.com/sch/i.html?_from=R40&_nkw=neuriva+brain+vision&_sacat=0&rt=nc&LH_Sold=1&LH_Complete=1 (accessed Sep. 13, 2021), *archive link at:* https://archive.ph/jr5xl.

[10] *Lutein & Coffee Cherry – Neuriva Brain + Eye Support Capsules (30 count in a box), With Vitamins A C E, Zinc, Zeaxanthin, Antioxidants, Filters Blue Light, Decaffeinated, Vegetarian, Gluten & GMO Free*, AMAZON.COM, *available online at:* https://www.amazon.com/Lutein-Coffee-Cherry-Antioxidants-Decaffeinated/dp/B091KLKVPK/ (accessed Sep. 13, 2021).

[11] *See, e.g.*, *Neuriva Brain Performance & Vision Health 2 in 1 Supplement 30 Capsules 2/23 NEW*, *available online at:* https://www.ebay.com/itm/Neuriva-Brain-Performance-Vision-Health-2-in-1-Supplement-30-Capsules-2-23-NEW-/184813073139?nordt=true&rt=nc&orig_cvip=true (accessed Sep. 13, 2021), *archive links at:* https://archive.md/d9CLH and https://archive.md/g87Z9 (depicting

Defendants are apparently making these changes for their "own business reasons (presumably to avoid further litigation risk), not because of any court-or settlement-imposed obligation." *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1080 (9th Cir. 2017) (vacating and remanding approval of settlement). The voluntary changes show—and thus prove–the lack of value attributable to the settlement injunction.

### D. Even if there were a perceptible difference in Neuriva marketing, the injunction provides no value to class members.

The proponents of a settlement must bear "the burden of demonstrating that class members would benefit from the settlement's injunctive relief." *Koby*, 846 F.3d at 1080; *In re Dry Max Pampers Litig.*, 724 F.3d 713,719 (6th Cir. 2013) (compiling authorities). "[N]on-cash relief … is recognized as a prime indicator of suspect settlements." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 803 (3d Cir. 1995).

Even if the injunction were valuable, and even if class counsel was not the primary beneficiary of the agreement, this "relief" is conferred on *all* future users, regardless of class membership. *Pampers*, 724 F.3d at 720 ("The fairness of the settlement must be evaluated primarily based on how it *compensates class members*—not on whether it provides relief to other people, much less on whether it interferes with the defendant's marketing plans." (emphasis in original) (internal quotation marks omitted)). "[F]uture purchasers are not members of the class, defined as it is as consumers who have purchased [the product]." *Pearson*, 772 F.3d at 786. "No changes to future advertising by [the defendant] will benefit those who already were misled by [the defendant]'s representations." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010). *See generally* Erin L. Sheley & Theodore H. Frank, *Prospective Injunctive Relief and Class Settlements,* 39 HARV. J. L. AND PUB. POL'Y 769 (2016) (explaining how prospective injunctive relief can generate conflicts and abuses in consumer class settlements).

---

sold listing of "Neuriva Brain + Eye" box with stamps on the bottom that say "021921" "Lot: ACS530" and "Exp: 02/2023").

The settling parties have failed to "evidence to suggest that many, if any, members of the proposed class would derive a benefit from obtaining the injunctive relief afforded by the settlement." *Koby*, 846 F.3d at 1080.

None of defendants' purported expert testimony established any value for the injunction. Gary Small's declarations (Dkt. 62-1 & 86-1) that contend that Neuriva's marketing is supported, but make no comment on the terminology at issue: *shown*, *tested*, and *proven*. The declaration of Punam Keller cannot properly be called expert testimony at all because it contains no apparent methodology, as Frank previously argued. Dkt. 100 at 9-11. Moreover, the declaration entirely misses the mark of the Court's current inquiry. It contrasts dictionary definitions of "tested" and "proven" without considering the context of the marketing, including the Settlement's express endorsement defendant using the term "shown." Dkt. 98-4 at 16-17.

If the settling parties file belated evidence arguing for such value, Objector Frank reserves all rights—including his right to seek discovery from any belated declarants.

## II. Because the injunction provides no recovery, the Settlement must be rejected for unfairly, unreasonably, and inadequately prioritizing attorneys' interests.

Because the injunction provides no benefit to class members, the fairness of the settlement fails due to the disproportionate allocation of attorneys' fees and lackluster class benefit. *See, e.g., Kim v. Allison*, __F.4th__, 2021 WL 3627260 (9th Cir. Aug. 17, 2021).

While the settling parties have argued that they provided adequate notice and recovery, the contrast with another recent Reckitt settlement undermines this notion. In *Yamagata v. Reckitt Benckiser LLC*, plaintiffs obtained contact information for 4.7 million consumers of defendants' Move Free product and provided direct notice to those class members. No. 3:17-cv-3529-VC, Dkt. 221 (N.D. Cal. May 12, 2021). Notice was provided in *Yamagata* even though—unlike this settlement—plaintiffs established a fixed monetary fund of $50 million and defendants' liability could not increase due to increased claims. In contrast, in this case, more claims would cost defendants more money, yet the parties agreed to provide no direct notice whatsoever. The point is: a low take rate claims-made settlement does not serve the interests of the class and was certainly not the only option available for the settling parties, who promote an illusory $8 million fund with full knowledge that it would unlikely

be claimed. Objection, Dkt. 75 at 25-27; Dkt. 107 (Tr.) at 60 (objector's argument that claims process ensured meager recovery); *id.* at 69 (Court's suggestion to renegotiate the settlement to shift some attorneys' fees toward class recovery).

The proposed Settlement provides no meaningful injunction, and earmarks most of its meager pecuniary value to attorneys. This cannot be fair, reasonable, or adequate.

## CONCLUSION

"Clinically tested" and "shown" cannot plausibly make a different impression on consumers, nor does it provide them with even a peppercorn worth of value. For this reason, the settlement should be judged based on its pecuniary terms, which militate against final approval. Perhaps the settlement may be renegotiated into fairness, but the substitution of a few words on Neuriva's label cannot make the upside-down fee application fair, reasonable, or adequate under Rule 23(e).

Date: September 13, 2021

Respectfully submitted,

*/s/ Matthew Seth Sarelson*
Matthew Seth Sarelson
DHILLON LAW GROUP, INC.
2100 Ponce De Leon Blvd. Ste 1290
Coral Gables, FL 33134
Phone: 305-773-1952
Email: Msarelson@dhillonlaw.com

M. Frank Bednarz (*pro hac vice* admission pending)
IL ARDC No. 6299073
HAMILTON LINCOLN LAW INSTITUTE
CENTER OF CLASS ACTION FAIRNESS
1145 E. Hyde Park Blvd. Unit 3A
Chicago, IL 60615
Phone: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Objector Theodore H. Frank*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed with the Court via the CM/ECF system, which will send notification of such filing to all attorneys of record.

September 13, 2021             */s/ Matthew Seth Sarelson*
                               Matthew Seth Sarelson