UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**CASE NO. 20-23564-CIV-COOKE/GOODMAN**

DAVID WILLIAMS, et al.,

    Plaintiffs,

v.

RECKITT BENCKISER LLC, et al.,

    Defendants.

_____/

## **ORDER DENYING DEFENDANTS' MOTION TO STRIKE**

In this putative class action lawsuit, Defendants are seeking to strike the submissions of Theodore H. Frank and Truth in Advertising, Inc. [ECF No. 86]. Frank says he is a class member who is also an Objector, and he opposes the class action settlement agreement and amended class action settlement agreement. Truth in Advertising, Inc (hereinafter, "TINA") also opposes the class action settlement agreement and amended settlement agreement, but it does not purport to be a class member. Instead, it is appearing as *amicus curiae*, and it filed a response to Defendants' motion. [ECF Nos. 87; 91].[1] Defendants filed a reply. [ECF No. 91].

---

[1]     TINA's first filing included an incorrect attachment. At the Undersigned's direction [ECF No. 89], TINA filed an additional response remedying the error and including the correct attachment.

Frank filed a separate response to Defendants' motion. [ECF No. 108]. Defendants filed a reply to Frank's response. [ECF No. 111]. United States District Court Judge Marcia G. Cooke referred these matters, related to the approval of a class action settlement, to the Undersigned. [ECF No. 53].

### I.   Background

The Undersigned previously entered an Order preliminarily approving the class action settlement. [ECF No. 57]. As part of that Order, the Final Approval Hearing was scheduled for August 17, 2021. *Id.* The Order also provided that Class Members could object, in writing, provided they did so no later than July 27, 2021. *Id.*

On July 26, 2021, TINA filed an unopposed motion for leave to file an *amicus* brief in opposition to the proposed settlement. [ECF No. 74]. The Undersigned granted TINA's unopposed request. [ECF No. 79]. On July 26, 2021, Frank filed a Notice of Objection to the proposed settlement. [ECF No. 76].

Soon after these filings, on August 10, 2021, Defendants filed a "Motion to Strike the Submissions of Theodore H. Frank and Truth in Advertising, Inc." [ECF No. 86]. TINA quickly filed a response [ECF No. 87] and Defendants filed a reply [ECF No. 91].

Before Frank responded to Defendants' Motion to Strike, the Undersigned held a nearly three-hour fairness hearing on August 17, 2021, which was attended by Defendants,

Plaintiffs, Frank, and TINA.[2] Immediately following the fairness hearing, Defendants, based on representations made by Frank's attorney,[3] filed a Notice of Withdrawal of Section I of Defendants' Motion to Strike (which Defendants identify as pages 3-11). [ECF No. 104].

Frank filed his response to Defendants' motion, which was accompanied by two affidavits clarifying the statements made by his attorney at the August 17, 2021 fairness hearing.[4] [ECF Nos. 108; 108-1; 108-2]. Defendants filed a reply, indicating, in part, their displeasure with the clarifications, but still "maintain[ing] the integrity of [their] prior withdrawal" and "consent[ing] to the Court deciding the Article III standing issue without relying on or considering [their] arguments on that point." [ECF No. 111, p. 4].

## II. Legal Standard

### a. Objectors

Only a class member may object to a proposed class action settlement. "Under Fed. R. Civ. P. 23(e), non-class members are not permitted to assert objections to a class action

---

[2] TINA appeared and was present during the hearing; however, the organization did not make any oral argument and indicated it would rely on its written submissions.

[3] Frank's attorney indicated that Frank purchased a bottle of Neuriva before he heard about the instant litigation and before he heard about a potential settlement.

[4] Both Frank and his attorney clarified that before Frank purchased a bottle of Neuriva, an attorney had reached out to Frank and said he heard about a possible settlement through the grapevine and offered to find an objector. [ECF Nos. 108-1; 108-2]. Frank says he did not give this attorney's information much weight and did nothing to research the case or what the pending litigation was about. [ECF No. 108-2].

settlement." *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726, 2015 WL 6872519, at *11 (S.D. Fla. Nov. 9, 2015) (citing *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 473 (S.D. Fla. 2002)). Moreover, "[t]he burden [is] squarely on [the purported objector] to prove — not the Parties to disprove — his Class membership." *Id*. (citing *In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014)); *see also In re Hydroxycut Mktg. and Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998)) ("The party seeking to invoke the Court's jurisdiction—in this case, the Objectors—has the burden of establishing standing.").

