**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:20-cv-23564-MGC**

DAVID WILLIAMS and CAROLL ANGLADE, THOMAS MATTHEWS, MARTIZA ANGELES, and HOWARD CLARK, *individually and on behalf of all others similarly situated*,

    Plaintiffs,

v.

RECKITT BENCKISER LLC and RB HEALTH (US) LLC,

    Defendants.

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING**
**FIRST AMENDED SETTLEMENT AGREEMENT**

The injunctive relief Defendants Reckitt Benckiser LLC and RB Health (US) LLC ("Defendants" or "RB") agreed to via the First Amended Settlement Agreement ("Amended Settlement") strengthens the already significant concession in the original Settlement Agreement, which required the use of "Clinically Tested" or similar language, such as clinical studies have "shown." This additional relief—that RB would refrain from any reference to "shown"—further addresses Plaintiffs' claims of purported deception. And this relief was accepted in a case where RB had vigorous defenses—as demonstrated by recent case law dismissing a similar challenge raised by the same Plaintiffs' counsel to a "clinically proven" claim. Under established Eleventh Circuit law, repeatedly applied by courts within this District, this record establishes that the injunctive relief, both the original injunctive relief and the additional injunctive relief now added, has value and that Final Approval is warranted.

But the evidence here goes even further. RB has submitted additional expert testimony which establishes that, by giving up its pre-settlement right to use the terms "Clinically Proven" (and now even "Clinically Shown") and to instead limit itself to the term "Clinically Tested," Neuriva's labels will communicate a message that neither Plaintiffs nor the Objectors can dispute: The active ingredients in Neuriva have, in fact, been clinically tested for their advertised benefits. *See* Declaration of Prof. Punam Keller (Dkt. No. 98-4) ("Keller Decl.") ¶¶ 26–29, 38–45; *see also* Supplemental Declaration of Prof. Punam Keller ("Suppl. Keller Decl.") ¶¶ 12–13 (attached hereto as **Exhibit A**). As the Declaration and Supplemental Declaration of Dr. Punam Keller confirm, by agreeing to a label that will consistently require use of the phrase "Clinically Tested," consumers are likely to correctly conclude that Neuriva's ingredients have been tested, without necessarily drawing additional inferences about the level of proof or certainty those tests revealed. Suppl. Keller Decl. ¶ 13; Keller Decl. ¶¶ 38–45.

RB's position—which *also* has been separately validated by unrebutted scientific expert testimony (Dkt. Nos. 62-1 & 86-1)—firmly remains that these tests *do* both "prove" and "show" Neuriva's efficacy. So, the fact that RB will not be permitted to communicate that

-1-

truthful message is a meaningful restriction and rebuts assertions by Objector Frank and Amicus TINA that the Amended Settlement's injunctive relief lacks value.

## I. RB Would Not Have Agreed to the Label Changes But For the Settlement, Which Proves the Injunctive Relief's Value.

A settlement's fairness should be evaluated in its entirety, including both monetary and non-monetary benefits, and weighed against the risks of proceeding. *See Wilson v. EverBank*, 2016 WL 457011, at *11 (S.D. Fla. Feb. 3, 2016) ("[C]ourts rightly consider the value of injunctive *and* monetary relief together in assessing whether a class action settlement provides sufficient relief to the class.") (evaluating value of injunctive relief under the "range of possible recovery" factor, one of six factors Eleventh Circuit considers in evaluating a settlement); *see also* Mot. for Final Approval (Dkt. No. 69) at 9 (setting forth six factors).

