# Exhibit A

CONFIDENTIAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DAVID WILLIAMS and CAROLL ANGLADE, THOMAS MATTHEWS, MARTIZA ANGELES, and HOWARD CLARK, *individually and on behalf of all others similarly situated*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>RECKITT BENCKISER LLC and RB HEALTH (US) LLC,<br>　　　　　　Defendants. | Case No. 1:20-cv-23564-COOKE-GOODMAN |

SUPPLEMENTAL DECLARATION OF DEFENDANTS' EXPERT
PROFESSOR PUNAM KELLER
December 2, 2021

1. I have been retained by Perkins Coie, counsel for Reckitt Benckiser LLC and RB Health (US) LLC (collectively, "Defendants"), in the matter of *DAVID WILLIAMS and CAROLL ANGLADE, THOMAS MATTHEWS, MARTIZA ANGELES, and HOWARD CLARK, individually and on behalf of all others similarly situated* (collectively, "Plaintiffs") *v. Reckitt Benckiser LLC and RB Health (US) LLC*, pending in the U.S. District Court, Southern District of Florida.

2. I am the Charles Henry Jones Third Century Professor of Management, a chaired professor in the marketing area, and Senior Associate Dean for Advancement and Tuck-Dartmouth Programs at the Tuck School of Business at Dartmouth College in Hanover, New Hampshire. I hold a B.A. in Economics & Statistics from Bombay University, an MBA in Marketing from the Bajaj Institute of Management at Bombay University, and a Ph.D. in Marketing from Northwestern University. My research develops theory on how people process marketing communications, in particular health appeals, and includes the application of social marketing principles and behavioral theory to enhance voluntary consumer and employee health and saving behaviors. In addition, my research evaluates social marketing techniques and their impact on individual and collective well-being. I have published my research in several top peer-reviewed marketing journals on topics related to marketing in the context of health, in particular on the determinants of health message efficacy and consumer persuasion.

3. On August 15, 2021, I submitted a declaration ("Keller Declaration (08/15/2021)") in response to the request by the Court on August 5, 2021 for further information regarding "any studies (e.g., market research reports, customer confusion surveys, research by professional pollsters) and/or authority (including legal authority) discussing whether

1

consumers (or potential consumers) appreciate any substantive difference between a health-related product which is said to be clinically or scientifically 'proven' and a health-related product which is represented to be clinically or scientifically 'tested.'"[1]

4. I am aware that, on September 13, 2021, Defendants clarified the injunctive relief originally agreed upon with a First Amended Settlement Agreement that (1) revises all label and marketing references for Neuriva from "clinically proven" to "clinically tested" *and* (2) refrains from making any references to "clinically shown" or similar language, such as "clinical studies have shown."[2] I understand that "clinically shown" was not used on Neuriva packages in all events, so that agreeing to this addition did not change planned Neuriva labelling. I understand that "clinically shown" was not used on Neuriva packages in all events, so that agreeing to this addition did not change planned Neuriva labelling. I submit this further declaration in response the request by the Court on November 16, 2021 for briefing from Defendants "discuss[ing] the purported benefits of the revised injunctive restrictions on sales and marketing representations," and "the consequences, if any, arising from the elimination of the term 'shown' (such as in the phrase 'clinical studies have shown')."[3]

5. As discussed in the Keller Declaration, claim interpretation in this case will depend on reasonable consumers' understanding of the definition of words used to support any health claim, which will be determined largely by three key factors: (1) the words and phrases used

---

[1] Paperless Order re [58] Order [Dkt. No. 84], August 5, 2021.

[2] Defendants' Notice Regarding First Amended Settlement Agreement, *DAVID WILLIAMS and CAROLL ANGLADE,* THOMAS *MATTHEWS, MARTIZA ANGELES, and HOWARD CLARK, individually and on behalf of all others similarly situated v. Reckitt Benckiser LLC and RB Health (US) LLC*, Case No. 1:20-cv-23564, September 13, 2021, p. 1 and Exhibit A.

