# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**Case No.: 1:20-cv-23564-MGC**

DAVID WILLIAMS and CAROLL
ANGLADE, THOMAS MATTHEWS,
MARTIZA ANGELES, and HOWARD
CLARK, *on behalf of himself and all others similarly
situated*,

  Plaintiffs,

v.

RECKITT BENCKISER LLC and
RB HEALTH (US) LLC,

  Defendants.

Theodore H. Frank,

  Objector.

_____ /

---

## RULE 72(b)(2) OBJECTION OF THEODORE H. FRANK
## TO REPORT & RECOMMENDATION

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES.............................................................................................................ii

INTRODUCTION ..........................................................................................................................1

ARGUMENT..................................................................................................................................2

I.      Rule 72 review is *de novo*; Rule 23(e) review requires review for disproportionate benefit to the attorneys; and the Court has a fiduciary duty to absent class members. ........................2

II.     The injunctive relief is worthless and the R&R errs in holding otherwise. ...............................4

        A.      Class members appreciate no significant benefit from the injunction..........................4

        B.      The injunction required little from Defendant and does not address the operative complaints.........................................................................................................................8

III.    The Settlement cannot be approved under Rule 23(e)(2)(C) because it benefits attorneys more than their putative clients, and the R&R errs in failing to apply Rule 23(e)(2)(C) and *Briseño*. .....................................................................................................................................11

        A.      Recent amendments to Rule 23 confirm that courts in this circuit should look to the ratio of fees to actual class recovery.......................................................................13

        B.      Counsel's fee is unfairly insulated under Rule 23(e)(2)(C)(iii) by the combination of "clear sailing" and "kicker" provisions. The R&R erred by ignoring *Briseño* and applying Rule 23(e)(2)(B) to this question, writing Rule 23(e)(2)(C)(iii) out of the Rules...............................................................................................................................14

IV.    Frank has standing to object. ...................................................................................................19

CONCLUSION ............................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Allen v. Similasan Corp.*,
  318 F.R.D. 423 (S.D. Cal. 2016) .................................................................................................20

*Allen v. Similasan Corp.*, No. 12-cv-00376-BAS-JLB,
  2017 U.S. Dist. LEXIS 131794 (S.D. Cal. Aug. 17, 2017)............................................................20

*Arnold v. FitFlop USA, LLC*, No. 11-CV-0973, 2014 WL 1670133,
  2014 U.S. Dist. LEXIS 58800 (S.D. Cal. Apr. 28, 2014) .................................................................7

*In re Baby Prods. Antitrust Litigation*,
  708 F.3d 163 (3d Cir. 2013) ..................................................................................... 14, 15, 19

*In re Baby Prods. Antitrust Litig.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015).............................................................................................19

*Bellion Spirits LLC v. United States*,
  7 F.4th 1201 (D.C. Cir. Aug. 6, 2021) ...........................................................................................9

*Bezdek v. Vibram USA, Inc.*,
  809 F.3d 78 (1st Cir. 2015).............................................................................................................7

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..................................................................................... 15, 16, 17

*Boeing v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................................. 13-14

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ................................................................... 1, 2, 3, 14, 17

*Cherry v. Dometic Corp.*,
  986 F.3d 1296 (11th Cir. 2021)....................................................................................................19

*Day v. Persels & Assocs., LLC*,
  729 F.3d 1309 (11th Cir. 2013).....................................................................................................4

*Dennis v. Kellogg Co.*,
  697 F.3d 858 (9th Cir. 2012) .......................................................................................................15

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) ................................................................................... 3, 4, 15, 16

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) .......................................................................................................18

*Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136, 2021 WL 2940240,
2021 U.S. Dist. LEXIS 129955 (S.D. Fla. July 13, 2021) ................................................... 7

*Figueroa v. Sharper Image Corp.*,
517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................................................. 3

*FTC v. Cyberspace.com, LLC,*
453 F.3d 1196 (9th Cir. 2006) ............................................................................................. 9

*FTC v. Stefanchik,*
559 F.3d 924 (9th Cir. 2009) ............................................................................................... 9

*In re GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995) ........................................................................................... 15, 19

*Holmes v. Cont'l Can Co.,*
706 F.2d 1144 (11th Cir. 1983) ........................................................................................ 3, 4

*In re Home Depot Inc., Customer Data Sec. Breach Litig.,*
931 F.3d 1065 (11th Cir. 2019) ..................................................................................... 12, 14

*Int'l Precious Metals Corp. v. Waters,*
530 U.S. 1223 (2000) ........................................................................................................ 15

*Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-cv-23223,
2021 U.S. Dist. LEXIS 95561 (S.D. Fla. May 19, 2021) .................................................... 5

*Johnson v. Comerica,*
83 F.3d 241 (8th Cir. 1996) ............................................................................................... 15

*Johnson v. NPAS Sols., LLC,*
975 F.3d 1244 (11th Cir. 2020) ........................................................................................... 3

*Kim v. Allison,*
8 F.4th 1170, 1178 (9th Cir. 2021) ................................................................................. 3, 17

*Koby v. ARS Nat'l Servs.,*
846 F.3d 1071 (9th Cir. 2017) ...................................................................................... 4, 5, 6

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.,*
834 F.2d 677 (7th Cir. 1987) ............................................................................................. 19

*Marty v. Anheuser-Busch Cos., LLC*, No. 13-cv-23656,
2015 U.S. Dist. LEXIS 144290 (S.D. Fla. Oct. 22, 2015) .................................................. 5

*McDowell v. Brown,*
392 F.3d 1283 (11th Cir. 2004) ......................................................................................... 11

*Mullins v. Direct Dig., Ltd. Liab. Co.,*
    795 F.3d 654 (7th Cir. 2015) ............................................................................................9

*Nigh v. Humphreys Pharmacal, Inc.,* No. 12cv2714, 2013 WL 5995382,
    2013 U.S. Dist. LEXIS 161215 (S.D. Cal. Oct. 23, 2013) ........................................7, 8

*Palmer v. Dynamic Recovery Solutions, LLC,* No. 6:15-cv-59-Orl-40KRS,
    2016 U.S. Dist. LEXIS 59229 (M.D. Fla. May 4, 2016) ...............................................19

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014) .............................................................4, 13, 14, 16, 18, 20

*Pettway v. Am. Cast Iron Pipe Co.,*
    576 F.2d 1157 (5th Cir. 1978) ..........................................................................................4

*Piambino v. Bailey II,*
    757 F.2d 1112 (11th Cir. 1985) ........................................................................................3

*Poertner v. Gillette Co.,*
    618 F. App'x 624 (11th Cir. 2015). ......................................................................5, 6, 17

*Poertner v. Gillette Co.,* No. 6:12-cv-803, 2014 WL 4162771,
    2014 U.S. Dist. LEXIS 116616 (M.D. Fla. Aug. 21, 2014) .............................................6

*Redman v. Radioshack Corp.,*
    768 F.3d 622 (7th Cir. 2014) ....................................................................................16, 19

*Jane Roes 1-2 v. SFBSC Mgmt., LLC,*
    944 F.3d 1035 (9th Cir. 2019) ...........................................................................3, 15, 17

*In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.,*
    997 F.3d 1077 (10th Cir. 2021) ......................................................................................14

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ...........................................................................................8

*Taylor v. Farrier,*
    910 F.2d 518 (8th Cir. 1990) ...........................................................................................2

