# EXHIBIT A

**UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF FLORIDA MIAMI DIVISION**

|  |  |
|---|---|
| DAVID WILLIAMS, CAROLL ANGLADE, THOMAS MATTHEWS, MARITZA ANGELES, and HOWARD CLARK, *individually, and on behalf of other similarly situated individuals*, <br><br> Plaintiffs, <br><br> v. <br><br> RECKITT BENCKISER LLC and RB HEALTH (US) LLC, <br><br> Defendants. | CASE NO. 1:20-cv-23564-RS |

<u>**SECOND AMENDED SETTLEMENT AGREEMENT
AND RELEASE**</u>

This Second Amended Settlement Agreement and Release (the "Agreement") is made and entered into by and between the following parties, effective upon execution by all parties: Plaintiffs David Williams, Caroll Anglade, Thomas Matthews, Maritza Angeles, and Howard Clark, individually and on behalf of the Settlement Class (hereinafter "Plaintiffs" or "Class Representatives"), on the one hand, and Reckitt Benckiser LLC and RB Health (US) LLC ("Settling Defendants" or "Reckitt"), on the other hand, in the action entitled *Williams, et al. v. Reckitt Benckiser LLC, et al.*, No. 1:20-cv-23564 (the "Action" or "*Williams* Action"). This Agreement is made following review and consideration of the Opinion and Order of the Eleventh Circuit in *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023) ("Eleventh Circuit Order").

**I.        DEFINITIONS**

As used in this Agreement and all related documents, the following terms have the following meanings:

A.        "Agreement" means this Second Amended Settlement Agreement and Release.

B.        "Challenged Representations" means any representation made by Reckitt, whether on a Neuriva Product label or in ancillary marketing, that states or suggests that Neuriva Products are clinically proven to promote factors relating to brain health or any other alleged misrepresentation regarding the health or brain performance benefits of the Neuriva Products.

C.        "Claim" means the claim of a Settlement Class Member submitted as provided in the Original Settlement Agreement, First Amended Settlement Agreement, and this Agreement.

D.      "Claimant" means a Settlement Class Member who submitted a Claim Form.

E.      "Claim Form" means a claim form in substantially the same form and substance as the claim form attached hereto as Exhibit A. The Parties recognize that the Claim Form actually used by the Class Action Settlement Administrator may have been revised to apply fraud-filtering measures  by mail and that the online Claim Form may have appeared in a different, user-friendly format.

F.      "Claim Period" means the time period in which Class Members were required to submit a Claim Form for review to the Class Action Settlement Administrator.  The Claim Period ran from the date that the Class Notice was initially disseminated until May 1, 2022.

G.      "Claims Process" means the process that was followed for Settlement Class Members' submission of Claims as described in the Original Settlement Agreement, First Amended Settlement Agreement and this Agreement in Section IV.A.1.

H.      "Class Counsel" (also referred to as "Plaintiffs' Counsel") means (1) Milberg Coleman Bryson Phillips Grossman, PLLC; (2) Levin, Papantonio, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A.; (3) Bursor & Fisher, PA; and (4) Shub, Johns & Holbrook LLP.  Plaintiffs' Counsel also includes any partner or attorney employed by these law firms.

I.      "Class Notice" means notice of the Settlement that was provided to Settlement Class Members under Section VII of the Original Settlement Agreement and First Amended Settlement Agreement substantially in the form attached hereto as Exhibit B.

J.      "Class Period" means January 1, 2019 through April 23, 2021.

K.      "Class Representatives" means David Williams, Caroll Anglade, Thomas Matthews, Maritza Angeles, and Howard Clark as Plaintiffs.

L.      "Consolidated Amended Complaint" means the amended complaint filed in this Action on January 27, 2021, Dkt. No. 51, which was superseded by the Second Consolidated Amended Complaint.

M.      "Effective Date" means (a) if no objection is raised to the proposed Settlement at the Final Approval Hearing, the date on which the Final Approval Order and Judgment is entered; or (b) if any objections are raised to the proposed Settlement at the Final Approval Hearing and not withdrawn prior to the Final Judgment, the latest of (i) the expiration date of the time for filing or notice of any appeal from the Final Approval Order and Judgment, (ii) the date of final affirmance of any appeal of the Final Approval Order and Judgment, (iii) the expiration of the time for, or the denial of, a petition for writ of certiorari to review the Final Approval order and Judgment and, if certiorari is granted, the date of final affirmance of the Final Approval Order and Judgment following review pursuant to that grant; or (iv) the date of final dismissal of any appeal from the Final Approval Order and Judgment or the final dismissal of any proceeding on certiorari to review the final approval order and judgment; provided, however, that any appeal that exclusively concerns the award of attorneys' fees, expenses, and/or service awards shall not delay the Effective Date of the Settlement.

N.      "Exclusion Deadline" means July 27, 2021.

O.      "Final Approval Hearing" means the hearing at or after which the Court will make a final decision whether to approve this Agreement and the Settlement set forth herein as fair, reasonable, and adequate.

P.      "Final Approval Order" means the order which the Court enters adjudging the Settlement set forth in this Agreement to be fair, reasonable, and adequate.

Q.      "Final Judgment" means the judgment the Court enters, finally approving the Agreement and Settlement. A proposed Final Approval Order and Judgment is attached hereto as Exhibit C.

R.      "First Amended Complaint" means Plaintiffs' amended complaint filed in this Action on December 1, 2020, Dkt. No. 36.

S.      "First Amended Settlement Agreement" means the settlement agreement entered into by the Parties in this Action on September 13, 2021, Dkt. No. 116-1.

T.      "Motion for Preliminary Approval" means Plaintiffs' motion seeking preliminary approval, based on the terms of the Original Settlement Agreement, filed in this Action on February 8, 2021, Dkt. No. 52.

U.      "Household" means, without limitation, all Persons who share a single physical address.  For all Persons who are a legal entity such as a corporation, partnership, business organization or association, or any other type of legal entity, there can be only one physical address used even if such Person has multiple offices.

V.      "Internet Notice" means notice of the proposed settlement that was provided to potential Settlement Class Members under Section VII of the Agreement, substantially in the form as the notice attached hereto as Exhibit D.

W.      "Neuriva Actions" means *Williams, et al. v. Reckitt Benckiser LLC, et al.*, No. 1:20-cv-23564-MGC (S.D. Fla.) ("*Williams*") and related actions *Matthews v. Reckitt Benckiser LLC, et al.,* No. 1:20-cv-00854 (E.D. Cal.) ("*Matthews*"); *Angeles v. Reckitt Benckiser LLC, et al.*, No. 1:20-cv-07138 (S.D.N.Y) ("*Angeles*") and *Clark v. Reckitt Benckiser LLC, et al*. (unfiled) ("*Clark*").

X.      "Neuriva Products" means the following Neuriva® products sold in the United States:

1.  Neuriva Original, all sizes;
2.  Neuriva Plus, all sizes; and
3.  Neuriva De-Stress, all sizes

Y.      "Objection Deadline" means the date twenty-one (21) days prior to the Final Approval Hearing.

Z.     "Objector" means a Settlement Class Member who objects to final approval of the Settlement.

AA.     "Original Settlement Agreement" means the settlement agreement entered into by the Parties in this Action on February 1, 2021, Dkt. No. 52-1, and preliminarily approved by this Court on April 23, 2021, Dkt. No. 57.

BB.     "Parties" means the Class Representatives and the Settling Defendants.

CC.     "Plaintiffs" means Plaintiffs David Williams, Caroll Anglade, Thomas Matthews, Maritza Angeles, and Howard Clark, as the Class Representatives.

DD.     "Preliminary Approval" means the order in which the Court preliminarily approved the Original Settlement of the Action, dated April 23, 2021.

EE.     "Proof of Purchase" means receipts, copies of receipts, or other legitimate proof showing payment to either a retailer or Reckitt for any of the Products.

FF.     "Second Consolidated Amended Complaint" means the amended complaint filed in this Action on March 31, 2025, Dkt. No. 160, and which is the operative pleading for purposes of entering the Final Approval Order and Final Judgment.

GG.     "Settlement" means complete resolution and settlement of the Action pursuant to the terms and conditions of this Agreement.

HH.     "Settlement Administrator" means the neutral third-party agent or administrator jointly agreed to by the Parties and appointed by the Court.  The Parties acknowledge that Angeion Group was retained to implement the notice, claims, and settlement requirements of this Agreement.  The Parties further acknowledge that any and all agreements with the Settlement Administrator were in writing and subject to the approval of the Settling Defendants and Class Counsel.  The Parties acknowledge that the Settling Defendants have born and shall continue to bear sole responsibility for all payments to the Settlement Administrator without any dilution to monies due to be paid herein to Settlement Class Members and Class Counsel.  Further, all actions of the Class Action Settlement Administrator have been and shall continue to be subject to the oversight of the Parties.  The Parties have agreed and confirmed that neither Class Counsel nor Reckitt (including Reckitt's Counsel) will enter into any confidential agreements with the Settlement Administrator without obtaining written express consent from the other Party.

II.     "Settlement Benefit" means the monetary relief available to Settlement Class Members who submitted a Valid Claim, as determined by the Settlement Administrator, under this Agreement.

JJ.     "Settlement Class" means:  All persons who purchased for personal consumption and not for resale, one or more of the Neuriva Products, from Reckitt or an authorized reseller, in the United States, between the dates of January 1, 2019 and April 23, 2021. Excluded from the Settlement Class shall be the Honorable Erica P. Grosjean, the estate of the Honorable Marcia G. Cooke, the Honorable Jonathan Goodman, the Honorable Ronnie Abrams, the Honorable Rodney Smith, counsel to the Parties, Jill Sperber, and their employees, legal representatives, heirs,

4

successors, assigns, or any members of their immediate family; any government entity; Reckitt, any entity in which Reckitt has a controlling interest, any of Reckitt's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and any persons who timely opt-out of the Settlement Class.

KK.    "Settlement Class Member" means any member of the Settlement Class.

LL.    "Settling Defendants" means Defendants Reckitt Benckiser LLC and RB Health, which may also be referred to collectively at times as "Reckitt."

MM.    "Valid Claim" means a claim for monetary relief that was submitted on a Claim Form and has been reviewed and approved for authenticity, compliance, and ongoing fraud-prevention by the Settlement Administrator.

## II.        LITIGATION BACKGROUND AND RECITALS

A.    Reckitt produces and sells, or produced and sold, several brain health supplements under the Neuriva brand, including Neuriva Original, Neuriva Plus, and Neuriva De-Stress. Reckitt discontinued the sale and distribution of Neuriva De-Stress on or about July 2023.  The labels and advertising of these Neuriva Products contained representations that the active ingredients are clinically proven to support brain health (the "Challenged Representations").

B.    In 2020, plaintiffs filed actions in three states, challenging the truth of such representations and further alleging that Reckitt made other misrepresentations regarding the health or brain performance benefits of the Neuriva Products.  These actions resulted in substantial, protracted litigation activity, including motion practice and informal discovery exchanged between the Parties, the details of which are included in these recitals.

C.    On May 19, 2020, counsel on behalf of Plaintiff Howard Clark served a demand letter relating to the representations (the "*Clark* Letter") challenging the clinically proven claims and alleging that the Neuriva Original and Neuriva Plus products "do not, in fact, have the effects on brain performance and cognition they are advertised to have."  On June 19, 2020, Plaintiff Thomas Matthews, individually and on behalf of a nationwide class, brought a suit entitled *Matthews, et al. v. Reckitt Benckiser LLC, et al.*, No. 1:20-cv-00854 in the Eastern District of California (the "*Matthews* Action") again challenging the clinically proven representations on the Neuriva Original and Neuriva Plus products and also claiming that the health claims Reckitt made on those products are false.