### b. *Amicus Curiae*

"[D]istrict courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) (citing *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500-01 (S.D. Fla. 1991). "An *amicus curiae* does not become a party to the case, and thus is not subject to the *in personam* jurisdiction of the court." *Id.* (citing *City of Winter Haven v. Gillespie*, 84 F.2d 285, 287 (5th Cir. 1936) (stating that City, which appeared before the court as *amicus curiae*, was not a party to the case).

### III. Analysis

Defendants' argument can be divided into two categories: (1) Neither TINA nor Frank have Article III standing; and (2) The Court should not credit TINA's or Frank's submissions because their logic is flawed and, despite their contentions, the proposed

settlement is fair. Similarly, Defendants also request relief in alternative terms. Despite being styled as a motion to strike, Defendants, in their first motion, conclude by requesting that the Court "disregard" TINA's and Frank's submissions, and, in their reply to Frank, conclude by requesting the Court "either strike or overrule" Frank's submission.

This Order will address only Defendants' request to strike TINA's and Frank's submissions (i.e., not even consider the submissions in any capacity regardless of merit). To the extent that Defendants seek to have the Undersigned overrule the submissions or determine the submissions lack an evidentiary foundation, those substance-based rulings will be made in a separate Order evaluating the motions to approve the settlement agreement and/or amended settlement agreement.

### a. TINA's Submission

TINA is a non-partisan, non-profit organization which claims its mission is to "combat the systemic and individual harms caused by deceptive marketing." [ECF No. 74]. The organization regularly participates as *amicus curiae* at the district and appellate level. *Id.* at pp. 2-3 (providing a list of cases where TINA has filed *amicus* submissions). TINA, at its request, was granted permission to participate as *amicus curiae* in this litigation. [ECF Nos. 74; 79]. Defendants now seek to strike TINA's submission.

Despite Defendants' pending request to strike TINA's *amicus* brief, they previously **consented** to TINA filing an *amicus curiae* brief. [ECF No. 74]. In TINA's motion for leave to file a brief, it stated that it consulted both parties and neither objected. *Id*. TINA highlights

this fact in its response. [ECF No. 91]. As part of TINA's response, it attached an email sent to the parties indicating that it would not be a filing a motion to intervene as a party objector and explaining that it wanted to only file a brief to assist the court. [ECF No. 91-1]. Defendants consented to TINA's request and TINA agreed that Defendants could file a response should Defendants choose to do so. [ECF No. 93-1].

After advising that it did not oppose TINA's motion to submit an *amicus* brief, Defendants now seek to *strike* TINA's submission based on a claim that TINA does not have Article III standing. In support of this argument, Defendants cite *Ass'n For Disabled Americans, Inc.*, 211 F.R.D. at 457, which held that various advocacy organizations lacked standing to file *objections* to a settlement. However, TINA does not claim to be -- and actually disavows being -- an objector. TINA's status in this proceeding is as an *amicus curiae.*

*Amicus curiae* are not required to have Article III standing in a case to file a brief. *See Rio Grande Pipelines Co. v. F.E.R.C.*, 178 F.3d 533, 539 (D.C. Cir. 1999) (articulating the contrast between an entity with Article III standing, who, among other things, can appeal a ruling, with that of an *amicus curiae*, who seeks to only contribute viewpoints); *see also Center for Biological Diversity v. Regan*, --F. Supp. 3d--, 2021 WL 1734921, at *1 (D.D.C. 2021) (providing two options to entities that wanted to intervene in an action: "(1) renew their motion with a showing that they indeed possess Article III standing or (2) move for leave to participate as amici in this matter . . . .").

While there is no rule of procedure governing the filing of *amicus* briefs at the trial level, Federal Rule of Appellate Procedure 29 governs appellate *amicus* briefs. During initial consideration of an appeal's merits, "amicus curiae may file a brief only by leave of court or if the brief states that all parties have consented to its filing." Fed. R. App. P. 29(a)(2). At the trial level, similarly, "district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d at 1249 n.34.

TINA complied with both avenues for permission to file *amicus* briefs at the appellate level -- it sought leave of court *and* obtained the consent of both parties. The Undersigned granted TINA's request to file its brief, in part, based on the parties' lack of opposition. Defendants have not raised any argument that they were misled into consenting to TINA's filing; instead, they argue based on their disagreement with the brief's contents.