As the Eleventh Circuit held in *Poertner v. Gillette Co.*, injunctive relief that requires a defendant to forego challenged labeling statements because of the underlying litigation provides "substantial evidence" that the relief provides benefit to the settling class. 618 F. App'x 624, 629 (11th Cir. 2015) ("[W]e conclude that the district court's valuation of the nonmonetary relief was supported by the record.") (applying substantial evidence standard). *Poertner* affirmed the final approval of a class settlement likewise objected to by Objector Frank, who had asserted that the labeling restrictions agreed to by the defendant were "illusory" because the defendant was no longer selling the underlying product at the time of the settlement. *Id*. Even in that context, the Eleventh Circuit *still* concluded the injunctive relief should be considered of value to the class, focusing on that the litigation prompted the defendant to make the labeling change: "The record . . . makes clear that [defendant's] decision to stop selling and marketing [the challenged product] with the challenged statements on the packaging was motivated by the present litigation. Frank did not present any contradictory evidence to the district court." *Id.*

This principle from *Poertner*, that a settlement-induced label change provides value to the class for approval purposes, has been clearly and repeatedly applied within the Southern

District of Florida. *See Marty v. Anheuser-Busch Cos., LLC*, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015) ("Under Eleventh Circuit law, injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement.") (citing *Poertner* and overruling objection claiming injunction offered no value); *Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at *15 (S.D. Fla. Jul. 13, 2021) ("Lastly, the Settlement provided a value to all Class Members in the form of the Programmatic Relief, requiring a label change that Defendant would not have agreed to absent the Agreement."); *Janicjevic v. Classica Cruise Operator, LTD.*, 2021 WL 2012366, at *1 (S.D. Fla. May 20, 2021) ("The Court finds [injunctive-relief based] policies certainly have an important value to the class that would not have been brought about by individual actions."); *id.* *6 ("[C]ourts rightly consider the value of injunctive *and* monetary relief together in assessing whether a class action settlement provides sufficient relief to the class.") (applying *Poertner* to settlement-induced policy changes) (italics in original); *see also cf. Wilson*, 2016 WL 457011, at *11 ("[T]he Settlement will put an end to the practices complained of by the Plaintiffs.") (same).

RB has established through unrebutted testimony that the changes agreed to in the Amended Settlement, specifically the limitation requiring the use of the term "Clinically Tested," was the product of this litigation and Plaintiffs' claims. *See* Sexton Decl. (Dkt. No. 98-2) ¶ 30 ("RB would not willingly or voluntarily remove the claim 'Clinically Proven' and replace it with 'Clinically Tested,' absent the settlement requiring us to do so."); *see also* Suppl. Sexton Decl. (Dkt No. 116-2) ¶ 3 (RB considered prior labeling truthful and change to limit labeling to "Clinically Tested" and not use "Clinically Proven" or "Clinically Shown" was prompted by class settlement). This alone proves up the injunctive relief's value under *Poertner*. 618 F. App'x at 629; *see also Ferron*, 2021 WL 2940240, at *11 ("The Court also finds that Defendant would not have implemented the labeling changes required by the Settlement had Plaintiff not brought this lawsuit.").

Moreover, these labeling restrictions go specifically to the deception Plaintiffs had alleged. The Amended Complaint alleged repeatedly that the "proven" language on Neuriva's

-3-

pre-settlement labeling misleadingly communicated the products' efficacy with a body of "overwhelming evidence" representing a "consensus in the scientific community" that is "widely accepted in [the] applicable field." Am. Compl. (Dkt No. 51) ¶ 65; *see also id.* ¶ 66 ("Defendants' statements on their labels and in their advertising convey to reasonable consumers, and reasonable consumers would believe, that the state of the science regarding Neuriva and its ingredients has *reached a level of scientific consensus….*"); *id.* ¶ 82 ("*no scientific consensus exists* that there is clinical and scientific proof…."); *id.* ¶ 85 ("there is *no consensus in the scientific community*" and pointing to "limited" research) (emphases added).