[3] Paperless Order re [69], [116] Order, [Dkt. No. 131], November 16, 2021.

in the *Message* (e.g., clinically tested vs. clinically proven), (2) the *Individual Consumer* (e.g., age; income; education), and (3) *Context* (e.g., prevention vs. promotion health products). The interaction of these three factors will drive the extent to which the at-issue claims are discernably different for the proposed class members.[4] I concluded in the Keller Declaration that, given the specific claims at issue in this matter ("clinically proven" vs. "clinically tested"), the types of individuals who comprise Neuriva consumers, and the context of the health claims, academic research would predict that Neuriva consumers would appreciate the proposed change in the Neuriva claims from "clinically proven" to "clinically tested."[5]

6. Key factors in this conclusion included that (1) there is a recognized difference in the meaning of the terms "test" and "prove;" (2) health supplement consumers, specifically Neuriva consumers, tend to be older, wealthier, and more educated, characteristics which have been found to increase consumer involvement in and comprehension related to decision making and advertising, and (3) the type of brain health claim at issue is about performance and retention, rather than repair.[6] These same factors apply when evaluating the effect of eliminating use of the term "shown."

7. First, just as I analyzed the dictionary definitions of "test" and "prove" in the Keller Declaration,[7] the dictionary definition of "show" proves useful here in evaluating the subject *Message*. The Collins dictionary highlights the word "test" as generally used to describe a

---

[4] Keller Declaration (08/15/2021), p. 5.
[5] Keller Declaration (08/15/2021), p. 5.
[6] Keller Declaration (08/15/2021), p. 5.
[7] Keller Declaration (08/15/2021), pp. 16–17.

3

process whereas "proof" or "prove" is used to describe the quality of an outcome.[8] Similarly, according to the Collins dictionary, "If a picture, chart, movie, or piece of writing *shows* something, it represents it or gives information about it."[9] If you *show* that something is true or correct, you present evidence supporting your position.

8. Thus, the standard English definitions of the terms "show" and "proof" highlight that the word "shown" has a less definitive meaning than "proven." While "proven" relates to demonstrating an outcome or result that is reliably true or correct, "shown" often relates to presenting evidence that may not be proven to be true or correct.[10]

9. While the original injunctive relief was substantial, now the extent to which Neuriva consumers specifically may perceive "clinically shown" (or similar language) to imply the same thing as "clinically proven" will depend on the message, individual, and contextual elements.[11] The second key factor discussed above —demographics of the *Individual Consumer*—is important to consider next. As discussed in the Keller Declaration, more than half of Neuriva consumers are over 55 years old.[12] Neuriva consumers also tend to be higher income and better educated.[13] These demographics suggest consumers that are more likely

---

[8]  Keller Declaration (08/15/2021), p. 16.

[9]  "Show," *Collins*, available at https://www.collinsdictionary.com/us/dictionary/english/show, accessed on November 20, 2021.

[10] Keller Declaration (08/15/2021), p. 16; Defendants' Supplemental Brief in Response to the Court's August 5, 2021, Order, *Re*: Class Settlement, *DAVID WILLIAMS and CAROLL ANGLADE, THOMAS MATTHEWS, MARTIZA ANGELES, and HOWARD CLARK, individually and on behalf of all others similarly situated v. Reckitt Benckiser LLC and RB Health (US) LLC*, Case No. 1:20-cv-23564, August 15, 2021, Exhibit 1 at p. 1 (decision by National Advertising Decision finding it appropriate that advertiser changed marketing claim from "Chaser has been tested and *proven* effective for 17 common symptoms" to "Chaser has been tested and *shown* effective for 17 common symptoms" as such changes "were necessary and appropriate to avoid communicating an advertising message that overstated the scientific findings or exaggerated the performance benefits of the product").

[11] Keller Declaration (08/15/2021), p. 13.

[12] Keller Declaration (08/15/2021), pp. 14–15.

[13] Keller Declaration (08/15/2021), pp. 14–15.

4

to have an increased involvement in, and scrutiny of, advertising related to health.[14] This conclusion applies to claims such as "clinically tested" and "clinically proven," as discussed in the Keller Declaration, and equally if the claim were to be, instead, "clinically shown" (or similar language).

10. Moreover, the third factor, *Context*, confirms that Neuriva consumers would be more likely to be attuned to Neuriva messaging because the product promotes a brain health enhancement message.[15] Neuriva consumers would, thus, be likely attuned to a message that involved "clinically shown," just as they would be attuned to a message involving "clinically tested" or "clinically proven" claims.