*True v. Am. Honda Motor Co.,*
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...........................................................................4

*United States v. Pon,*
    963 F.3d 1207 (11th Cir. 2020)......................................................................................11

*United States v. Wash. Mint, L.L.C.,*
    115 F. Supp. 2d 1089 (D. Minn. 2000). ..........................................................................7

*Vought v. Bank of Am.,*
   901 F. Supp. 2d 1071 (C.D. Ill. 2012) ......................................................................15

*Waters v. Int'l Precious Metals Corp.,*
   190 F.3d 1291 (11th Cir. 1999) ..................................................................... 13, 14

*Weinberger v. Great Northern Nekoosa Corp.,*
   925 F.2d 518 (1st Cir. 1991) ....................................................................................16

*Wilson v. EverBank,* No. 14-CIV-22264,
   2016 U.S. Dist. LEXIS 15751 (S.D. Fla. Feb. 3, 2016) ......................................5

**Statutes & Rules**

28 U.S.C. § 636(b)(1) ...........................................................................................................2

Fed. R. Civ. P. 23(e) ................................................................................................. 1, 2, 14

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................. 14, 16, 17

Fed. R. Civ. P. 23(e)(2)(C) .................................................................... 1, 3, 12, 13, 17

Fed. R. Civ. P. 23(e)(2)(C)(ii) ......................................................... 2, 12, 13, 14, 20

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...........................................2, 12, 13, 14, 15, 17, 20

Fed. R. Civ. P. 23(e)(5)(A) ...........................................................................................19

Fed. R. Civ. P. 23(h) .......................................................................................................13

Fed. R. Civ. P. 72(b) ....................................................................................................1, 2

**Other Authorities**

Charles Silver,
   *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809 (2000).......................16

Erin L. Sheley & Theodore H. Frank,
   *Prospective Injunctive Relief and Class Settlements*, 39 HARV. J. L. & PUB. POL'Y 769
   (2016) ................................................................................................................................4

William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class
   Action Settlements*, 77 TUL. L. REV. 813 (2003)...................................................16

*Manual for Complex Litigation (Fourth)* § 21.7(2004)) .......................................... 14-15

Charles A. Wright & Arthur R. Miller,
   12 FEDERAL PRACTICE AND PROCEDURE § 3070.2 (2d ed. 2017)....................................2

# INTRODUCTION

The Report & Recommendation ("R&R") (Dkt. 133) approves a settlement that benefits the defendants and protects them against future litigation, provides millions of dollars for the attorneys, but a fraction of that amount for the class. The 2018 amendments to Rule 23(e) do not permit such an endorsement of illusory payments that will not be made or of an injunction that benefits the defendant, rather than class members. *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021). The R&R misunderstood objector Theodore H. Frank's objection, legally erred by failing to apply the new Rule 23(e), and erroneously ascribed value to an injunction that makes class members worse off. This Court's Rule 72(b) *de novo* review should correct those errors and reject an unfair settlement.[1]

Plaintiffs—three sets of plaintiffs in three separate complaints—sued Reckitt Benckiser LLC and RB Health (US) LLC ("Defendant") because Defendant made "simply false or, in some instances, disturbingly misleading" claims on their Neuriva-branded supplements. Dkt. 36 at 4. Defendant's products falsely claimed—and under the proposed settlement will continue to claim—that Neuriva "Fuels 5 indicators of brain performance." *Id.* at 10; Dkt. 116-1, Ex. E (packaging under proposed Amended Settlement).

The proposed settlement retains and validates the false and misleading claims, prohibiting future suits on the subject, with one cosmetic difference. Instead of saying that, for example, enhanced "indicators" of "brain performance" are "clinically proven," now the packages will say that Neuriva's ingredients are "clinically tested" and "tested by science." Dkt. 52-1 at 8 & Ex. E2. That's just as false—the product has never been "tested" to boost anything, and Defendant does not cite a single example supporting their claims. The mish-mash of pilot and small studies involving different supplements made by different manufacturers doesn't support the claims either. Approving the language change from "clinically proven" to "clinically tested" merely replaces one allegedly fraudulent statement with another and provides no relief to class members.

The settlement provides up to $2.9 million in attorneys' fees, but this is premised on a fictional $8 million fund that Defendant will not pay in this claims-made settlement. In fact, Defendants will pay class members less than $1 million. Dkt. 128-1. And under Rule 23(e)(2)(C), it is the "effectiveness" of the distribution method that matters, not the amount potentially available in some hypothetical universe. By relying on pre-2018 precedent without acknowledging the additional factors

---

[1] Objector Frank incorporates previous filings by him and TINA. *See* Dkts. 75, 83, 92, 100, 106, 108, 109, 111, 112, 114, 117, 122, and 125.

that must be considered under Rule 23(e) after its amendments, the R&R errs and approves a settlement that impermissibly disproportionately benefits class counsel at the expense of the class.

The settlement serves chiefly the Defendant and class counsel, which hopes to win outsized fees for a case first filed June 2020 in California, and stayed for settlement discussions within six months without conducting any formal discovery. In its *de novo* review of the R&R and in discharging its fiduciary duty to the class, the Court should deny final approval, which will return the parties to vigorously litigate the case or settle on terms less lopsided against class interests.

## ARGUMENT

### I. Rule 72 review is *de novo*; Rule 23(e) review requires review for disproportionate benefit to the attorneys; and the Court has a fiduciary duty to absent class members.

A district court reviews *de novo* all portions of a magistrate judge's recommendation to which a party has properly objected. See Fed. R. Civ. P. 72. The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," or may "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). "*De novo* review of those portions of the magistrate's report and findings to which a party timely objects is mandated by statute … and was crucial to the constitutionality of the Federal Magistrate Act, as amended." *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990); *see also* 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3070.2 (2d ed. 2017) (district judge "must not . . . rubber stamp" magistrate's facts and legal conclusions when conducting *de novo* review).

Courts in the Eleventh Circuit evaluate six factors in determining whether to approve a class action settlement. R&R 35-36. But in 2018, Congress and the Supreme Court amended Rule 23(e)(2) to create additional requirements for evaluating whether a settlement is fair, reasonable, and adequate. Of relevance here are two requirements that the R&R mentions in passing (R&R 35 n.7), but then entirely fails to evaluate: "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; and "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. Proc. 23(e)(2)(C)(ii), (iii). The Eleventh Circuit has not yet interpreted this language. We rely on Ninth Circuit appellate precedent:

> [This] plain language indicates that a court must examine whether the attorneys' fees arrangement shortchanges the class. In other words, the new Rule 23(e) makes clear that courts must balance the "proposed award of attorney's fees" vis-à-vis the "relief provided for the class" in determining whether the settlement is "adequate" for class members.

*Briseño*, 998 F.3d at 1024. It is error to rely solely on the pre-2018 judicially-created multi-factor tests

without also following the language of Rule 23(e)(2)(C). *Id.* at 1025-26. Thus, settlement rejection, even under deferential review, "is warranted when the settlement terms contain convincing indications that the class representative and class counsel's self-interest won out over the class's interest." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *accord Briseño*, 998 F.3d at 1022. A court abuses its discretion when it approves a settlement where "the *terms of the agreement* contain convincing indications that self-interest rather than the class's interest in fact influenced the *outcome* of the negotiations." *Briseño*, 998 F.3d at 1022 (cleaned up and emphasis added). This settlement approval would not withstand deferential abuse-of-discretion review in the Ninth Circuit under the post-2018 Rule 23; this should be all the more so true under this Court's *de novo* Rule 72 review.