D.    The *Matthews* Action was followed by the instant action in the Southern District of Florida, *Williams, et al. v. Reckitt Benckiser LLC, et al.*, No. 1:20-cv-23564 (S.D. Fla.) (the "*Williams*" Action), which was filed by Plaintiffs David Williams and Caroll Anglade on August 26, 2020 and on behalf of a Florida class, again challenging the clinically proven representations on the Neuriva Original and Neuriva Plus products and also claimed that the health claims Reckitt made on those products are false.  One week later, on September 2, 2020, another suit was filed in the Southern District of New York, *Angeles v. Reckitt Benckiser*, No. 1:20-cv-07138 (S.D.N.Y) (the "*Angeles*" Action) by Maritza Angeles on behalf of a New York class once again challenging the clinically proven representations on the Neuriva Original and Neuriva Plus products and also

claiming that the health claims Reckitt made on those products are false.  To date, any complaint relating to the *Clark* Letter remains unfiled.

E.      **The *Matthews* Action.**  Reckitt filed a motion to dismiss the *Matthews* Action on September 8, 2020.  In response, the *Matthews* plaintiff filed an Amended Complaint on October 16, 2020.   Reckitt filed a motion to dismiss the Amended Complaint on November 30, 2020.  In anticipation of a nationwide class action settlement as part of the *Williams* Action, the Parties stipulated to stay the *Matthews* Action, which the court granted on January 11, 2021.  The court continued the stay until the *Matthews* plaintiff voluntarily dismissed the case without prejudice, which dismissal the court entered on May 2, 2022.

F.      **The *Angeles* Action.**  Reckitt did not respond to the *Angeles* Complaint; the deadline to do so was adjourned pending a motion to transfer, but again, in anticipation of a nationwide class action settlement in the *Williams* Action, the parties requested and were granted a stay of the case on January 15, 2021.  The court continued the stay until the *Angeles* plaintiff voluntarily dismissed the case without prejudice on April 29, 2022.

G.      **The *Williams* Action.**  On November 2, 2020, Reckitt filed a motion to stay the *Williams* Action or transfer it to the Eastern District of California in deference to the *Matthews* Action under the so-called "first-filed rule."  That same day, Reckitt also filed a motion to dismiss the *Williams* Action.  On December 1, 2020, the *Williams* plaintiffs filed a First Amended Complaint, adding the Neuriva De-Stress product, to which Reckitt filed another motion to dismiss on December 15, 2020.  The *Williams* plaintiffs opposed the motion to stay or transfer.

H.      Throughout the fall and winter of 2020, counsel for the Parties, including counsel on behalf of plaintiffs and claimants from all Neuriva Actions, participated in multiple all-day extended mediation sessions with Jill Sperber, Esq. from Judicate West.  These mediations took place on October 2 and November 30, 2020.  Before, during, and after the mediation the Parties engaged in a series of discussions, with and without Ms. Sperber, regarding a settlement of the Neuriva Actions, including substantial arm's-length negotiations.  The result was the Original Settlement Agreement, which included the settlement of the *Williams* Action in its entirety and also all of the remaining Neuriva Actions in exchange for certain agreed upon monetary relief for class members and certain changes to Neuriva labeling and advertising.  Ms. Sperber reviewed the material terms of the Original Settlement Agreement and agreed that it was a fair, reasonable, and adequate solution for the Settlement Class.

I.      Although the motion to stay or transfer and the motion to dismiss were still pending before this Court, the Parties agreed to file a Notice of Settlement on January 7, 2021, to stay the case in anticipation of a forthcoming settlement agreement.  Plaintiffs filed a Consolidated Amended Complaint on January 27, 2021, which incorporated all Plaintiffs from the other Actions into the *Williams* Action.  The Settling Defendants consented to the Consolidated Amended Complaint for settlement purposes only, without prejudice to the Settling Defendants opposing venue of the *Williams* Action in the Southern District of Florida if the Settlement did not reach the Effective Date.

J.      Pursuant to the terms and conditions of the Original Settlement Agreement, Plaintiffs filed their Motion for Preliminary Approval on February 8, 2021.

K.     On February 2, 2021, Theodore Frank ("Frank"), who subsequently objected to the Settlement, purchased a 30-count bottle of Neuriva Original from Amazon after the Parties had filed their Notice of Settlement on January 7, 2021.

L.     The Motion for Preliminary Approval of the Settlement Agreement was granted by this Court on April 23, 2021.   The order granting the Motion for Preliminary Approval "preliminarily certifie[d]" a nationwide settlement class of:

> All persons who purchased for personal consumption and not for resale, one or more of the Neuriva Products (Neuriva Original, Neuriva Plus, or Neuriva De-Stress), from Defendants or an authorized reseller, in the United States, between the dates of January 1, 2019 and the date of Preliminary Approval of the Settlement by the Court.

M.     The Court thereafter requested, and the Parties provided, supplemental briefing on certain aspects of the proposed injunctive relief agreed to in the Original Settlement Agreement under Section IV.A.

N.     Upon entry of the order granting Preliminary Approval to the Original Settlement Agreement, plaintiffs in the *Matthews* and *Angeles* Actions filed for voluntary dismissal without prejudice in their respective actions.

O.     On July 26, 2021, Frank filed an objection to various aspects of the Original Settlement Agreement. That same day, Truth in Advertising, Inc. ("TINA") requested leave to file an amicus curiae brief, which request the Court granted, noting that TINA raised substantially similar arguments to Frank.

P.     On September 13, 2021, the Parties entered into a First Amended Settlement Agreement, making additional changes to the proposed injunctive relief in order to address concerns raised by the Court.

Q.     On December 15, 2021, after multiple hearings, including a two-hour final approval hearing, the Magistrate Judge issued a Report & Recommendation ("R&R") recommending that this Court grant final approval of the proposed settlement based on the First Amended Settlement Agreement.

R.     On December 29, 2021, Ted Frank objected to the R&R.  Frank asserted that the First Amended Settlement Agreement should be disapproved on various grounds.

S.      On March 17, 2022, the Court rejected Frank's objection, adopted the R&R, and entered an Order granting final approval of the First Amended Settlement Agreement.

T.     In response to the Neuriva Actions and based on the Preliminary Approval order entered on April 23, 2021, and the Final Approval order entered on March 17, 2022, Reckitt changed the labeling and advertising of the Neuriva Products to remove the Challenged Representations. These changes went into effect in early 2022 and have been in effect in the market for at least two (2) years.

U.      On April 15, 2022, Frank appealed the Order granting final approval of the First Amended Settlement Agreement.

V.      On April 12, 2023, the Eleventh Circuit Court of Appeals, without addressing the merits of Frank's objections, ruled that this Court did not have jurisdiction to grant the injunctive relief contained in the First Amended Settlement Agreement. The panel therefore vacated the Final Approval order and remanded the matter for further proceedings.

W.      On February 25, 2025, the Honorable Jonathon Goodman conducted a Case Management Conference in the *Williams* Action where he ordered Plaintiffs to file an amended complaint, if any.  He also set May 15, 2025 as the deadline for filing a further settlement agreement that would address issues raised in the Eleventh Circuit Order. The Court extended this deadline to June 13, 2025.

X.      On March 31, 2025, Plaintiffs filed a Second Consolidated Amended Complaint.

Y.      Following the Eleventh Circuit Order, counsel for the Parties began negotiating the terms of a revised settlement agreement to address issues raised in the Eleventh Circuit opinion. These negotiations culminated in the Parties' agreement to the terms of this Agreement.

Z.      Since the beginning of the Neuriva Actions, Class Counsel has conducted a diligent and thorough investigation into the facts surrounding Plaintiffs' claims.  This investigation included but was not limited to factual research, legal research, expert analysis, as well as the collection and review of documents, data, and other information provided by Reckitt and its experts relating to the sales of and science substantiating the claims and marketing for the Neuriva Products.

AA.     Based on discovery and investigation, the labeling and advertising changes, the guidance of the Eleventh Circuit Order, the current state of the law, the expense, burden, and time necessary to prosecute the Neuriva Actions through trial and possible appeals, the risks and uncertainty of further prosecution considering the defenses at issue, the sharply contested legal and factual issues involved, and the relative benefits to be conferred upon Plaintiffs and the Settlement Class Members pursuant to this Agreement, Plaintiffs and Class Counsel have concluded that this Settlement with the Settling Defendants on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Settlement Class in light of all known facts and circumstances.

BB.     The Settling Defendants and their counsel recognize the expense and length of continued proceedings necessary to continue litigating through trial and through possible appeals. The Settling Defendants also recognize that the expense and time spent defending the Neuriva Actions have and will further detract from resources that may be used to run their business.  While the Settling Defendants deny any wrongdoing or liability arising out of any of the facts or conduct alleged in the Neuriva Actions and believe that they have valid defenses to Plaintiffs' claims, the Settling Defendants have determined that the Settlement is fair, adequate, and reasonable.

III.      **CERTIFICATION**

A.      **Certification of Class.**  Solely for the purposes of this Settlement, and without any finding or admission of any wrongdoing or fault by any of the Settling Defendants, and pursuant

to the terms of this Agreement, and Eleventh Circuit law, the Parties consent to and agree to the establishment of a conditional certification of the nationwide Settlement Class, pursuant to Federal Rule of Civil Procedure 23(b)(3).

B. **Certification is Conditional.** The Parties have reviewed applicable law and have concluded that this Court may properly issue an order conditionally certifying a class in conjunction with, or subject to, an order approving this Agreement. *See Borcea v. Carnival Corp*., 238 F.R.D. 664, 671 (S.D. Fla. 2006) ("A class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of the class certification issue.") (internal marks and citations omitted); *In re Beef Indus. Antitrust Litig*., 607 F.2d 167, 174 (5th Cir. 1979) ("[T]entative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge."); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) (Rule 23 contemplates "settlement-only certification"). In accordance with Judge Goodman's order, the Parties intend to brief this issue and will file briefing on that issue on June 20, 2025**. This agreement to conditional certification is for Settlement purposes only and is conditional on the Court's approval of this Agreement and its ruling that it may conditionally certify a settlement class in conjunction with, or subject to, an order approving this Agreement. In the event that this Agreement is terminated for any reason, any certification of the Settlement Class shall be void and this Agreement and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Settlement Class, shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in the *Williams* Action, the other Neuriva Actions, or in any other case or controversy relating to the Challenged Representations.** In the event the Court does not approve of all terms of the Agreement, this Agreement and all negotiations and proceedings related thereto shall be deemed to be without prejudice to and without waiver of the rights of any and all Parties hereto, who shall be restored to their respective positions as of the date of this Agreement, and the Settling Defendants shall not be deemed to have waived any opposition or defenses they have to any of the claims asserted herein or to whether those claims are amenable to class-based treatment.

C. David Williams, Caroll Anglade, Thomas Matthews, Maritza Angeles, and Howard Clark will serve as Class Representative plaintiffs and (1) Milberg Coleman Bryson Phillips Grossman, PLLC; (2) Levin, Papantonio, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A.; (3) Bursor & Fisher, PA; and (4) Shub, Johns & Holbrook LLP will serve as Class Counsel for the conditionally certified class.

D. Subject to Section III.B., the Parties agree to an order conditionally certifying a settlement class, as included in the form of Exhibit C, to be entered if and when the Court grants final approval of this Settlement and Agreement.