Other than the single inapplicable case cited by Defendants, they have presented no authority holding that TINA needs Article III standing to file an *amicus* brief. Indeed, the available authority points towards the opposite conclusion. Given the frequency of *amicus* appearances in the highest echelons of litigation,[5] the Undersigned is not inclined to adopt the unique position that each potential *amici* must demonstrate Article III standing so that a

---

[5]   Paul M. Collins Jr., Friends of the Court: Examining the Influence of Amicus Curiae Participation in U.S. Supreme Court Litigation, 38 Law & Soc'y Rev. 807 (2004) (explaining how the Supreme Court almost always grants petitions of potential *amici*).

filing might be considered. Accordingly, the Undersigned **denies** Defendants' request to strike TINA's submission due to lack of standing.

### b. Frank's Submission

Frank is associated with the Center for Class Action Fairness ("CCAF"), an organization that often represents class action objectors at both the district court and appellate levels. In this case, Frank is not appearing as an attorney representing an objector, but as an actual objector based on a claim that he qualifies as a Class Member.

The Undersigned previously granted Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and for Certification of the Settlement Class ("Preliminary Approval"). [ECF No. 57]. In that Order, the Undersigned preliminarily certified the following nationwide Settlement Class:

> All persons who purchased for personal consumption and not for resale, one or more of the Neuriva Products (Neuriva Original, Neuriva Plus, or Neuriva De-Stress), from Defendants or an authorized reseller, in the United States, between the dates of January 1, 2019 and the date of Preliminary Approval of the Settlement by the Court [April 23, 2021].

*Id.* Further, the Court allowed Class Members until July 27, 2021 to file objections to the settlement. *Id.*

On July 26, 2021, Frank filed his objection to the proposed settlement. [ECF No. 75]. Along with the objection, Frank included an affidavit, swearing that he purchased a bottle of Neuriva Original on February 2, 2021. Frank then disclosed his association with the Hamilton Lincoln Law Institute ("HLLI") and CCAF. [ECF No. 75-1]. Per Frank's own

8

words, "CCAF's mission is to litigate on behalf of class members against unfair class action procedures and settlements." *Id.* Frank next listed, beyond the requirements of the Court's instructions to objectors [ECF No. 57], all cases in which he or another CCAF attorney objected to a class action settlement. [ECF No. 75-1]. This list spans approximately 17 pages.

Defendants argue that Frank's purchase of a Neuriva product was made with a "desire to object" so that he could "manufacture standing." [ECF No. 86]. This, they claim, means that Frank does not have Article III standing and, even if he did, he is not an "aggrieved class member," which they say one must be to object. *Id.* Frank counters these accusations, stating he meets the standing requirements of Federal Rule of Civil Procedure 23(e)(5)(A) and he is aggrieved by the prioritization of class counsel's and defendants' interests over those of absent class members. [ECF No. 108].

Defendants, however, have **withdrawn** this portion of their argument. [ECF No. 104]. Although they, in a separate submission, appear to regret the decision to withdraw this argument, Defendants, nonetheless, maintain their withdrawal. [ECF No. 111]. They do so with citation to *Prof'l Helicopter Pilots Ass'n Local 102 v. U.S. Dept. of The Army*, No. 13-cv-164-WKW, 2013 WL 6837555, at *5 (M.D. Ala. Dec. 26, 2013), claiming that this case permits the Court to decide Article III standing without relying on or otherwise considering Defendants' arguments on the point. *Prof'l Helicopter Pilots Ass'n Local 102*, however, addresses a court's ability to assume standing so that it may consider mootness,

9

i.e., whether equitable relief is available when there is no chance of future harm. *Id.* at *5. This doctrine is limited in scope and inapplicable to the situation before the Court.

Regardless, the Undersigned accepts Defendants' withdrawal of Section I of their motion. Accordingly, I need not address the many cases cited by Defendant where appellate courts have ruled that bona fide class members had no standing to *appeal* and determine if this logic should apply at the trial level objection stage. Nor do I need to address the motivations behind Frank's Neuriva purchase and whether the convenient timing of Frank's purchase supports a finding that his injury is self-inflicted and, if so, whether such a finding would preclude him from objecting based on a lack of Article III standing. The need to grapple with these potentially dicey and provocative issues disappeared after Defendants withdrew their objections in the first section of the motion, leaving only the substance of Frank's objections.