   RB does not agree that Plaintiffs' allegations are correct regarding the quantitative or qualitative body of science that proves Neuriva's efficacy. *See* Amended Settlement ¶ XV (RB denying liability). But it has nonetheless agreed to restrict its labeling to statements that Neuriva's ingredients have been "Clinically Tested." *See id.* ¶ IV.A.1 (injunctive relief). And by limiting itself to "Clinically Tested" instead of "proven," RB has adopted labeling that does not suggest some definitive scientific outcome or consensus—which is what Plaintiffs' harped on as misleading on the pre-settlement labels—in favor of revised labeling that connotes only the truthful fact that Neuriva's active ingredients have been subjected to rigorous examination. *See* RB Supp. Br. (Dkt. No. 98) at 4–5 (dictionary definitions and NAD authority indicating that a "proven" claim connotes "consensus or scientific agreement"); *id.* at 12 ("'Proven' and 'Tested' are generally expected to meet different levels of scientific investigation and different levels of statistical certainty.") (citing Keller Decl.). Revising Neuriva's labels to address the deception claimed in the lawsuit further confirms that the Amended Settlement's injunctive relief has value. *Wilson*, 2016 WL 457011, at *11; *see also Ferron*, 2021 WL 2940240, at *4 (approved settlement with labeling-based injunctive relief that included removal of the challenged language from products' labels).

   This relief has been further strengthened in the Amended Settlement. RB must now also forego use of the term "shown," even when the original relief already addressed Plaintiffs' concerns. By foregoing the use of "shown," RB is avoiding language allegedly suggesting

"proven." *See* Suppl. Keller Decl. ¶ 11–12; *compare* Collins Dictionary ("1. show. tr. v. If something shows that a state of affairs exists, *it gives information that proves it* or makes it clear to people.") (available at: https://www.collinsdictionary.com/us/dictionary/english/show) *with* Collins Dictionary ("test. n. a test is a deliberate action or experiment to find out how well something works") (available at https://www.collinsdictionary.com/us/dictionary/english/test) (first emphasis added). RB has agreed to an even more restrictive label that, in addition to restriction to the use of "clinically tested," further avoids any possibility that a consumer would interpret the term "shown" to mean "proven." Objector Frank previously took this exact position in arguing that continued use of the term "shown" might lead consumers to believe it meant "proven." *See* Objection of T. Frank (Dkt. No. 75) at 6 ("[T]he fact that the Defendant can, under the settlement, use 'shown' as a representation instead of 'clinically tested' confirms this reading [that the label conveys the message 'clinically proven']."). Thus, the Amended Settlement's prohibition on the use of both "shown" and "proven" implements an even stricter set of requirements for labeling.

These injunctive relief restrictions were all agreed against a backdrop of robust scientific substantiation—whose strength was attested to through unrebutted expert medical testimony—that Neuriva *is* scientifically "proven" and "shown" to provide its advertised benefits. *See generally* Declaration (ECF No. 62-1) and Supplemental Declaration (ECF No. 86-1) of Dr. Gary W. Small. Also, even in the brief intervening period of the Amended Settlement's pendency, other courts have acknowledged that complaints challenging "clinically proven" language on the labels of dietary supplements are subject to a complete bar under the "prior substantiation" doctrine and must be dismissed. *See Yamasaki v. Zicam LLC*, 2021 4951435, at *5 (N.D. Cal. Oct. 25, 2021) ("The Court is not persuaded by Plaintiff's conclusory allegations that the words 'clinically proven' imply to reasonable consumers that there is a scientific consensus about the efficacy of Defendant's products or that the studies on which Defendant relies have been published and peer-reviewed."). Indeed, *Yamasaki* was

brought by the same Plaintiffs' counsel as the instant action and the complaint in that matter contained highly similar allegations of fact. *Compare Yamasaki v. Zicam LLC*, No. 21-cv-2596, Am. Compl. (Dkt No. 30) ¶ 32 *with* Am. Compl. (Dkt. No. 36) ¶¶ 66.