11. An analysis of these three factors indicates that refraining from claims involving "shown," such as "clinically shown" or "clinical studies have shown," strengthens or supplements the removal of the claim "clinically proven" which again would be distinguished from the "clinically tested" claim, especially by Neuriva consumers who (based on their demographics and the context of the message) are more likely to be attuned to, interested in, and scrutinizing of health-related messaging. Amongst the words "proven," "tested," and "shown," "proven" is the most definitively stated claim as it connotes a specific outcome related to theoretical or empirically-driven hypothesis—that the outcome has been proven true or correct. "Shown," on the other hand, relates to a theoretical or empirically-driven hypothesis but it does not suggest a specific outcome that has been definitively proven to be true or correct. "Shown" is therefore a softer claim than "proven" but similar in that it is also outcome-based.

---

[14] Keller Declaration (08/15/2021), pp. 17–21.
[15] Keller Declaration (08/15/2021), pp. 21–22.

"Tested," however, is the most conservative claim insofar as it does not connote any particular outcome, only a process.

12. Elimination of the word "shown" thereby strengthens the injunctive relief requiring removal of "clinically proven." By contrast, a "clinically tested" claim, without supplemental "shown" language, would connote to consumers that Neuriva's ingredients have been subject to testing, without suggesting any particular outcome was achieved. As the Keller Declaration previously concluded, academic research would predict that Neuriva consumers would appreciate a difference between "clinically tested" and "clinically proven"[16] and that same conclusion holds true now, even more so, with the elimination of any "shown" language.

13. It is my understanding that under the revised Settlement Agreement, the term "Clinically Tested" is now consistently used throughout the labeling of Neuriva, referring to the fact that the ingredients in Neuriva have been subject to such testing.[17] My understanding is that no parties dispute the truth of these messages as Neuriva's active ingredients have, in fact, been tested.[18] Thus, the revised labeling and its consistent use of the term "Clinically Tested" in reference to Neuriva's ingredients makes it more likely that consumers will interpret this

---

[16] Keller Declaration (08/15/2021), pp. 5, 22–23.

[17] Supplemental Declaration of Rachel Sexton, *DAVID WILLIAMS and CAROLL ANGLADE, THOMAS MATTHEWS, MARTIZA ANGELES, and HOWARD CLARK, individually and on behalf of all others similarly situated v. Reckitt Benckiser LLC and RB Health (US) LLC*, Case No. 1:20-cv-23564, September 7, 2021, pp. 3–4 and 6.

[18] Supplemental Memorandum Regarding September 18 Order, *DAVID WILLIAMS and CAROLL ANGLADE, THOMAS MATTHEWS, MARTIZA ANGELES, and HOWARD CLARK, individually and on behalf of all others similarly situated v. Reckitt Benckiser LLC and RB Health (US) LLC*, Case No. 1:20-cv-23564, September 29, 2021, p. 2 ("In short, the changes in the FAS markedly improve an already fair, reasonable, and adequate settlement by further constraining Defendants' marketing and bringing it in line with what Defendants' own analysis of the scientific literature can support: that the Neuriva Products' ingredients have been subjected to clinical and scientific testing.").

term in conformance with its literal meaning and as stated on the products' labeling. Academic research validates this conclusion as it shows that the repeated and consistent use of marketing language tends to result in more consistent and stable interpretation of those messages by consumers.[19] Thus, the Amended Settlement Agreement's restriction on the permitted simultaneous use of the terms "tested" and "shown" on the same label lend a degree of precision and clarity for consumers' perception of the Neuriva products' labels beyond the relief in the prior iteration of the Settlement Agreement.

Signed on the 2nd day of December 2021,

_____
Punam A. Keller

---

[19] *See,* Petty, Richard E. and John T. Cacioppo, "The Elaboration Likelihood Model of Persuasion," *Advances in Experimental Social Psychology*, Vol. 19, 1986, pp. 123-205, at pp. 143–144; Sundar, Aparna, Frank R. Kardes, and Scott A. Wright, "The Influence of Repetitive Health Messages and Sensitivity to Fluency on the Truth Effect in Advertising," Journal of Advertising, Vol. 44, No. 4, 2015, pp. 375-387 at p. 375; and Kotler, Philip and Kevin Keller, *Marketing Management, 15th ed.*, Pearson, 2016, p. 626.