"Class-action settlements are different from other settlements." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013) ("*Pampers*"), 724 F.3d at 715. "[T]he district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class." *Id.* at 718. Instead, "[c]areful scrutiny by the court is necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (quotation omitted). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is entirely appropriate." *Piambino v. Bailey II*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*"). This duty is "akin to the high duty of care that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (internal quotation omitted).

Defendants are "uninterested in what portion of the total [settlement] payment will go to the class and what percentage will go to the class attorney." *Piambino II*, 757 F.2d at 1143 (internal quotation omitted). Due to this indifference, judges must look for not only actual collusion but also "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (internal quotation omitted). Thus, while it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient* for settlement approval. *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1050 n.13, 1060 (9th Cir. 2019) ("*Roes*") (distinguishing "self-interest" from "purposeful collusion"). There is no presumption in favor of settlement approval; a rigorous analysis is required, not merely a surface-level one. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1261-63 (11th Cir. 2020) ("*NPAS*"). The settling parties' burden to demonstrate fairness is heightened because this settlement has been proposed before class certification. *Pampers*, 724 F.3d at 721; *Roes*, 944 F.3d at 1049.

An actual showing is required, beyond a court's "complete confidence in the ability and

integrity of counsel." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1315 (11th Cir. 2013). In sum, the Court should always keep foremost in mind that "the class settlement process is 'more susceptible than adversarial adjudications to certain types of abuse.'" *Holmes*, 706 F.2d at 1147 (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir. 1978)).

## II.     The injunctive relief is worthless and the R&R errs in holding otherwise.

The magistrate judge found that the injunction will allegedly "put the Neuriva products at a disadvantage with its competitors" and faults Frank and TINA for "disregard[ing] (without evidence) any advantage obtained by Defendants' brain supplement competitors." R&R 79.

To be blunt, Rule 23 does not mention Reckitt's competitors.

Fairness must be measured using the actual benefit to class members. In this case, class members comprise ***past purchasers*** of Neuriva products. Only these class members waive their rights through final approval of settlement. The class does not include Defendants' competitors, so even if Defendants are disadvantaged to competitors, this implies no class benefit. The proponents of a settlement must bear "the burden of demonstrating that class members would benefit from the settlement's injunctive relief." *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1080 (9th Cir. 2017); *Pampers*, 724 F.3d at 719 (compiling authorities). The parties fail to do so here, and the R&R fails to hold them to their burden.

### A.     Class members appreciate no significant benefit from the injunction.

Even if the injunction were valuable, and even if class counsel was not the primary beneficiary of the agreement, this "relief" is conferred on all future users, regardless of class membership. Such supposed relief does not support final approval; "fairness of the settlement must be evaluated primarily based on how it *compensates class members*—not on whether it provides relief to other people, much less on whether it interferes with the defendant's marketing plans." *Pampers*, 724 F.3d at 720 (cleaned up). "[F]uture purchasers are not members of the class, defined as it is as consumers who have purchased [the product]." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014). "No changes to future advertising by [the defendant] will benefit those who already were misled by [the defendant]'s representations." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010); *see generally* Erin L. Sheley & Theodore H. Frank, *Prospective Injunctive Relief and Class Settlements*, 39 HARV. J. L. AND PUB. POL'Y 769 (2016) (explaining how prospective injunctive relief can generate conflicts in class settlements). Even if the labelling changes were directed particularly toward the class, the parties failed to produce "evidence to suggest that many, if any, members of the proposed class would derive a

benefit from obtaining the injunctive relief afforded by the settlement." *Koby*, 846 F.3d at 1080.

The R&R takes a shortcut by finding that "the injunctive relief has value, and it should therefore be factored into the overall analysis of the settlement." R&R 4. But this elides Frank's argument: he did not contend that the injunction should *not* be factored in, nor that injunctions are categorically worthless. The problem is *this* injunction does not compensate class members; it does not provide meaningful injunction benefits like some of the decisions cited by the magistrate judge. *E.g., Wilson v. EverBank*, No. 14-CIV-22264, 2016 U.S. Dist. LEXIS 15751, at *14 (S.D. Fla. Feb. 3, 2016) (enjoining defendant lender from imposing lender-placed insurance on mortgage-paying class members); *Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-cv-23223, 2021 U.S. Dist. LEXIS 95561, at *3 (S.D. Fla. May 19, 2021) (creating process for wage dispute resolution during the pandemic).

The R&R dwells on the differences in dictionary meaning without determining whether such substitutions benefit the class. It misapprehends *Marty v. Anheuser-Busch Cos., LLC*, which says "injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement." No. 13-cv-23656, 2015 U.S. Dist. LEXIS 144290, at *7 (S.D. Fla. Oct. 22, 2015). Sure, injunctions should be considered, but neither *Marty* nor the case it cites for this proposition—*Poertner v. Gillette Co.*—support a sweeping categorical presumption that injunctions *must* be valuable. 618 F. App'x 624, 629 (11th Cir. 2015). An injunction requiring the Defendants' CEO to write "I will not defraud the class" on a chalkboard 100 times is an injunction, but is not a class benefit. In considering an injunction, it must be weighed and may be found wanting—inadequate to support an upside-down deal that prioritizes attorneys over class members.

The R&R places undue weight on the premise that the injunction was a product of litigation. It errs in both fact and law when it asserts that "[t]his causation link alone proves up the injunctive value under *Poertner*." R&R 74. Contrary to the magistrate judge, Frank *did* rebut the notion that the labelling change was a product of this litigation. While the Defendants' brand manager averred that "RB would not willingly or voluntarily remove the claim 'Clinically Proven' and replace it with 'Clinically Tested,' absent the settlement requiring us to do so" (Dkt. 98-2, ¶ 30), Frank previously observed this to be overstated. Dkt. 117 at 6-9. Defendants launched a new ad campaign that omitted "clinically proven" more than a year before the Settlement would have required them to cease such marketing. *Id.*[2] The defendants also launched a Neuriva "Brain and Vision" product campaign that

---

[2] The defendants will not be bound by any injunction until six months after final approval. Settlement, Dkt. 52-1, at 8-9.

uniformly says "clinically tested." Dkt. 117 at 8. The settling parties have never explained this campaign, but Defendants seems to have voluntarily made these marketing changes for its "own business reasons (presumably to avoid further litigation risk), not because of any court-or settlement-imposed obligation." *Koby*, 846 F.3d at 1080 (vacating settlement approval). The injunction's irrelevance is confirmed by the amended injunctive relief, which defendants "threw in" for no additional consideration simply because they supposedly did not plan to market Neuriva as "tested and shown" anyway. Dkt. 116-2, ¶ 6. The Defendants' product manager averred that the amended settlement agreement was *not* inspired by Frank's objection, but because they "elected not to do so in order for the 'clinically tested' language to be used consistently on the label." Dkt. 116-2, ¶ 6. This testimony not only calls into question whether the amended settlement is traceable to the litigation even slightly, it also vitiates the finding that Defendants have been placed at a competitive disadvantage by the amended settlement. R&R 79 (citing Irwin Naturals product that uses the term "shown"). The record evidence shows that Defendants' removal of "shown" was done voluntarily for simple aesthetic reasons. Defendants would not design Neuriva packaging to put itself at a competitive disadvantage, so the R&R plainly errs in crediting Plaintiffs' speculation otherwise.