# IV. SETTLEMENT CONSIDERATION

A. **Monetary Relief.** In the Parties' Original Settlement Agreement and First Amended Settlement Agreement, the Parties and their counsel agreed to the following terms of monetary relief, including the claims and notice processes as specified below. In consideration of the mutual covenants and promises set forth herein, the Parties and their counsel affirm and restate their agreement to the same:

1.    Every Settlement Class Member, or Household with a Settlement Class Member, were given the right to submit a claim via a Claim Form for monetary relief (a "Settlement Benefit"). The Settlement Administrator was and continues to be authorized to determine whether the claim is a Valid Claim. The Settlement Administrator was and continues to be permitted to track Claim Forms using a two-step verification process with unique security identifiers or control numbers and take all other necessary and appropriate steps to prevent fraud and duplications, which shall be disclosed to the Parties. Submission of a claim, regardless of whether determined to be a Valid Claim, confers no rights or obligations on any Party, any Settlement Class Member, or any other person, except as expressly provided herein.

2.    Reckitt shall pay or cause to be paid certain monetary relief to each Settlement Class Member who submitted a Valid Claim for purchase(s) of Neuriva Product based upon the following two-tier, capped claims made settlement structure:

    a.    Settlement Class Members who provided Proof of Purchase may be entitled to recover up to thirty-two dollars and fifty cents ($32.50) per Valid Claim and may make up to two (2) Claims for a maximum of sixty-five dollars ($65.00). Notwithstanding the preceding, in no circumstance shall Reckitt pay an amount that exceeds the actual purchase amount reflected in a Settlement Class Member's Proof of Purchase.

    b.    Settlement Class Members who did not provide Proof of Purchase may be entitled to recover five dollars ($5.00) per Claim and may make up to four (4) Claims for a maximum of twenty dollars ($20.00).

3.    During the Claim Period, Valid Claims were submitted as set forth in Section IV.A.2.a–b above to be paid by Reckitt pursuant to a total maximum, or cap, of eight million dollars ($8,000,000.00). The Claim Period has closed, and no more Claims may be submitted. Pursuant to the terms of this Agreement, the Settlement Administrator retains the right to conduct further review of the validity of claims, including as to fraud and deduplication.

4.    Should the Settlement Class Members submit more than eight million dollars ($8,000,000.00) in Claims for this Settlement (regardless of the dollar amount or validity of such claims), Reckitt shall have the unconditional right, but not the obligation, to terminate this Settlement Agreement. If Reckitt elects to terminate this Settlement Agreement under this paragraph, Reckitt must provide written notice to the other Parties' counsel, by hand delivery, mail, or e-mail within ten (10) calendar days of the occurrence of the condition permitting termination. Reckitt shall be

responsible for any Class Notice costs incurred if it chooses to exercise this option.

5.   Valid Claims were limited to one Settlement Class Member per Household.

6.   On the Claim Form, the Settlement Class Member, or a Person with authority to sign and bind the Settlement Class Member, provided and certified the truth and accuracy of the following information under the penalty of perjury, including by signing the Claim Form physically or by e-signature, to be considered a Valid Claim:

   a.   The Settlement Class Member's name and mailing address;

   b.   The Settlement Class Member's email address (unless the Settlement Class Member submits a claim form by mail, in which case an email address is optional);

   c.   That the claimed purchases were direct retail purchases by the claimant; and

   d.   That the claimed purchases were not made for purposes of resale, commercial use or for any other purpose.

   e.   For all claimed purchases that are not supported by Proof of Purchase:  the Neuriva Product name(s), the approximate date(s) of purchase, the approximate price(s), the name of the retail store and the store location of each purchase.

7.   Each Settlement Class Member making a claim must have provided the Settlement Administrator with a Claim Form by a secure and reliable form of transmission such as via online Internet submissions on the Settlement Website or via U.S. mail by the conclusion of the Claim Period based on the date of postmark.

8.   The Settlement Administrator had and continues to have the right to audit claims, and the Settlement Administrator had and continues to have the authority to request additional information from Settlement Class Members making a claim.  If any fraud is detected or reasonably suspected, the Settlement Administrator had and continues to have the authority to require further information from the Settlement Class Member, and the Settlement Administrator had and continues to have the right to deny claims.

   a.   The determination of validity of claims must occur within a reasonable time.  The Settlement Administrator has discretion, consistent with this Settlement, to reasonably approve or deny all claims.  Class Counsel and Reckitt have the right to audit claims and to challenge the Settlement Administrator's decision by motion to the Court.  Plaintiffs', Reckitt's, or their counsels' choice not to

audit the validity of any one or more Claim Forms does not constitute or is not to be construed as a waiver or relinquishment of any audit or other rights as to any other Claim Forms, individually or as a group, and similarly is not to be construed as a waiver or relinquishment by such Party as to any of its audit and other rights under this Agreement; provided, however, that any challenge to the Settlement Administrator's resolution of a claim(s) was filed no later than sixty (60) days after the period for cure specified in this Agreement.  No Person is permitted to have any claim against Plaintiffs, Reckitt, Plaintiffs' Counsel, Reckitt's counsel or the Settlement Administrator based on any determination of a Valid Claim, distributions or awards made in accordance with this Agreement.  Neither Plaintiffs nor Reckitt, nor their respective counsel, shall have any liability whatsoever for any act or omission of the Settlement Administrator.

b.  The Settlement Administrator shall notify by email all Settlement Class Members whose claims were denied the reason(s) for denial, using the email address or physical address (if any) provided by the Settlement Class Member on the Claim Form.  If no email address or physical address, or an illegible physical address, was provided by the Settlement Class Member on the Claim Form, the Settlement Administrator does not have an obligation to provide the Settlement Class Member any notification of the denial of the claim or the reasons for denial.  The Settlement Class Members whose claims are denied are allotted thirty (30) days from receipt of a denial to cure any deficiency, with the sufficiency of such cure determined by the Settlement Administrator within thirty (30) days of the conclusion of the period for cure.

9.  The Settling Defendants, through the Settlement Administrator, shall honor all Valid Claims submitted either through U.S. mail or online via the Settlement Website within the Claim Period.  Neither the Settling Defendants nor the Settlement Administrator shall be obligated to honor untimely claims received by the Settlement Administrator or postmarked after the Claim Period.

10.  The Settling Defendants shall fund the total amount to be paid to eligible Settlement Class Members within thirty (30) days after the Settlement Administrator determines the total amount to be paid for Valid Claims.  The Settling Defendants shall place said funds in an independent institutional account separate from the Settlement Administrator, which institution shall be agreed upon by the Parties and identified for the Court.  The Class Action Settlement Administrator shall then pay all Valid Claims within thirty (30) days after the Settling Defendants deposits the funds to be paid.

12

11.     If the Settlement Class Member chooses a payment method that requires action on the Settlement Class Member's part in order to take custody of the funds (e.g., cashing a check, withdrawing from PayPal), then the Settlement Class Member shall have one hundred and eighty (180) days from issuance to accept the funds. If the check is not cashed within this time frame, it will be voided. Similarly, if the funds via PayPal or similar payment service are not accepted within this time frame, the funds will not be disbursed. The Settlement Administrator shall return the full amount of all uncashed check or otherwise unpaid claims to the Settling Defendants.

12.     **Confirmatory Discovery.**  Prior to the Motion for Preliminary Approval, the Parties conducted extensive confirmatory discovery and investigation which included, but was not limited to, information regarding the sales of Neuriva Products and the science and related information supporting the labeling claims on the Neuriva Products.  To the extent necessary to support the Settlement, including the monetary relief in Section IV.A, the Parties are entitled to conduct further confirmatory discovery and investigation.

## V.        ATTORNEYS' FEES AND CLASS REPRESENTATIVE SERVICE AWARDS

A.      **Attorneys' Fees, Costs, and Expenses.**  Class Counsel agrees that they will apply to the Court for attorneys' fees, costs, and expenses no less than  thirty (30) days following final approval in an inclusive amount and that specifically includes all costs and fees incurred by Class Counsel and Plaintiffs' Counsel in connection with the Neuriva Actions thus far, as well as ongoing and future costs and fees through finalization of Settlement of this Action.  The hearing on the fees, costs, and expenses shall be separate and follow the hearing on and determination of final approval of the Settlement. The Court will determine in advance whether notice to the class is required regarding the hearing on fees, costs, and expenses. The exact amount of fees awarded shall be determined by the Court in its discretion and the determination thereof will not impact the validity or fulfillment of the Settlement Agreement.  The amount finally approved by the Court shall be the sole responsibility of and will solely be paid by the Settling Defendants above and beyond any relief provided to the Settlement Class.  Class Counsel will, in their sole discretion, allocate and distribute among all Plaintiffs' Counsel and any other counsel, if applicable, the fees and reimbursed expenses that they receive pursuant to the final order awarding the attorneys' fees and expenses from this Settlement.  Disagreements, if any, among Plaintiffs' Counsel and any other counsel, if applicable, relating to their respective shares of any such fee and expense award will have no impact on the effectiveness or the implementation of this Settlement Agreement, nor will such disagreements increase, modify, or otherwise affect the obligations imposed upon the Settling Defendants by this Settlement Agreement.  Any such disagreements will be resolved by this Court.

B.      The Attorneys' Fees and Costs awarded by the Court as set forth under Section V.A shall be the total obligation of the Settling Defendants to pay attorneys' fees, costs, and expenses of any kind to Plaintiffs' Counsel in connection with the *Williams* Action or the other Neuriva Actions and this Settlement.  In no event shall the Settling Defendants be obligated to pay to Plaintiffs' Counsel any amount larger than the amount specified in Section V.A.

C.      Settling Defendants take no position on the amounts or procedures specified or described in Sections V.A and V.B and reserve all rights, with respect to such attorneys' fees, costs, and expenses, including but not limited to, the right to challenge the amount sought for, or entitlement to, attorneys' fees, costs, and expenses.

D.      **Class Representative Service Awards.**   Class Counsel will apply to the Court for service awards for the Class Representatives in the amount of two thousand dollars ($2,000.00) each for their participation as the Class Representatives in the Neuriva Action and for taking on the risks of litigation ("Service Awards"). Settling Defendants contend that Class Representatives are not able to recover any service awards in light of *Johnson v. NPAS Sols.*, *LLC*, 975 F.3d 1244 (11th Cir. 2020). Plaintiffs contend that under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), state law governs the availability of service awards rather than *Johnson*, which involved a claim under federal law. Since this case only involves state law claims, Plaintiffs are entitled to seek service awards. *See, e.g., Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1110-11 (M.D. Fla. 2023). The exact amount of any amount awarded shall be determined by the Court in its discretion., and the determination thereof will not impact the validity or fulfillment of the Settlement Agreement. The Amount finally approved by the Court shall be the sole responsibility of and will solely be paid by the Settling Defendants above and beyond any relief provided to the Settlement Class or any Attorneys' Fees and Costs.

E.      Any payment of a Class Representative Service Award by the Court as set forth in Section V.D shall be the total obligation of the Settling Defendants to pay money to Plaintiffs, in connection with the *Williams* Action and the other Neuriva Actions and this Settlement, other than amounts due to any Plaintiffs for a Valid Claim submitted pursuant to Section IV.A of this Agreement. In no event shall the Settling Defendants be obligated to pay to Plaintiffs any amount larger than the amount specified in Section V.D, other than for a Valid Claim pursuant to Section IV.A of this Agreement.

F.      Settling Defendants take no position on the amounts or procedures specified or described in Sections V.D. and V.E., the applicability of the law cited therein, and reserve all rights with respect to Service Awards, including without limitation, the right to challenge the amount of, or entitlement to, proposed Service Awards.

G.      The full fees and costs that are approved by the Court shall be paid to the Trust Account of Milberg Coleman Bryson Phillips Grossman PLLC. Class Counsel and the Class Representatives agree to provide the Settling Defendants all identification information necessary to effectuate the payment of the fees and costs including, but not limited to, Taxpayer Identification Number(s), and completed Internal Revenue Service Form W-9(s).