Instead, I will look only to whether Frank qualifies as an objector under the Undersigned's Order granting Preliminary Approval. Defendants have not made any argument that Frank falls outside the Class Member definition. Nor have Defendants put forth evidence that Frank did not comply with the requirements objectors must satisfy when filing an objection (e.g., timing or contents of objections). The Court has also not found any deficiencies in Frank's status as a member of the Settlement Class nor in the

contents of his objection.[6] Accordingly, the Undersigned **denies** Defendants' motion to strike Frank's submission.

Although the Undersigned is not addressing the merits of Defendants' argument that Frank is not an aggrieved class member and that his injury is self-inflicted, I want to discuss the terms "serial objector" or "professional objector," which have been used on numerous occasions since Frank entered this litigation.

There are two types of objectors to a Class Action Settlement: (1) objectors seeking to obtain a financial payoff from either a defendant or class counsel in exchange for dismissing their objection (i.e., a tactic informally known as "greenmail"); and (2) objectors who take bona fide issue with the fairness of a proposed settlement. Here, Frank has represented that he will not accept payment or fees in exchange for withdrawing his objection. [ECF No. 75-1, p. 2]. That means he does not, at least in this case, appear to be the first type of objector.

Courts frequently use the term "serial objector" or "professional objector" as though the frequency of objections means the objector must be engaged in inappropriate or frowned-upon conduct. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1260 n.5 (11th Cir. 2021) ("Serial objectors are those who bring objections that are merely

---

[6] Frank has signed an affidavit and provided a receipt as evidence that he purchased Neuriva during the relevant time period. [ECF No. 75-1]. Additionally, his affidavit and motion comply with all of the Court's requirements for objectors. [ECF Nos. 75; 75-1].

11

boilerplate and immaterial, while their true goal is to get paid some fee to go away." (internal quotation omitted)); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1259 (S.D. Fla. 2016) (describing professional objectors as individuals "whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto . . . [to] levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors").

However, the mere isolated fact that an individual or organization objects with unusual frequency does not necessarily mean that a court should view the individual or organization in a negative light. At times, a serial objector may have selfish or deceitful motivations. Those objectors should be criticized. However, at other times, a serial objector may be pursuing acceptable goals unworthy of critical comment.

Frank has received both praise and criticism for efforts he and CCAF have made to advance their mission to litigate on behalf of class members against unfair class action procedures and settlements. *Compare Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (stating "objectors play an essential role in judicial review of proposed settlements of class actions" and highlighting that "Frank and the other objectors flagged fatal weaknesses in the proposed settlement") *with In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800, 2020 WL 256132, at *42 (N.D. Ga. Mar. 17, 2020) (finding that Frank engaged in improper tactics and that his objection was not motivated to serve the interests of the class), *rev'd in part by* 999 F.3d 1247 (11th Cir. 2021); *see also In re Dry Max Pampers*

*Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objections in ascertaining the fairness of a settlement") (rejecting settlement approval and certification).

A New York Times article about class action settlements described Frank as "the leading critic of abusive class action settlements" and noted that he testified before a House subcommittee. Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. Times (Aug. 13, 2013). Moreover, Frank's declaration explains that the CCAF has "been successful, winning reversal or remand in over twenty federal appeals decided to date in courts of appeal and the Supreme Court." [ECF No. 75-1, p. 3].

Because Defendants have withdrawn their arguments seeking to attack Frank's Article III standing, the Undersigned need not issue a ruling definitively determining which category of objector Frank and his organization fall within in this case.

It is, of course, possible that Frank and the CCAF are clothed in the garb of *both* types of objectors here. However, in the Undersigned's view, the frequency with which Frank pursues objections (as either an objector himself, personally, or, through the CCAF, as counsel for an objector) is not, in and of itself, a reason to condemn him or his organization. *Cf. In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 997 (N.D.

13

Ohio 2016) (condemning "opportunistic objectors" who object in order to obstruct payment to lead counsel or the class "in the hope that lead plaintiff will pay them and go away," noting that "several" objectors fall into this category but then explaining that "[e]xcept for the fact that objector CCAF has appeared an objected in numerous other class-action cases, these [negative] characterizations do *not* apply to CCAF – CCAF's objection is lucid and filed in good faith") (emphasis in original).

### IV. Conclusion

Accordingly, based on the foregoing reasons, the Undersigned **denies** Defendants' Motion to Strike TINA's and Frank's submissions. The Undersigned will discuss the merits of their objections/positions in a later-issued substantive Report and Recommendations concerning the motion to approve the amended class action settlement.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on September 29, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record