Thus, the value of the injunctive relief here must be considered through the lens of the "range of possible relief" that Plaintiffs might have received informed by the "likelihood of success" in proceeding. *Wilson*, 2016 WL 457011, at *6 n.11 (citing *Leverso v. S. Trust Bank of Ala. N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994)). That the near-term outcome in this case might very well have been a Rule 12 prior substantiation dismissal where Plaintiffs and the class received $0 and Neuriva's labels went unchanged, further proves the injunctive relief's considerable value. *Ferron*, 2021 WL 2940240, at *11 ("An example of the risk of continued litigation is evidenced by the recent dismissal without prejudice of a factually similar case."); *see also* RB Mot. to Dismiss (Dkt No. 39) at 8–11 (RB's Motion to Dismiss asserting prior substantiation bar as basis dismissal of Complaint in full). The injunctive relief agreed to here has substantial value and should be fully and appropriately credited when considering whether to approve the Amended Settlement.

## II. Expert Testimony Confirms That the Amended Settlement's Injunctive Relief Has Value.

To directly address this Court's November 16 Order, RB has marshalled additional expert proof that the Amended Settlement results in a materially changed label that further proves the "benefits of the revised injunctive restrictions." Dkt. No. 131.

The Supplemental Declaration of Dr. Punam Keller, an expert in the field of health-related marketing, establishes two key points. First, the Amended Settlement's prohibition on use of the word "shown" strengthens the already significant injunctive relief insofar as "shown" has an arguably closer meaning to the term "proven," such that the further restriction on "shown" means "clinically tested" does not suggest an outcome-based result. Suppl. Keller Decl. ¶¶ 11–12. Second, consumers reviewing the labels mandated by the Amended Settlement are likely to accurately interpret the "Clinically Tested" language to

mean that the products' ingredients have been subject to testing, which is indisputably true. *Id.* ¶ 13. This second round of expert testimony going to the value of the Amended Settlement's injunctive relief, secured only through the settlement of this lawsuit, provides an additional basis to support Final Approval. *See In re: Vizio, Inc., Consumer Privacy Litig.*, 2019 WL 12966638, at *6 (N.D. Cal. Jul. 31, 2019) ("Plaintiffs submit persuasive expert testimony demonstrating that the injunctive relief secured by the Settlement Agreement has substantial value and benefit to Class Members, even when limiting such evaluation to relief directly traceable to this action.").

In her initial Declaration (Dkt. No. 98-4), Dr. Keller established her expertise and experience in the area of health-related marketing and the significant concession RB made in agreeing to "clinically tested" or similar language, such as clinical studies have "shown." Keller Decl. ¶¶ 3–6, 9. That declaration further established that consumers would perceive a meaningful difference between the claims "Clinically Tested" and "Clinically Proven," with the "tested" claim connoting a *process* versus the "proven" claim connoting a *result*. *Id.* ¶¶ 23, 26–27. These conclusions were based on Dr. Keller's review of the record, the specific demographics of Neuriva buyers, RB's own marketing research, and related academic research in the relevant field. *Id.* ¶ 8.

Dr. Keller concluded that the original injunctive relief represented a significant concession by RB and a value to consumers. *See id.* ¶¶ 9, 37, 40, 45. She has now reviewed the Amended Settlement and the revised Neuriva labels and concluded that RB has further strengthened the significant relief afforded in the first settlement. *See generally* Suppl. Keller Decl. As before, Dr. Keller's testimony establishes that consumers' perception largely turns on three factors: (1) the words and phrases used in the Message (*e.g.*, clinically tested vs. clinically shown), (2) the Individual Consumer (*e.g.*, age; income; education), and (3) Context (*e.g.*, prevention vs. promotion health products). *Id.* ¶ 5. These same three factors once again establish that consumers will perceive a meaningful difference between a "clinically shown" versus a "clinically tested" claim. *Id.* ¶¶ 7–12.