The R&R errs as a matter of law by construing *Poertner* for the proposition that a changed label or "causation link" necessarily means an injunction constitutes "substantial evidence" of benefit. Instead, *Poertner* affirmed a district court's determination of injunction value, noting that "Frank did not present any contradictory evidence to the district court." 618 F. App'x at 629. *Poertner* does not imply that *all* injunctions arising from litigation impart value; it simply affirms the different injunction before it. *Poertner* also affirmed a district court's refusal to award a percentage from a "somewhat illusory" claims fund "because the parties never expected that Gillette would actually pay anything close to that amount." *Poertner v. Gillette Co.*, No. 6:12-cv-803, 2014 WL 4162771, 2014 U.S. Dist. LEXIS 116616, *14 (M.D. Fla. Aug. 21, 2014). *Poertner* does not require this Court to credit either the injunction or the "$8 million" fund as non-illusory. The facts here do not support it, and, unlike in *Poertner*, Frank has already preserved arguments to the contrary.

The notion that the Defendants suffer any marketing "disadvantage" is not only irrelevant, but undermined by the record. A Defendant-prepared study showed that a large variety of terms are statistically indistinguishable from "clinically proven" in persuasiveness to consumers. Dkt. 100 at 6-9. For example, it appears that Defendants have already revised Neuriva original packaging—voluntarily and well ahead of the Settlement's mandate—to claim "naturally sourced ingredients" at the top of

the box.[3] This phrase scored 31% in the "definitely would buy" metric compared to 34% for "clinically tested & proven." Dkt. 98-2 at 21. The difference amounts to statistical noise (Dkt. 100 at 8), and Defendants make up for any possible drop by employing Mayim Bialik as their "science ambassador" to vouch for Neuriva in advertisements as an "actual neuroscientist" pitching a "neuroscientist approved" supplements. *See* iSpot.tv, *Neuriva TV Commercial, "Actual Neuroscientist" Featuring Mayim Bialik* (2021) (available at https://www.ispot.tv/ad/O6KI/neuriva-actual-neuroscientist-featuring-mayim-bialik (last accessed Dec. 29, 2021)) ("Bialik TV ad"); Julia Jacobs, *Is She 'Neutral' Enough To Replace Alex Trebek?*, N.Y. Times, Oct. 13, 2021, at C1 ("Bialik Article"). According to Defendant's commissioned study, "recommended by doctors" was the best label among the "brain health" segment rating the product as "definitely would buy." Dkt. 98-2 at 21.

The magistrate judge cites several cases for the proposition that "such relief (requiring changes to marketing claims) provides significant benefit to class members" (R&R 81), but none stand for the categorical proposition that an injunction is necessarily valuable. Most of the cases mention the value of injunctive relief in passing, approving settlements largely on the bases of substantial monetary benefit proportional to attorneys' fees. *See Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 81 (1st Cir. 2015) (affirming approval of settlement with a fully exhausted $3.75 million claims fund and 25% attorneys' fees representing a fractional lodestar multiplier); *Arnold v. FitFlop USA, LLC*, No. 11-CV-0973, 2014 WL 1670133, 2014 U.S. Dist. LEXIS 58800, at *22 (S.D. Cal. Apr. 28, 2014) (approving non-revisionary $5.3 million settlement fund with 25% attorneys' fees at fractional lodestar multiplier); *Nigh v. Humphreys Pharmacal, Inc.*, No. 12cv2714, 2013 WL 5995382, 2013 U.S. Dist. LEXIS 161215, at *32 (S.D. Cal. Oct. 23, 2013) (approving settlement that provided $1.4 million non-reversionary fund and 25% attorneys' fees representing a 1.2 multiplier). In each of these settlements, class members appropriately received more than the attorneys, without even factoring in any purported value of injunction.[4] Meanwhile, *Ferron v. Kraft Heinz Foods Co.*, found that the injunction had "a mathematically calculable value" of $116 million. No. 20-CV-62136, 2021 WL 2940240, 2021 U.S. Dist. LEXIS 129955, at *13 (S.D. Fla. July 13, 2021). Here, as the R&R recognized, the settling parties submitted

---

[3] Defendants apparently started manufacturing Neuriva original packaging that omits "clinically proven" and "tested" altogether in favor of "naturally sourced ingredients." *Schiff Neuriva Brain Performance Original 42 Caps Memory Focus, EXP 06/2023*, available at: https://www.ebay.com/itm/115154458046, *archive link at*: https://archive.ph/XdALb.

[4] *United States v. Wash. Mint, L.L.C.*, granted an injunction in favor of the government; it does not discuss class benefit because it's not a class action. 115 F. Supp. 2d 1089, 1107 (D. Minn. 2000).

no evidence quantifying the value of the injunction at all. R&R 95.

*Nigh* skeptically approached injunction valuation, showing the split between the Eleventh and other Circuits. Plaintiffs in *Nigh* sought a 30% fee based on the value of the injunction on top of the monetary fund. While the district court found it valuable, "the Ninth Circuit has cautioned district courts against assigning a monetary value to injunctive relief for the purpose of determining an award of attorneys' fees." 2013 U.S. Dist. LEXIS 161215, at *32 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 945 (9th Cir. 2003)). Plaintiffs presumably chose to file their settlement before this Court—the second-filed action regarding Neuriva—to avoid Ninth Circuit case law that protects absent class members. While this Court is bound by the Eleventh Circuit, Frank preserves all arguments for appeal.

The R&R sidesteps Frank's argument by finding that it should be "considered through the lens of the 'range of possible relief' that Plaintiffs might have received." R&R 80-81. But Frank does not contend that the injunction should be more grandiose, much less that it needs to include conditions beyond what Plaintiff could win through judgment. The problem is instead that no class member benefits from the modest label revisions, so these cannot be used to approve an inequitable settlement. Whatever the imagined benefit the public might gain from the banishing two words from Neuriva's marketing, this is a benefit directed to the public at large—not class members. And some past purchasers of Neuriva will never be in the position to purchase the product again. Even if the substitution of words on the package conveyed value, it would not do so for class members like Frank who likely will never purchase Neuriva again. Dkt. 117 at 9-10.

**B.    The injunction required little from Defendant and does not address the operative complaints.**

The Amended Settlement says only that "Reckitt shall not use the term 'Clinically Tested and Shown,' 'clinical studies have shown' or similar 'shown' claims on Neuriva Products labels or in ancillary marketing." Dkt. 116-1 at 8. The Amended Settlement prohibits idioms, "Clinically *Proven*," "Science *Proved*," and "Clinically Tested and Shown"—and "similar language." *Id.* The R&R relies on a construction of the amended settlement that assumes that it will prohibit "language stating or implying that studies have 'confirmed,' 'demonstrated,' 'established,' (or other words or phrases which are synonymous to 'shown') that the ingredients do in fact promote brain health functions." R&R 60. Magistrate Judge Goodwin also asked the Defendants to state within three days whether they disagreed with this interpretation, but Defendants' failure to respond does not prove anything: the Amended Settlement is a contract interpreted as a matter of law, and the Amended Settlement allows broad latitude to convey deceptive messages without using a handful of words. Whatever similar idioms it

might prohibit, defendants remain free to say—as exhibit E does—the Neuriva's "ingredients are … clinically tested to help support brain health," an expression that only makes sense interpreted as "tested **and shown** to help support brain health." English is a flexible language; indefinitely many words can convey the same concept. Neuriva can also continue to claim, without qualification, that it "fuels 6 indicators of brain health." *Id.* Ex. E. The exhibit also endorses a design that implies that Neuriva itself—not merely its ingredients—has been clinically tested, by displaying the words "clinically tested" and "naturally sourced ingredients" in different typefaces. *Id.*; *see* Dkt. 117 at 5-6.