VI.         **RELEASE**

A.      Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, and in consideration for the Settlement benefits described in this Agreement, Plaintiffs and the Settlement Class fully release and discharge the Settling Defendants, and all of their present and former parent companies, subsidiaries, special purposes entities formed for the purpose of administering this Settlement, shareholders, owners, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, and successors, personal

representatives, heirs and assigns, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels (together, the "Discharged Parties") from all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Class Counsel, Plaintiffs' Counsel, Class Representatives, or Settlement Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Discharged Parties in any court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, arising from, or relating to the allegations or claims in the *Williams* Action or the Neuriva Actions, including the Challenged Representations or claims that the Neuriva Products were misleadingly labeled, marketed, or sold, or that relate to the labeling and marketing of the Neuriva Products, except that there shall be no release of claims for personal injury allegedly arising out of use of the Neuriva Products (the "Released Claims").

B.      Plaintiffs expressly understand and acknowledge, and all Settlement Class Members will be deemed by the Final Judgment to acknowledge, that certain principles of law, including but not limited to Section 1542 of the Civil Code of the State of California, provide that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." To the extent that anyone might argue that these principles of law are applicable—notwithstanding that the Parties have chosen Florida law to govern this Agreement—Plaintiffs on behalf of all Settlement Class Members hereby agree that the provisions of all such principles of law or similar federal or state laws, rights, rules or legal principles, to the extent they are found to be applicable herein are hereby knowingly and voluntarily waived, relinquished, and released by Plaintiffs and all Settlement Class Members.

C.      After entering into this Settlement Agreement, Plaintiffs or the Settlement Class Members may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the Released Claims. Plaintiffs and the Class Members expressly waive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, contingent or noncontingent claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such other, different, or additional facts.

## VII.      NOTICE TO THE SETTLEMENT CLASS PURSUANT TO THE CLASS ACTION FAIRNESS ACT

A.      **Class Notice Plan.** Pursuant to the Court's order dated April 23, 2021, granting Preliminary Approval of the Original Settlement Agreement, the terms of which are substantively identical hereto, the Settlement Administrator caused Internet Notice to be implemented in substantially the form attached hereto as Exhibit D which included, but was not limited to (i) internet and social media notice; (ii) notice via an established a Settlement Website; and (iii) U.S. mail or e-mail notice containing information on how to obtain a Claim Form to potential Settlement Class Members at their most recent physical address or email address in the Settling Defendants' possession from a purchase of one or more Neuriva Products directly from the Settling Defendants

(as opposed to from a non-party retailer).  In addition, Class Notice, in substantially the form attached hereto as Exhibit B, was published on the Settlement Website.  The Settlement Administrator also established a toll-free number to provide information to the Settlement Class, including on how to submit Claim Forms.

      B.     The Class Notice reached no less than 80% of the Settlement Class.

      C.     Any notice was required to comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715.

      D.     The Settling Defendants, at their cost, caused the Class Notice to issue in accordance with the requirements of the Court's Preliminary Approval order dated April 23, 2021.

      E.     The Class Notice plan and claims procedure was provided according to a plan developed by the Settlement Administrator, to include measures to prevent the approval of fraudulent or invalid claims.

      F.     Tracking and reporting of Settlement Class Members who requested exclusion was compiled by the Settlement Administrator and communicated to Class Counsel who reported to the Court prior to final approval of the First Amended Settlement Agreement on December 15, 2021.

      G.     In conjunction with a Motion for Final Approval of this Agreement, the Settlement Administrator will provide to the Court an updated declaration regarding the number of Valid Claims after processing for fraud and deduplication.

## VIII.     PROCEDURES FOR OBJECTING TO OR REQUESTING EXCLUSION FROM SETTLEMENT

      A.    **Objections.**  Only Settlement Class Members may object to this Settlement. If any Settlement Class Member wishes to object to the Settlement, the Settlement Class Member must submit a written objection to *Williams, et al. v. Reckitt Benckiser, et al.*  Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.  The written objection may be submitted by mail, express mail, electronic transmission, or personal delivery, but to be timely, it must be delivered to the Settlement Administrator (not just postmarked or sent) prior to the Objection Deadline.  Each objection must include:

      1.     The case name and number:  *Williams, et al. v. Reckitt Benckiser, LLC*, Case No. 1:20-cv-23564-RS;

      2.     The name, address, and telephone number of the Objector;

      3.     The name, address, and telephone number of all counsel (if any) who represent the Objector, including any former or current counsel who may be entitled to compensation for any reason if the objection is successful, and legal and factual support for the right to such compensation;

      4.     Documents or testimony sufficient to establish membership in the Settlement Class;

5.       A detailed statement of any objection asserted, including the grounds therefor;

6.       Whether the Objector is, and any reasons for, requesting the opportunity to appear and be heard at the Final Approval Hearing;

7.       The identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing and, if applicable, a list of all persons who will be called to testify in support of the objection;

8.       Copies of any papers, briefs, or other documents upon which the objection is based;

9.       A detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class actions submitted in any state or federal court in the United States in the previous five (5) years (or affirmatively stating that no such prior objection has been made); and

10.      The Objector's signature, in addition to the signature of the Objector's attorney (if any).

B.       Failure to include documents or testimony sufficient to establish membership in the Settlement Class shall be grounds for overruling and/or striking the objection on grounds that the Objector lacks standing to make the objection.  Failure to include any of the information or documentation set forth in SectionVIII.A.1–10 also shall be grounds for overruling an objection. The Parties may respond to any objection to the Settlement with appropriate arguments and evidence.

C.       Subject to approval of this Court, any Objector may appear, in person (or video conference, if required) or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, or object to any petitions for attorneys' fees or reimbursement of reasonable litigation costs and expenses or award of service awards.  The Objector must file with the Clerk of the Court and serve upon Class Counsel and the Settling Defendants' Counsel (at the addresses listed in Section XVI), a notice of intention to appear at the Final Approval Hearing ("Notice of Intention to Appear") on or before the Objection Deadline.

D.       The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member (or his/her/its counsel) will present to the Court in connection with the Final Approval Hearing.  Any Settlement Class Member who does not provide a Notice of Intention to Appear in complete accordance with the deadlines and other specifications set forth in the Class Notice, will not be allowed to speak or otherwise present any views at the Final Approval Hearing.

E.       The date of the postmark on the mailing envelope or a legal proof of service accompanied by a file-stamped copy of the submission shall be the exclusive means used to determine whether an objection and/or notice of intention to appear has been timely filed and served.  In the event that the postmark is illegible, the objection and/or notice to appear shall be

deemed untimely unless it is received by the counsel for the Parties within two (2) calendar days of the Objection Deadline.

F.      In response to objections, the Parties shall, at least seven (7) days (or such other number of days as the Court shall specify) before the Final Approval Hearing, file any responses to any written objections submitted to the Court by Settlement Class Members in accordance with this Agreement.

G.      A Settlement Class Member who objects to the Settlement must have submitted a Claim Form before the Claim Period ended.

H.      Immediately upon receipt of any objection, the Settlement Administrator shall forward the objection and all supporting documentation to counsel for the Parties.  Class Counsel shall file all such objections and supporting documentation with the Court along with any response to the objection made by the Parties.

I.      The Parties agree to use their best efforts to carry out the terms of this Settlement. At no time will any of the Parties or their counsel seek to solicit or otherwise encourage any Settlement Class Member to object to the Settlement, or encourage any Settlement Class Member to appeal from the Final Judgment.

J.      **Exclusions.**  Any Settlement Class Member who wished to be excluded from (in other words, opt out of) the Parties' Settlement of the Neuriva Actions, the Settlement Class Member had an opportunity to do so by completing the exclusion form at the Settlement Website; downloading and submitting to the Settlement Administrator a completed exclusion form; or submitting a valid request to exclude themselves, as described in the Notice, to the Settlement Administrator.  Requests to exclude themselves must have been delivered (not just postmarked) by the Exclusion Deadline or they were not valid.  A Settlement Class Member who excluded themselves from this Settlement shall not be permitted to object to this Settlement or to intervene in any way.  Any Settlement Class Member wishing to exclude themselves who failed to properly or timely file or serve any of the requested information and/or documents was and continues to be precluded from doing so.

K.      At least fourteen (14) days prior to the hearing on Final Approval of this Settlement, the Settlement Administrator shall again prepare a list of the names of the Persons who, pursuant to the Notice, excluded themselves from the Settlement Class in a valid and timely manner, and Plaintiffs' Counsel shall file that list with the Court.

L.      If a Settlement Class Member submitted both a Claim Form and an exclusion request, the Claim Form shall take precedence and be considered valid and binding, subject to the Settlement Administrator's review for fraud or deficiency, and the exclusion request deemed to have been sent by mistake and rejected.

M.      The Parties agreed and continue to agree to use their best efforts to carry out the terms of the Settlement, including an agreement not to solicit or otherwise encourage any Settlement Class Member to request exclusion from participating as a Settlement Class Member.

182188476.3

IX.         **DUTIES OF THE PARTIES PRIOR TO FINAL COURT APPROVAL**

A.       Following execution of this Agreement and subject to other decisions to be made by the Court, Plaintiffs shall submit this Agreement to the Court in support of a motion for approval and determination by the Court as to the Agreement's fairness, adequacy, and reasonableness.  The Settling Defendants will not oppose, subject to the reservations of rights herein.  The motion shall seek relief substantially in the following form:

1.       Scheduling a Final Approval Hearing on the question of whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the members of the class;

2.       Approving the form, content, and implementation of the previously completed Internet Notice and Class Notice;

3.       Approving the Settlement;

4.       Conditionally certifying the Settlement Class for Settlement purposes only;

5.       Enjoining the prosecution of any other individual or class claims against Reckitt for facts, circumstances, or claims alleged in the Neuriva Actions; and

6.       Providing that, in the event the proposed Settlement set forth in this Agreement is not approved by the Court or is otherwise terminated, all orders entered in connection therewith, including but not limited to any order conditionally certifying the nationwide Settlement Class or dismissing any of the Neuriva Actions, shall become null and void and shall be of no further force and effect and shall not be used or referred to for any purposes whatsoever in the *Williams* Action, the other Neuriva Actions, or in any other case or controversy; and in such an event, this Agreement and all negotiations and proceedings related thereto shall be deemed to be without prejudice to the rights of any and all Parties hereto, who shall be restored to the respective positions as of the date of this Agreement.   In the event the Court does not enter the approval order described herein, or decides to do so only with material modifications, then this entire Agreement shall become null and void, unless the Parties hereto agree in writing to proceed with this Agreement as modified.

X.         **COURT APPROVAL**

A.       Class Counsel will submit a proposed Final Approval Order and Judgment at the Final Approval Hearing, with such Order in substantially the same form as Exhibit C and in keeping with the terms of this Agreement shall include:

1.       Conditional certification of the Settlement Class for settlement purposes only and a requirement that the Settlement Class be automatically

decertified if final approval is not granted or the Settlement is otherwise terminated;

2.  Approval of the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions; and

3.  A request for entry by the Court of a Final Judgment and order permanently barring the Parties and Settlement Class Members from prosecuting the other Parties and their officers, attorneys, directors, shareholders, employees, agents, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels in regard to those matters released as set forth in Section VI above.

B.  Class Counsel will separately move for an award of attorneys' fees and costs as well as Service Awards for the Plaintiffs and file a separate proposed order regarding the same.