*First*, the value of the Amended Settlement's restriction on "shown" is demonstrated by the literal differences between the word "shown" and "proven." Just as "tested" and "proven" had distinct dictionary definitions, "show" is distinguishable. The Collins dictionary highlights the word "test" as generally used to describe a process whereas "proof" or "prove" is used to describe the quality of an outcome. *Id.* ¶ 7; *compare* Collins Dictionary ("prove . . . show by means of argument or evidence that it is definitely true") (available at: https://www.collinsdictionary.com/us/dictionary/english/prove) *with* Collins Dictionary ("test. n. a test is a deliberate action or experiment to find out how well something works") (available at: https://www.collinsdictionary.com/us/dictionary/english/test). Similarly, according to the Collins dictionary, when you show something, you give information that reveals it, demonstrates it, or makes it clear. Supp. Keller Decl. ¶¶ 7–8; *see* Collins Dictionary ("show . . . to make evident by logical procedure; explain or prove . . . to make clear by going through a procedure; demonstrate") (available at: https://www.collinsdictionary.com/us/dictionary/english/show).

Thus, the standard English definitions of the terms "show" and "proof" highlight that the word "shown" has a less definitive meaning than "proven." Suppl. Keller Decl. ¶ 8. While "proven" relates to demonstrating an outcome or result that is reliably true or correct, "shown" often relates to presenting evidence that may not be proven to be true or correct. *See id.* And that Neuriva is typically purchased by older, more educated, and more affluent consumers and carries enhancement-based marketing messages, further increase the likelihood that these differences will be perceived. *Id.* ¶¶ 9–10. In short, RB is strengthening its already significant injunctive relief. *Id.* ¶¶ 11–12.

*Second*, because the Amended Settlement now prohibits the use of both "shown" *and* "proven" on Neuriva labels, consumers are all the more likely to interpret the term "Clinically Tested" according to its literal meaning. *Id.* ¶ 13. As Dr. Keller observes, the contemplated revised labels now consistently use the term "Clinically Tested" in reference to the science behind Neuriva's ingredients. *Id.* Academic research shows that the repeated and consistent

use of a particular marketing message tends to result in a correspondingly consistent interpretation of those messages. *Id.* Thus, the fact that the word "shown" cannot be used, means that consumers are likely to draw from the products' labeling the indisputably true message that Neuriva products' ingredients have, in fact, been tested. *Id.* ("[T]he revised labeling and its consistent use of the term 'Clinically Tested' in reference to Neuriva's ingredients makes it more likely that consumers will interpret this term in conformance with its literal meaning and as stated on the products' labeling . . . . Thus, the Amended Settlement Agreement's restriction on the permitted simultaneous use of the terms 'tested' and 'shown' on the same label lend a degree of precision and clarity for consumers' perception of the Neuriva products' labels beyond the relief in the prior iteration of the Settlement Agreement."). So, the Amended Settlement strengthens the injunctive relief along this dimension as well.

### III. CONCLUSION

For the foregoing reasons, along with those stated in its prior submissions, Defendants respectfully request that the Court recommend Final Approval of the Amended Settlement.

Dated: December 2, 2021                                         Respectfully Submitted,

*/s/ Lori P. Lustrin*
Melissa C. Pallett-Vasquez, Esq.
Florida Bar No.: 715816
Lori P. Lustrin, Esq.
Florida Bar. No.: 59228
**BILZIN SUMBERG BAENA PRICE
 & AXELROD LLP**
1450 Brickell Avenue, 23rd Floor
Miami, Florida 33131-3456
Telephone: (305) 374-7580
Facsimile: (305) 374-7593
Email: mpallett@bilzin.com
Email: llustrin@bilzin.com

*/s/ David T. Biderman*
David T. Biderman, *Pro Hac Vice*
Perkins Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721

        Telephone:  (310) 788-9900
        Facsimile:  (310) 788-3399
        Email:  DBiderman@perkinscoie.com

        Charles C. Sipos, *Pro Hac Vice*
        Perkins Coie LLP
        1201 Third Avenue, Suite 4900
        Seattle, Washington  98101-3099
        Telephone:  (206) 359-3983
        Facsimile:  (206) 359-4983
        Email:  CSipos@perkinscoie.com

        *Counsel for Defendants*
        *Reckitt Benckiser LLC and RB Health (US) LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 2, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Lori P. Lustrin*
Lori P. Lustrin