Under the Amended Settlement, nearly all of Defendants' allegedly "uniformly deceptive advertising and marketing" remain in place. Dkt. 36 ("Amended Complaint"), ¶ 6. Defendants may still claim Neuriva is "backed by science." *Id.* Defendants will continue to tout "improved brain performance … in the areas of Focus, Memory, Learning, Accuracy, Concentration, and Reasoning." *Compare id.* ¶ 7 *with* Settlement, Ex. E. Neuriva packaging still says it's "time to brain better." *Id.* ¶ 8. The injunction permits Defendants to continue to advertise with a picture of a brain and design to "induce consumers to believe that Neuriva has been proven as a matter of fact to provide meaningful brain performance benefits." Dkt. 36 ¶¶ 9-10. Defendants will still trumpet ingredients that have never been tested together at all, citing "disturbingly misleading" studies as if they show otherwise. *Id.* ¶¶ 9-12. The label change may substitute a few words, but this makes little difference to consumers—Neuriva marketing's entire context remains as misleading as Plaintiffs originally alleged.

The term "clinically tested" can—and here does—falsely "imply there was scientific support for these claims but in fact no reasonable scientific expert would conclude" support exists. *Mullins v. Direct Dig., Ltd. Liab. Co.*, 795 F.3d 654, 673 (7th Cir. 2015) (affirming certification). A consumer would not naturally understand that "clinically tested" means "clinically tested *and proved ineffective*" or even "clinically tested and *unproven*." Neither a reasonable consumer nor anyone else would draw a clear line between the terms in conjunction with Defendants' myriad health claims. While scientifically a product could be tested and proved ineffective or tested and unproven either way, the impression of the overall consumer message suggests the product was tested and proved. "Deception may be found based on the 'net impression' created by a representation." *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009); *see also FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1200-01 (9th Cir. 2006). This discussion is somewhat academic in the case of Neuriva because neither it nor a supplement containing the same ingredients has ever been tested or achieved any results whatsoever. Objection, Dkt. 75 at 4; *see also Bellion Spirits LLC v. United States*, 7 F.4th 1201, 1211 (D.C. Cir. Aug. 6, 2021) (agreeing that studies did not allow scientific conclusions to be drawn about claims where they "included only one

component of the [product] rather than the full compound.").

FTC guidance confirms this commonsense interpretation. Concerning a hypothetical claim that a product has been "studied for years" would require support because "[i]n addition to the explicit claim that the product has been studied, such phrases **likely convey to consumers an implied claim that there exists a substantial body of competently-conducted scientific research** supporting the efficacy of the product." FTC, Dietary Supplements: An Advertising Guide for Industry (emphasis added);[5] *see also* Dkt. 92 at 2-3 (discussing other examples of FTC observing that terms like "clinically tested," "clinic tested ingredients," and "established" imply not only testing—but also proof or scientific legitimacy). The FTC has enforced the FTC Act against a manufacturer that used claims like "clinically tested" and "research-based" because these imply scientific evidence supporting the claim.[6]

Defendants' high-profile advertisements using actress Mayim Bialik illustrates how defendants will continue marketing Neuriva unhindered by the settlement. The Bialik TV ad misleads consumers that an "actual neuroscientist" finds that Neuriva "fuels 6 key indicators of brain performance" and is "neuroscientist approved." Bialik remarks "more brain performance? Yes please!" *Id.* The spots convey not only that Neuriva's ingredients are "clinically tested," but also that it *works*—how else does it "fuel" indicators or win neuroscientist approval? Bialik also speaks of the "science behind Neuriva," (not just its ingredients).[7] In the Bialik Article, discussing her background as a neuroscientist, Bialik tells *New York Times* readers that Neuriva "is exactly what it states that it is: It's a supplement that has components that absolutely are healthy for your brain." How would a trained neuroscientist know whether the components of something are "absolutely" healthy if they have never been scientifically tested? None of these expressions are forbidden by the amended settlement, but they convey the impression that Neuriva itself has been tested—successfully. Thus, one of the two types of misrepresentations alleged by Plaintiffs—that Neuriva makes "health claims (e.g., enhanced brain

---

[5] *Available at* https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry.

[6] Lesley Fair, *The Younger Games? FTC challenges anti-aging claims as unsubstantiated* (Feb. 21, 2018) available at https://www.ftc.gov/news-events/blogs/business-blog/2018/02/younger-games-ftc-challenges-anti-aging-claims. Private plaintiffs cannot enforce the FTC Act, but the agency's enforcement decisions and expertise are relevant to the Court's inquiry—how consumers are likely to interpret the revised labelling under the proposed settlement.

[7] Neuriva Brain Performance (official channel), *Neuriva ThinkBigger - Science Explained by Mayim* https://www.youtube.com/watch?v=Ck7NZlwrCek (last accessed Sep. 29, 2021).

performance)"—continues unabated. Dkt. 36 at 14; N.D. Cal. No. 20-cv-854, Dkt. 1 at 9.

To be clear, Frank takes no position on whether determined Plaintiffs could successfully win judgment from Defendants for the amended advertising. He argues simply that the subtle re-shading of meaning conveyed through Neuriva's overall marketing provides no marginal benefit to class members. To the extent that plaintiffs could not actually prevail against revised Neuriva labelling, it is a much clearer benefit to the Defendants than class members who may never rely on the forbidden and more colorable unlawful representations. Defendants may "avoid further litigation risk" through the change, but this shield does not actually benefit class members. *Koby*, 846 F.3d at 1080.

The R&R recites purported expert testimony (R&R 68-71) but does not clearly rely on it, nor address Frank's argument that the testimony fails *Daubert*. Dkt. 100 at 9-11. In particular, Keller's testimony cannot count as employing a generally accepted technique because it uses no methodology at all. Keller recounts various dictionary definitions and asserts that "older, wealthier, and more educated" customers would better understand the disparate meanings of words. Dkt. 132-1, ¶ 6. But the same attributes would presumably make Neuriva consumers better able to understand that "clinically tested" *implies that the testing supports* the other claims on the packaging. No study, reference, or methodology is provided to favor Keller's interpretation over others. "[T]he only connection between the conclusion and the existing data is the expert's own assertions." *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004). And "a bald assertion cannot carry the *Daubert* burden." *United States v. Pon*, 963 F.3d 1207, 1221 (11th Cir. 2020).

The R&R errs in holding that "Defendants are required to remove the precise statements challenged by Plaintiffs from their product labeling and ancillary marketing." R&R 102. As discussed above, the settlement does nothing of the kind.

While Frank does not contest "that the value of the injunctive relief here must be considered through the lens of the 'range of possible relief,'" (R&R 80), this is beside the point. Frank does not argue that the case cannot settle without better injunctive relief, but that illusory injunctive relief is being used to permit class counsel to extract a disproportionate share of settlement benefits.

## III. The Settlement cannot be approved under Rule 23(e)(2)(C) because it benefits attorneys more than their putative clients, and the R&R errs in failing to apply Rule 23(e)(2)(C) and *Briseño*.