## XI.     TERMINATION

A.  Any Party shall have the right, but not the obligation, to unilaterally terminate this Agreement and the Settlement within fourteen (14) days of any of the following occurrences:

1.  An appellate court reverses the Final Approval Order and Judgment, and the Agreement is not reinstated without material change by the Court on remand (unless the reversal is solely concerning the award of attorneys' fees, costs, and expenses, or incentive awards);

2.  Any court deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, the Final Approval Order and Judgment, or the Agreement in a way that Plaintiffs or the Settling Defendants reasonably consider material, unless such modification or amendment is accepted in writing by all Parties;

3.  The Effective Date set forth in the Agreement does not occur; or

4.  More than ten percent (10%) of the Settlement Class opts out.

B.  Notwithstanding the foregoing, neither Plaintiffs nor Class Counsel shall have any right to terminate the Agreement in the event the Court declines Plaintiffs' and/or Class Counsel's requests for Attorneys' Fees, Costs, and Expenses, or Service Awards or in the event that the Court awards less than the amounts sought.  However, Plaintiffs shall have the right to appeal the denial of their requests for Attorneys' Fees, Costs, and Expenses or Service Awards.

C.  In order to exercise his, her, or its right to terminate this Agreement, the terminating Party must timely serve written notice of his, her, or its election to do so, which states the basis for the termination ("Termination Notice"), on counsel of record for all other Parties hereto.  A Party's

termination of this Agreement is effective only if and when notice of the same is timely served on counsel of record for the Parties.

    D.      In the event this Agreement is terminated, then:

        1.      Any certification of the Settlement Class and any other judgment or order relating in any way to this Settlement entered by the Court in the Action will be void and deemed vacated, *nunc pro tunc*, and without prejudice to the Settling Defendants' right to contest class certification and their right to exercise all other rights and defenses in any of the Neuriva Actions;

        2.      The Parties shall be restored to their respective positions prior to entering into the Settlement status quo ante as if this Agreement had never been entered into, except for any provisions of this Agreement that expressly survive termination; and

        3.      Any Party that terminates this Agreement shall be obligated to pay all reasonable costs and fees incurred by the Settlement Administrator. Otherwise the Parties will bear their own costs and fees.

## XII.        CONTINUING JURISDICTION

    A.      The Court shall retain continuing and exclusive jurisdiction over the enforcement, interpretation, and applicability of the Settlement and the Parties agree to cooperate and to take all necessary and appropriate steps to ensure the enforceability of the Settlement.  In granting Final Judgment, the Court shall enjoin all actions in any jurisdiction against the Discharged Parties as is necessary to preserve the Court's jurisdiction.

## XIII.        PARTIES' AUTHORITY

    A.      The signatories represent that they are fully authorized to enter into this Agreement and bind the Parties to its terms and conditions.

## XIV.        MUTUAL FULL COOPERATION

    A.      The Parties agree to cooperate fully with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and the taking of such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement.  As soon as practicable after execution of this Agreement, Class Counsel, with the assistance and cooperation of the Settling Defendants and their counsel, shall take all necessary steps to secure the Court's final approval of this Agreement.

    B.      The Settling Defendants agree that they have not attempted and will not attempt to discourage Settlement Class Members from filing claims.

## XV.        NO ADMISSION

A.        This Agreement is not to be construed or deemed as an admission of liability, culpability, negligence, or wrongdoing on the part of any of the Settling Defendants or as an admission that class treatment in the *Williams* Action and the other Neuriva Actions is proper for any purpose other than Settlement.  The Settling Defendants deny all liability for claims asserted in the *Williams* Action and the other Neuriva Actions and deny that class treatment is proper for any purpose other than this Settlement.  Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.  This Agreement is a Settlement document and shall, pursuant to Fed. R. Evid. 408 and related or corresponding state evidence laws, be inadmissible in evidence in any proceeding.  This Agreement or the existence of this Settlement shall not be used or cited in any proceeding other than (i) an action or proceeding to approve or enforce this Agreement, or (ii) in a subsequent proceeding potentially barred by the Release specified herein.

## XVI.       NOTICES

A.        Unless otherwise specifically provided, all notices, demands or other communications in connection with this Agreement shall be in writing and shall be deemed to have been given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

1.        Class Counsel:  Martha A. Geer, Esq., Milberg Coleman Bryson Phillips Grossman PLLC, 900 W. Morgan St., Raleigh NC 27603

2.        Settling Defendants' Counsel:  David T. Biderman, Esq., Perkins Coie LLP, 1888 Century Park East Suite 1700, Los Angeles, CA 90067

## XVII.      CONSTRUCTION

A.        The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive arm's-length negotiations between the Parties, and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of this Agreement.

## XVIII.     MATERIAL TERMS; CAPTIONS

A.        Each term of this Agreement is a material term of the Agreement, not merely a recital, and reflects not only the intent and objectives of the Parties but also the consideration to be exchanged by the Parties hereunder.  Paragraph titles or captions are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

## XIX.       INTEGRATION CLAUSE

A.        This Agreement contains the entire agreement between the Parties relating to the Settlement, and all prior or contemporaneous agreements, understandings, representations, and

statements, whether oral or written and whether by a party or such party's legal counsel, are extinguished.

## XX.　　　NO COLLATERAL ATTACK

A.　　This Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices to the Settlement Class after the Final Judgment and dismissal is entered. Such prohibited collateral attacks shall include claims made before the Final Approval Hearing that a Settlement Class Member's Settlement Benefit was improperly calculated or adjusted or that the Settlement Class Member failed to receive timely notice of the procedure for disputing the calculation of the individual Settlement Benefit or failed to submit a timely dispute letter for any reason.

## XXI.　　　AMENDMENTS

A.　　The terms and provisions of this Agreement may be amended only by a written agreement, which is both (1) signed by the Parties who have executed this Agreement and (2) approved by the Court.

## XXII.　　　ASSIGNMENTS

A.　　None of the rights, commitments, or obligations recognized under this Agreement may be assigned by any Party or Settlement Class Member without the express written consent of each other Party hereto. The representations, warranties, covenants, and agreements contained in this Agreement are for the sole benefit of the Parties and Settlement Class Members under this Agreement, and shall not be construed to confer any right or to avail any remedy to any other person.

## XXIII.　　　GOVERNING LAW

A.　　This Agreement shall be governed by, and the rights of the Parties determined in accordance with, the laws of the State of Florida, irrespective of the State of Florida's choice of law principles.

## XXIV.　　　BINDING ASSIGNS

A.　　This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

## XXV.　　　CLASS COUNSEL SIGNATORIES

A.　　It is agreed that because the Settlement Class appears to be so numerous, it is impossible or impractical to have each member of the class execute this Agreement. The Parties agree the Notice plan set forth herein has advised Settlement Class Members of all material terms of this Agreement, as it substantially incorporates the Original Settlement Agreement, including the binding nature of the releases and such shall have the same force and effect as if this Agreement were executed by each Settlement Class Member.

182188476.3

## XXVI.    COUNTERPARTS

A.    This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and the Settlement Class.

## XXVII.    NON-DISPARAGEMENT

A.    Plaintiffs and their attorneys agree not to disparage or otherwise take any action which could reasonably be expected to adversely affect the personal or professional reputation of the Discharged Parties.  The Settling Defendants and their attorneys agree not to disparage or otherwise take any action which could reasonably be expected to adversely affect the personal or professional reputation of Class Counsel, Plaintiffs' Counsel, and the Class Representatives regarding this matter or any of the Neuriva Actions.

182188476.3

**EXECUTED AND AGREED.**

Date: _____06/18/2025_____

By: _____
Howard Clark (Jun 18, 2025 16:00 PDT)

Howard Clark
Plaintiff and Class Representative

Date: _____June 13, 2025_____

By: _____
L. Timothy Fisher

L. Timothy Fisher, Bursor & Fisher PA
Counsel for Howard Clark

Date: _____Jun 18, 2025_____

By: _____
Thomas Matthews (Jun 18, 2025 12:44 PDT)

Thomas Matthews
Plaintiff and Class Representative

Date: _____Jun 18, 2025_____

By: _____
David Williams (Jun 18, 2025 16:22 EDT)

David Williams
Plaintiff and Class Representative

Date: _____Jun 19, 2025_____

By: _____
Caroll Anglade (Jun 19, 2025 21:26 EDT)

Caroll Anglade
Plaintiff and Class Representative

Date: _____June 13, 2025_____

By: _____
Martha Geer

Martha A. Geer, Milberg Coleman Bryson
Phillips Grossman PLLC
Counsel for Plaintiffs Thomas Matthews,
David Williams, and Caroll Anglade

Date: _____June 13, 2025_____

By: _____
Matthew Schultz

Matthew D. Schultz, Levin, Papantonio,
Thomas, Mitchell, Rafferty & Proctor, PA
Counsel for Plaintiffs Thomas Matthews,
David Williams, and Caroll Anglade

Date: _____6/18/2025_____

By: _____

Maritza Angeles
Plaintiff and Class Representative

Date: _____June 13, 2025_____

By: _____
Jonathan Shub

Jonathan Shub, Shub, Johns & Holbrook
LLP
Counsel for Plaintiff Maritza Angeles

25

**EXECUTED AND AGREED (EXCEPT SECTION V ABOVE)**

Date: _23-Jun-2025_____     By: _____

Ashish Gupta (Jun 23, 2025 09:51 EDT)

Defendant Reckitt Benckiser LLC

Date: _23-Jun-2025_____     By: _____

Ashish Gupta (Jun 23, 2025 09:51 EDT)

Defendant RB Health (US) LLC

Date: _____June 13, 2025_____     By: _____

David T. Biderman
Counsel for Defendants Reckitt Benckiser
LLC and RB Health(US) LLC

26

# EXHIBIT A

182188476.3

## CLAIM FORM AND INSTRUCTIONS

<div style="border:1px solid">

The Settlement Administrator must receive this Claim Form in an envelope post-marked no later than [**45 Days After Final Approval**] in order for it to be considered.

</div>

*Williams, et al. v. Reckitt Benckiser LLC, et al.*,
No. 1:20-cv-23564
**(Pending in the United States District Court for the Southern District of Florida)**

**Please read all of the following instructions carefully before filling out your Claim Form.**

1.  You have three options to make a claim:

    a.  You may print out, complete, and mail your claim form and proof of purchase, if any, to the Claims Administrator at *Williams, et al. v. Reckitt Benckiser, et al.* Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

    b.  You may print out, complete, and upload this form to the settlement website at www._____.com. When using this option, you may upload proof of purchase to the extent you have such proof.

    c.  You may use an online claim form by going to www._____.com. When using this option, you may upload proof of purchase to the extent you have such proof.

2.  Complete Part A ("Claimant Information") by filling in the requested information. Only one Claim Form per household will be honored. Household means all Persons who share a single physical address.

3.  Complete Part B by providing the number of purchases of each kind of Neuriva Product you purchased between January 1, 2019 and [Date of Preliminary Approval Order]. For example, if you purchased one bottle of **Neuriva® Original** of any size during the class period, you would fill in the number "1" on the line that corresponds with **Neuriva® Original, all sizes**. You must then check a box to indicate if you have proof of purchase or not. Each qualifying purchase will receive a payment as defined in the Settlement Agreement, subject to the following limit: (1) Those with proof(s) of purchase deemed valid by the Settlement Administrator and who **submit it with the claim form** may obtain a payment up to $65.00 per Class Member; and (2) Those with no proof of purchase may obtain payment up to $20.00 per Class Member.

4.      Proof of purchase means acceptable documentation that provides valid proof of your purchase of Neuriva Products.  Such valid proof of purchase documentation may consist of receipts, copies of receipts, invoices, direct purchase records, or other legitimate proof showing payment to either a retailer or Reckitt Benckiser for any of the Neuriva Product that was not used as proof for any other claim.

5.      The claims purchases must be direct retail purchases and not made for purposes of resale, commercial use, or any other purpose.