The settlement pays class counsel $2.9 million, but the class less than $1 million. The attorneys' fees are segregated and compartmentalized from the class benefit, meaning that any reduction in the

fee award goes to the Defendant instead of the class—a so-called "kicker." Because the settlement agreement here contains a $2.9 million cap on fees, *see* Dkt. 52-1, at 13, the payment to the class and counsel is a "package deal" that effectively reduces "the payment to the class to account for the expected payment to counsel." *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1092 (11th Cir. 2019). Though class counsel is receiving over three quarters of the constructive common fund of $3.8 million, the kicker means that the Court is powerless to correct this disproportionate imbalance well above the 25% benchmark.

Frank did not object that the settlement should be $38 million, or even $5 million, instead of $3.8 million. He did not object to the overall size of the settlement. *Contra* R&R 82. He objected that the disproportion *allocation* between fees and class benefit and the combination of a clear-sailing clause and kicker meant that the settlement violated Rule 23(e)(2)(C)(ii) and (iii), and that that required settlement rejection. Dkt. 75 at 25-29. Frank argued that the Court should "reject the settlement because it put class counsel ahead of their putative clients." *Id.* at 29. The R&R simply ignored and mischaracterized Frank's actual objection. R&R 55 (listing "three overarching categories" of objections without including the misallocation/disproportion objection). The R&R never addresses Frank's objections under Rule 23(e)(2)(C); it never mentions, much less distinguishes, *Briseño*.[8]

The R&R misunderstood Frank's objection in several ways. It incorrectly said that Frank "argue[d] that the amount of the settlement is inadequate," and then refuted the strawman without addressing Frank's actual objection. R&R 82. *See also* R&R 104 (erroneously characterizing the objection as "armchair-quarterbacking" and "wishing-for-more"). Frank argued that the $2.9 million and $1 million was together a constructive common fund of $3.9 million. Dkt. 75 at 25. The R&R erred by falsely characterizing Frank's objection as a "challenge to the so-called 'constructive common fund' approach," when Frank actually *advocated* a constructive common fund approach. R&R 92. Similarly, Frank was not advocating a base lodestar approach (*contra* R&R 92-93), he actually objected that the billing submission were insufficient for meaningful lodestar review. Dkt. 75 at 28-29. The R&R fails to address this objection.

---

[8] The R&R does describe Frank's objection to *fees* as being "unreasonably preferential," R&R 86, but does so in the Rule 23(h) section of the opinion and never addresses that Frank was making a Rule 23(e)(2)(C) objection to settlement approval on this basis. In any event, the R&R never mentions or addresses the "unreasonably preferential" argument again.

Frank is entitled to a ruling from a court that considers the objection he *did* make: that under Rule 23(e)(2)(C), the settlement fund is misallocated and unfairly disproportionately benefits class counsel at the expense of the class. And that under Rule 23(e)(2)(C)(iii), it is impermissible to use attorney-fee clauses that unfairly prejudice the class and shield class counsel's fee request from appellate review, even if the settlement is negotiated at arm's length. The R&R's failure to address Frank's actual objection is by itself error. *NPAS*, 975 F.3d at 1261-63; *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (requiring "reasoned response" to non-frivolous objections).

A. **Recent amendments to Rule 23 confirm that courts in this circuit should look to the ratio of fees to actual class recovery.**

The settlement is claims-made. Frank did not object that the settlement could not be claims-made; he argued that the settlement was not an $8 million settlement, because Rule 23(e)(2)(C)(ii) required an evaluation of the "effectiveness" of distribution to the class, and that required an analysis of the claims *actually* made on the maximum fund. Dkt. 75 at 26. Again, the R&R errs by misunderstanding Frank's objection: it incorrectly accuses Frank of objecting that the settlement was claims-made, and then addresses the strawman, by holding that claims-made settlements can be approved—something Frank never argued against. R&R 85.

The R&R acknowledges that any claims not made means that unpaid settlement funds "*remain* with Defendants." R&R 84. But the R&R then errs by ignoring Rule 23(e)(2)(C)(ii)'s requirement of evaluating the "effectiveness" of the distribution. Instead, it cites a variety of pre-2018 cases for the proposition that a settlement is judged by "the total benefits made *available*, **regardless of the actual payout to the class**." R&R 90 (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999)). This is error for two reasons.

*First*, *Waters* is a Rule 23(h) case. There was no dispute about settlement fairness, and the Eleventh Circuit was not opining on whether the settlement satisfied Rule 23(e). *Waters* was adjudicating an attorney-fee controversy between a class counsel and a defendant, rather than whether a settlement was fair and whether class counsel had throttled class recovery for its own benefit. As Judge Posner recognized, if class counsel in a *compromise* settlement is rewarded based on the amount made available, it gives the settling parties the incentive to structure the claims-made and notice process so that it is ineffective in distributing money to the class. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782-83 (7th Cir. 2014). Nor does *Boeing v. Van Gemert*, which the R&R relied upon (R&R 90), require this result. 444 U.S. 472 (1980). *Boeing* is a case about attorneys' fees years after a *judgment*, rather than

an adjudication of Rule 23(e) settlement fairness. *Id.* at 480. As *Pearson* noted, compromised class-action settlements are different: "There is no fund in the present case and no litigated judgment." 772 F.3d at 782 (rejecting applicability of *Boeing* in Rule 23(e) inquiry).

*Second*, even if *Waters* and some pre-2018 decisions supported the idea that the "actual payout to the class" was irrelevant to a Rule 23(e) inquiry, those decisions would be superseded by the changes to Rule 23. Congress and the Supreme Court amended Rule 23(e) in 2018: now courts *must* consider the "effectiveness" of distribution to the class. A Court that ignores "the actual payout to the class" writes the word "effectiveness" out of Rule 23(e)(2)(C)(ii). Under the R&R's interpretation of *Waters*, it does not matter whether a claims-made process is effective and distributes the entire $8 million fund, half of the fund, or, as here, less than $1 million of the $8 million fund—all that matters is the amount "made available," no matter how fictitious it is. This is error. *Briseño*, 998 F.3d at 1024-26; *In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F.3d 1077, 1094 (10th Cir. 2021); *accord Pearson*, 772 F.3d at 782 (pre-2018 amendments); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (same). Rule 23(e)(2)(C)(ii) must mean something, and it requires an objective analysis of the *actual* payout to class members. This was error in the R&R. Similar errors appear elsewhere. *See* R&R 51 & 84 (characterizing the relief as 15-22% of price without acknowledging that the vast majority of class members will receive 0% of the price).

To the extent that this Court and the Eleventh Circuit nevertheless believes themselves bound by *Waters* notwithstanding the 2018 amendments and Frank's arguments, this is a circuit split with several other circuits, and Frank preserves the issue for further review.

Thus, the district court erred as a matter of law in calculating the constructive common fund as being worth $10.9 million ($2.9 million + $8 million) and the percentage of fees as being 36%. R&R 97-98. The constructive common fund was just over $3.8 million ($2.9 million + $0.9 million actually received by the class), and the percentage of fees was an impermissibly high 76%—the sort of disproportion *Briseño* and *Pearson* and other cases warn against.