6.      Sign the CLAIM FORM.  For those filing online, there will be an e-signature requirement.

7.      Once your Claim Form is received, the Settlement Administrator will review the Claim Form for compliance and fraud prevention.  Keep a copy of your completed Claim Form for your records.  If your claim is rejected for any reason, the Settlement Administrator will notify you by U.S. mail or e-mail of the rejection and the reasons for such rejection; you will be allotted 30 days from receipt of a denial to cure any deficiency.

## PART A – CLAIMANT INFORMATION

_____

Claim ID [FOR INTERNAL USE ONLY]

_____

Claimant Name

_____     _____

Street Address                                            Daytime Phone Number

_____     _____

City, State, Zip Code                                  E-Mail Address

## PART B – LIMITED REIMBURSEMENT FOR QUALIFYING HOUSEHOLDS

You may make a claim for the following Neuriva® Products:

1.   Neuriva® Original, all sizes;
2.   Neuriva® Plus, all sizes;
3.   Neuriva® De-Stress, all sizes.

**PLEASE FILL OUT THIS CHART STATING YOUR PURCHASES**

| Type of Product Purchased | Number of Each Type of Product Purchased | Approximate Date of Purchase(s) | Location (Name of Store and City or Website) of Product Purchased | Approximate Price(s) of Purchase(s) |
|---|---|---|---|---|
| Neuriva® Original, any size | | | | |
| Neuriva® Plus, any size | | | | |
| Neuriva® De-Stress, any size | | | | |

## <u>CHECK AND COMPLETE ONLY ONE OF THE FOLLOWING:</u>

☐   **I HAVE PROOF OF PURCHASE (i.e., sales receipt(s) or invoice(s))** showing that I purchased Neuriva between January 1, 2019 and [Date of Preliminary Approval].  I understand that a qualifying Class Member who submits a valid claim form and valid proof of purchase for all qualifying purchases is entitled to receive payment in the amounts above for each purchase **up to $65.00 per Class Member**, limited to one Class Member per household.  YOU MUST ATTACH THE PROOF OF PURCHASE WITH YOUR CLAIM FORM.

**<u>OR</u>**

☐   **I DO NOT HAVE ANY PROOF OF PURCHASE (i.e., a sales receipt or invoice)** showing that I purchased Neuriva between January 1, 2019 and [Date of Preliminary Approval].  I understand that a qualifying Class Member who submits a valid claim form without proof of purchase is entitled to receive payment in the amounts above for each purchase **up to $20.00 per Class Member**, limited to one Class Member per household.

*I swear and affirm under the penalty of perjury that the above is true to the best of my knowledge.*


_____    _____    _____
Signature of Claimant            Print Name                        Date

A-4

# EXHIBIT B

182188476.3

## <u>Notice of Pendency and Proposed Settlement of Class Action</u>

**To:  All individuals who purchased Neuriva® Products from January 1, 2019 to [Date of Preliminary Approval].**

*Products Include:  Neuriva® Original, Plus, and De-Stress, all sizes.*

Your rights may be affected by this class action lawsuit and the proposed settlement of the lawsuit discussed in this court-authorized notice ("Proposed Settlement").  This Notice is to inform you of the conditional certification of a settlement class, the nature of the claims at issue, your right to participate in, or exclude yourself from, the class, and the effect of exercising your various options.

### <u>You are not being sued.</u>

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| DO NOTHING | If you do nothing, you will be bound by the settlement and its benefits, if it is approved. |
| EXCLUDE YOURSELF | Write to the Settlement Administrator if you do not want to benefit from, or be bound by, this settlement. |
| OBJECT | File an objection with the Court if you are not satisfied with the settlement. |
| GO TO A HEARING | If you file an objection, you may ask for permission to speak in Court about the fairness of the settlement. |
| MAKE A CLAIM | Make a claim for benefits under the settlement. |

Your legal rights and options--**and the deadlines to exercise them**--are explained in this Notice.  Your legal rights may be affected whether you act or do not act.  Please read this Notice carefully.  Capitalized terms in this Notice have the same meaning as provided in the Settlement Agreement on file with the Court.

### 1. Why did the Court issue this notice?

This Notice is given to inform you that (1) a class action lawsuit is pending in the United States District Court for the Southern District of Florida entitled *Williams, et al. v. Reckitt Benckiser LLC, et al.*, 1:20-cv-23564-MGC (S.D. Fla.) (the "Action"); (2) you may be a Settlement Class Member; (3) the parties have proposed to settle the Action; (4) the Proposed Settlement may affect your legal rights; and (5) you have a number of options.

### 2. What is this Action about?

Plaintiffs have brought this action against Defendants, on behalf of themselves and all other persons who, from January 1, 2019 up to and including [Date of Preliminary Approval] (the "Class Period"), purchased in the United States for consumption and not resale bottles of Neuriva® Products, including all variations and sizes of Neuriva Original, Neuriva, Plus, and Neuriva De-Stress.

B-1

Plaintiffs alleged that Reckitt Benckiser LLC and RB Health (US) LLC ("Reckitt" or "Defendants") advertised that Neuriva® Products are clinically and scientifically "proven" and such representations are false and misleading.  Plaintiffs maintain that Defendants actions constitute violations of various states' consumer protection laws, as well as other laws.

Reckitt denies Plaintiffs' claims and charges, denies that it has violated any laws, and maintains that the labeling, packaging, and marketing of Neuriva® Products have always been truthful and not deceptive.

In addition to this Action, this settlement also resolves all Neuriva Actions (as defined in the settlement agreement) that have been or could have been filed on the same basis as the Action, including *Matthews v. Reckitt Benckiser LLC, et al.,* Case No. 1:20-cv-00854 (E.D. Cal.); *Angeles v. Reckitt Benckiser LLC, et al.*, Case No. 1:20-cv-07138 (S.D.N.Y); and *Clark v. Reckitt Benckiser et al.* (unfiled).

### 3. How do I know if I am part of the Settlement Class?

The Court has conditionally certified a Settlement Class defined as the following:

> All persons who purchased for personal consumption and not for resale, one or more of the Neuriva Products, from Reckitt or an authorized reseller, in the United States, between the dates of January 1, 2019 and the date of Preliminary Approval of the Class Settlement by the Court.

Excluded from the Settlement Class shall be the Honorable Erica P. Grosjean, the Honorable Marcia G. Cooke, the Honorable Jonathan Goodman, the Honorable Ronnie Abrams, the Honorable Rodney Smith, counsel to the Parties, Jill Sperber, and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; Reckitt, any entity in which Reckitt has a controlling interest, any of Reckitt's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and any persons who timely opt-out of the Settlement Class.

### 4. What are the reasons for the Settlement?

The Court did not decide in favor of the Plaintiffs or Defendants.  Instead, both sides agreed to a settlement that they believe is a fair, reasonable, and adequate compromise of their respective positions.  The parties reached this agreement only after extensive negotiations, an exchange of information, and consideration of the risks and benefits of settlement.

Counsel for Plaintiffs and the Settlement Class Members have considered the substantial benefits from the Proposed Settlement that will be given to the Settlement Class Members and balanced these benefits with the risk that a trial could end in a verdict for Defendants.  They also considered the value of the immediate benefit to Settlement Class Members versus the costs and delay of litigation through trial and appeals and the risk that a class would not be certified.  Even if Plaintiffs were successful in these efforts, Settlement Class Members may not receive any benefits for years.

## 5. What does the Settlement provide?

**BENEFITS.** If the Proposed Settlement is ultimately approved by the Court, it will provide cash payments and other relief to the Settlement Class. In return for the relief described below, the Settlement Class Members release their rights to pursue any claims against Defendants and related entities concerning or relating to the allegations raised in this Action. The central provisions of the Settlement are as follows:

### Non-Monetary Relief.

Reckitt shall change all Neuriva Product label and marketing references as follows:

a.  Any references to "Clinically Proven" on the Neuriva Product labels shall be changed to "Clinically *Tested*" or similar language, such as clinical studies have "shown," with such language as to the studies or testing referring to the Products' ingredients, not the Product as a whole (e.g. "Clinically *Tested* Naturally Sourced Ingredients");

b.  Any references to "Clinically Proven" in ancillary marketing (including websites, advertising, and social media) shall be changed to "Clinically *Tested*" or similar language, such as clinical studies have "shown," with such language as to the studies or testing referring to the Products' ingredients, not the Product as a whole;

c.  Any references to "Science Proved" on the Product labels, or in ancillary marketing (including websites, advertising, and social media), shall be changed to "Science *Tested*" or similar language, such as scientific studies have "shown," with such language as to the studies or testing referring to the Product's ingredients, not the Product as a whole (*e.g.* "Science *Tested* It… Our natural ingredients…").

d.  Such non-monetary relief will last for no longer than two (2) years.

### Monetary Relief.

Reckitt shall pay or cause to be paid certain monetary relief to each Class Member who submits a Valid Claim for purchase(s) of Neuriva Product based upon the following two-tier, capped claims-made settlement structure:

a.  Class Members who provide Proof(s) of Purchase may be entitled to recover thirty-two dollars and fifty cents ($32.50) per Valid Claim and may make up to two (2) Claims for a maximum of sixty-five dollars ($65.00). Notwithstanding the preceding, in no circumstance shall Reckitt pay an amount that exceeds the actual purchase amount reflected in a Settlement Class Member's Proof of Purchase.

B-3

    b.      Class Members who do not provide Proof of Purchase may be entitled to recover five dollars ($5.00) per Claim and may make up to four (4) Claims for a maximum of twenty dollars ($20.00).

    c.      Valid Claims shall be paid by Reckitt pursuant to a total maximum, or cap, of eight million dollars ($8,000,000.00).

    d.      Valid Claims shall be limited to one Settlement Class Member per Household.

**NOTICE AND ADMINISTRATION**.  In addition to the above relief, Defendants will also pay for the costs of Notice and to administer the settlement.

**CLAIM PROCEDURE**.  To receive a cash payment, Settlement Class Members must complete, sign, and submit a Claim Form ON OR BEFORE [45 Days After Final Approval].  The Claim Form may be filed online or by U.S. mail.  For some claims, proof of purchase is required.  Please review the claim form for more information.

    **You may visit** www._____.com **to file your claim online or obtain a claim form by calling 1-(888) \_\_\_-\_\_\_\_.**

You can also obtain a Claim Form by letter request, enclosing a self-addressed, stamped envelope to *Williams, et al. v. Reckitt Benckiser, et al.*  Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

**RELEASE.**  Unless you exclude yourself from the Settlement Class, approval of this Proposed Settlement will result in a release by you of all claims against Defendants and other related entities and individuals concerning or relating to the allegations or claims raised in this Action.

**MORE INFORMATION.**  The complete terms of the settlement are in the Settlement Agreement, which is available online at www._____.com or by calling 1-(888) \_\_\_-\_\_\_\_.

**6. Do I have a lawyer in the case?**

The Court has appointed the following counsel as Class Counsel:  (1) Whitfield Bryson LLP; (2) Greg Coleman Law PC; (3) Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, PA; (4) Barbat, Mansour, & Suciu PLLC, (5) Bursor & Fisher PA; and (6) Shub Law Firm LLC.  You also have a right to obtain your own attorney.  But, if you hire your own attorney, you will have to pay that attorney.  You can ask your attorney to appear at the Fairness hearing for you if you want someone other than Class Counsel to represent you.