**B.    Counsel's fee is unfairly insulated under Rule 23(e)(2)(C)(iii) by the combination of "clear sailing" and "kicker" provisions. The R&R erred by ignoring *Briseño* and applying Rule 23(e)(2)(B) to this question, writing Rule 23(e)(2)(C)(iii) out of the Rules.**

The claims-made payments and attorneys' fees are segregated and compartmentalized. This segregation requires consideration of the "constructive common fund," which comprises the "sum" of the class's benefit and the "agreed-on fee amount." *Home Depot*, 931 F.3d at 1080 (quoting *Manual*

*for Complex Litigation (Fourth)* § 21.7(2004)); *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) (evaluating a similar "constructive common fund" settlement); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995) (A severable fee structure "is, for practical purposes, a constructive common fund."); *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal."). "[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *GM Trucks*, 55 F.3d at 821.

A constructive common fund structure such as this is inferior for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and or named representative payments. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011); *Pearson*, 772 F.3d at 786-87. Because "the adversarial process" between the settling parties cannot safeguard "the manner in which that [settlement] amount is *allocated* between the class representatives, class counsel, and unnamed class members," it is no surprise that the most common settlement defects are ones of allocation. *Pampers*, 724 F.3d at 717 (emphasis in original); *see also Holmes*, 706 F.2d at 1147 (noting the importance of review of the fairness of allocation and not just the adequacy of settlement sum). Thus, a segregated fund structure prevents the Court from exercising its discretion, in furtherance of its fiduciary duty (one that is heightened as a result of the coupon component), to cure the most endemic settlement ailment: a malapportioned fund.

Settling parties have designed the compartmentalized settlement to benefit class counsel and the Defendant, all at the expense of benefitting the class. This is a violation of Rule 23(e)(2)(C)(iii). It is this very concern that animated the Seventh Circuit to vacate the settlement in *Pearson*, the Sixth Circuit to vacate the settlement in *Pampers*, and the Ninth Circuit to vacate the settlement in *Roes*. In any class action settlement, it's a foundational principle that class members should be "the foremost beneficiaries" of the accord. *Baby Prods.*, 708 F.3d at 179.

It is not merely that the negotiated fee is out of proportion with the class's recovery. The preferential treatment arises from the fact that class counsel has negotiated for a segregated fee fund (the "kicker") and defendant's agreement not to oppose the request (the "clear sailing"). "Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery.'" *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012) (quoting *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., respecting the denial of certiorari)).

It indicates that the class attorneys have negotiated "red-carpet treatment" to protect their fee award while urging class settlement "at a low figure or less than optimal basis." *Pampers*, 724 F.3d at 718 (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991)). "[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Briseño*, 998 F.3d at 1024. As such, a clear-sailing clause must be considered a "questionable feature" that "at least in a case ... involving a non-cash settlement award to the class ... should be subjected to intense critical scrutiny." *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014); *see also* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (courts should "adopt a per se rule that rejects all settlements that include clear sailing provisions.").

Clear-sailing is reinforced by the presence of a "kicker" clause whereby class counsel's fee fund is segregated from the class benefit such that any unawarded fees revert to the defendant rather than going to benefit the class. *Briseño*, 998 F.3d at 1027. In this case, the unawarded fees never leave defendants' pocket. A segregated fee structure is an inferior settlement structure for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and/or named representative payments. *See Pearson*, 772 F.3d at 786; *Bluetooth*, 654 F.3d at 949 (clear sailing "reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees."). Fee segregation thus has the self-serving effect of protecting class counsel by deterring scrutiny of the fee request. *See Pearson*, 772 F.3d at 786 (calling it a "gimmick for defeating objectors"). A court and potential objectors have less incentive to scrutinize a request because the kicker combined with the clear-sailing agreement means that any reversion benefits only the defendant that had already agreed to pay that initial amount. Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (arguing that reversionary kicker is per se unethical). No one would have the ability to challenge an excessive fee award at the class's expense on appeal, except through challenging the settlement as a whole. For these reasons, a "kicker" clause should be subject to a "strong presumption of ... invalidity." *Pearson*, 772 F.3d at 787. The R&R thus erred as a matter of law and common sense in considering the segregated fund a class benefit. R&R 97-98.

The R&R held that the clear-sailing and kicker clauses were permissible because the settlement was negotiated at arm's length and there was no collusion. R&R 88-89. This is error. The question of whether a settlement is negotiated at arm's length is a requirement of Rule 23(e)(2)(B). The clear-

sailing clause demonstrates a problem under Rule 23(e)(2)(C)(iii). Nothing in the text of Rule 23(e)(2)(B) supersedes the requirement to satisfy fairness in the attorney-fee terms in Rule 23(e)(2)(C)(iii). *Briseño*, 998 F.3d at 1030; *Roes*, 944 F.3d at 1049 & n.12. Any holding in *Poertner* to the contrary is superseded by the amended rule's addition of Rule 23(e)(2)(C). Frank did not allege collusion; he did not allege that the parties failed to negotiate at arm's length. Rather, he argued that the parties' *self-interest* impermissibly infected the *results* of the negotiation as demonstrated by clauses such as the clear-sailing clause and the kicker and disproportionality: the "red flags" of *Briseño*. 998 F.3d at 1026-28.[9] The "class representative and class counsel's self-interest won out over the class's

---

[9] Note that while *Briseño* refers to the red flags being signs of "collusion," the Ninth Circuit is using the word to mean much more than a secret agreement. "The incentives for the negotiators to pursue their own self-interest and that of certain class members are implicit in the circumstances and can influence the result of the negotiations *without any explicit expression or secret cabals*." *Roes*, 944 F.3d at 1050 n.13 (cleaned up and emphasis added); *accord In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) (noting that a defendant has "little or no interest" in the allocation between the class and the class counsel); *id.* at 647 (distinguishing between "explicit collusion" and misallocation); *see generally Pampers*, 724 F.3d at 717-18.

So, for example, *Briseño* speaks of the "collusion over divvying up funds between class counsel and the class (rather than the size of the settlement fund or relief)." 998 F.3d at 1025. It speaks twice on a single page of the "collusion" of class counsel unilaterally choosing to agree to a settlement where the allocation favors the attorneys over the class. *Id.* "A defendant goes along with this collusion because it cares only about the total payout, not the division of funds between class and class counsel." 998 F.3d at 1025 (providing example). Unilateral "collusion" is of course an oxymoron. One party cannot collude with itself.

So when *Briseño* says "collusion," it is referring to the broader problem of misallocation at the class's expense, not just "secret cabals." "Collusion" under *Briseño* includes class counsel unilaterally choosing to agree to a settlement where the allocation favors the attorneys over the class. 998 F.3d at 1025. Here, class counsel and the Defendants agreed to a settlement where the allocation favors the attorneys over the class, and used the kicker clause to make it impossible to fix the misallocation. Frank does not contend that the parties here have "colluded" in the colloquial sense of violating Rule 23(e)(2)(B) with a secret deal to shortchange the class, but the settling parties have "colluded" in the broader sense of publicly agreeing to structure a settlement to misallocate settlement funds to prioritize the benefit to class counsel over the class. Frank would prefer to call this "misallocation" rather than "collusion" to avoid confusion and any unfair allegations of wrongdoing. *Cf. In re Conagra Foods, Inc.*, No. CV 11-05379, slip op. at 13-14, 18 (C.D. Cal. Dec. 22, 2021) (attached hereto as **Exhibit 1**) (finding "the great disparity" between class relief and attorney fees, plus the clear sailing and kicker provisions, "make it too likely that self-interest, even if not purposeful collusion, seeped its way into the parties' settlement terms").

interest." *Kim*, 8 F.4th at 1178. The new Rule 23(e)(2)(C) forbids this, and the R&R errs in failing to address that new rule's requirements and failing to address *Briseño*.