**7. How will the lawyers for the Settlement Class be paid?**

The Parties negotiated the payment of attorneys' fees and costs, over and above the class relief, only after reaching agreement upon all other terms of this Settlement Agreement.  Moreover, the Settlement Agreement is not contingent upon the award of any particular amount of attorneys' fees and costs.  Like all class action settlements, the amount of attorneys' fees and costs awarded to class counsel is left to the discretion of the Court presiding over the Action.  The Parties have

agreed, however, that separate and apart from the monetary relief Defendants will provide to the Settlement Class, and subject to Court approval, Defendants will not object to a collective award of attorneys' fees and costs up to $2,900,000 for Class Counsel as defined in the Settlement Agreement.  Further, Defendants have agreed to not oppose a request for Class Representative awards in the amount of $2,000.00 each to David Williams, Caroll Anglade, Thomas Matthews, Maritza Angeles, and Howard Clark, as further described in the Settlement Agreement.

Class Counsel will file any motion for an award of Class Counsel's Fees on or before [Date of set by the Court].

### 8. What happens if I do nothing after receiving this notice?

If you do nothing, and the Court approves the settlement, you will be bound by the terms of the Settlement and will be unable to pursue claims against Defendants and other related entities concerning or relating to the allegations or claims raised in this Action.

As long as you do not request exclusion from the Settlement Class, you may be entitled to the payments described in Section 5 if you submit a valid claim.

**You must complete and submit a Claim Form no later than [45 Days After Final Approval]**, or your claim will not be considered and will be rejected.

### 9. What does it mean to request exclusion from the Settlement Class?

If you come within the Settlement Class definition, you will be a Settlement Class Member and will be bound by the settlement if the Court approves it unless you exclude yourself from the Settlement Class (also known as "opting out").  Being "bound by the settlement" means that you will be precluded from bringing, or participating as a claimant in, a similar lawsuit.  Persons who exclude themselves from the Settlement Class will not be bound by the terms of the Proposed Settlement for purposes of damages claims and will not be eligible to receive any money from the Proposed Settlement, but they will retain the right to sue Defendants for damages, at their own cost.

You cannot exclude yourself from the Settlement Class and the Proposed Settlement if you wish to object to the settlement and/or appear before the Court during the Fairness Hearing (see Sections 11 and 12), as you need to be a Settlement Class Member affected by the settlement to object or appear.

B-5

## 10. How do I request exclusion?

You may exclude yourself from the Settlement Class (for purposes of damages claims only) provided that your request is made in writing and *delivered* before [**21 Days Prior to Final Approval Hearing**].  To exclude yourself, you can download an exclusion form available at www._____.com or send a letter that includes (a) the name of the case, (b) your name, current address, telephone number, and signature, and (c) a clear statement communicating that you elect to be excluded from the settlement.  Your written request to exclude yourself from the settlement must be sent to the *Williams, et al. v. Reckitt Benckiser LLC, et al.*  Settlement Administrator.  P.O. Box 58220 Philadelphia, PA 19102.

You will be excluded from the settlement only if your request is *delivered* on or before [**21 Days Prior to Final Approval Hearing**], and includes the required information.  Settlement Class Members who fail to submit a valid and timely request for exclusion on or before the date specified, shall be bound by all terms of the Proposed Settlement and the Final Order and Judgment, regardless of whether they have requested exclusion from the Proposed Settlement.

In determining whether you want to exclude yourself from the settlement, you are advised to consult your own personal attorney, as there may be issues particular to your circumstances that require consideration.

## 11. What if I do not like the Settlement?

If you are a Settlement Class Member, you can object to the Proposed Settlement.  To object, you must provide the following information in writing:  (i) the case name and number *Williams, et al. v. Reckitt Benckiser, LLC*, Case No. 1:20-cv-23564-MGC; (ii) your full name, current address, and current telephone number; (iii) the name, address, and telephone number of your attorney (if any); (iv) documentation or attestation sufficient to establish membership in the Class; (v) a statement of the position(s) you wish to assert, including the factual and legal grounds for the position(s); (vi) provide copies of any other documents that you wish to submit in support of your position; (vii) whether you are requesting an opportunity to appear and be heard at the Final Approval Hearing; (viii) a detailed list of any other objections submit by your (or your attorney) to any other class actions in the past 5 years, or a statement that no prior objections have been made; and (ix) your objection must be signed by you and your attorney (if any).

Your objection must be *delivered* before [**21 Days Prior to Final Approval Hearing**] to *Williams, et al. v. Reckitt Benckiser, et al.*  Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

If your objections do not meet all of the requirements set forth in this section, they will be deemed invalid and will be overruled.

Finally, subject to approval of the Court, any objecting Settlement Class Member may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the Proposed Settlement should not be approved as fair, adequate, and reasonable, or object to any petitions for attorneys' fees, Class Representative Awards, and reimbursement of reasonable litigation costs and expenses.  The objecting Settlement Class Member must file with the Clerk of

B-6

the Court and serve upon Class Counsel and Defendants' Counsel (at the addresses listed below), a notice of intention to appear at the Final Approval Hearing ("Notice of Intention to Appear") on or before **[21 Days Prior to Final Approval Hearing]**.

1.     Class Counsel:  Daniel K. Bryson, Esq., Whitfield Bryson LLP, 900 W. Morgan St., Raleigh NC 27603

2.     Settling Defendants' Counsel:   David T. Biderman, Esq., Perkins Coie LLP, 1888 Century Park East Suite 1700, Los Angeles, CA 90067

The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member (or his/her/its counsel) will present to the Court in connection with the Final Approval Hearing.  Any Settlement Class Member who does not provide a Notice of Intention to Appear in complete accordance with the deadlines and other specifications set forth in the Class Notice, will not be allowed to speak or otherwise present any views at the Final Approval Hearing.

## 12. When and where will the Court determine whether to approve the settlement?

The Court has scheduled a Final Approval Hearing for **[Final Approval Hearing Date]** at the James Lawrence King Federal Justice Building, 99 N.E. Fourth Street, Room 1168, Miami, Florida 33132.  This hearing may be continued or rescheduled by the Court without further notice. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and will consider Class Counsel's request for attorneys' fees and expenses.  The Court also will consider objections.  The Court may decide these issues at the Final Approval Hearing or take them under consideration.  We do not know how long these decisions will take.

## 13. Do I have to come to the hearing?

No.  You are not required to come to the hearing, but you are welcome to come at your own expense. The hearing may be in person or via video conference, subject to the Court's order.

Settlement Class Members who object to the Proposed Settlement do not need to attend the Final Approval Hearing for their objections to be considered.  If you wish to appear either personally or through your own personal attorney at the Final Approval Hearing, you must send both a timely objection and a Notice of Intention to Appear to the Clerk of the Court at the address set forth in Section 11 above, and serve copies on Class Counsel and counsel for Defendants at the addresses set forth in Section 11 above no later than **[21 Days Prior to Final Approval Hearing]**.

## 14. What if the proposed settlement is not approved?

If the Proposed Settlement is not granted final approval, the putative Settlement Class which has been preliminarily approved will be decertified, this action will proceed without further notice, and none of the agreements set forth in this notice will be valid or enforceable.

**15. How do I get more information about the settlement?**

This Notice only summarizes the Proposed Settlement.  The official terms of the Proposed Settlement are available by visiting the Settlement Website at www._____.com, reviewing the public files at the Clerk of Court, Southern District of Florida, 400 North Miami Avenue, 8th Floor, Miami, FL 33128 or by calling 1-(888) ____-_____ and requesting a copy of the Settlement Agreement.  In the event of a conflict between the terms of this Notice and the Proposed Settlement, the terms of the Proposed Settlement will govern.

All questions you may have concerning the Settlement Agreement or this Notice should be directed to *Williams, et al. v. Reckitt Benckiser, et al.*   Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

**<u>Please DO NOT Contact the Court.</u>**

B-8

# EXHIBIT C

UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
FLORIDA MIAMI DIVISION

DAVID WILLIAMS, CAROLL ANGLADE,
THOMAS MATTHEWS, MARITZA
ANGELES, and HOWARD CLARK,
*individually, and on*
*behalf of other similarly situated individuals*,

      Plaintiffs,

v.

RECKITT BENCKISER LLC and RB
HEALTH (US) LLC,

      Defendants.

CASE NO. 1:20-cv-23564-RS

## FINAL APPROVAL ORDER AND JUDGMENT

Plaintiffs David Williams, Caroll Anglade, Thomas Matthews, Maritza Angeles, and Howard Clark individually and on behalf of the Settlement Class (hereinafter "Plaintiffs" or "Class Representatives"), and Defendants Reckitt Benckiser LLC and RB Health (US) LLC (collectively, "Reckitt" or "Defendants") seek approval of the proposed class action settlement set forth in the parties' Second Amended Settlement Agreement and Release ("Settlement Agreement").[1]

On [DATE OF FINAL APPROVAL HEARING], the Court held a duly noticed final approval hearing to consider (1) whether to conditionally certify the Settlement Class for settlement purposes only; (2) whether the terms and conditions of the Settlement Agreement, including Notice provided to Settlement Class Members, are fair, reasonable, and adequate; and (3) whether a judgment should be entered permanently barring the Parties and Settlement Class Members from prosecuting the other Parties and their officers, attorneys, directors, shareholders, employees, agents, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels in regard to those matters released as set forth in Section VI of the Settlement Agreement.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1.    The Court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Order and Judgment. Without in any way affecting the finality of this Final Order and Judgment, this Court hereby retains jurisdiction as to all matters relating to administration, consummation, enforcement, and

---

[1] Unless otherwise defined, capitalized terms in this Final Order and Judgment have the definitions found in the Settlement Agreement.

182188476.3

interpretation of the Settlement Agreement and of this Final Order and Judgment, and for any other necessary purpose.

2.     The Court finds that Class Notice was given in the manner ordered by the Court; constituted the best practicable notice to apprise Settlement Class Members of the pendency of the Action, their right to object or exclude themselves from the Settlement, and their right to appear at the Final Approval Hearing; was fair, reasonable, and adequate and constituted sufficient notice to all persons entitled to receive notice, including all Settlement Class Members; and complied fully with the requirements of Federal Rule of Civil Procedure 23.

3.     The Court finds that the prerequisites of Federal Rule of Civil Procedure 23(a) and Federal Rule of Civil Procedure 23(b) have been satisfied for conditional certification of the Settlement Class for settlement purposes only. Specifically: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Class Representatives are typical of the claims of the Settlement Class they seek to represent; (d) Class Representatives have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) Defendants have acted on grounds generally applicable to all Class Members; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

4.     Pursuant to Federal Rule of Civil Procedure 23, this Court hereby finally certifies the Settlement Class on a conditional basis and for settlement purposes only, as identified in the Settlement Agreement, which shall consist of: All persons who purchased for personal consumption and not for resale, one or more of the Neuriva Products, from Reckitt or an authorized reseller, in the United States, between the dates of January 1, 2019 and April 23, 2021, the date of Preliminary Approval of the Original Settlement Agreement.  Excluded from the Settlement Class shall be the Honorable Erica P. Grosjean, the estate of the Honorable Marcia G. Cooke, the Honorable Jonathan Goodman, the Honorable Ronnie Abrams, the Honorable Rodney Smith, counsel to the Parties, Jill Sperber, and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; Reckitt, any entity in which Reckitt has a controlling interest, any of Reckitt's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and any persons who timely opt-out of the Settlement Class. Should the Settlement fail to take effect for any reason, including for termination by either Party, the Settlement Class shall be automatically decertified and the Parties returned to their respective positions as prior to the Court's Preliminary Approval Order entered on April 23, 2021, retaining all rights, claims, and defenses without prejudice.

5.     The Court finds that the prerequisites of Federal Rule of Civil Procedure 23(e)(2) have been met in that the Settlement is fair, reasonable, and adequate relief for the Settlement Class. The Court has considered and confirmed that (a) the Class Representatives and Class Counsel have adequately represented the class; (b) the proposed Settlement was negotiated at arm's length with no "clear sailing" agreement or other indicia of collusion; (c) the relief provided to the Settlement Class is adequate, taking into account (i) the costs, risks, and delay of trial and

<div align="center">C-2</div>

appeal; (ii) the effectiveness of any proposed method of distributing relief to the Settlement Class, including the method of processing class-member claims; (iii) the terms of the proposed award of attorneys' fees, including timing of payment; and (iv) any other agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats Settlement Class members equitably relative to each other.