As the following chart shows, the R&R errs in holding that this settlement "stands in stark contrast to the relief provided in *Eubank* and *Pearson* and in almost every other respect." R&R 106.

| | *Williams* | *Pearson* |
|---|---|---|
| Attorneys' fees | $ 2,900,000 | $ 2,109,676 |
| Amount made available | $ 8,000,000 | $14,200,000 |
| Payment to class | $   935,333 | $   865,284 |
| Fee percentage of constructive common fund | 76% | 69% (49% including *cy pres*) |
| *Cy pres* | $0 | $1,134,716 |
| Clear sailing | Yes | Yes |
| Kicker | Yes | Yes |
| Injunction | Admittedly no quantitative evidence of class benefit. R&R 95. | "superfluous—or even adverse to consumers" |
| Length of injunction | Two years (24 months) | Thirty months |

The R&R further errs by misapprehending the settlement in *Pearson*. *Compare* R&R 105 (incorrectly claiming that the $5.64 million was amount "made available" for the class including fees and notice and *cy pres*) *with Pearson*, 772 F.3d at 780-81 (noting that $20.2 million was the amount made available including fees and notice, $14.2 million without). The R&R similarly errs in its analysis of *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), by giving an incomplete list of the problems in that case's settlement. R&R 40 n.8, 106. *Eubank* held that a fatal problem in that settlement was the fact that the claims-made process meant that class members would receive less than the class, and that class counsel would receive "attorneys' fees equal to 56 percent of the total settlement"—a figure substantially lower than the 76% figure here. 753 F.3d at 727. And *Eubank* held that the kicker in that settlement was a "questionable provision" and it was error for the district court to fail to require the parties to delete it. *Id.* at 723. That the *Eubank* settlement also had many other fatal problems hardly means that being better than the *Eubank* settlement is enough to cure the fatal problems in this settlement; nothing in *Eubank* considered it a close case or held that a 56% disproportion (much less the 76% disproportion here) would be acceptable in the absence of the other problems.

It was legal error for the R&R to view the fact that there was only a single objector as support for the settlement and the fee request. R&R 53-55, 103. Class members rationally rarely object to class action settlements. It is "naïve" to infer class approval from a low objection rate. *Redman v. RadioShack, Inc.*, 768 F.3d 622, 628 (7th Cir. 2014) (Posner, J.). Moreover, "where notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a fait accompli." *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-81 (7th Cir. 1987). "[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). It does not pay for a class member to hire an attorney to raise a meaningful objection; only a non-profit organization like Frank's attorneys can do so, and Frank's attorneys do not have the resources to recruit millions of objectors. Discounting Frank's objection because he was the only objector, or one of few objectors, means that no objections will ever have full weight.

The R&R erred in finding that the "informal" discovery in this case weighed in favor of settlement approval. R&R 42-43. "[A]chiev[ing] the settlement after little or no discovery . . . raise[s] a red flag." *GM Trucks*, 55 F.3d at 806; *Palmer v. Dynamic Recovery Solutions, LLC*, No. 6:15-cv-59-Orl-40KRS, 2016 U.S. Dist. LEXIS 59229, at *33 (M.D. Fla. May 4, 2016) (denying approval of settlement reached "early in the litigation and without the benefit of meaningful discovery").

The R&R's assertion (R&R 83) that "Neither Frank nor TINA have suggested a method to confirm who actually purchased the products or in what amounts, absent a receipt or other proof of purchase" is false and contrary to law: Frank relied on *Pearson*, which held that a class member's self-attestation can demonstrate class membership and recovery without "needlessly elaborate documentation." 772 F.3d at 783*; cf. also Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021). The U.S. court system puts people in prison on the basis of testimony under oath; it can surely award $32.50 refunds on the same basis.

## IV. Frank has standing to object.

Magistrate Judge Goodwin correctly denied Defendants' motion to strike his objection and was correct in doing so. R&R 55-56; Dkt. 123. Frank provided proof of purchase of a Neuriva product that falls within the four corners of the settlement agreement's class definition. Dkt. 75-1. Defendants did not contend that Frank was not literally a class member. Instead, defendants argued that Frank's alleged motivation for purchase should rob him of Article III standing. This is false; it's the *settling*

*parties* who request the court's jurisdiction, and Rule 23(e)(5)(A) guarantees all class members' right to object. Dkt. 108 at 3-7. Moreover, as Magistrate Judge Goodwin correctly found, Frank does not object for an improper purpose.[10] To the contrary, Frank's track record proves that class members benefit when lopsided settlements are properly rejected. The alternative to a lawyer-focused settlement is rarely a trial on the merits. Instead, defendants offering millions of dollars to resolve litigation will happily pay class members rather that plaintiffs' attorneys—when courts require class members be the foremost beneficiaries of settlement as Rule 23 requires. Successful objections brought by Frank and his colleagues have resulted in several such settlements, and provided class members real value where they previously would have received scant recovery and a dubious injunction. *See Pearson, revised settlement approved at* No. 11-cv-07972, Dkt. 288 (N.D. Ill. Aug. 25, 2016); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013), *revised settlement approved at* 80 F. Supp. 3d 626 (E.D. Pa. 2015); *Allen v. Similasan Corp.*, 318 F.R.D. 423 (S.D. Cal. 2016), *revised settlement approved at* No. 12-cv-00376-BAS-JLB, 2017 U.S. Dist. LEXIS 131794 (S.D. Cal. Aug. 17, 2017).

## CONCLUSION

The proposed settlement purported injunctive relief that does not correct Defendant's misrepresentations and provides no benefit to class members like Objector Frank who may not even purchase Neuriva in the future. The settlement violates Rules 23(e)(2)(C)(ii) and (iii) by impermissibly favoring class counsel at the expense of the class, a question the R&R fails to address, and this Court should exercise its *de novo* review to reject the settlement.

Date: December 29, 2021  Respectfully submitted,

/s/ *John Andren*
John Andren
HAMILTON LINCOLN LAW INSTITUTE
CENTER OF CLASS ACTION FAIRNESS
1629 K Street, NW
Washington, DC 20006
Phone: 703-582-2499
Email: john.andren@hlli.org

---

[10] While Plaintiffs falsely claimed that "Frank represented that neither he nor CCAF should be awarded any fees in this case" (R&R 61), Frank made no such representation, and the R&R erred to the extent it considered this so. Frank only represented that he would not accept *quid pro quo* payment for withdrawing his objection. The R&R correctly characterizes this elsewhere. R&R 31. (Frank will not seek fees in the absence of a pecuniary improvement in class benefit in this case.)

M. Frank Bednarz (*pro hac vice*)
IL ARDC No. 6299073
HAMILTON LINCOLN LAW INSTITUTE
CENTER OF CLASS ACTION FAIRNESS
1145 E. Hyde Park Blvd. Unit 3A
Chicago, IL 60615
Phone: 801-706-2690
Email: frank.bednarz@hlli.org

Matthew Seth Sarelson
DHILLON LAW GROUP, INC.
2100 Ponce De Leon Blvd. Ste 1290
Coral Gables, FL 33134
Telephone: 305-773-1952
Email: Msarelson@dhillonlaw.com

*Attorneys for Objector Theodore H. Frank*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed with the Court via the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ John Andren*
John Andren