6.     The terms of the Settlement Agreement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on the Parties except those with specific time limitations, and shall have *res judicata* and preclusive effect in all pending and future lawsuits, whether maintained by the Plaintiffs and all other Settlement Class Members, as well as their heirs, executors and administrators, successors, and assigns, or otherwise, on the basis of, arising from, or relating to the allegations or claims in this Action.

7.     The Releases, which are set forth in Section VI of the Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Final Order and Judgment; and the Discharged Parties (as that term is defined below in the Settlement Agreement) are forever released, relinquished, and discharged by the releasing persons from all released claims:

### VI. RELEASE

Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, and in consideration for the Settlement benefits described in this Agreement, Plaintiffs and the Settlement Class fully release and discharge the Settling Defendants, and all of their present and former parent companies, subsidiaries, special purposes entities formed for the purpose of administering this Settlement, shareholders, owners, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, and successors, personal representatives, heirs and assigns, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels (together, the "Discharged Parties") from all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Class Counsel, Plaintiffs' Counsel, Class Representatives, or Settlement Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Discharged Parties in any court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, arising from, or relating to the allegations or claims in the *Williams* Action or the Neuriva Actions, including the Challenged Representations or claims that the Neuriva Products were misleadingly labeled, marketed, or sold, or that relate to the labeling and marketing of the Neuriva Products, except that there shall be no release of claims for personal injury allegedly arising out of use of the Neuriva Products.

8.     This Final Order and Judgment and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or by any released person to support a defense

of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

10.     The Court shall retain continuing and exclusive jurisdiction over the enforcement, interpretation, and applicability of the Settlement Agreement and the Parties agree to cooperate and to take all necessary and appropriate steps to ensure the enforceability of the Settlement Agreement.  In granting Final Judgment, the court shall enjoin all actions in any jurisdiction against the Discharged Parties as is necessary to preserve the Court's jurisdiction.

11.     This Action, including all individual claims and class claims presented herein, is hereby **DISMISSED** on the merits and **WITH PREJUDICE** against the Plaintiffs and all other Settlement Class Members, without fees or costs to any party except as otherwise provided by the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida this _____ day of _____, 2025.


_____
HONORABLE RODNEY SMITH
United States District Judge


Copies furnished to all counsel of record.

C-4

# EXHIBIT D



D-1

# EXHIBIT E

**JOB# 7468**

**FILE INFORMATION**

**Description:** Neuriva Plus 36ct Capsules Carton for Walmart - 2021 (21.0233)

**Drawing #:** D8219974

**Software:** Adobe Illustrator CC 2019

**Size (Flat):** 9.969" w x 9.094" h

**Date Work Performed:** 06-25-21

**Colors Used:**

**Fonts Used:** Butler, Effra, Helvetica, Helv Neue, Helv Neue Cond, Knockout, OCRB, Zapf Dingbats

**Additional Information:** RB Item #: 3202230   PO#: 4501625442
TDS #: 3075817

**Printer:** Olympic

**Print Method:** Litho

Printer is responsible for the printability of the bar code given the specific press conditions.

KELCOM DESIGN INC.
+ 212.727.1443
kcw@kelcom.com



**Minimum Point Size And Height**

| | Height | Point Size |
|---|---|---|
| Supplement Facts | | |
| Amount per serving % The Daily Value | 0.06 in | 6 pt |
| Ingredients | 0.06 in | 6 pt |
| Text relating to ingredients | 0.08 in | 8 pt |
| All text under Supplement Facts table | 0.06 in | 6 pt |

| | Height | Point Size |
|---|---|---|
| Info Text | 0.06 in | 6 pt |
| Minimum size of all other copy | 0.06 in | 6 pt |

| | Height | Point Size |
|---|---|---|
| Net Contents | | |
| 36 ct | 10.3/12 pt | 10.3/12 pt |

| | Height | Point Size |
|---|---|---|
| Statement of Identity | | |
| 11 in | 14.26 | |

Front PDP in square inches:
14.26

Rear PDP in square inches:
14.26

9.094"

NO VARNISH GLUE AREA

NO VARNISH
GLUE AREA

NO VARNISH
GLUE AREA

9.969"

E-1



**Fuels 6 indicators of brain health***

- **FOCUS** Staying on task free from distractions.

- **MEMORY** Record and recall stored information over time.

- **LEARNING** Assess and integrate new information.

- **ACCURACY** Reaction, speed, and precision.

- **CONCENTRATION** Stay on task longer.

- **REASONING** Think and understand things in a logical way.

**Do more for your brain**

We're the brain's biggest fan, so we're on a mission to help all brains be the best they can be. Which is why we didn't just stop with an awesome supplement. Our holistic brain health program includes tips, tools and tracking tools you to help you do more for your brain.

Because when your brain thrives, your life thrives.

Learn more at neuriva.com



**Nature made it. Brains love it.**

Our naturally sourced ingredients are GMO-free and clinically tested to help support brain health.* Disclaimer: Neuriva* won't make you a genius, but often enough it'll help you are.

**NEURFACTOR**
(COFFEE CHERRY)

Made from the nutrient-rich fruit of the coffee cherry, this extract is decaffeinated and clinically tested to increase levels of the vital neuroprotein BDNF, known to strengthen connections between brain cells.*

**PLANT-SOURCED SHARP-PS***
(PHOSPHATIDYLSERINE)

Lipids are essential for proper brain function and our SharpPS phospholipid is clinically tested to support memory and learning.*

**VITAMINS B6, B12 & FOLIC ACID**

Key nutrients to support brain health & cognitive function.*

Neuriva is:
• GMO-Free   • Gluten-Free

CLINICALLY TESTED
NATURALLY SOURCED INGREDIENTS*

Schiff

**neuriva**
BRAIN HEALTH*

**Plus**
• Vitamins B6, B12 & Folic Acid
• Focus • Memory • Learning
• Accuracy • Concentration • Reasoning

6 INDICATORS OF BRAIN HEALTH*

**36 CAPSULES**   ONE CAPSULE   DIETARY SUPPLEMENT

3202230

**Supplement Facts**
Serving Size 1 Capsule

| | Amount Per Serving | % Daily Value |
|---|---|---|
| Vitamin B6 (as pyridoxine hydrochloride) | 1.7 mg | 100% |
| Folate (400 mcg DFE (Methylfolate)) | 400 mcg DFE | 100% |
| Vitamin B12 (as methylcobalamin) | 2.4 mcg | 100% |
| Coffee Fruit Extract (Coffee arabica) | 100 mg | † |
| Phosphatidylserine (SharpPS*) | 100 mg | † |

† Daily Value not established.

Other Ingredients: capsule (hydroxypropyl methylcellulose, gellan gum), medium chain triglycerides, microcrystalline cellulose, rice bran, silica (flow agent), magnesium stearate.

CONTAINS SOY.

DIRECTIONS: Adults (18 years and older) take one (1) capsule daily.

Distributed by:
RB Health (US) LLC
Parsippany, NJ
07054-0224
For more information call: 1-800-524-4291
www.neuriva.com

Do not take if pregnant, breastfeeding, on medication, or with a known medical condition unless you have consulted a physician.

KEEP OUT OF REACH OF CHILDREN.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.

Do more for your brain

Download on the App Store   GET IT ON Google Play

Do more for your brain.



## Certificate Of Completion

Envelope Id: EE0C51BF-6305-469F-A47C-626C56BBAE6E
Subject: Complete with Docusign: 2025.06.13 - Second Amended Neuriva Settlement Agreement.pdf
Source Envelope:
Document Pages: 49
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Disabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 4
Initials: 0

Status: Completed

Envelope Originator:
Matthew Walkup
1201 3rd Avenue
Suite 4900
Seattle, WA  98101
MWalkup@perkinscoie.com
IP Address: 130.41.50.22

## Record Tracking

Status: Original
     6/13/2025 1:00:32 PM

Holder: Matthew Walkup
     MWalkup@perkinscoie.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Jonathan Shub<br>jshub@shublawyers.com<br>Security Level: Email, Account Authentication (None) | *Jonathan Shub*<br>759F8B8378EA466... | Sent: 6/13/2025 1:05:32 PM<br>Viewed: 6/13/2025 1:57:46 PM<br>Signed: 6/13/2025 1:58:03 PM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address:<br>2600:1002:b114:2bbe:c90c:cbcf:1c06:86a3<br>Signed using mobile | |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 6/13/2025 1:57:46 PM<br>  ID: be80a3b3-12db-4f3f-bda0-e5063213eb2d | | |
| L. Timothy Fisher<br>ltfisher@bursor.com<br>Partner<br>Security Level: Email, Account Authentication (None) | *L. Timothy Fisher*<br>216CEEAF9EEB40A... | Sent: 6/13/2025 1:05:33 PM<br>Viewed: 6/13/2025 1:22:23 PM<br>Signed: 6/13/2025 1:24:31 PM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 75.36.1.49 | |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 6/13/2025 1:22:23 PM<br>  ID: f9213f37-731f-404a-8c0e-92daa11b42df | | |
| Martha Geer<br>mgeer@milberg.com<br>Security Level: Email, Account Authentication (None) | *Martha Geer*<br>310375740DC048D... | Sent: 6/13/2025 1:05:33 PM<br>Viewed: 6/13/2025 1:08:42 PM<br>Signed: 6/13/2025 1:11:40 PM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 208.1.63.162 | |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 6/13/2025 1:08:42 PM<br>  ID: 09d035ad-edca-48f7-ba30-661d8b3ec170 | | |
| Matthew Schultz<br>mschultz@levinlaw.com<br>Security Level: Email, Account Authentication (None) | *Matthew Schultz*<br>D9C43C6D398B4E7... | Sent: 6/13/2025 1:05:34 PM<br>Viewed: 6/13/2025 1:50:44 PM<br>Signed: 6/13/2025 1:52:51 PM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 185.98.168.20 | |
| **Electronic Record and Signature Disclosure:** | | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Accepted: 6/13/2025 1:50:44 PM<br>ID: 593b9fa8-ca5e-42cb-a22d-d5ebc4025461 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Carrie Akinaka<br>cakinaka@perkinscoie.com<br>Security Level: Email, Account Authentication<br>(None)<br>**Electronic Record and Signature Disclosure:**<br>   Not Offered via Docusign | COPIED | Sent: 6/13/2025 1:05:34 PM<br>Viewed: 6/13/2025 2:09:39 PM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/13/2025 1:05:34 PM |
| Certified Delivered | Security Checked | 6/13/2025 1:50:44 PM |
| Signing Complete | Security Checked | 6/13/2025 1:52:51 PM |
| Completed | Security Checked | 6/13/2025 1:58:03 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure |
|---|

Electronic Record and Signature Disclosure created on: 4/2/2019 10:40:15 AM
Parties agreed to: Jonathan Shub, L. Timothy Fisher, Martha Geer, Matthew Schultz

Case 1:20-cv-23564-RS Document 178-1 Entered on FLSD Docket 06/23/2025 Page 53 of 55

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Perkins Coie LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Perkins Coie LLP:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ESignaturesSupport@perkinscoie.com

**To advise Perkins Coie LLP of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us
at ESignaturesSupport@perkinscoie.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Perkins Coie LLP**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email
to ESignaturesSupport@perkinscoie.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Perkins Coie LLP**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ESignaturesSupport@perkinscoie.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Perkins Coie LLP as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Perkins Coie LLP during the course of your relationship with Perkins Coie LLP.